UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:25-cr-00285 |
| | JUDGE JOSEPH |
| v. | MAGISTRATE JUDGE WHITEHURST |
| | |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | |
| | |
| Defendant | |

______________________________/

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT BATTLEFIELD EVIDENCE**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1
II. FACTS ........ 2
III. THE DOCUMENTS ........ 3
IV. ARGUMENT ........ 16
A. The Government's Expert Will Authenticate the Battlefield Documents .. 17
B. The Battlefield Documents are Admissible ........ 22
1. Non-Hearsay Co-Conspirator / Joint Venture Statements ........ 22
(a) There Existed a Conspiracy Between the Defendant and HAMAS ........ 23
(b) The Statements Were Made by the Defendant's Co-Conspirator ........ 28
(c) The Statements were made During the Course of the Conspiracy ........ 31
(d) The Statements were made in Furtherance of the Conspiracy ........ 32
2. Residual Exception ........ 33
V. CONCLUSION ........ 36

# TABLE OF AUTHORITIES

## CASES

*Idaho v. Wright*,
497 U.S. 805 (1990) .......... 34

*In re McLain*,
516 F.3d 301 (5th Cir. 2008) .......... 18

*United States v. El-Mezain*,
664 F.3d. 467 (5th Cir. 2011) .......... 19, 23, 24, 26, 27, 28, 30, 33, 34

*United States v. Fierro*,
38 F.3d 761 (5th Cir. 1994) .......... 28, 30

*United States v. Ismoila*,
100 F.3d 380 (5th Cir.1996) .......... 33

*United States v. Jackson*,
636 F.3d 687 (5th Cir. 2011) .......... 18

*United States v. Musaibli*,
42 F.4th 603 (6th Cir. 2022) .......... 28, 29, 30, 32

*United States v. Musaibli*,
577 F.Supp.3d 609 (E.D. Mich. 2021) .......... 29

*United States v. Okulaja*
21 F.4th 338 (5th Cir. 2021) .......... 17

*United States v. Postal*,
589 F.2d 862 (5th Cir. 1979) .......... 28

## STATUTES

18 U.S.C. § 371 .......... 32
18 U.S.C. § 2339B .......... 23

## OTHER AUTHORITIES

5 J. Weinstein & M. Berger, *Weinstein's Evidence* .......... 17
Fifth Circuit Pattern Jury Instruction 2.15A .......... 32

**RULES**

Fed. R. Evid. 801(d)(2)(E) ........................................ 17, 22, 28, 29, 30
Fed. R. Evid. 807 ........................................ 17, 33, 34
Fed. R. Evid. 901 ........................................ 17, 22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI

Defendant

_______________/

6:25-cr-00285
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT BATTLEFIELD EVIDENCE**

## I. INTRODUCTION

The United States of America, by and through Zachary A. Keller, United States Attorney for the Western District of Louisiana, hereby submits this Memorandum in support of its motion *in limine* to admit certain "battlefield evidence" collected in Gaza by Israeli Defense Forces following the HAMAS[1] attacks of October 7, 2023, and provided to the United States Government in the course of the investigation of the Defendant, Mahmoud Amin Ya'qub Al-Muhtadi. As recounted in greater detail below, the United States respectfully submits that there are sufficient indicia of authenticity, and the documents are admissible as non-hearsay co-conspirator statements. The documents specifically referencing the Defendant are also admissible through the residual exception to the rule against hearsay.

[1] HAMAS is an acronym for the Arabic "Harakat al-Muqawamah al-Islamiyyah," or the Islamic Resistance Movement.

## II. FACTS

Defendant Mahmoud Al-Muhtadi ("Al-Muhtadi") was arrested on October 16, 2026, pursuant to a criminal complaint ("Complaint") issued in this District by the Honorable David J. Ayo, United States Magistrate Judge. [Doc. 1]. The Complaint charged violations of Title 18, United States Code, Section 2339B (providing, attempting to provide, and conspiring to provide material support to HAMAS, a designated foreign terrorist organization), and Title 18, United States Code, Section 1546 (fraud and misuse of visas and other documents). *Id.* An indictment followed on October 17, 2025, charging conspiracy to provide material support to HAMAS, and visa fraud under the same statutes identified in the Complaint. [Doc. 16].

The Complaint alleges that Al-Muhtadi was a longtime member of the Democratic Front for the Liberation of Palestine ("DFLP") and its military wing, the National Resistance Brigades ("NRB"). Complaint ¶¶ 28-44. The Complaint further alleges that on October 7, 2023, Al-Muhtadi learned of the HAMAS attack on Israel, gathered men, weapons, and ammunition, and crossed into Israel to join the attack in an area called Malaka near Kibbutz Nahal Oz. *Id.*, ¶¶ 45-67. The Complaint also alleges that Al-Muhtadi's cellular phone pinged off a cell tower near Kibbutz Kfar Aza on or about 10:01 a.m. *Id.*, ¶¶ 68-73.

In establishing Al-Muhtadi's ties to DFLP and the National Resistance Brigades, and Al-Muhtadi's participation in the HAMAS conspiracy on October 7, 2023, the United States intends to introduce certain documents at trial that were recovered from devices seized by the Israeli Defense Forces during combat operations

following the October 7 attacks. The United States intends to introduce the documents through "Avi," a HAMAS expert and Director of the Research and Assessment Division in the Israeli National Bureau of Counter Terror Financing, serving as the representative for the Israeli Security Agency.[2] An expert disclosure for "Avi" has been filed today along with government's motion *in limine* and this memorandum of law.

## III. THE DOCUMENTS

**Exhibit 1** is an Excel spreadsheet listing information on thousands of individuals, families, and organizations for the allocation of financial support. The spreadsheet includes members of the DFLP, including Al-Muhtadi. Al-Muhtadi's information is highlighted below.[3]

[2] "Avi" is a pseudonym used to protect the witness's identity, which is classified under Israeli law.

[3] Exhibit 1 is referred to as "Attachment 4" in the Expert Disclosure because that is how it was referenced in requests to the Israeli government seeking use of the document in this criminal prosecution. This memorandum of law refers to them as Exhibits 1 through 6, while noting their corresponding references in the Expert Disclosure.



| الرقم | الاسم رباعي | رقم الهوية | x | المحافظة | المدينة | الحي |
|---|---|---|---|---|---|---|
| 20097 | محمود امين يعقوب المهدي | 803435809 | 1 | جنوب غزة | الجبهة الديمقراطية | |

| رقم الجوال | المبلغ($) | Test_idno | موظفي الوكالة-الاسم | موظفي الوكالة-رقم الهوية | موظفي الوكالة-تاريخ الميلاد | موظفي الوكالة-تاريخ الوفاة |
|---|---|---|---|---|---|---|
| 599088708 | 100 | ** | | | | |

| البرنامج_الوطني_4-2018-المحافظة | البرنامج_الوطني_4-2018-مرحلة الاستمارة | البرنامج_الوطني_4-2018-داخل/خارج | البرنامج_الوطني_4-2018-صلة القرابة | البرنامج_الوطني_4-2018-ملكية البيت | الموظفين_الحكوميين-SAL_CLASS_DESC | الموظفين_الحكوميين-EMP_STOP_DESC |
|---|---|---|---|---|---|---|
| غزة | الغاء جديد | | ابن / ابنة | ملك | | |

| الموظفين_الحكوميين-EMP_STATUS_DESC | الموظفين_الحكوميين-ID_NO | الموظفين_الحكوميين-EMP_NO | حالة_الحياة |
|---|---|---|---|
| | | | |

**FBI-464609-464611**

**Exhibits 2 and 3** are both reports of activity from February 2020.[4]

Exhibit 2 is an Arabic-language document that was translated into English by the FBI. The document is a report addressed to "Colonel Abu Muhammad," dated February 20, 2020, with the title: "Intelligence report regarding Faraj 'Asaliya."

[4] Exhibits 2 and 3 are Attachment 1 and Attachment 5 in the expert disclosure.

اليوم: الاحد
التاريخ:
2020/02/20

الأخ العقيد // أبو محمد ,,, حفظه الله
مدير إدارة المكافحة
السلام عليكم ورحمة الله وبركاته،

**الموضوع/ تقرير استخباري بخصوص المدعو فرج عسلية**

بداية نهديكم أطيب التحيات سائلين المولى عز وجل لكم موفور الصحة والعافية ودوام العطاء، وبعد.
**بالإشارة إلى الموضوع أعلاه، ولاطلاع سيادتكم بأهم النتائج المترتبة حول الإشارة الواردة بخصوص المذكور أعلاه فإننا نفيدكم بالتالي:**

المعلومات الشخصية:

| الاسم | فرج علي محمد عسليه | | | رقم الهوية | | تاريخ الميلاد | |
|---|---|---|---|---|---|---|---|
| المهنة | سائق على الخط | | | العنوان | جباليا – شعشاعة – مسجد مالك أبن أنس | الانتماء الحالي | الجبهة الديمقراطية |
| الحسابات الالكترونية | لا يوجد | | | | | رقم الجوال | |
| اعتقالات سابقة | يوجد | سفر | لا يوجد | حوالات مالية | لا يوجد | آخر استدعاء | /02/20 2020 |
| | | عودة | لا يوجد | | | | |

الإشارات الواردة:
في تاريخ 2020/02/10، تم إطلاق قذائف مخالفة للإجماع الوطني من محافظة الشمال وتحديدا الضابطة الجمركية، وسقطت القذائف بالقرب من شارع البنات، وعليه تم تحديد المشتبه بهم في إطلاق القذائف وعليه نفيدكم بالتالي:

الاجراءات التي تمت:
- تم تحديد المشتبه بهم في إطلاق القذائف.
- تم مصادرة مدفع الهاون والقذائف طرف محافظة الشمال.
- تم استدعاء كل من هاني عزا وأين أبو عيطة وحسن منصور طرف محافظة الشمال.
- الجلوس مع فرج عسلية مركزيا من طرف دائرة مكافحة الأنشطة التخريبية.

الأشخاص الذين شاركوا في إطلاق قذائف الهاون:

| الاسم | الهوية | تاريخ الميلاد | الانتماء |
|---|---|---|---|
| فرج علي محمد عسليه | | | الجبهة الديمقراطية |
| هاني نبيل عبد الفتاح عزا | | | الجبهة الديمقراطية |
| أيمن حسني سليم ابوعيطة | | | الجبهة الديمقراطية |
| حسن محمد يوسف منصور | | | الجبهة الديمقراطية |
| حمود أيمن محمد عوض الله | | | الجبهة الديمقراطية |
| محمود امين يعقوب المهتدي | 803435809 | 1991/11/02 | الجبهة الديمقراطية |

ملخص إفادة المدعو فرج عسلية بتاريخ 2020/02/20:
**قام المذكور بالحضور طرفنا يوم الخميس الموافق 2020/02/20م وقد اعطى افادة كاملة بخصوص مخالفته للإجماع الوطني وكانت على النحو التالي:**
- أفاد المذكور أنه كان ينتمي لجيش الإسلام عام 2010 وبعد حادثة تفجير جيب الصليب الأحمر، ترك الحالة وانتقل للجبهة الديمقراطية.

FBI-460927

Colonel// Abu Muhammad…May Allah protect him
Director of Control Department

**Today: Sunday**
**Date:**
**02/20/2020**

Peace, mercy and blessing of God be upon you,

**Subject/ Intelligence report regarding Faraj 'Asaliya**

First of all, we present you with our best greetings, asking God Almighty to bless you with good health, wellness, and continuous contribution. With reference to the above subject, and in order to inform you of the most important results of the aforementioned person, we would like to inform you of the following:

Personal Data:

<table>
<tr><td>Name</td><td colspan="2">Faraj 'Ali Muhammad 'Asaliya</td><td>ID#</td><td colspan="2">[redacted]</td><td>D.O.B</td><td>[redacted]</td></tr>
<tr><td>Occupation</td><td colspan="2">Driver</td><td>Address</td><td colspan="2">Jabalya-Shi'sha'a-Malik Ibn Anas Mosque</td><td>Current Affiliation</td><td>The Democratic Front</td></tr>
<tr><td colspan="2">Electronic Accounts</td><td colspan="2">None</td><td colspan="2">Mobile Number</td><td colspan="2">[redacted]</td></tr>
<tr><td>Previous Arrest</td><td>Yes</td><td><u>Travel</u><br>Return</td><td><u>None</u><br>None</td><td>Money transfer</td><td>None</td><td>Last summons</td><td>02/20/2020</td></tr>
</table>

Incoming memorandums:

On 2/10/2020, Mortars contrary to the national consensus were fired from the North Governorate, specifically the custom control office, and the shells landed near Al-Banat Street. Accordingly, suspects in the firing of the shells were identified, and we would like to inform you of the following:

Actions taken:

- The suspects in the firing of the missiles were identified.
- The mortars and shells were confiscated by the North Governorate.
- Hany 'Azza, Ayman Abu 'Ita and Hassan Mansur were summoned from the North Governorate.

1

FBI-463204

File Number:
Task ID:
Name of Document File: [redacted]

- Meeting with Faraj 'Asaliya centrally by the Department of Combating Subversive Activities.

People, who participated in the mortars' firing:

| Name | ID Number | Date of Birth | Affiliation |
|---|---|---|---|
| Faraj 'Ali Muhammad 'Asaliya | [redacted] | [redacted] | Democratic Front |
| Hani Nabil 'Abd Al-Fattah 'Azza | [redacted] | [redacted] | Democratic Front |
| Ayman Husni Salim Abu 'Ita | [redacted] | [redacted] | Democratic Front |
| Hassan Muhammad Yussif Mansur | [redacted] | [redacted] | Democratic Front |
| Hamud Ayman Muhammad 'Awdallah | [redacted] | [redacted] | Democratic Front |
| Mahmud Amin Ya'qub Al-Muhtadi | [redacted] | [redacted] | Democratic Front |

**FBI-463205**

The report goes on to note that "[o]n 2/10/2020, Mortars contrary to the national consensus were fired from the North Governate, specifically the custom control office, and the shells landed near Al-Banat Street. Accordingly, suspects in the firing of the shells were identified." A chart of "People who participated in the mortars' firing" lists five people, including the Defendant, "Mahmud Amin Ya'qub Al-Muhtadi," with Palestinian ID number ending in 5809, date of birth November 2, 1991, and "Affiliation: Democratic Front." Exhibit 2.[5]

According to an official FBI translation, Exhibit 3 is a report to "Brigadier General Abu Yassir Al-Masri" dated February 24, 2020 and titled, "Intelligence

[5] The FBI redacted personal identifying information from the translated version, but Al-Muhtadi's birthdate of November 2, 1991 and Palestinian ID ending in 5809 – both of which he supplied in his fraudulent United States visa application – are visible in the Arabic-language version.

report on the mortar launchers from the Northern Region on 02-10-2020." Exhibit 3. Portions are reproduced below both in original form and in official translation by the FBI:



| اليوم: | الاثنين |
|---|---|
| التاريخ: | 2020-02-24 |

سـيادة العمـيد حقوقي/ أبـو ياسر المصـري،، حفظه الله ورعاه

مدير عـام جـهاز الأمـن الداخـلي

**السـلام عليكـم ورحمـة الله وبـركـاتـه**

| الموضـوع | تقرير استخباري بخصوص مطلقي قذائف الهاون من منطقة الشمال بتاريخ 10-02-2020م |
|---|---|

**بداية نهديكم أطيب التحيات سائلين المولى عز وجل لكم موفور الصحة والعافية ودوام العطاء**، بالإشارة إلى الموضوع أعلاه،

ملخص الحدث:

- في تمام الساعة 1:00 من فجر أ الموافق 2020/02/10م تم اطلاق قذيفتين هاون من الشمال، علماً أن إحدى القذائف سقطت بجوار منزل المواطن/ أكرم إسماعيل البسيوني.
- بعد البحث والمتابعة تبين أن عملية إطلاق قذائف الهاون تمت من خلال الجبهة الديمقراطية ، وتحديداً من قبل المدعو/ فرج عسلية ( ديمقراطية – بدون – جيد – جيد )، وبمعاونة كل من:

1) أيمن حسني أبو عيطة.
2) محمود أمين عوض الله
3) هاني نبيل عزام
4) محمود أمين المهتدي

الإجراءات:

**FBI-462864**

| Date | Monday |
|---|---|
| Date: | 02-24-2020 |

**Brigadier General / Abu Yassir Al-Masri, May God protect him**

**Director General of Internal Security Agency**

**Peace, mercy, and blessings of God be upon you.**

**Subject: Intelligence report on the mortar launchers from the Northern Region on 02-10 2020**

**First of all, we would like to extend our best wishes, asking Almighty God to grant you good health, well-being and continued giving**. Referencing the aforementioned topic:

Event Summary:

- At 1:00 a.m. on 02/10/2020 AD, two mortar shells were fired from the north, one of which landed next to the house of the citizen/Akram Isma'il Al-Basyuni.
- After investigating the matter, it turned out that the Democratic Front was the entity that carried out the mortar firing, specifically by the so-called Faraj 'Asaliya (Democratic Front -Without-Good-Good), and with the help of the following persons:
  1) Ayman Husni Abu 'Ita.
  2) Mahmud Amin 'Awadallah.
  3) Hani Nabil 'Azzam.
  4) Mahmud Amin Al-Muhtadi.

**FBI-464111**

The report summarizes, "At 1:00 a.m. on 02/10/2020 AD, two mortar shells were fired from the north, one of which landed next to the house of the citizen Akram Isma'il Basyuni." The report continues, "After investigating the matter, it turned out that the Democratic Front was the entity that carried out the mortar firing." Exhibit 3. The Report identifies "Faraj 'Asaliya (Democratic Front)" as the person who fired the mortars with the assistance of four other individuals, including "Mahmud Amin Al-Muhtadi." *Id.*

The report includes photographs and biographical information on all five participants in the mortar incident, including the Defendant.

| الاسم | محمود أمين المهتدي | العنوان | غزة - الرمال |
|---|---|---|---|
| رقم الهوية | 803435809 | تاريخ الميلاد | 02/11/1991 |
| الحالة الاجتماعية | متزوج | المؤهل العلمي | -- |
| الانتماء التنظيمي | جبهة ديمقراطية | الاعتقالات | الأمن الداخلي |
| الحالة الأمنية | جيد | الحالة الأخلاقية | جيد |
| المهنة ومكانها | بدون | أرقام الجوالات | 599088708 |

ملخص إفادة المذكور:

- المذكور من النشطاء في الجناح العسكري التابع للجبهة الديمقراطية.

جهـــاز الأمـــن الداخلـــي *** إدارة العمليات الأمنية

FBI-462866



| Name | Mahmud Amin Al-Muhtadi | Address | Gaza-Al-Rammal |
|---|---|---|---|
| ID# | 803435809 | D.O.B | 11/02/1991 |
| Marital Status | Married | Education | -- |
| Organizational Affiliation | Democratic Front | Arrests | Internal Security |
| Security Status | Good | Moral Status | Good |
| Occupation and Place | Unemployed | Mobiles # | 599088708 |

Summary of the aforementioned statement:

464113

FBI-464113

- The aforementioned is an active operative in the military wing of the Democratic Front.

Al-Muhtadi's picture and biographical information are seen on the bottom of page three of the document, including the same date of birth, November 2, 1991, and Palestinian ID number ending in 5809, that Al-Muhtadi listed on his United States visa application in 2024. Exhibit 3; *see* visa application, provided in discovery as part of Defendant's "A-File," Bates stamped FBI-462932—463015. The information on Al-

Muhtadi includes the statement, "The aforementioned is an active operative in the military wing of the Democratic Front." *Id.* Exhibit 2 was dated February 20, 2020, just ten days after the alleged incident, and Exhibit 3 was dated February 24, 2020, just two weeks after the alleged incident.

**Exhibit 4** is correspondence received from DFLP in which DFLP requests the return of weapons.[6] The document has the DFLP seal at the top, with words in Arabic and English on either side of the seal: "National Resistance Brigades / The Army Wing of the Democratic Front for the Liberation of Palestine." Exhibit 4. It is addressed to "Colonel Abu Anas Abu Nar," who is identified as "General Manager for Coordination and Follow-up," with the subject: "Request for our Weapon Recovery." *Id.*

[6] Exhibit 4 is Attachment 2 in the Expert Disclosure.






**National Resistance Brigades**
The Army Wing of The Democratic
Front For Liberation of Palestine

كتائب المقاومة الوطنية
الجناح العسكري للجبهة الديمقراطية
لتحرير فلسطين

السيد العقيد/ أبو أنس أبو نار                                    حفظه الله ورعاه
مدير عام التنسيق الفصائلي والمتابعة
بعد التحية،،

[REDACTED]

<u>الموضوع/طلب استرداد قطع سلاح خاصة بنا</u>

تهديكم كتائب المقاومة الوطنية الجناح العسكري للجبهة الديمقراطية لتحرير فلسطين، أطيب تحياتها الكفاحية والنضالية، وبالإشارة إلى الموضوع أعلاه، نفيدكم علماً أنه قد تم فقد خمس قطع سلاح كلاشنكوف + مسدس صوت خاصة بنا، حيث تبين أن أحد الأفراد الخاصة بنا وهو الرفيق/ محمود أمين يعقوب المهتدي، قام بإعطائهم إلى الأخ /عبد الله العشي أحد افراد كتائب الشهيد عز الدين القسام في كتيبة الصبرة وتل الإسلام، وذلك للمشاركة في حفلة صديق له. وتبين أنه تم ضبط هذه الأسلحة من قبل الإدارة العامة للمباحث العامة. ونحن من طرفنا قمنا بمعاقبة الرفيق واتخاذ الإجراءات التنظيمية اللازمة بحقه، ونأمل من سيادتكم استرجاع قطع السلاح الخاصة بنا.

وإليكم مرفق بأرقام قطع السلاح :

- 1984-PS25064
- 56-114045464
- 1984-2520592
- 2004-42752
- 56-117025146

ولكم جزيل الشكر
ودمتم سنداً للمقاومة وذخراً للوطن

كتائب المقاومة الوطنية
الجناح العسكري للجبهة الديمقراطية لتحرير فلسطين
٢٠١٧/١/٢٩

FBI-460926





[redacted]

File Number:
Task ID:
Name of Document File: [redacted]

National Resistance Brigades
The Army Wing of The Democratic
Front For Liberation of Palestine

كتائب المقاومة الوطنية
الجناح العسكري للجبهة الديمقراطية
لتحرير فلسطين

Colonel/ Abu Anas Abu Nar May Allah protect him
General Manager for Coordination and Follow-up [redacted]
Greeting,

**<u>Subject/Request for our Weapon Recovery</u>**

The National Resistance Brigades, the military wing of the Democratic Front for the Liberation of Palestine, send you their best regards of strife and struggle. With reference to the above subject, we would like to inform you that five Kalashnikovs +Blank-firing pistol of ours have been lost. It has been revealed that one of our individuals, Comrade Mahmud Amin Ya'qub Al-Muhtadi, has given them to brother 'Abdallah Al-'Ashi, one of 'Izz Al-Din Al-Qassam Brigades members in the Al-Sabra and Tel Al-Islam Battalion, in order to participate in his friend's party. These weapons were seized by the General Directorate of Investigations. We, for our part, have punished the comrade and taken the necessary organizational measures against him, and we hope that you will return our weapons.
Here is an attachment with the weapon numbers

- 1984-PS25064
- 56-114045464
- 1984-2520582
- 2004-42752
- 56-117025146

Thank you very much

May you stay a pillar of support for the resistance and a source of strength for the nation

(Seal) National Resistance Brigades
Military wing of the Democratic Front for the Liberation of Palestine
1/29/2017

1

[redacted]

FBI-463209

Translated by the FBI into English, the report states,

The National Resistance Brigades, the military wing of the Democratic Front for the Liberation of Palestine, send you their best regards of strife and struggle. With reference to the above subject, we would like to inform you that five Kalashnikovs + Blank-firing pistol of ours have been lost. It has been revealed that one of our individuals, Comrade Mahmud Amin Ya'qub Al-Muhtadi, has given them to brother 'Abdallah Al-'Ashi, one of 'Izz Al-Din Al-Qassam Brigades members in the Al-Sabra and Tel Al-Islam Battalion, in order to participate in his friend's party. These weapons were seized by the General Directorate of Investigations. We, for our part, have punished the comrade and

> taken the necessary organizational measures against him, and we hope that you will return our weapons.

Exhibit 4. The document then identifies five weapons by their serial numbers. The document includes a National Resistance Brigades seal at the bottom with the date January 29, 2017. *Id.*

**Exhibit 5** is a HAMAS map labeling the Malaka region both in Gaza and Israel.[7]



**FBI-534135**

[7] Exhibit 5 is Attachment 7 in the Expert Disclosure.

The map shows the border between Gaza and Israel. The word "Malaka" written in Arabic appears on the map next to a green circle pinpointing the location of Malaka in the Gaza portion of the map. A green circle pinpointing an area labeled "Malaka Grove" in Arabic also appears on the Israeli side of border, near Kibbutz Nahal Oz. A close-up of that portion of the map is seen here:




**Exhibit 6** is a picture of a defensive installation located at Malaka, according to the device owner's (HAMAS) labeling of the file, located on the Israeli side of the Gaza border. [8] The photo looks eastward from Gaza into Israel at Malaka Grove.

[8] Exhibit 6 is Attachment 8 in the Expert Disclosure.



**FBI-534134**

## IV. ARGUMENT

All of the exhibits at issue were found on HAMAS devices seized by Israeli Defense forces in Gaza during the war that erupted as a consequence of the HAMAS attacks of October 7, 2023. The United States will establish their authenticity at trial through the testimony of "Avi," a HAMAS expert and long-time employee of the Israeli Security Agency who currently works as Director of the Research and Assessment Division in the Israeli National Bureau of Counter Terror Financing.

The documents are admissible as non-hearsay because they are statements in furtherance of the HAMAS conspiracy to attack and destroy Israel or were made by persons engaged in a "joint venture" with HAMAS for purposes of Federal Rule of

Evidence 801(d)(2)(E). The documents specifically referencing the Defendant are also admissible under the residual hearsay exception found in Rule 807.

### A. The Government's Expert Will Authenticate the Battlefield Documents

The United States must make a *prima facie* showing of authenticity. *See* Fed. R. Evid. 901; 5 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 901.02[2] at 901-8 to 901-12 (Joseph M. McLaughlin, Ed., Matthew Bender 2d ed. 2000). As the Fifth Circuit has explained:

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. This is not a burdensome standard. Conclusive proof of authenticity is not required before allowing the admission of disputed evidence. Testimony by a witness with knowledge that the matter is what it is claimed to be can be enough to prove the thing's authenticity. Once this requirement has been met, the trial court should admit the exhibit ... in spite of any issues the opponent has raised about flaws in the authentication because such flaws go to the weight of the evidence instead of its admissibility. The ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury.

*United States v. Okulaja,* 21 F.4th 338, 344-45 (5th Cir. 2021) (internal quotation marks and citations omitted) (holding, *inter alia,* that a bank manager's testimony regarding web-cam photographs was sufficient to authenticate the photos in prosecution for using fraudulent passports to open bank accounts, even though the witness did not take the photos, did not recognize the defendant, and did not offer testimony that the images "fairly and accurately" depicted the individual who opened the bank accounts). Furthermore, "[a] proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and

the circumstances surrounding its discovery." *United States v. Jackson,* 636 F.3d 687, 693 (5th Cir. 2011), quoting *In re McLain,* 516 F.3d 301, 308 (5th Cir. 2008) (internal citations omitted)).

Here, as set forth in the Expert Disclosure filed today and repeated in portions of this Memorandum, "Avi," a witness from the Israeli Security Agency, is prepared to authenticate the documents at issue, including by providing information on when and where they were seized. Avi has become one of the primary experts on analyzing and exploiting the devices and documents seized from the battlefield on October 7, 2023, and during the subsequent military campaign in Gaza. Avi will testify that during combat operations, typically a combat unit will enter a location first to clear threats. Once the area is secure, forces will preliminarily catalog any evidence or intelligence that might be available, including but not limited to documents or devices. That unit will give each seized item an initial mark for tracking purposes that indicates the general location and approximate date of seizure. The unit then brings the seized materials back to Israeli territory and provides seized documents and devices to a unit known as AMSHAT.[9]

Once materials are with AMSHAT, the documents are scanned and assigned an ID number. AMSHAT will also "batch" documents and devices to group together documents seized from the same location. Devices are labeled, and their contents are

[9] AMSHAT (a Hebrew acronym) is sometimes present for the operations themselves and may sometimes be involved in seizing documents directly from the battlefield. However, AMSHAT generally just receives materials seized from the battlefield after the units have returned to Israel. When AMSHAT is the seizing entity, they follow the same procedures discussed above.

immediately imported to cloud storage and linked to the relevant metadata. The content of the devices is not altered. Avi is able to view the raw data on the devices in the same format that they would appear to a device user. He is also able to view where data is saved on the device, including the file path. Based on Avi's training and expertise, he will testify that each of the documents below is what it purports to be. *See, e.g. United States v. El-Mezain,* 664 F.3d. 467, 490 (5th Cir. 2011) (noting that "Major Lior" at trial authenticated battlefield documents seized during Operation Defensive Shield).

**Exhibit 1** is an Excel document that lists families, individuals and organizations for the allocation of financial support. The spreadsheet includes members of the DFLP, including Al-Muhtadi. Exhibit 1 was found on a laptop that was seized on November 22, 2023, from the Al-Rantisi Hospital in Gaza. Avi will testify that after the October 7 attacks, HAMAS stored many of its most sensitive devices in hospitals. Avi will testify that this device appeared to belong to an individual employed by the Internal and National Security Ministry of HAMAS. This ministry has several departments, and the individual who used this computer appears to have been employed by the internal security department, which is the department responsible for tracking other forces and organizations operating in Gaza. This device contained thousands of other documents about Palestinian organizations, entities, individuals, and factions. The documents on the device were well-organized and highly consistent in theme and topic.

Avi will testify that HAMAS keeps lists of the members of other groups operating in Gaza and the West Bank as part of its efforts to track and control these groups. HAMAS generally keeps detailed records on the affiliations of people residing in Gaza. HAMAS may obtain this information in a number of ways, including receiving it directly from the other groups themselves, or by developing their lists through interviews and other investigative or intelligence activities.

**Exhibits 2 and 3** are both reports of activity from February 2020. These documents were both obtained from a laptop seized from Shifa Hospital in Gaza on November 19, 2023. Shifa Hospital had served as a HAMAS command center, and the Israeli military thus conducted operations at Shifa Hospital to disrupt HAMAS activities. Avi will testify that this device also belonged to an employee in the internal security department of the Internal and National Security Ministry of HAMAS. The device contained thousands of surveillance reports and was clearly structured.

Avi will testify that he was further able to confirm the authenticity of these documents by cross-referencing the identifiers listed in the documents (including date of birth, cell phone numbers, and Palestinian ID numbers) with other databases. Moreover, some of the other individuals mentioned in other documents were known to Avi from his other investigations into DFLP. Finally, Avi was already familiar with this device and has found other documents located on this device to be accurate and reliable.

Both Exhibits 2 and 3 are examples of the types of investigative documents that Avi has seen frequently in his review of seized materials. The heading that

appears on the documents is known to him, and the form and general content of the documents is very consistent with other investigative documents that he has reviewed. These internal investigative documents are common because HAMAS is protective of its regime and its authority, and people are not allowed to act in Gaza without HAMAS's permission and coordination, especially when executing military actions against Israel. HAMAS therefore strictly enforces its authority and takes measures to control and eliminate actions it did not authorize.

**Exhibit 4** is correspondence received from DFLP in which DFLP requests return of weapons. It was found on a laptop seized from Shifa Hospital in Gaza on November 17, 2023.[10] Avi concluded this device was also used by an employee of the internal security department of the Internal and National Security Ministry of HAMAS, though it had a lower volume of documents than the other devices mentioned. However, Exhibit 4 was not generated by HAMAS, but was external correspondence directed to HAMAS. Avi will testify that based on his review of at least tens of thousands of documents, formal written correspondence between entities was not very common. However, this document related to the control of weapons, which was a serious and important topic for HAMAS, and he will testify that HAMAS would have wanted a written record of DFLP's request for the return of DFLP's weapons.

**Exhibit 5**, the HAMAS map of Gaza designating "Malaka" on both sides of the Gaza-Israeli border, was found on a hard drive seized in Gaza City on March 25, 2024.

---

[10] This device was seized in the same operation as the device that contained Exhibits 2 and 3. The operation spanned multiple days because the effort to clear and search the hospital was complex.

The hard drive on which this map was found served HAMAS's military wing, the Izz al-Din al-Qassam Brigades.

**Exhibit 6**, the HAMAS photo with filename "Malaka," depicts a defense installation on the Israeli side of the border near Kibbutz Nahal Oz. The photo was located on different hard drives seized on December 6, 2023, in Gaza City. The device served HAMAS's military wing, the Izz al-Din al-Qassam Brigades. Avi will testify that this picture was taken from the Gaza side of the border facing East into Israel. It depicts the defense installation near the border, and a grove of trees. Many Palestinian sources refer to this region as the Malaka region, which is located on the Israeli side of the border, as depicted on the map in Exhibit 5, *supra.*

The United States respectfully submits that "Avi" has sufficient knowledge to establish, by a preponderance of the evidence, that these documents are what they purport to be. They therefore meet the authenticity requirements of Fed. R. Evid. 901.

**B. The Battlefield Documents are Admissible**

The documents in question are admissible as statements that are not hearsay. In addition, those documents referencing the Defendant come in under the residual exception to the rule against hearsay.

**1. Non-Hearsay Co-Conspirator / Joint Venture Statements**

The documents at issue constitute statements in furtherance of a HAMAS conspiracy and/or statements by persons involved in a joint venture with HAMAS, and they are therefore admissible under Rule 801(d)(2)(E). To satisfy the co-

conspirator exception, the proponent of admissibility must establish four elements: (1) the existence of a conspiracy; (2) that the statements were made by a co-conspirator of the party; (3) that the statements were made during the course of the conspiracy; and (4) the statements were made in furtherance of the conspiracy. *El-Mezain,* 664 F.3d at 502 (internal citations omitted) (admitting statements in furtherance of a joint venture of financial support for HAMAS in violation of 18 U.S.C. § 2339B). Here, each element is easily met.

**(a) There Existed a Conspiracy Between the Defendant and HAMAS**

Expert testimony at trial, whether from "Avi" or other witnesses, will leave no doubt of the existence of a conspiracy between HAMAS, DFLP (of which the Defendant is a member), and other armed groups to destroy the State of Israel through violent uprising. The government's experts will testify that the original HAMAS charter from 1988 calls for the murder of Jews and the destruction of Israel, to be replaced by an Islamic state from the Jordan River to the Mediterranean Sea. An additional HAMAS policy document from 2017 reinforces its commitment to violence and the destruction of the State of Israel. The military wing of HAMAS, the Izz al-Din al-Qassam Brigades, has conducted terrorist attacks against Israel since HAMAS's formation in 1987, including kidnappings, suicide bombings and shootings at nightclubs, bars, restaurants and buses. Since taking over the governance of the Gaza Strip, HAMAS has amassed weapons and built underground tunnels. HAMAS frequently launches rockets into Israeli cities and neighboring communities. Its military also trains children to become the next generation of fighters, offering

military training at summer camps and schools. *See generally*, *El-Mezain*, 664 F.3d at 485-86. HAMAS spent at least a year, if not more, planning the attacks that occurred on October 7, 2023. HAMAS has been a designated Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act since October 8, 1997.

HAMAS is joined in this conspiracy to effect a violent takeover of Israel by numerous other terrorist organizations and paramilitary groups, including the DFLP and its armed wing, the National Resistance Brigade (NRB), of which the Defendant is a part. Numerous photographs and social media posts recovered through search warrants executed for social media accounts, Google accounts, and the Defendant's digital devices show the Defendant armed, training with firearms, dressed in paramilitary gear, wearing the red DFLP/NRB headband, and appearing to lead other DFLP militants. Complaint, ¶¶ 28-44. On or about December 12, 2019, Al-Muhtadi sent another social media user a message containing what appears to be a photograph of an official NRB form on official NRB letterhead, in which the Defendant takes responsibility for weapons that are the "property of the National Resistance Brigades." *Id.*, ¶ 31. Defendant's social media accounts contained messages in which the Defendant stressed the cooperation between NRB and HAMAS, including their common enterprise of resisting "the continuous Zionist aggression against our people." Complaint, ¶ 25; *see also* ¶¶ 23-24. Al-Muhtadi's social media accounts also contained photographs of senior HAMAS leaders together with an individual who appears to be a DFLP leader. *Id.* at ¶26. Al-Muhtadi is

pictured with the same individual, identified as "Subject 1" in the Complaint, numerous times in his social media accounts, with two examples included in the Complaint. *Id.* ¶¶ 43-44.

The government's experts will testify that beginning in 2018, Palestinian armed groups in the Gaza Strip, including the DFLP's NRB, established the "Joint Room for Palestinian Resistance Factions." Complaint, ¶ 21 ("Joint Operations Room"). This Joint Operations Room was for the purpose of coordinating Gaza's paramilitary groups' activities against Israel, including joint military activities and training exercises. Some six months before the HAMAS attacks of October 7, the Arabic-language news site Al Jazeera published an interview with Ayman Nofal, a member of the General Military Council of the Hamas Izz al-Din al-Qassam Brigades and its head of military relations. (Provided in discovery at FBI-13324—13366 and FBI-460525—460535.) In the interview, Nofal described the "Joint Operations Room of the Palestinian Resistance Factions," established in 2018 to serve as a "coordinating body among the factions to agree on the rules and mechanisms for confronting and managing the military battle with the enemy [Israel]." Nofal explained that "the resistance today has reached a stage where it is not possible to embark on war and confrontation except with a unified, collective, and well-though-out decision, taking into account the accumulation of strength and delivering painful blows to the enemy, and choosing the timing location, form and tools of the battle, in a way that serves the goals of our people, inflicts the maximum possible harm on the enemy and thwarts its plans." *Id.*

Nofal also made clear that the conspiracy long predated the Joint Operations Room. "[T]his launch of the joint operations room is not the beginning of joint military action between the factions. Joint action began early in all stages of our people's resistance and struggle against the Zionist occupation." Nofal named "the National Resistance Brigades" as one of ten factions acting under Hamas's coordination. *See also* Complaint ¶¶ 17-27. Further defining the common objective of the conspiracy, after the Joint Operations Room conducted a military drill in September 2023, HAMAS commander Mohammad Deif publicly remarked through the Joint Operations Room that armed resistance "is the only way for Palestinians to liberate their historical lands." *Id*. at ¶22. This decades-old enterprise to "liberate their historical lands" characterizes the scope of the charged conspiracy.

The conspiracy at issue is further buttressed by the contents of the battlefield documents themselves. *El-Mezain*, 664 F.3d at 504 (contents of the proffered documents were consistent with the conspiracy, as well as supported by independent evidence). Exhibit 1, for example, which the government's expert will testify came from a HAMAS computer that held documents from HAMAS' Office of Internal Affairs, is a spreadsheet that includes information about DFLP members, including the Defendant. That the Defendant is a DFLP operative is corroborated by the Defendant's own photographs and social media posts. Exhibits 2 and 3 show HAMAS's control over and cooperation with other armed groups in Gaza, including DFLP. These documents specifically address DFLP's use of weapons in furtherance of the joint objective of striking Israel. Exhibit 4 also demonstrates the joint

enterprise between DFLP and HAMAS. It consists of correspondence from DFLP to HAMAS about the return of weapons, weapons whose purpose are for the armed struggle in which they are jointly aligned. Similarly, Exhibit 5 is a map that was contained on another hard drive that belonged to HAMAS. The map shows the location of "Malaka" on both sides of the Gaza and Israeli border. The Defendant, in a phone call with DFLP co-conspirators at approximately 9:33 a.m. on the morning of October 7, told the caller to join him "inside" and indicated that he was "at Malaka's inside." Complaint, ¶63. Exhibit 6 corroborates the location of Malaka, having been saved on the device on which it was found under the file name "Malaka." That document is a photograph featuring a defense installation on the Malaka-Israel side of the border. In short, there can be no question that there existed a longstanding conspiracy and joint enterprise between HAMAS and the Defendant to join forces against Israel in order to "liberate" the land for their own. This conspiracy included the attacks that occurred on October 7, 2023,[11] in which both HAMAS and DFLP participated.[12]

---

[11] That DFLP joined HAMAS in the massacre of October 7 is beyond dispute. The evidence includes a video of at least one DFLP operative, displaying clearly visible DFLP insignia, murdering a Tanzanian agricultural student outside Kibbutz Nahal Oz, close to the defendant's breach point at Malaka. *See* Complaint, ¶20. The NRB also boasted online that its fighters were actively involved in the October 7 attack. *Id.*, ¶¶18-19.

[12] Whether or not the conspiracy between HAMAS, DFLP and other paramilitary groups in Gaza was itself "criminal" is of no matter. This Circuit has long recognized that the co-conspirator exception to rule against hearsay is based on the concept of "agency." Thus, so long as the Defendant was involved in a joint venture with HAMAS, whether the venture was illegal or lawful is irrelevant. The key is whether there was a joint undertaking, which is beyond dispute here. *See generally El-Mezain*, 664 F.3d at 502-07.

### (b) The Statements Were Made by the Defendant's Co-Conspirator

The government's expert will testify that each of the battlefield documents at issue was seized from computers used by HAMAS, as established by reviewing the computer's contents. Some of the specific authors of the documents are not known. But "[t]he failure of a document to identify the declarant is not fatal to admissibility under Rule 801(d)(2)(E), however, if the facts and circumstances surrounding the making of the statement indicate that the speaker is a member of the conspiracy or joint venture." *El-Mezain,* 664 F.3d at 505, citing *United States v. Postal,* 589 F.2d 862, 886 n.41 (5th Cir. 1979) (ship's logbook with anonymous author was admissible under Rule 801(d)(2)(E)). *See also United States v. Fierro,* 38 F.3d 761, 773 (5th Cir. 1994) ("[I]dentification of the declarant—such as the author of a drug ledger—is not always necessary for the admission of a co-conspirator statement).

The Sixth Circuit, in a recent examination of battlefield evidence, agreed with this Circuit in finding that unknown authors were no barrier to admission when it is otherwise clear that the author is a co-conspirator. In *United States v. Musaibli,* 42 F.4th 603 (6th Cir. 2022), the Sixth Circuit on interlocutory appeal reversed the district court's exclusion of battlefield evidence under Rule 801(d)(2)(E), which documented the defendant Abreheem Izzy Musaibli's membership in the Islamic State's criminal conspiracy to establish a caliphate in the Middle East.

Among the documents at issue in *Musaibli* were a roster of fighters for the battalion to which Musaibli belonged, payroll records that included data for a fighter later identified as Musaibli, a spreadsheet "containing Musaibli's kunya, census

number, and other personal details," and a budget database which included reports from the "Soldier's Administration" of ISIS for a period in 2016 and noting payments to a fighter subsequently identified as Musaibli. *Id.* at 609.[13] All of these documents constituted battlefield evidence that had been seized by coalition forces. *Id.*

Among other theories, the government argued in district court that the documents were admissible as statements of a co-conspirator under Rule 801(d)(2)(E). After a hearing in which witnesses authenticated the documents and offered testimony on the structure of ISIS, the district court denied the government's motion to admit ISIS documents.[14] In reversing, the Sixth Circuit noted that, "[w]hen determining whether a conspiracy existed under Rule 801(d)(2)(E), the key is coordinated action. For this reason, we have repeatedly stressed that the alleged conspiracy need not be the same as the one charged. In fact, there need not even be a conspiracy charge in the case for Rule 801(d)(2)(E) to apply." *Id.* at 615 (internal quotation marks and citations omitted).[15] The Court took note that the indictment charged Musaibli with conspiring "with others to provide material support and resources in the form of personnel and services" to ISIS, and that the government

---

[13] In rejecting admissibility of some of the evidence under Rule 801(d)(2)(E), the District Court had noted that "the budget charts and spreadsheets and the organizational charts have unknown sources and have not been shown to further a conspiracy that the defendant allegedly joined." *United States v. Musaibli,* 577 F.Supp.3d 609, 628 (E.D.Mich. 2021), *reversed,* 42 F.4th 603 (6th Cir. 2022).

[14] 577 F.Supp.3d at 633.

[15] The government defined the ISIS conspiracy of which Musaibli was a member as "aiming both to run 'the Caliphate as a legitimate government' and to engage 'in repeated battles with Coalition Forces," explaining that the documents furthered these goals by helping the terrorist group to manage its resources." *Musaibli,* 42 F.4th at 610.

posited this conspiracy as its basis for admission under Rule 801(d)(2)(E).[16] *Id.* Upon a review of the record, the *Musaibli* Court held that "the government carried its burden and that the district court clearly erred in ruling otherwise." *Id.* The Court found that the documents were within the scope of the ISIS conspiracy, and that they were made in furtherance of the alleged conspiracy. *Id.* at 618, 619.

Here, as in *Musaibli* and *El-Mezain*, "the circumstantial evidence" makes it "inescapable" that the declarants in the documents were joint venturers and co-conspirators with the defendants. *El-Mezain*, 664 F.3d at 505 (quoting *Fierro*). Each of the proffered documents was seized in the aftermath of battle with HAMAS, from locations HAMAS was known to occupy. The government's expert will testify that he determined that each device containing the documents was used by HAMAS and contained documents that by their contents and markings were plainly to or from HAMAS. Each document, moreover, is consistent with what the government's expert knows about HAMAS and how HAMAS operates. For example, HAMAS, through its internal security department, keeps close track of how other armed groups in Gaza operate, including against Israel, how weapons are dispensed, and which militants belong to which organization. Exhibit 1, seized from a known HAMAS location, was on a laptop containing thousands of documents about Palestinian organizations, entities, individuals, and factions. Exhibit 1 includes some members of DFLP, including Al-Muhtadi. Similarly, Exhibit 4 came from another known HAMAS

---

[16] Similarly, the indictment in this case charges that the Defendant knowingly conspired "to provide material support and resources, namely, personnel (including himself), weapons, and services, to a foreign terrorist organization, namely Harakat al-Muqawama al-Islamiya ("Hamas")." [Doc. 16].

location, and from a device containing documents consistent with HAMAS's internal security department. In Exhibit 4, DFLP addresses correspondence to HAMAS in which DFLP requests return of weapons. The fact that the correspondence is addressed to HAMAS further corroborates that the statements are between DFLP and its co-conspirator, HAMAS.

**(c) The Statements were made During the Course of the Conspiracy**

The government's expert on DFLP will testify that that armed wing of DFLP, the NRB, was formed in 2000, during the Second Intifada, and from the time of its formation has shared HAMAS's objective of establishing a Palestinian state on the land currently forming the State of Israel. This joint enterprise continued through the attacks of October 7, 2023. Moreover, the evidence will establish that the Joint Operations Room in 2018 formalized this pre-existing enterprise to enable HAMAS and other armed groups, including the NRB, to train together and better coordinate their joint enterprise of displacing Israel through military action. The evidence will further establish that the joint enterprise between HAMAS and DFLP started long before the formal establishment of the Joint Operations Room in 2018. As HAMAS operative Ayman Nofal stated, "[j]oint action began early in all stages of our people's resistance and struggle against the Zionist occupation." *See supra* at 25-26.

Each of the battlefield documents necessarily contain statements made during the course of this conspiracy. The file containing Exhibit 1 is from 2018 and references the Defendant and his membership in DFLP. Even without a date, given al-Muhtadi's listed association with DFLP, it is clear this statement was made during

the course of the HAMAS-DFLP conspiracy. Exhibits 2 and 3 are dated February 2020, and Exhibit 4 is dated January 2017. Exhibits 5 and 6 are undated, but the government's expert will testify that the computer files containing the documents were saved to the devices in 2023 and 2011, respectively. There can be no dispute that the battlefield documents that the government seeks to admit all constitute statements made within the course of the conspiracy.

**(d) The Statements were made in Furtherance of the Conspiracy**

The contents of the exhibits at issue easily demonstrate that the statements were all made in furtherance of the conspiracy between HAMAS, DFLP, and the other armed factions seeking Israel's destruction. Exhibit 1 includes information about the Defendant and his membership in DFLP. The identification of co-conspirators is in furtherance of the joint enterprise, as HAMAS asserts ultimate control over its partners, including by providing them support and keeping track of their affiliation. *See., e.g.*, *Musaibli,* 42 F.4th 609 (describing similar ISIS documents tracking information about its co-conspirators). Exhibits 2 and 3 are also clearly in furtherance of the HAMAS-DFLP conspiracy. They show that HAMAS will not tolerate its co-conspirators acting, even against Israel, without HAMAS's permission and coordination, and that HAMAS strictly enforces its authority, including by taking measures to control and prevent unauthorized activity in furtherance of the conspiracy.[17]

[17] *See generally* Fifth Circuit Pattern Jury Instruction 2.15A "Conspiracy to Commit Offense 18 U.S.C. § 371: "[An] overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy."

So too for Exhibits 5 and 6. Those documents show a map marking the Malaka region on both sides of the Gaza border (Exhibit 5) and a photograph of an Israeli defensive installation in the Malaka region on the Israeli side of the border (Exhibit 6). The government's experts will testify that HAMAS does extensive intelligence-gathering in support of its mission and meticulously scouted and planned in anticipation of the October 7 attack. Malaka, a strategic area in the border area, was in close proximity to points where HAMAS breached the border on October 7, 2023, and it is the area to which the Defendant specifically directed his co-conspirators to join him in order to go "inside."

**2. Residual Exception**

The battlefield documents are easily admissible as non-hearsay statements of co-conspirators. In addition, however, the battlefield documents that specifically reference the Defendant are admissible under Federal Rule of 807's residual exception to the hearsay rule. Rule 807 generally provides that a statement is admissible, with proper notice, if supported by sufficient guarantees of trustworthiness under the totality of circumstances. Fed. R. Evid. 807. As the Fifth Circuit has explained, the focus is "on the "equivalent circumstantial guarantees of trustworthiness" requirement, which is the "lodestar of the residual hearsay exception analysis." *El-Mezain*, 664 F.3d at 497-98, citing *United States v. Ismoila,* 100 F.3d 380, 393 (5th Cir.1996). "[E]vidence possessing 'particularized guarantees of trustworthiness' must be at least as reliable as evidence admitted under a firmly rooted hearsay exception ... [and] must similarly be so trustworthy that adversarial

testing would add little to its reliability." *El-Mezain*, 664 F.3d at 498, quoting *Idaho v. Wright,* 497 U.S. 805, 821 (1990)(citations omitted).

Although the Court did not agree that the documents at issue in *El-Mezain* qualified for the residual hearsay exception, *id.* at 501, the battlefield documents here that specifically mention al-Muhtadi clear the Rule 807 barrier. These documents are similar to public records from the HAMAS-governed Gaza, and their trustworthiness is reinforced by other evidence from the Defendant himself.

The four battlement documents concerning Al-Muhtadi are:

- Exhibit 1: the database in which he is specifically identified as a member of DFLP;
- Exhibits 2-3: the February 20, 2020, report in which al-Muhtadi is identified as a DFLP operative implicated in a mortar firing incident on February 10, 2024, and the February 24, 2024, report which again identifies al-Muhtadi as a participant;
- Exhibit 4: the January 29, 2017, DFLP letter to HAMAS identifying al-Muhtadi as the individual who improperly transferred five weapons to HAMAS and seeking their return.

The government will offer numerous photos at trial from al-Muhtadi's own social media and Google accounts in which he is seen wearing paramilitary gear, holding automatic weapons, and appearing to command others, all while wearing a red DFLP headband. *See* Complaint ¶¶ 28-44. These exhibits corroborate the contents of Documents 1-4 and establish trustworthiness. But even looking just to

the documents themselves, the database is no more than a quotidian compilation of individuals receiving assistance and noting paramilitary affiliations where relevant, exactly the sort of information that HAMAS would seek to maintain in its effort to identify those seeking its support. The February 2020 reports are reports of municipal infractions, in which perpetrators of the mortar-firing incident are identified, and authorities report what measures were taken in response. Moreover, Exhibit 2 identifies Al-Muhtadi by name, birthdate, and Palestinian ID number; Exhibit 3 includes the same information and a photograph in which the Defendant is clearly recognizable. Al-Muhtadi provided all of these identifiers in his June 2024 United States visa application – name, photograph, birthdate, and Palestinian ID number.[18] *See* visa application, provided in discovery as part of Defendant's "A-File," Bates stamped FBI-462932—463015. Exhibit 4, the January 2017, DFLP request for return of weapons was directed to HAMAS as the governing authority in Gaza. These records are trustworthy because they were created in the course of governing Gaza, and HAMAS has every incentive to keep accurate records. Conversely, no motive exists to fabricate such documents or to implicate al-Muhtadi in a criminal conspiracy.

Individually and collectively, there are "sufficient guarantees of trustworthiness" for admission of these four documents under the residual hearsay exception.

[18] Al-Muhtadi's Palestinian ID number ending in 5809 and photo were included in the image of his Palestinian passport, submitted in the document verification stage of his visa application. Another photograph was included as part of his July 2024 medical exam.

## V. CONCLUSION

The six battlefield documents that the government intends to introduce come into evidence as statements of a co-conspirator/joint venturer in furtherance of a joint enterprise. In addition, the four documents that specifically reference the Defendant are also admissible under the residual hearsay exception.

Respectfully submitted,

ZACHARY A. KELLER
United States Attorney

*/s/John W. Nickel*
JOHN W. NICKEL
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Phone: (337) 262-6618

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: andrew.sigler@usdoj.gov