UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA      6:25-cr-00285
                                  JUDGE JOSEPH
v.                                   MAGISTRATE JUDGE WHITEHURST

MAHMOUD AMIN YA'QUB
AL-MUHTADI

         Defendant
_____/

## NOTICE OF INTENT TO CALL EXPERT WITNESS

The United States of America, by and through counsel, hereby provides notice pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Rules 702, 703, and 705 of the Federal Rules of Evidence that it intends to call the following expert in its case-in-chief at trial. Please note that this disclosure is provided pursuant to the protective order and contains foreign government information.

**Director of Research and Assessment Division, National Bureau for Counter Terror Financing of Israel, "Avi"[1]**

## I.      Relevant Professional Background, Training, and Experience

The United States intends to call "Avi" to testify as an expert regarding Hamas and other terrorist and paramilitary organizations operating in the Palestinian territories, including the Democratic Front for the Liberation of Palestine (DFLP); the attacks of October 7, 2023, and the roles played by Hamas and other

_____

[1] Avi will testify under a pseudonym to protect his identity.

organizations, including DFLP; and the authentication and analysis of documents collected from the battlefield.

Avi will testify regarding his training, experience, and current role. Avi is a native Israeli who was educated in Israel. After graduating high school, he served for 5 years in the Israeli army. He then obtained a law degree from Tel Aviv University in 1997. He obtained a master's degree in criminal law from Tel Aviv University in 2010.

In 1998, Avi began work as a legal advisor at the Israeli Security Agency (ISA). Over the years, he served as a legal advisor in various divisions, including the international division, the division covering Judea and Samaria (the West Bank),[2] and headquarters.

In 2019, Avi embedded with the Ministry of Foreign Affairs, spending one year with its legal department, and the rest in its Strategic Division, specifically the Department of Regional Security. In this role, he engaged with counterterrorism issues, sanctions, and government coordination and cooperation. He operated in an intelligence capacity rather than a legal capacity.

Beginning in January 2023 and continuing to the present, Avi has been assigned as the Director of the Research and Assessment Division in the Israeli National Bureau of Counter Terror Financing, serving as the representative for the ISA. In this role, he is responsible for researching entities abroad providing financing to various terrorist organizations operating in Israel with the goal of identifying opportunities to enforce sanctions and build criminal cases. Though his role has a broad scope, he has focused in particular on Hamas and other terrorist organizations operating in Gaza and Judea and Samaria (the West Bank).

Avi's training has included several intelligence courses covering topics such as how to read evidence and intelligence, as well as how to analyze those materials and draw conclusions. Moreover, throughout his time at ISA, Avi has engaged in constant research and analysis of the organization and activities of Hamas and other terrorist organizations operating in Judea and Samaria (the West Bank) and Gaza, including the DFLP. He has also attended language training, including Arabic language instruction, most recently completed in 2024. He has a level of proficiency in reading Arabic that allows him to understand the general meaning and importance of documents. However, he does not perform official translations, instead using his

---

[2] This disclosure uses the language for this region approved by the Israeli Ministry of Foreign Affairs.

language skills to identify what documents are relevant, helpful, or important, and then sending them for further translation.

Avi has no professional public publications. He has written a report for foreign government use that is continuously updated that provides an overview of various terrorist entities and their financing activities. A copy of a recent version of this report will be made available for review at our offices. He has not testified as an expert in the last four years. In 2007 and 2008, he testified as an expert in the matter *United States v. El Mezain*, also referred to herein as the Holy Land Foundation case after the organization that the defendants were charged with operating. The transcripts from those trials, including the associated *Daubert* hearings, will be produced to the defense.

## II.    Overview of Hamas, DFLP, and the events of October 7, 2023

Avi will provide a background and overview of Hamas, the DFLP, and specific incidents relating to the events of October 7, 2023, as discussed in more detail below.

Avi's testimony will be based on his extensive experience researching and studying Hamas and the other terrorist and paramilitary groups operating in Gaza and Judea and Samaria (the West Bank) since his first days working for the ISA, as discussed above and in additional detail below.

For example, early in his career, Avi was an instrumental member of the team investigating and preparing to prosecute members of the Islamic Movement in Israel. Avi joined this team shortly after joining the ISA and worked on the team for five years through trial. This case was an investigation into financial support for terrorism. Explaining the funding mechanisms and structures at play required the investigative team, including Avi, to form a detailed understanding of how Hamas operated, at a granular level, throughout Gaza and Judea and Samaria (the West Bank) and abroad. The prosecution team then had to explain that understanding in court. To accomplish these goals, Avi began in-depth work with documents seized from operations in Gaza and Judea and Samaria (the West Bank). He gained an intimate familiarity with the structure of the organizations, the organizations' operational methods, the documents and forms they used, how they communicated with each other, and the names and faces of the organizations' members.

Avi continued this work in support of the Holy Land Foundation case from approximately 2007 to 2008. For this case, he built on his experience and understanding from the Islamic Movement and Hamas case and expanded his knowledge to become an expert in Hamas's social structure. He testified as an expert on that topic at trial, but his support for the case involved broad research into the structure and operations of Hamas more generally.

Avi has continued to build on this experience and knowledge throughout his career. Given his initial focus on Hamas, he has continued to foster and expand his deep knowledge of that particular organization. He engages with materials related to Hamas and other terrorist groups on a daily basis. In a non-crisis environment, Avi would typically review several dozen documents a day, as a basic requirement to stay informed for his job. Avi reviews documents ranging from open-source reporting, to internal reporting, to documents and materials seized from the battlefield. In support of the Holy Land Foundation case, Avi reviewed approximately 50,000 documents to prepare and educate himself. Since the attacks of October 7, 2023, Avi reviews hundreds of documents daily and has reviewed tens of thousands of documents since October 7. This review does not necessarily involve his reading every word of the document but includes his reviewing enough of the document to get a general sense of the document and its potential value or importance and then conducting a more in-depth review of the most relevant documents.

Based on his extensive knowledge, Avi will testify that Hamas operates as the *de facto* government in Gaza and that the organization maintains strict control over all activities happening within the enclave. This control extends to other terrorist and paramilitary organizations operating within Gaza, including the DFLP. Hamas will often use these other organizations as proxies for Hamas's own activities against Israel, including to deflect allegations of Hamas involvement in terrorist activities. Though the different groups may have different governing ideologies, they share a fundamental goal of opposing, defeating, and eliminating Israel, and Hamas ensures that they are complying with Hamas's specific goals, strategies, and demands.

Avi will also testify about the support that Hamas provides to other terrorist and paramilitary organization. As discussed above, Avi's work has focused heavily on the flows of funding to terrorist organizations such as Hamas. As part of his job, Avi has developed a deep familiarity with the other terrorist and paramilitary organizations operating within Gaza and Judea and Samaria (the West Bank), including the connections between these organizations. Avi will testify that significant portions of terrorist funding in Gaza flows through Hamas, which then distributes some of the funding to other groups. Some of these other groups would not be able to survive without Hamas's logistical and material support, as well as Hamas's permission to operate. DFLP is particularly reliant on Hamas funding and material support. Avi's testimony about the relationship between DFLP and Hamas has been informed in part by the documents produced to the defense in the original Arabic and with English translation at FBI-462828 through FBI-462901, which demonstrate the nature and extent of their relationship.

Avi will testify that Hamas also created an entity called the Joint Operations Room. This organization provided a structure for the various groups operating against Israel in Gaza to come together to coordinate and has served as a mechanism for Hamas to maintain oversight and control of these various groups. The Joint

Operations Room allowed these groups to coordinate their missions, messaging, and operations, and provided the groups opportunities to conduct joint military training. Notably, Hamas generally did not share specific details of the October 7 attacks with the other groups in advance, but these joint trainings nonetheless helped the groups be prepared and respond quickly when the attacks were announced. The Joint Operations Room is one mechanism that Hamas used to maintain close oversight and control of the various Palestinian terrorist and paramilitary groups.

Regarding the DFLP specifically, the organization has a history of executing lethal attacks. While it has not recently been the dominant player in Gaza, Avi's work in support of the ISA's security mission has required him to maintain a level of knowledge of DFLP's mission, principles, and operational structure, along with other terrorist and paramilitary groups operating against Israel. Based on his experience studying DFLP and other organizations in Gaza, Avi will testify about DFLP's history, formation, mission, ideology, and paramilitary wing. Avi will testify that DFLP is a relatively smaller organization with only approximately several hundred operatives, but which maintains close ties with Hamas.

His testimony on the events of October 7, 2023, is based on his extensive research and investigation into specific incidents related to that attack, as well as his work interfacing with units involved in operations in Gaza since that time. Avi also processes and reviews the massive amounts of devices and documents that units operating in Gaza have retrieved during their operations. October 7, 2023, was a watershed event in Israeli history, similar to the 9/11 attacks in the United States. The entire Israeli governmental security apparatus shifted much of its focus to understanding and responding to these attacks.

On October 7, 2023, though not a first responder, Avi was in the office, following the development of the events and planning for what came next. His work since October 7, 2023, has focused on identifying opportunities to undermine Hamas and the other terrorist and paramilitary organizations operating in Gaza, including financially and operationally. He has become the primary expert on analyzing and exploiting the devices and documents seized from the battlefield to understand the structure and operations of these organizations as part of his job to initiate and support terror-related investigations and prosecutions, and to provide guidance on terror-related policies, threats, and future attacks.

Based on this experience and perspective, Avi will testify that Hamas was solely responsible for planning the October 7 attacks and executing the first wave of the assault. Hamas kept the details of the attack secret to protect its operational security and to ensure that Hamas received the primary credit for the attack. However, Hamas had spent years training and coordinating with the other terrorist and paramilitary groups operating in Gaza, including through the Joint Operations Room. Thus, when Hamas leadership issued its call to others to join them in their

assault, the other factions were generally prepared to quickly join in the attack. Avi will testify that once called up, these other organizations were not mere hangers-on or spectators; they took significant casualties and captured their own hostages because they quickly surged to provide meaningful support to the Hamas-led effort.

Avi will also testify about DFLP's activities on October 7. Specifically, there were indications that DFLP operatives were present near Nahal Oz and Kfar Aza, though they were not the only group operating in these areas. Avi has conducted significant research into the death of Joshua Mollel, and he assesses that Mollel was shot and killed inside Israel on October 7.

### III.    The Malaka Region



Avi will testify that the term Malaka refers to a region located in Gaza just west of Nahal Oz and Kfar Aza, as well as to a corresponding region across the border in Israel. The location is depicted above in a map created by Hamas and produced at

FBI-534135.  It includes the area surrounding what was referred to in Israel as the Karni crossing, though that crossing was previously closed.

From his work over the years, Avi is familiar with relevant locations in Gaza and with the process of identifying and verifying locations in Gaza. In his roles studying Gaza and Judea and Samaria (the West Bank) for over 25 years, including his work embedded in operational units, he has had extensive exposure to numerous first-hand sources discussing and referencing locations. He has relied on this information in the course of his work, including researching organizations and providing professional advice. Location information is critical for, among other things, evaluating and understanding the authenticity of documents, understanding events occurring in Gaza, and determining a document's provenance.

Notably, there are limited street addresses in Gaza, so locations are often described relationally. Additionally, terrorists often use nicknames or code names to refer to locations. Understanding locations referenced in documents thus requires a general familiarity with locations in Gaza, as well as with researching and analyzing location references to determine what geographical areas they refer to. Location information is also important for determining which devices seized from the battlefield are the most helpful, as well as for determining where operations are most likely to seize helpful materials. Thus, Avi has familiarized himself with locations in Gaza through studying maps prepared by Israeli security forces in the course of and in support of their operations, as well as maps seized from the battlefield. He also researches specific locations as required, including by reading public sources in local media to see what location terms are used, and by comparing terms used in documents to other information and events to discern what locations they are referring to.

Avi concluded that Malaka is located in the region depicted above based on his review of sources including open-source materials, such as news reports; a reference in an Instagram group that used that term; references in international organization reports; and documents seized from the battlefield. Avi also conducted a search through documents and devices seized from the battlefield.

Based on this review of documents and his familiarity with activities in Gaza, Avi will testify that the Malaka region has been a popular mobilization point for Hamas where a number of clashes with Israel has occurred. For example, there have been several infiltrations from Gaza into Israel from this region, and it is a regular place for Gazans to demonstrate and attempt to breach the border. Avi assesses that Hamas chose this area because it is located close to several Israeli residential areas.

### IV.    Ruqayah Al-'Almi Tel Al-Hawa

Avi will testify that the reference in Al-Muhtadi's phone calls to Ruqayah Al-'Almi refers to a school. Avi will further testify that the reference to Tel Al-Hawa refers to an area in the southwestern part of Gaza City.

In coming to these conclusions, Avi relied on his training and experience with location in Gaza, as described above. He also relied on sources including open-source intelligence (OSINT) and battlefield documents. The battlefield document has been produced at FBI-534135.

### V.    Battlefield Document Authentication

Avi will offer the opinion that the documents identified below and cross-referenced to the government's motion in limine on battlefield evidence are authentic.

Avi's opinion is based on his extensive experience analyzing and authenticating documents seized from Gaza and Judea and Samaria (the West Bank). He has been analyzing documents and devices seized from these areas since 2002 and has worked with the units seizing these documents and devices since that time as well. He will generally describe those units' practices and procedures in seizing, tracking, and processing documents and devices seized during operations.

His testimony will be based on his years working with these units, including sending them requests for collection, working with them to coordinate and plan their operations, and helping them understand the context of a specific document or device and/or route the documents they have seized to the appropriate end-user. Avi is one of the primary users/consumers of the documents that these units have seized and processed from Gaza and Judea and Samaria (the West Bank), and as such has worked closely with these units over the years. He is therefore qualified to testify about their collection and documentation practices.

Specifically, Avi will testify that during combat operations, typically a combat unit will enter a location first to clear threats. Once the area is secure, forces will preliminarily catalog any evidence or intelligence that might be available, including but not limited to documents or devices. That unit will give each seized item an initial mark for tracking purposes that indicates the general location and approximate date of seizure.

The unit then brings the seized materials back to Israeli territory and provides seized documents and devices to a unit known as AMSHAT.[3] Once materials are with

---

[3] AMSHAT (which is an acronym for a Hebrew name) is sometimes present for the operations themselves and may sometimes be involved in seizing documents directly from the

AMSHAT, the typical process is that documents are scanned and assigned an ID number. AMSHAT will also "batch" documents and devices to group together documents seized from the same location.  Devices are also labeled, and their contents are immediately imported to cloud storage and linked to the relevant metadata. The content of the devices is not altered. Avi is able to view the raw data on the devices in the same format that they would appear to a device user. He is also able to view where data is saved on the device, including the file path.

Furthermore, as one of the primary end users of the seized materials, Avi has developed an expertise in authenticating these materials, including a multi-step process for evaluating and authenticating materials from the battlefield. Earlier in Avi's practice, he was likely to be evaluating more seized hard-copy documents; more recently, however, he is more likely to be evaluating devices and the documents and other materials contained on those devices. The general principles and analytical steps remain fundamentally the same regardless of whether he is evaluating a stand-alone document or a document found on a device. However, devices generally provide more datapoints and information, making authentication and analysis easier. Because the vast majority of the documents involved in this case were located on devices, the discussion below is framed in terms of the steps Avi takes to evaluate, analyze, and authenticate devices and the documents on them.

Though the exact order of the steps may vary depending on the information available and the needs of the situation, Avi will consider the following factors as he evaluates devices and documents found on those devices:

First, Avi will conduct a random search of the materials on a device to see if there is information that is immediately apparent, such as the user(s) of the device. If he is able to form an initial impression of what the device likely is used for and what it might contain, he is able to test that impression to validate or invalidate it as his analysis continues. This initial impression will also include an assessment of how many images and documents are present on a device. This analysis will focus on meaningful files likely to contain working data, thus eliminating files such as advertising.

---

battlefield. However, AMSHAT generally just receives materials seized from the battlefield after the units have returned to Israel. When AMSHAT is the seizing entity, they follow the same procedures discussed above.

While AMSHAT is responsible for receiving and processing all items seized from the battlefield (including, e.g., weapons), this disclosure—and Avi's testimony—focuses only on their procedures for handling seized documents and electronic devices.

However, if there are not a large number of documents on a device, Avi will do a manual review of all the documents on the device.

Second, Avi will conduct searches for keywords that would support or invalidate the impression he formed in step one. For example, if an initial review suggested that a device was used by a certain organization, Avi would conduct searches for that organization's name or related terms. A high percentage of search hits (e.g., 10% or above) would help validate that conclusion, while a low percentage (e.g., 5% or below) could suggest the initial impression was inaccurate.

Avi will also analyze the content of the search results to see if he can derive other information about the device, such as the specific person who owned or used the device, or the department or organization that it belonged to.

Third, Avi will continue to conduct searches across the device based on specific individuals who have been identified on the device to see if he can determine who owned or used the device.

Fourth, Avi will focus on trying to determine the location associated with the device. He will look at any location data associated with the device, any locations referenced in documents on the device, and the location of the author of the documents. At this stage, Avi is evaluating, among other things, whether there is a correlation between the locations referenced in the documents and the location the device was seized. These data points must be understood in context, however. For example, the location of the device and the locations referenced in the documents may not match if the device owner is corresponding with someone located elsewhere. Additionally, because devices are highly portable, and because of the highly mobile nature of combat operations, particularly in Gaza since October 2023, the location where a device is found, while always important, may not be conclusive for analyzing the device. This data point, as with all others, thus must be viewed as part of the full analysis.

Fifth, Avi will confirm that the content of the device and the documents correspond with the specific person and/or organization that appears to be using the device, and that these data points correspond with other information learned from the device. This step may not be sufficient, particularly because Hamas operatives will often have multiple roles, including roles in the military, social, and political wings of the organization. Thus, one device could contain a wide variety of documents, but that fact would not necessarily suggest that the materials are not authentic.

Sixth, Avi will analyze the structure of the files. This information can often help determine if a device is used primarily by a specific individual for personal purposes, or by an organization. This analysis can also help validate or invalidate prior conclusions about who uses the device. For example, sometimes the name of a specific individual using the device will be written into a file structure.

Seventh, Avi will look for specific identifiers, such as email addresses, phone numbers, or social media accounts, that might link a device to a specific person or organization.

Once Avi has authenticated the devices and documents, he can then proceed to analyze their contents for use.

As previously discussed, Avi has reviewed at least tens of thousands of documents and devices seized from Gaza and Judea and Samaria (the West Bank) since 2002. He has used these materials to support Israeli counterterrorism activities against terrorist and paramilitary groups. He has also provided information to foreign governments, including the United States, to support their operations. The accuracy of Avi's analysis and authentication of documents is critical because other entities in Israel and abroad rely on and take action based on the information that he provides. If Avi's authentication of materials and intelligence assessments were not accurate, he would not be able to effectively do his job, including supporting other entities' actions against terror groups and groups that are supporting terrorist organizations operating against Israel.

Moreover, Avi is also able to cross-reference information found in specific documents with information in other databases, in other documents, and from interviews, further confirming the authenticity of documents he has assessed to be authentic. Similarly, he often comes across the same documents in multiple locations, which is what would be expected from a networked operation sharing materials across the organization.

Avi will also specifically testify about Attachments 4, 1, 5, 2, 7 and 8 including their contents. Translations of these documents, where applicable, have been produced as identified below.

Attachment 4 (Exhibit 1 in the government's motion in limine produced at FBI-464609 through FBI-464611) is an Excel document that lists members of the DFLP, including Al-Muhtadi. Attachment 4 was found on a laptop that was seized on November 22, 2023, from the Al-Rantisi Hospital in Gaza. Avi will testify that after the October 7 attacks, Hamas stored many of its most sensitive devices in hospitals. Avi will testify that this device appeared to belong to an individual employed by the Internal and National Security Ministry of Hamas. This ministry has several departments, and the individual who used this computer appears to have been employed by the internal security department, which is the department responsible for tracking other forces and organizations operating in Gaza. This device contained thousands of other documents about Palestinian organizations, entities, individuals, and factions. The documents on the device were well-organized and highly consistent in theme and topic.

Avi will testify that Hamas keeps lists of the members of other groups operating in Gaza and Judea and Samaria (the West Bank) as part of its efforts to track and control these groups. Hamas generally keeps detailed records on the affiliations of people residing in Gaza. Hamas may obtain this information in a number of ways, including receiving it directly from the other groups themselves, or by developing their lists through interviews and other investigative or intelligence activities.

Attachments 1 and 5 (Exhibits 2 and 3 in the government's motion in limine produced at FBI-460927 through FBI-460930 and FBI-462864 through FBI-462869 and in English translation at FBI-463204 through FBI-463208 and FBI-464111 through FBI-464117) are both reports of activity from February 2020. These documents were both obtained from a laptop seized from Shifa Hospital in Gaza on November 19, 2023. Shifa Hospital had served as a Hamas command center, and the Israeli military thus conducted operations at Shifa Hospital to disrupt Hamas activities. Avi will testify that he again has high confidence that this device also belonged to an employee in the internal security department of the Internal and National Security Ministry of Hamas. The device contained thousands of surveillance reports and was clearly structured.

Avi will testify that he was further able to confirm the authenticity of these documents by cross-referencing the identifiers listed in the documents (including date of birth, cell phone numbers, and Palestinian ID numbers) with other databases. Moreover, some of the other individuals mentioned in other documents were known to Avi from his other investigations into DFLP. Finally, Avi was already familiar with this device and has found other documents located on this device to be accurate and reliable.

Both Attachment 1 and Attachment 5 are examples of the types of investigative documents that Avi has seen frequently in his review of seized materials. The heading that appears on the documents is known to him, and the form and general content of the documents is very consistent with other investigative documents that he has reviewed. These internal investigative documents are common because Hamas is protective of its regime and its authority, and people are not allowed to act in Gaza without Hamas's permission and coordination, especially when executing military actions against Israel. Hamas therefore strictly enforces its authority and takes measures to control and eliminate actions it did not authorize. These investigative documents are therefore generally reliable because they are gathering and collecting facts for Hamas's internal use that allow Hamas to exercise and maintain its authority. Hamas therefore has an interest in being accurate in documents, like these, used for internal purposes. Based on his familiarity with the Hamas internal security apparatus, Avi concludes that documents of this sort were kept secret and siloed from other parts of Hamas.

Attachment 2 (Exhibit 4 in the government's motion in limine produced at FBI-460926 and in English translation at FBI-463209) is correspondence received from DFLP in which DFLP requests return of weapons. It was found on a laptop seized from Shifa Hospital in Gaza on November 17, 2023.[4] Avi concluded this device was also used by an employee of the internal security department of the Internal and National Security Ministry of Hamas, though it had a lower volume of documents than the other devices mentioned. However, Attachment 2 was not generated by Hamas, but was external correspondence directed to Hamas. Avi will testify that based on his review of at least tens of thousands of documents, formal written correspondence between entities was not very common. However, this document related to the control of weapons, which was a serious and important topic for Hamas, and he will testify that he believes Hamas would want a written record of DFLP's request for the return of DFLP's weapons.

Attachment 7 (Exhibit 5 in the government's motion in limine produced at FBI-534135) is a Hamas map labeling the Malaka region both in Gaza and inside Israel. This map was found on a hard drive seized in Gaza City on March 25, 2024.  The device on which this device was found served Hamas' military wing, the Izz al Din al Qassam Brigades.  The map shows the border between Gaza and Israel.  The word "Malaka" written in Arabic appears on the map next to a green circle pinpointing the location of Malaka in the Gaza portion of the map.  A green circle pinpointing an area labeled "Malaka Grove" in Arabic also appears on the Israeli side of border, near Kibbutz Nahal Oz.  Avi will testify based on his familiarity with this and other maps of the area found on the battlefield that a reference to "Malaka inside" refers to the area designated as Malaka Grove inside of Israel.

Attachment 8 (Exhibit 6 in the government's motion in limine produced at FBI-534134) is a picture of a defensive installation located at Malaka , according to the device owner's (Hamas) labeling of the file, located on the Israeli side of the Gaza border.  The filename for this photograph indicates that it refers to "Malaka."  The photo was located on a different hard drive seized on December 6, 2023, in Gaza City. The device served Hamas' military wing, the Izz al Din al Qassam Brigades.  Avi will testify that this picture was taken from the Gaza side of the border facing East into Israel.  It depicts the defense installation near the border, and a grove of trees.  Many Palestinian sources refer to this region as the Malaka region, which is located on the Israeli side of the border, as depicted on the map in Attachment 7.

---

[4] This device was seized in the same operation as the device that contained A1 and A5. The operation spanned multiple days because the effort to clear and search the hospital was complex.

*United States v. Al-Muhtadi*, 6:25-cr-00285
Notice of Intent to Call Expert Witness

## VI.    Al-Muhtadi's membership in the military wing of DFLP

Based on his review of the documents discussed above, Avi will testify that Al-Muhtadi is a member of DFLP's military wing. Avi will testify that the fact that Al-Muhtadi is referenced in multiple documents as being a member of DFLP and/or its military wing helps confirm the conclusion. Moreover, Avi will testify that he cross-referenced the individuals who are named in the documents with Al-Muhtadi and confirmed that at least some of them are also members of DFLP's military wing, further bolstering this conclusion.

*       *       *

The United States reserves the right to supplement these disclosures with additional materials related to the opinions described above. The United States will provide the disclosures required by law for additional expert opinions it intends to offer during its case-in-chief at trial at a later date, in accordance with the scheduling order entered in this case.

I have reviewed and approved this disclosure in accordance with Fed. R. Crim. P. 16(a)(1)(G)(v).

/s/Avi
Avi

ZACHARY A. KELLER
United States Attorney

*/s/John W. Nickel*
JOHN W. NICKEL
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Phone: (337) 262-6618

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: andrew.sigler@usdoj.gov