UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAG. JUDGE WHITEHURST |

**DEFENDANT'S FIRST REQUEST FOR SPECIFIC DISCOVERY:**
**BATTLEFIELD DOCUMENTS & EXPERT WITNESS MATERIALS**

NOW INTO COURT, through undersigned counsel, comes the defendant, Mahmoud Al-Muhtadi, who hereby requests the below specific discovery from the government.

Discovery in this case has grown to approximately 500,000 pages. Given the volume and complexity of the disclosed materials, and the particular evidentiary issues raised by the government's pending motion to admit six battlefield documents[1] and expert disclosure, the requests below identify specific categories of material the defense has not received.[2] The items requested below are extensive to ensure that the request comprehensively covers items regardless of the United States government or government of Israel's categorization of the items.

---

[1] The government and the classified information security officer (CISO) have represented that there are no classified documents in this case. They also represented to the defense team in December of 2025 and January of 2026 that no member of the defense team needs to seek security clearance and denied the defense team's request to apply for clearance. To the extent the government contends that any material responsive to the requests below is classified, the government should so state immediately, with specificity as to each item, so that defense counsel can seek the appropriate security clearances and the parties can address the matter through the procedures of the Classified Information Procedures Act, 18 U.S.C. App. 3.

[2] If anything requested herein has already been produced and inadvertently overlooked by the defense, please provide a bates number reference to that item.

1

I.      **Requested response procedure**

The defense requests that the government respond to each enumerated request below within 21 days of this filing. For each enumerated request, the government's response should:

1) Identify by bates range or other specific reference any responsive material being produced;

2) certify that, after diligent search of materials in the possession, custody, or control of any United States agency or any other entity acting on the government's behalf, no responsive material exists;

3) state that responsive material is believed to exist but is held by the government of Israel or another foreign government, accompanied by the information set forth in Section III below; or

4) state with particularity the legal basis for withholding, identifying any privilege, classified status, restriction imposed by a foreign government, or other ground asserted, and the reviewing authority responsible for that determination.

The defense further requests that the government and/or the government of Israel or another foreign government, preserve all potentially responsive material pending resolution of this request and treat this request as continuing in nature, so that any responsive material later identified is produced promptly upon discovery.

II.    Requested materials

    A.    <u>Chain of custody documentation for each exhibit</u>

1. All chain-of-custody records for the **device** or physical item from which each **exhibit** was retrieved, from the moment of seizure through delivery to the FBI:

      i.    The records sought include any intermediate transfers, storage locations, and handling logs.

      ii.    The records sought also include any record reflecting the state of each **device** at the time of seizure, including whether it was powered on, connected to a network, or otherwise accessible.

      iii.    The records sought also include the method, tool, exploit, or assistance used to bypass any passcode, biometric lock, or encryption on the **device**; and any record of write activity to the source **device** or to any working copy after seizure but before forensic imaging.

      iv.    The records sought also include any AMSHAT intake log, processing log, or cataloging report for each **device**, identifying the specific AMSHAT analyst who processed each **device**, the date of processing, and the tools or software used for forensic extraction; any documentation, transfer certificate, or diplomatic communication reflecting how each **device** or extracted file was transferred from the Israeli Defense Forces or Israeli Security Agency to the FBI, including the date of transfer and the identities of the Israeli official who authorized transfer and the FBI official who received the material; and all documentation showing when each **exhibit** was first identified as potentially relevant to this case and by whom.

2. The military unit designation, date, and location of seizure for each **device** on which any of the **six exhibits** was found, including any field report, after-action summary, or inventory log generated at the time of seizure. The defense further requests the combat after-action report, operations log, and any casualty report associated with the operation in which each **device** was seized; all photographs, video footage, body-camera, helmet-camera, or drone footage of the seizure; identification of any other items recovered alongside the **device**; and any record reflecting whether the **device** was recovered from the body

3

of a deceased individual, from a structure occupied by deceased individuals, or from a location where Israeli or allied forces had been present prior to seizure.

B.   **Identity of the declarants**

3.  The identity of the author(s) of **Exhibits 2, 3, and 4**, including the Hamas internal-security officer or officers who authored **Exhibit 2** (the intelligence report regarding Faraj 'Asaliya) and **Exhibit 3** (the intelligence report on the mortar-launcher incident), and the DFLP officer or officers who signed **Exhibit 4** (the National Resistance Brigades weapons-return letter), in each instance including name, title, rank, and unit designation (including unit designation within DFLP's Army Wing where applicable), together with all materials in the government's possession reflecting any effort to identify those persons and any communication between the United States government and the government of Israel regarding the availability, location, or potential testimony of any of those authors.

4.  The identity of the person or persons who compiled, entered, or maintained the Hamas financial-support spreadsheet from which **Exhibit 1** was extracted, and the identity of any Hamas official responsible for the database in which that spreadsheet was stored. The defense further requests the total number of records in the underlying database, the date range of those records, the methodology Avi or any analyst used to identify the row attributed to Mr. Al-Muhtadi as the relevant record, all entries in the database for any person whose name, kunya, or identifying information is the same as, similar to, or partially overlaps with that of Mr. Al-Muhtadi (including all entries for any person bearing the variant spellings that appear on pages 1, 2, and 3 of **Exhibit 1**), and any record reflecting whether the person identified in the documents as "Mahmoud Al-Muhtadi" is a single individual or a name shared by multiple persons within the underlying Hamas, DFLP, or Israeli intelligence databases.

5.  For **Exhibit 2** and **Exhibit 3** specifically, the identity of each person whose photograph appears in the document, including whether the government has ever sought to interview any of those individuals, and whether any of them is deceased, in Israeli custody, or otherwise potentially available to testify. For each such individual, the defense further requests any biographical record, intelligence file, or other identifying material held by the United States or by the Israeli government, including current location, custodial status, and date and cause of death where applicable.

### C.    Complete and native-format production of each exhibit

6. A complete forensic image, extraction, copy, and download of each **device** referenced in this matter, including all data acquired from each **device**, whether obtained manually, logically, physically, through forensic software, cloud synchronization, or otherwise. This request specifically includes, but is not limited to:

   i. the complete forensic extraction or image of each **device** in native format;

   ii. any Cellebrite, Magnet AXIOM, FTK, EnCase, X-Ways, GrayKey, Oxygen, or other forensic-software reports, exports, or generated files related to each **device**;

   iii. all extracted files, folders, user profiles, system files, deleted files, unallocated space data, recovered data, temporary files, cache files, internet history, downloads, registry artifacts, event logs, link files, shellbags, USB connection history, and application data;

   iv. all photographs, videos, audio files, text documents, spreadsheets, PDF documents, emails, messages, chat logs, internet activity, social media data, cloud-synchronized data, and metadata recovered from each **device**;

   v. any timelines, keyword searches, hash analyses, artifact analyses, bookmarks, notes, examiner annotations, tagging, or categorizations created during the forensic examination;

   vi. all reports reflecting the date and time of extraction, acquisition methods, software versions used, examiner names, serial numbers, **device** identifiers, hash values, chain-of-custody records, and audit logs relating to the handling or examination of each **device**;

   vii. any screenshots, photographs, or recordings documenting the condition of each **device** before, during, or after extraction;

   viii. any records identifying passwords, encryption methods, bypass techniques, account credentials, or authentication methods used to access each **device** or its contents;

   ix. any communications, notes, memoranda, or reports concerning the examination, review, analysis, or interpretation of data recovered from each **device**; and

   x. any data or information not included in reports provided to the defense but nonetheless extracted, recovered, reviewed, or retained by any law enforcement agency, forensic examiner, contractor, or analyst.

This request includes all native files and associated metadata and is not limited to materials the government presently considers relevant or intends to use at trial. If any responsive material has been deleted, destroyed, withheld, filtered, excluded, or is otherwise unavailable, the defense further requests all records identifying the nature of the material, the reason it was not preserved or produced, the date of destruction or exclusion, and the identity of the person responsible.

7. The native digital file for each of the **six exhibits**, separately identified and produced apart from the bulk forensic image required by request 6, with all file system metadata intact (file creation date, last-modified date, last-accessed date, and full file path as it existed on the original **device**); a hash value, hash algorithm, and verification methodology for each **exhibit** file; and the corresponding hash for the same file as it existed on the source **device** at the time of seizure, so that the defense can independently verify each **exhibit** has not been altered.

8. The complete file directory and folder structure of each **device** from which an **exhibit** was retrieved, so that the defense can assess the context in which each document was stored, what other files surrounded it, and whether any file path metadata corroborates the government's authentication theory.

9. Information sufficient to determine the identity of the user or users of each **device**, including user account information, login records, account credentials recovered from the **device**, contact lists, call logs, SMS or messaging records, browser history, social media activity, and any other application data bearing on whose **device** it actually was, who else had access, and whether multiple users operated the **device**.

10. The complete, unredacted Hamas financial-support spreadsheet from which **Exhibit 1** was extracted, including all rows and all columns, in native digital format with all original metadata intact. The government has produced three pages that are visually inconsistent with one another; the defense is entitled to the complete database record from which those pages were drawn. The defense also requests the name, version, and configuration of the database software from which **Exhibit 1** was extracted; the database schema, table structure, and primary-key definitions; and the query, filter, or export script used to produce the three-page extraction that became **Exhibit 1**, including the date the extraction was performed, the

analyst who performed it, and any audit log generated.

### D. Translation and interpreter materials

11. The full credentials, training records, and certification documentation for each FBI linguist who translated any of the **six exhibits**, including the linguist's security clearance level, the language pair(s) for which the linguist is certified, and whether any quality-review or second-translation process was applied.

12. Any materials reflecting communications between the government's expert witness ("Avi") and the FBI translators, including any instance in which Avi reviewed, commented on, or requested revision of a translation, and any instance in which a translation was revised at his request.

13. The original Arabic-language digital file for each **exhibit**, in addition to the scanned PDF copies already produced, so that defense experts and defense-retained translators can review the originals.

### E. Expert witness materials — "Avi"

14. The real name and full identifying information of the government's expert witness, identified in the disclosure under the pseudonym "Avi." The defense does not agree that the government's expert may testify under a pseudonym, and Mr. Al-Muhtadi intends to object to and litigate any effort to shield this witness's identity from the defense or from the public record. The right to confront and cross-examine an expert witness includes the right to investigate his background, qualifications, prior testimony, and potential bias, and that investigation cannot be meaningfully conducted without knowing who he is.

15. The complete, unredacted curriculum vitae of the government's expert witness, identified in the disclosure under the pseudonym "Avi," including his educational background, employment history, prior positions within the Israeli Security Agency or Israeli intelligence community, and prior publications or expert reports. The defense further requests Avi's complete bibliography, including academic articles, opinion pieces, interviews, conference papers, classified or unclassified analytic products, and any prior public statement about Hamas, DFLP, Palestinian Islamic Jihad, the October 7 attack, or Mr. Al-Muhtadi.

7

16. All documents, communications, reports, statements, social media postings, interviews, speeches, publications, or recordings of the witness reflecting (a) hostility toward Palestinians, Arabs, Muslims, or organizations alleged to support Palestinian causes; (b) political advocacy concerning the October 7 events, Gaza, Hamas, Israeli military operations, or related geopolitical issues; (c) advocacy concerning prosecution outcomes in United States or foreign criminal proceedings relating to the October 7 events; or (d) any personal, ideological, institutional, financial, military, or political interest in the outcome of this case.

17. Transcripts or recordings of all prior testimony given by "Avi" under any name or pseudonym in any proceeding, including but not limited to his testimony in *Holy Land Foundation for Relief and Development / El-Mezain* case and any foreign proceeding:

    i.   The defense further requests a complete list of every prior United States or foreign proceeding in which Avi has testified or submitted a declaration, identifying the case name, jurisdiction, the pseudonym used, and the outcome of any *Daubert* or admissibility ruling addressing his testimony.

    ii.  The defense further requests any prior expert report, declaration, or affidavit prepared by Avi in any prior proceeding in which he offered opinions about Hamas organizational structure, Hamas internal-security practices, or the authentication of documents seized from Gaza, whether or not that report has been filed in a public court record.

18. The "authenticated full assessment" described in the expert disclosure as one of Avi's primary bases of knowledge:

    i.   The defense requests a complete description of the methodology, including any written protocol, training manual, validation study, peer-reviewed publication, error-rate analysis, or quality-assurance procedure governing its application, together with any internal Israeli Security Agency manual, policy, or training document describing how documents seized in combat are authenticated, attributed to specific declarants, and matched to identified individuals using Palestinian ID number or biographical cross-reference.

    ii.  The defense further requests all databases, lists, rosters, and other records that Avi intends to use to cross-reference and

8

validate the identifying information in **Exhibits 2 and 3**, including the Palestinian ID number cross-reference, the biographical-information cross-reference, and any cross-reference to Israeli military or intelligence databases.

19. All materials reflecting the process by which Avi was selected, retained, or designated as the government's expert in this case, including any communications between the government of Israel and the Department of Justice regarding his availability and scope of testimony:

    i.   The defense further requests any agreement, memorandum of understanding, or other arrangement between the United States government and the government of Israel or the Israeli Security Agency governing the terms or conditions of Avi's testimony, including any limitation on his testimony that was agreed to in advance.

    ii.  The defense further requests Avi's compensation arrangement for his work in this case, including any payment, salary supplementation, travel allowance, security detail, or other consideration provided by the United States, the State of Israel, or any contractor, and any visa, immigration benefit, asylum application, or family-member benefit conferred on Avi, members of his family, or members of his unit in connection with his cooperation in this case.

20. Any communications between the witness and (a) Israeli officials; (b) Israeli intelligence personnel; (c) Israeli military personnel; (d) United States prosecutors; (e) United States intelligence personnel; or (f) victims' groups or advocacy organizations, concerning this prosecution, Mr. Al-Muhtadi, or the subject matter of the anticipated testimony.

21. All materials reflecting any motive, bias, prejudice, institutional loyalty, political pressure, or reputational interest that could influence the witness's testimony, including any evidence that the witness (a) seeks to advance Israeli governmental narratives regarding the October 7 events; (b) has participated in information operations, strategic communications campaigns, propaganda efforts, or influence operations relating to the conflict; or (c) has professional or operational involvement in matters directly implicated by the allegations in this case.

9

22. All information known to the government, or reasonably available to it through cooperating agencies, concerning whether the witness has been (a) identified in any international investigation; (b) interviewed by any international tribunal or investigatory body; (c) referenced in reports concerning intelligence abuses, torture, unlawful detention, targeting operations, civilian harm, or violations of international humanitarian law; or (d) associated with units, operations, or agencies under scrutiny by the United Nations, International Criminal Court, foreign courts, or recognized international human rights organizations.

23. All materials reflecting whether the witness has participated in, supervised, advised, or publicly defended operations or conduct that are the subject of (a) war crimes allegations; (b) crimes against humanity allegations; (c) unlawful surveillance allegations; (d) torture or coercive interrogation allegations; or (e) disinformation or evidence-manipulation allegations.

24. All comparator and base-rate materials necessary to test Avi's methodology:

    i.    This request includes (a) a representative sample of other Hamas internal-security intelligence reports, DFLP unit correspondence, and Hamas financial-support spreadsheets that Avi or his unit has previously authenticated, so that defense experts can compare formatting, recordkeeping conventions, signature blocks, and seal practices to the **six exhibits** at issue; (b) any academic or research-institution document on Hamas internal recordkeeping on which Avi has relied or that his unit treats as authoritative; and (c) any record reflecting fabricated, altered, or staged documents that Israeli intelligence has previously identified as having been produced by Hamas, by other parties to the conflict, or by Israeli sources during prior military operations in Gaza, the West Bank, or southern Lebanon.

    ii.    The defense further requests any prior occasion on which Avi has authenticated, validated, or attributed a Hamas, DFLP, or Palestinian Islamic Jihad document later shown to be incorrect, inaccurate, or unreliable, and any prior occasion on which an Israeli court, military tribunal, commission of inquiry, or analogous body has criticized Avi's testimony, his unit's authentication practices, or the reliability of Hamas-document attributions emerging from his unit.

## F.    AMSHAT procedures and personnel

25. Any written protocol, standard operating procedure, or policy governing how AMSHAT receives, catalogs, extracts, and preserves digital **devices** seized in a combat operation, including the protocol in effect during the period in which the **devices** at issue were processed. The defense further requests any change in AMSHAT staffing, protocol, or technology that occurred between October 2023 and the date the **six exhibits** were exported to the FBI, including any temporary surge protocols adopted after the October 7 attack.

26. The identity of each AMSHAT analyst who handled, imaged, extracted data from, or prepared any report about each **device**, to the extent that disclosure of those identities is not precluded by a specific, documented national-security determination. If the government contends those identities are classified, it must provide a specific basis for that contention rather than a blanket assertion.

## G.    Materiality and reliability of specific exhibits

27. Any report, internal communication, or other document in the government's possession that reflects doubt, qualification, or uncertainty about the accuracy or authenticity of any of the **six exhibits**, including any report generated by any Israeli, FBI, or DOJ analyst who reviewed the documents and noted inconsistencies or anomalies.

28. All materials in the government's possession reflecting the geolocation or geographic coordinates associated with:

　　i.　**Exhibit 5** (the satellite map), including the source of the satellite imagery, the date on which the imagery was captured, and the name or identifier of the geographic location depicted. The defense further requests the identity of the commercial or governmental satellite imagery provider responsible for the underlying image, the imagery's original product identifier, the unredacted EXIF or geotag metadata, and any record reflecting the date and identity of the person who annotated the map.

　　ii.　**Exhibit 6** (the photograph of the defensive installation), including any metadata embedded in the original digital file and any identification by a person with knowledge of the

11

location depicted. The defense further requests the EXIF and camera metadata for the original photograph, the make and model of the camera that captured it, and any record reflecting whether the same image, or any visually similar image, has appeared in open-source reporting, academic literature, or any prior intelligence product.

29. As to **Exhibits 2 and 3**, any prior version, draft, or related Hamas internal-security file referencing the same incident or subject, so that the defense can test whether the produced version is the original or a redrafted copy, together with any comparison Hamas signature block, seal, or letterhead exemplar in the government's possession that bears on the authenticity of the format.

## H. *Brady, Giglio*, and residual disclosure

30. All materials in the government's possession, custody, or control — including materials held by any Israeli governmental agency — that tend to show that any of the **six exhibits** is fabricated, altered, misdated, or unreliable, or that tend to exculpate Mr. Al-Muhtadi with respect to the charges in the indictment. The prosecution's disclosure obligations extend to evidence known to all others acting on the government's behalf, including law enforcement agencies and investigators who participated in the investigation. *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); Justice Manual § 9-5.001(B). To the extent Israeli intelligence agencies participated in the evidence-gathering that produced the **six exhibits** at issue, the materials they hold bearing on the accuracy, provenance, or reliability of those **exhibits** fall within the government's disclosure obligations.

31. All communications between the FBI, the Department of Justice, and any Israeli governmental agency about the battlefield documents at issue in this motion, including any communication in which an Israeli official expressed a qualification about the documents' accuracy, provenance, or chain of custody.

## I. Investigative predication and Israeli legal process

32. The date on which Mr. Al-Muhtadi first became a subject, target, or person of interest in any United States investigation, the predicating information for that designation, and the identity of the source of that predication, together with any confidential human source reporting, intelligence community product, foreign-government tip, or open-source identification that named Mr. Al-Muhtadi prior to the

date the **six exhibits** were transferred to the United States.

33. Any FISA, Title III, or other surveillance product referencing Mr. Al-Muhtadi, and any analysis comparing those materials to the content of the **six exhibits**.

34. Any statement by a cooperating witness, proffer subject, or other Hamas-affiliated individual in United States or allied custody bearing on Mr. Al-Muhtadi's identity, conduct, or affiliation, including any statement in which a cooperator failed to recognize Mr. Al-Muhtadi or contradicted the content of the **six exhibits**.

35. Any Israeli judicial authorization, military order, or administrative process authorizing the seizure of each **device**, and any Israeli legal review of the seizure conducted before transfer to the United States. The defense further requests the Israeli classification level applied to each **exhibit** prior to transfer, any declassification or downgrading action, and any restriction on use, dissemination, or testimony imposed by the Israeli government as a condition of transfer, including any condition that Avi testify only under pseudonym, only on certain topics, or only subject to specified protective measures.

III.    **Form of response when materials are alleged to be held by the government of Israel**

The defense anticipates that the government may respond to certain requests by stating that responsive materials are in the custody of the government of Israel rather than the United States. To enable the defense to seek appropriate judicial relief in those circumstances, including a motion to compel the government to formally request the material under the United States-Israel Mutual Legal Assistance Treaty, a request that the Court issue letters rogatory, a motion to exclude evidence the government cannot supply with the corresponding foundation, or any other equitable relief, any response asserting that responsive material is held by a foreign government should include the following:

1. Identification of the material at issue with sufficient particularity to confirm its existence, including, where known, document title, date, author, custodian, or other descriptors.

2. Identification of the foreign governmental entity believed to have custody, including the specific agency (Israeli Defense Forces, Israeli Security Agency, AMSHAT, the Ministry of Defense, the Ministry of Justice, or other), unit, or division responsible.

3. The factual basis for the government's understanding that the material exists and that the foreign government has custody, including the identity of any United States personnel who have reviewed, examined, summarized, or received an oral description of the material, even if the material itself has not been transferred to United States custody.

4. A description of any request, formal or informal, that the United States has made to the government of Israel for the material, including the date of the request, the identity of the United States official who transmitted the request, the channel through which the request was transmitted (Mutual Legal Assistance Treaty, FBI Legal Attaché, prosecutorial liaison, or other joint-investigation channel), and the response received.

5. If the United States has not requested the material from Israel, an

14

explanation of why no request has been made and a statement of whether the United States will agree to make a request if the defense requests that it do so.

6. Any position, condition, or restriction expressed by the Israeli government regarding production of the material to the United States or to a defendant in a United States criminal proceeding, including any classification level, foreign sovereign protective designation, or operational sensitivity asserted as a basis for non-production.

7. A statement of whether the material has been described, summarized, or referenced in any communication between United States and Israeli officials, and whether that communication itself is being produced.

8. The name, agency, and position of the United States official with personal knowledge of the matters set forth above, so that the defense may pursue further detail through declaration, hearing testimony, or in camera proceeding if necessary.

The defense's basis for requesting this information rests on the prosecution's disclosure obligations under *Brady*, *Giglio*, and Federal Rule of Criminal Procedure 16, which the defense contends extend to material in the possession, custody, or control of any agency that has participated in the investigation, including foreign law enforcement and intelligence agencies that worked alongside United States personnel on this case. Even where the Court ultimately concludes that material held by a foreign agency falls outside the prosecution team, the defense is entitled to know what the United States knows about that material so that the defense may pursue independent channels to obtain it, including a motion to the Court for issuance of letters rogatory, a request that the Court direct the government to invoke the United States-Israel Mutual Legal Assistance Treaty, or a motion to exclude the corresponding evidence under the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the Constitution if the material cannot be obtained.

15

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY:   *s/ Dustin C. Talbot*
      DUSTIN C. TALBOT
      First Assistant / Appellate Chief

      *s/ Aaron A. Adams*
      AARON A. ADAMS
      Assistant Federal Public Defender
      Federal Public Defender's Office
      Middle and Western Districts of Louisiana
      102 Versailles Boulevard, Suite 816
      Lafayette, Louisiana 70501
      Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 18, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*