UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR A BILL OF PARTICULARS

NOW INTO COURT, through undersigned counsel, comes the defendant, Mahmoud Amin Ya'qub Al-Muhtadi, who, for the factual and legal reasons set forth below, respectfully moves this Court under Federal Rule of Criminal Procedure 7(f) to direct the government to file a bill of particulars.

## I.    Background

Mr. Al-Muhtadi is charged in a two-count indictment. [Doc. 16]. Count 1 alleges that he conspired to provide material support to Hamas, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. The indictment specifies three categories of material support: personnel (including himself), weapons, and services. [Doc. 16 at 1–2]. The indictment further invokes the death-resulted enhancement of § 2339B(a)(1), which raises the statutory maximum from 15 years to life. Id. at 2. Count 2 alleges visa fraud under 18 U.S.C. § 1546(a) based on five enumerated false statements on Mr. Al-Muhtadi's DS-260 application of August 6,

1

2024. *Id.* at 2–3.

Count 1 consists of three paragraphs. The first establishes that the Secretary of State designated Hamas as a foreign terrorist organization. The second alleges that Mr. Al-Muhtadi conspired to provide personnel (including himself), weapons, and services to Hamas. The third, a single sentence, alleges that death resulted from the commission of the offense. Beyond those bare statutory categories, Count 1 identifies no specific personnel beyond the defendant himself. It identifies no specific weapons. It identifies no specific services. It identifies no co-conspirators by name or description. It identifies no specific death as the predicate for the § 2339B(a)(1) enhancement. [Doc. 16 at 1–2].

The accompanying criminal complaint and the government's pending motion in limine to admit battlefield evidence together reveal a far more sprawling theory than the indictment's words capture. [Doc. 1-1]; [Doc. 45]. The complaint affidavit identifies numerous distinct individuals or groups as potential co-conspirators, mostly by kunyas (Awni, Abu Haytham, Hani, Hazim) or pseudonyms (Subject 1, Subject 2). [Doc. 1-1 ¶¶ 26, 29–43, 50–66]. It references weapons stretching across more than five years, from an alleged 2019 firearms training photographs through a February 2025 handgun photographed in Tulsa, Oklahoma. *Id. at* ¶¶ 29, 80]. The battlefield documents motion reaches still further back: Exhibit 4 is dated January 29, 2017, and purports to document that the defendant transferred rifles to a Hamas member in connection with a friend's party. [Doc. 45 at 13–14]. Exhibit 1 is described

2

by the government's expert as a 2018 file. *Id.* at 31]. Exhibits 5 and 6 are undated, and the file holding Exhibit 6 was saved to its device in 2011. *Id.* at 31–32. All six battlefield exhibits thus predate the October 7, 2023 date alleged in the indictment, some by more than a decade.

The government has now produced more than five hundred thousand pages of discovery. That volume of material, viewed against the indictment's bare statutory categories, leaves the defense to work backward from the discovery to the elements of the offense, rather than forward from the indictment to the proof. The complaint affidavit describes the alleged Joint Operations Room, created in 2018 to formalize coordination among the military wings of Hamas, the DFLP, and the Palestinian Islamic Jihad. [Doc. 1-1 ¶ 21]. The government has invoked the Joint Operations Room in the briefing on the battlefield documents motion as the predicate joint venture for Federal Rule of Evidence 801(d)(2)(E) co-conspirator hearsay purposes. [Doc. 45 at 22–27]. Whether participation in that Joint Operations Room is itself a charged service within Count 1, or instead is offered only as an evidentiary predicate for hearsay, is not disclosed in the indictment. [Doc. 16]. It must be pointed out that Mr. Al-Muhtadi is not and has never been a member of Hamas; the government has only alleged that he is a member of DFLP and its paramilitary wing the NRB, neither of which is a designated foreign terrorist organization. [Doc. 1-1 ¶¶ 6, 17].

This case has been certified as complex. [Doc. 36]. CIPA procedures are in place. [Doc. 27]. A status conference is set for May 27, 2026. [Doc. 51].

3

## II.    Legal authorities

Federal Rule of Criminal Procedure 7(f) provides that the Court "may direct the government to file a bill of particulars." The granting of a bill of particulars is committed to the sound discretion of the trial court. *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977). The Fifth Circuit's leading articulation of the device's purposes is the *Mackey* three-purpose test:

> The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution.

*Id. Mackey* expressly confirms that informing the defendant of the names of alleged unindicted coconspirators has been held a proper use of a bill of particulars. *Id.* As another judge of this Court framed the question years ago, "[t]he proper function of a Bill of Particulars is to furnish the defendant with information beyond that contained in the [indictment] respecting the charge against him, when the information is necessary to the preparation of his defense." *United States v. Treatman*, 399 F. Supp. 264, 266 (W.D. La. 1975).

The government cannot cure an inadequate indictment by pointing to the criminal complaint or to the volume of discovery it has produced. The criminal complaint is sworn out by an FBI agent and reflects probable cause, not the grand jury's findings; the indictment, not the complaint, is what defines the offense the defendant must answer. The Supreme Court has long recognized that the indictment must do its work on its own terms; even "a bill of particulars cannot save an invalid

4

indictment," *Russell v. United States*, 369 U.S. 749, 770 (1962), and *a fortiori* materials outside Rule 7(f) cannot. As the Second Circuit has explained, the government "did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987); *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars"). The bill of particulars is the device Rule 7(f) provides to fill the gap the indictment leaves between its generic categories and the specific case the defense will have to meet.

A.   *Russell* **requires particularization where the indictment uses generic statutory terms**

The Supreme Court has long held that an indictment may not rely on the generic terms of a statute to charge a specific offense. *Russell*, 369 U.S. at 765. In *Russell*, the Court explained:

> It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.

*Id.* (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)); *see also United States v. Diecidue*, 603 F.2d 535, 547 (5th Cir. 1979) (the Fifth Circuit citing *Cruikshank* for the same proposition). The *Russell* Court added that a "cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined." *Id.* The *Russell* rule operates above the indictment-sufficiency floor

5

set by *Hamling v. United States*, 418 U.S. 87, 117 (1974); an indictment may pass that floor and still require a bill of particulars where the statutory terms remain generic.

The *Russell* rule rests on three constitutional anchors. The first is the Fifth Amendment's grand jury clause, which guarantees that a defendant be tried only on the conduct the grand jury actually charged. *Russell*, 369 U.S. at 760–61. The second is the Sixth Amendment's right to be "informed of the nature and cause of the accusation." *Id.* at 761. The third, derived from the first two, is the protection against double jeopardy: the indictment must enable the defendant, "in case any other proceedings are taken against him for a similar offense," to show "with accuracy to what extent he may plead a former acquittal or conviction." *Id.* at 764; *Mackey*, 551 F.2d at 970 (listing double jeopardy among the purposes of a bill of particulars). Each anchor is in play here.

Section 2339A(b)(1), incorporated by § 2339B(g)(4), defines material support or resources to include fourteen separate categories of conduct, including personnel (1 or more individuals who may be or include oneself), weapons, and services. The indictment in this case tracks three of those categories verbatim, without further specification. [Doc. 16 at 2]. That is the paradigm of generic-term pleading.

B.    *Warsame* applies Russell to § 2339B prosecutions

In *United States v. Warsame*, 537 F. Supp. 2d 1005 (D. Minn. 2008), the district court granted a bill of particulars in a § 2339B prosecution because "the charges of

6

material support contained in the Superseding Indictment were not sufficiently detailed to allow Warsame to effectively challenge the constitutionality of 18 U.S.C. § 2339B." *Id.* at 1010. The court reasoned:

> Warsame's vagueness challenge to § 2339B requires an examination of whether the statute provides sufficient notice of the criminality of Warsame's alleged conduct. As such, the prosecution must set forth both the precise charges of material support under 18 U.S.C. § 2339A(b)(1), as well as specific factual allegations of criminal conduct.

*Id.* at 1012. The court applied that principle to "personnel," finding that allegations of communications with terrorist associates "are not sufficient, without more, to survive a vagueness challenge" absent specific factual tie-ins to terrorist activity. *Id.* at 1018. The same analysis governed "training." *Id.* at 1020.

Compare *Warsame* with the Southern District of New York's decision in *United States v. Sattar*, 314 F. Supp. 2d 279 (S.D.N.Y. 2004) to deny a bill of particulars in a § 2339A material-support prosecution with an incredibly detailed 45-paragraph indictment. The indictment in *Sattar* named specific co-conspirators (including Sheikh Omar Abdel Rahman and Rifa'i Ahmad Taha Musa), identified specific dates of prison visits, and described particular overt acts including the May 2000 prison visit and the October 2000 fatwah. *Id.* at 286–94. The government had also supplemented the indictment with detailed factual representations in its briefing and at argument, which the government itself conceded could be taken as a bill of particulars. *Id.* at 318–19. Count 1 of the indictment in this case, by contrast, is barely longer than a page and identifies none of those particulars. [Doc. 16 at 1–2].

### III.   Argument

### A.   The personnel category requires particularization

The personnel category under § 2339B is narrower than its statutory language suggests. The Fifth Circuit Pattern Jury Instruction confirms that no defendant may be convicted in connection with the term "personnel" unless the personnel were provided "to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization," and that "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h); *Fifth Cir. Pattern Jury Instr. (Criminal)* 2.92B (2024). The direction-and-control requirement is rooted in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), which held that § 2339B reaches support coordinated with or under the direction of a designated FTO but not independent advocacy.

The complaint affidavit refers to numerous distinct individuals or groups as candidates for the personnel category: Awni; Abu Haytham; an unknown male who agreed to bring rifles; an unknown male who agreed to obtain a motorcycle; Hani; Subject 1; Subject 2; the fifteen young men identified in September 2020 as the defendant's "group"; the unknown male who agreed to "go east" on October 7; Hamas's own leaders, including Mohammad Deif; and the unidentified members of the alleged Joint Operations Room. [Doc. 1-1 ¶¶ 21–26, 29–43, 50–66]. The defense cannot defend

8

the personnel theory without knowing which of these candidates the government will rely on, and what specific instructions, directions, agreements, or coordination from Hamas the government will use to satisfy the direction-and-control element. Mr. Al-Muhtadi is not and has never been a member of Hamas. [Doc. 1-1 ¶¶ 6, 17]. *See Humanitarian Law Project*, 561 U.S. at 31–39; *Warsame*, 537 F. Supp. 2d at 1018.

B.    The weapons category requires particularization

The weapons category sweeps an unusually broad temporal range. The complaint references weapons in the defendant's alleged possession from April 2019 through February 2025. [Doc. 1-1 ¶¶ 29, 80]. The battlefield documents motion adds a January 2017 transaction in which the defendant allegedly gave rifles to a supposed Hamas member in an unauthorized transfer. [Doc. 45 at 13–14]. The most detailed weapon allegation in the complaint is a Russian-made 1984 rifle, serial PS 20592, with three magazines and ninety bullets, identified as the property of the NRB, not Hamas, and received by the defendant from the NRB. [Doc. 1-1 ¶ 31]. Other allegations include a rocket-propelled grenade launcher photographed in November 2020, numerous automatic rifles, ammunition magazines, a bulletproof vest, and a motorcycle. [Doc. 1-1 ¶¶ 37–38, 56, 58, 60, 63]. There is also a handgun photographed in Tulsa, Oklahoma in February 2025, some seventeen months after the alleged offense, raises the additional and distinct question of how a U.S. firearm in Tulsa is alleged to have been provided to Hamas. [Doc. 1-1 ¶¶ 80–81].

Each of these weapons items raises a separate set of factual questions. None

9

of them is identified in the indictment. The defense cannot prepare a defense on the weapons category without knowing (1) which weapons the government will contend were provided to Hamas, (2) when and where each was provided, and (3) whether pre-October 7, 2023 weapons are alleged as part of the conspiracy itself.

### C.    The services category requires particularization

The services category is the most amorphous of the three. Section 2339A(b)(1) lists "service" without further definition. The Fifth Circuit Pattern Jury Instruction adds no definition. *Fifth Cir. Pattern Jury Instr. (Criminal)* 2.92B (2024). *Warsame* ordered particularization for this exact reason: a § 2339B indictment that lists categorical statutory terms without specifying which services were provided does not give the defendant the notice required to prepare a defense or to mount an as-applied constitutional challenge. 537 F. Supp. 2d at 1011–12, 1018–20. The defense cannot defend the services category without knowing what service the government will charge. Especially urgent is whether the alleged Joint Operations Room participation is itself a service charged in Count 1 or instead is offered only as the predicate joint venture for Rule 801(d)(2)(E) hearsay purposes. [Doc. 45 at 22–27]. The answer affects many aspects of the defense from the hiring of experts to overseas investigation strategy.

### D.    The § 2339B(a)(1) death-resulted enhancement requires particularization

The death-resulted enhancement raises the statutory maximum on Count 1 from twenty years to life. [Doc. 16 at 2]. Under *Apprendi v. New Jersey*, 530 U.S. 466

10

(2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), it is an element of the offense that must be charged in the indictment and proved to the jury beyond a reasonable doubt. The indictment alleges the enhancement in a single conclusory sentence: "it is further alleged that death resulted from the commission of the offense." [Doc. 16 at 2]. The indictment does not identify which death, where the death occurred, who caused it, or how the death is causally connected to the defendant's alleged conduct.

The October 7 attack involved more than 1,200 deaths across multiple kibbutzim in Israel. [Doc. 1-1 ¶ 8]. The complaint identifies three victims, all killed at or in Kfar Aza, two of whom were Kfar Aza residents and one of whom was a member of the Israel Defense Forces killed while assisting with rescue operations. [Doc. 1-1 ¶¶ 13–16]. The § 2339B(a)(1) enhancement requires the government to prove but-for causation of a particular death. *See Burrage v. United States*, 571 U.S. 204, 211 (2014) (the Supreme Court held that "results from" in the Controlled Substances Act, 21 U.S.C. § 841(b)(1), imposes a "requirement of actual causality," meaning "proof that the harm would not have occurred in the absence of — that is, but for — the defendant's conduct."). The defense cannot prepare to litigate that question without knowing whose death the government will attempt to prove. Particularization here also serves the double jeopardy function: without identifying the predicate death on the record, neither Mr. Al-Muhtadi nor a future court will be able to determine the scope of any former-conviction defense should the same death later be charged under another statute.

11

### E.    The identities of known and unknown co-conspirators must be particularized

Count 1 alleges that the defendant conspired with "others, known and unknown to the Grand Jury." [Doc. 16 at 2]. The Fifth Circuit has expressly held that "[i]nforming the defendant of the names of alleged unindicted coconspirators has been held a proper use of a bill of particulars." *Mackey*, 551 F.2d at 970; *see also Bin Laden*, 92 F. Supp. 2d at 241 (ordering the government to "disclose to the defendants the identities, including all aliases and code names, of all unindicted co-conspirators to whom it will refer at trial" absent a significant risk of bodily harm or compromising an ongoing investigation). The complaint references numerous individuals or groups by kunyas, pseudonyms, or generic description. [Doc. 1-1 ¶¶ 21–26, 29–43, 50–66]. Without particularization of the co-conspirators, the defense cannot evaluate possible defenses, including the multiple-conspiracies defense recognized in *Kotteakos v. United States*, 328 U.S. 750 (1946), the independent-advocacy defense recognized in *Humanitarian Law Project*, 561 U.S. at 31–39, or the personnel-direction-and-control defense available under the Fifth Circuit pattern instruction. Particularization also serves the double jeopardy interest: without knowing the identity of the unnamed co-conspirators, neither the defendant nor a future court can determine, should a successor prosecution arise, whether the second case charges the same conspiracy or a different one.

### F.    The Count 2 false-statement subparts must be particularized

Count 2 alleges visa fraud based on five enumerated false statements. [Doc. 16

12

at 2–3]. Each subpart pairs a broad denial on the DS-260 application with a conclusory assertion of the true facts. The defense cannot prepare a defense to subpart (b), for example, without knowing which of the five enumerated categories the government will contend applies to DFLP and NRB (paramilitary unit, vigilante unit, rebel group, guerilla group, or insurgent organization) and the time period of the alleged membership.

## IV.    Requested bill of particulars

For the foregoing reasons, the defense respectfully requests that the Court order the government to file a bill of particulars stating the following:

### *Personnel category of Count 1*

1. Identify each individual the government will contend constituted the personnel alleged in Count 1, by name where known and by best available description where the identity is unknown to the grand jury.

2. As to each identified individual, specify whether the government will contend that the individual was (a) working under Hamas's direction or control, or (b) organizing, managing, supervising, or otherwise directing the operation of Hamas.

3. Identify the specific instructions, directions, agreements, or coordination from Hamas, by date and source if known, on which the government will rely to satisfy the requirement that Mr. Al-Muhtadi acted under the direction or control of Hamas.

4. Identify the date, place, and means by which each identified individual was allegedly provided to Hamas.

### *Weapons category of Count 1*

5. Identify by description, model, serial number where known, or other identifying information each weapon the government will contend constituted the weapons alleged in Count 1.

6. Specify the date and place at which each identified weapon was allegedly provided to Hamas.

7. Specify whether the government will contend that any weapon dated before October 7, 2023, including but not limited to (a) the five Kalashnikov rifles and the blank-firing pistol referenced in the January 29, 2017 document attached as Exhibit 4 to the government's motion in limine ([Doc. 45 at 13–14]), and (b) the Russian-made 1984 rifle, serial PS 20592, referenced in paragraph 31 of the complaint affidavit, was itself part of the alleged provision to Hamas.

8. Specify whether the government will contend that the Glock 26 photographed in Tulsa in February 2025 was provided to Hamas.

9. Specify whether the government will contend that ammunition, magazines, bulletproof vests, motorcycles, or other associated items are themselves within the scope of the weapons alleged in Count 1.

### Services category of Count 1

10. Identify each service the government will contend constituted the services alleged in Count 1.

11. Specify the date and place at which each identified service was allegedly provided.

12. Specify the alleged recipient of each identified service within Hamas, by name or, where the identity is unknown, by best available description.

13. Specify whether the government will contend that participation in the alleged Joint Operations Room is, in and of itself, a service charged in Count 1, as distinct from a predicate joint venture relied upon for Federal Rule of Evidence 801(d)(2)(E) hearsay purposes.

### Section 2339B(a)(1) death-resulted enhancement

14. Identify by description, and by name where known, each death the government will contend resulted from the offense for purposes of the § 2339B(a)(1) enhancement.

15. Specify the date, time, and place of each identified death.

14

16. Specify the manner in which each identified death is alleged to have resulted from the offense, including the alleged causal chain linking the defendant's conduct to the identified death.

### *Co-conspirators in Count 1*

17. Identify by name, or by best available description where the identity is unknown to the grand jury, each "other" alleged to have conspired with the defendant.

18. Specify the role of each identified co-conspirator in the alleged conspiracy.

### *Count 2 false-statement subparts*

19. Specify, as to Count 2 subpart (b), which of the five enumerated categories of organization (paramilitary unit, vigilante unit, rebel group, guerilla group, or insurgent organization) the government will contend applies to the DFLP and NRB, and the time period during which the government will contend the defendant was a member.

20. Specify, as to Count 2 subpart (c), the precise terrorist activities the government will contend the defendant engaged in.

21. Specify, as to Count 2 subpart (e), the precise extrajudicial killings or other acts of violence the government will contend the defendant committed, ordered, incited, assisted, or otherwise participated in.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY:  *s/ Dustin C. Talbot*
      DUSTIN C. TALBOT
      First Assistant / Appellate Chief

      *s/ Aaron A. Adams*
      AARON A. ADAMS
      Assistant Federal Public Defender
      Federal Public Defender's Office
      Middle and Western Districts of Louisiana

15

102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*