UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

    Defendant

_____/

CRIMINAL NO.  25-CR-00285
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

### UNITED STATES OF AMERICA'S REPLY TO DEFENSE RESPONSE TO MOTION TO COMPEL RULE 12 DEFENSES

The United States of America, through undersigned counsel, respectfully submits the following Reply to the Defense Response to Government's Motion to Compel Notice of Rule 12 Defenses, [Doc. 75].  Through this Reply, the Government argues (1) that the defense fails to thread the Scheduling Order needle in a manner that alleviates its duty to respond to the Government's Rule 12.1, 12.2, and 12.3 demands and (2) that the defense's concerns about Israel and Gaza not only ignore the fact that Mr. Al-Muhtadi is himself best placed to know of the defenses at issue but also weigh in favor of the defense disclosing these defenses as required so that the Government will have time to investigate any defense claims while dealing with the travel and communication challenges the defense identifies. For these reasons and those set forth in the Motion, the Government therefore requests that this Court enter the Proposed Order requiring the defense to respond to these demands within 14 days of the Order's entry.

**ARGUMENT**

**A. The Scheduling Order Permitted Rule 12.1, 12.2, and 12.3 Requests on June 22nd and Did Not Amend the Defense Response Deadline.**

The defense's parsing of the Scheduling Order fails to show that anything in it modifies its response deadlines for Rule 12.1, 12.2, or 12.3 demands. The defense emphasizes "Defense" at the October 30th entry's start, *see* [Doc. 75, p. 2], but that "Defense" clearly modifies "Expert Disclosure Deadline," which contrasts with the "Government's Expert Disclosure Deadline" on September 4, 2026. *See* [Doc. 66, p. 2]. And as the Government noted in its Motion, *see* [Doc. 73, p. 1-3], the remainder of the Rules covered by the entry (except Rule 12.2) are all Government-focused and incumbent upon the Government to initiate. Rules 12.1 and 12.3, much like Rules 902(11) and 404(b) that precede them in the Scheduling Order, require the Government to act by way of notice. Indeed, the Judiciary Committee's Notes to the 1975 Amendment to Rule 12.1 describe Rule 12.1 as "prosecution-triggered." In this respect, the Scheduling Order by its plain reading was setting Government deadlines, which the Government met as to Rules 12.1, 12.2, and 12.3 in filing its July 22nd demand. *See* [Doc. 67]. And while the Government could have waited until October 30th to file for notice of these defenses, that would have risked precisely the type of trial delays that the Motion here intends to prevent.[1] For those reasons, the

---

[1] And to be clear, the Government is not arguing about whether this Court *could* permit the defense to respond to its Rule 12.1, 12.2, and 12.3 notices at any time that it wishes—that is clearly contained within the Rules themselves and is well within the Court's considerable discretion to manage its trial calendar in any event. Through the Motion, though, the Government takes the position that this Court, in choosing

2

Government respectfully submits that the defense is simply mistaken about the Scheduling Order—that the Scheduling Order in no way expressly modifies the defense's obligations under Rules 12.1, 12.2, or 12.3.

**B. The Defense's Concerns Relating to Israel and Gaza Are Not Only Beside the Point Regarding Its Ability to Respond But Also Cut Against Its Requested Delay By Showing Why Early Disclosure is Necessary.**

The defense also cries foul of having to respond to the Government's demand based on the notion that their lawyers cannot "walk into the camps [in Gaza] to interview potential witnesses" and because "Palestinians are not eager to be heard talking with attorneys representing someone accused of fighting against Israel," [Doc. 75, p. 3], but this Court should find those concerns unavailing—and to even cut against the defense's own position—for three reasons.

*First*, the defense's excuse about needing to interview witnesses ignores the obvious: the Defendant, Mr. Al-Muhtadi, was himself there (or not), was himself sane (or not), and himself knows whether he acted (or at least believed himself to act) under color of lawful authority, and the defense is able to *just ask him*. The defense knows whether it intends to put on an alibi defense, and that is the purpose of Rule 12.1. If the defense is unaware of a single person—such as Mr. Al-Muhtadi's wife, who is within the District and accessible to the defense—who can corroborate or provide an alibi for him, then that is the defense's answer; if Mr. Al-Muhtadi can in fact identify someone to corroborate an alibi (such as his wife), then they must

---

to do so, would run the same risks that a delayed Government filing would have— namely, the potential for a preventable trial delay when Rule 12.1, 12.2, and 12.3 are tools that the Federal Rules afford the Government to avoid such delays.

disclose it. Indeed, the Defendant could himself testify to an alibi, *see Foster v. Ward*, 182 F.3d 1177, 1185 (10th Cir. 1999) ("This is not a case in which counsel presented no alibi defense. Mr. Foster himself testified that at his wife's request he walked from his home to Weddles grocery store …."), though he would typically want some form of corroboration before testifying himself. *See Brown v. Myers*, No. 91-55228, 1993 U.S. App. LEXIS 10516, at *3-4 (9th Cir. May 6, 1993) ("In general, however, it seems to us that when a defendant himself testifies and puts forth an alibi defense, his counsel's failure to present available witnesses who could corroborate that defense would be a disastrous error …."). [2] The same is true for Rule 12.3's public authority defense, which can inherently involve the defendant's own belief about his conduct. *See* Fed. R. Crim. P. 12.3(a) (regarding "assert[ing] a defense of actual or believed exercise of public authority…"). In these respects, the defense's claims about needing extensive international communications to respond to the demands ring hollow.

Moreover, the defense's attempts to delay or evade these disclosures based on further investigation cuts against these Rules' core purpose to provide early and fulsome information to the Government. This purpose is most clear with Rule 12.1's notice-of-alibi demand, which the Supreme Court has held to be "based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to

---

[2] Of course, to the extent that the defense has any documentary evidence supporting an alibi defense, the defense is already obligated to produce those records under Rule 16. *See United States v. King*, 703 F.2d 119, 126 (5th Cir. 1983) ("Rule 12.1 clearly does not limit the government's right to reciprocal discovery under rule 16. The district court, therefore, acted properly in excluding the documents.").

prepare their cases and thereby reduces the possibility of surprise at trial." *Wardius v. Oregon*, 412 U.S. 470, 473 (1973). The defense is of course free to continue investigating and developing its own case—indeed, Mr. Al-Muhtadi should expect no less. Yet that is not a reason for the defense to put off its obligations under the Federal Rules, instead serving only as a basis for the defense having to supplement its response in the coming months as needed. This is all-the-truer when, as here, the defense has now had nine months to consider the 44-page complaint affidavit, to review discovery, to consider the Government's extensive reverse proffer presentation, and to confer with Mr. Al-Muhtadi. All these considerations favor this Court giving short shrift to the defense's claims about the need to investigate.

*Second*, the difficulties the defense presents about interviewing witnesses in Israel and Gaza cut *against* its position, not *for* it, for the simple reason that it's the *Government* who will need to conduct interviews and prepare a defense to the Defendant's alibi presentation. Contrary to the defense's claim that delay will not prejudice the Government, the Supreme Court has made clear that "[g]iven the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida*, 399 U.S. 78, 81 (1970). That matters because without advance notice of alibi witnesses and "the details of the claimed alibi[,] [t]he result often is an unnecessary interruption and delay in the trial to enable the government to conduct an appropriate investigation," Fed. R. Crim. P. 12.1 Advisory Committee's 1974 Notes. In this way, the need for investigation that extends to Israel and Gaza weighs in favor of earlier

disclosure because "[t]he objective of [R]ule 12.1 is to prevent [trial delays] by providing a mechanism which will enable the parties to have specific information in advance of trial to prepare to meet the issue of alibi during the trial." *Id.* Indeed, Rule 12.1 is "prosecution-triggered" because "[t]he major purpose of a notice-of-alibi rule is to prevent unfair surprise to the prosecution." Fed. R. Crim. P. 12.1 Judiciary Committee's Notes to the 1975 Amendment. Preventing delays through early disclosure is of paramount importance here, where the defense concedes the "complexity" and "difficulty" the case presents for investigation. *See* [Doc. 75, at 4]. For these reasons, the international aspect of this case favors *early* disclosure by the defense, not the delays the defense proposes.

*Third*, the defense does not explain why delaying until October 30th helps their case or would make it more possible for them to provide a fulsome disclosure. The defense does not represent that it has future travel to Israel or Gaza booked, has telephonic or videoconference interviews scheduled, or that it otherwise is actively preparing to address the issues that it highlights. Rather, it presents apparently intractable problems as a reason to not comply with the Rules, providing no case law whatsoever to support that proposition for good reason: there is none. To the contrary, Rule 12.1 compels "liberal discovery" and "giv[ing] both parties the maximum possible amount of information with which to prepare," *Wardius*, 412 U.S. at 473, which cuts against this Court crediting the travel issues here as a valid basis for postponing the defense response to the Government's demands. Indeed, the defense's proposed delay is inconsistent with the ends the Supreme Court set forth in *Wardius* and *Williams*,

and this Court should therefore not countenance it, instead granting the Government's Motion and requiring a response within 14 days.

CONCLUSION

For all these reasons, the Government respectfully submits that this Court should enter the Proposed Order, which requires the defense to respond to its June 22 demand pursuant to Rules 12.1, 12.2, and 12.3 within fourteen (14) days of its order.

Dated: July 13, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By:     */s/ Zachary A. Keller*
ZACHARY A. KELLER
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D

7

Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 13, 2026, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney

8