UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA          6:25-cr-00285-01
                                  JUDGE JOSEPH
v.                                MAGISTRATE JUDGE WHITEHURST

MAHMOUD AMIN YA'QUB
AL-MUHTADI,
    a/k/a "Abu Ala,"

      Defendant

_____/

**<u>UNITED STATES' RESPONSE TO OMNIBUS MOTION TO COMPEL</u>**

# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................. 1

    A.    The Defendant's October 2025 Arrest and the Charges He Faces. ............... 1

    B.    The Defense's Self-Styled "Requests for Specific Discovery." ........................ 2

II.   ARGUMENT .................................................................................................... 4

    A.    The State of Israel Is Not an Arm of the Prosecution ................................... 5

    B.    Battlefield Documents .................................................................................. 10

    C.    Audio Evidence ............................................................................................. 12

    D.    Remedies Supposedly Available to the Defense ........................................... 13

III.  SPECIFIC RESPONSES TO THE MOTION TO COMPEL ......................... 14

IV.   CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

## *CASES*

*Smith v. Arizona,*
    602 U.S. 779 (2024) ................................................................................................ 10

*United Kingdom v. United States,*
    238 F.3d 1312 (11th Cir. 2001) ................................................................... 13, 14

*United States v. $734,578.82 in U.S. Currency,*
    286 F.3d 641 (3d Cir. 2002) ........................................................................... 13

*United States v. Adler,*
    605 F. Supp. 2d 829 (W.D. Tex. 2009) ............................................................ 9

*United States v. Antone,*
    603 F.2d 566 (5th Cir. 1979) ...................................................................... 7, 8

*United States v. El-Mezain,*
    664 F.3d 367 (5th Cir. 2011) ...................................................... 10, 12, 14, 16

*United States v. Esquenazi,*
    752 F.3d 912 (11th Cir. 2014) ........................................................................ 8

*United States v. McLellan,*
    959 F.3d 442 (1st Cir. 2020) ........................................................................ 13

*United States v. Meregildo,*
    920 F.Supp.2d 434 (S.D.N.Y. 2013) .......................................................... 6, 7

*United States v. Meza,*
    No. 15-cr-3175, 2017 U.S. Dist. LEXIS 53973 (S.D. Cal. Apr. 7, 2017) ............ 8

*United States v. Mitrovich,*
    95 F.4th 1064 (7th Cir. 2024) ................................................................... 7, 8

*United States v. Moloney,*
    685 F.3d 1 (1st Cir. 2012) ............................................................................ 13

*United States v. Reyeros,*
    537 F.3d 270 (3d Cir. 2008) .......................................................................... 8

*United States v. Risha,*
    445 F.3d 298 (3d Cir. 2008) ............................................................................ 8, 9

*United States v. Roviaro,*
    353 U.S. 53 (1957) ............................................................................................ 14

*United States v. Sedaghaty,*
    728 F.3d 885 (9th Cir. 2013) ............................................................................ 13

*United States v. Thompson,*
    944 F.2d 1331 (7th Cir. 1991 ............................................................................ 7

*United States v. Tuma,*
    738 F.3d 681 (5th Cir. 2013) .............................................................................. 4

## *STATUTES*

18 U.S.C. § 2 ............................................................................................................ 2

18 U.S.C. § 1001(a)(2) .............................................................................................. 2

18 U.S.C. § 1546(a) ............................................................................................... 1, 2

18 U.S.C. § 2339B ................................................................................................. 1, 2

28 U.S.C. § 1781 ...................................................................................................... 13

## *OTHER AUTHORITIES*

Classified Information Protection Act, 18a U.S.C. § 1 *et seq.* .. 3, 10, 12, 14, 16, 17, 18

## *RULES*

Fed. R. Crim. P. 16 ................................................................................ 2, 3, 4, 5, 7, 10

Fed. R. Crim. P. 16(a)(G)(iii) ........................................................................ 10, 12, 17

Fed. R. Evid. 801(d)(2)(e) ........................................................................................ 10

Fed. R. Evid. 901 ..................................................................................................... 11

***TREATISES***

Mutual Legal Assistance Treaty ............................................................. 5, 6, 9, 13, 14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB
AL-MUHTADI,
    a/k/a "Abu Ala,"

        Defendant

_____/

6:25-cr-00285-01
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

## UNITED STATES' RESPONSE TO OMNIBUS MOTION TO COMPEL

NOW INTO COURT, comes the United States of America, by and through Zachary A. Keller, United States Attorney for the Western District of Louisiana, who files this Response to the Defendant's Omnibus Motion to Compel Specific Discovery, [Doc. 74] (the "Motion").

## I.    BACKGROUND

### A. The Defendant's October 2025 Arrest and the Charges He Faces.

The Defendant, Mahmoud Al-Muhtadi, was arrested on October 16, 2025, in the Western District of Louisiana on a criminal complaint charging conspiracy to provide material support to HAMAS, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and visa fraud, in violation of 18 U.S.C. § 1546(a). In support of the complaint, the Government submitted a 44-page complaint affidavit that extensively explained the case against the Defendant. *See* [Doc. 1-1]. An indictment followed the next day, October 17, [Doc. 16], with the Defendant detained pending trial. *See* [Doc. 26].

1

The grand jury returned a four-count Superseding Indictment on June 17, 2026 [Doc. 60].  The Superseding Indictment charges the Defendant with conspiracy to provide material support to HAMAS, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B; providing (and attempting to provide) material support to HAMAS, a designated foreign terrorist organization, also in violation of 18 U.S.C. § 2339B; visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2; and false statements in a matter involving international terrorism, in violation of 18 U.S.C. § 1001(a)(2). [Doc. 60].

**B.  The Defense's Self-Styled "Requests for Specific Discovery."**

The defense formally requested discovery on November 11, 2025, [Doc. 37], which the Government understood to trigger its full Rule 16 obligations.[1] The Government began producing discovery to the defense nearly two weeks before that discovery demand, on October 30, 2025, and has produced 12 tranches of discovery since that time. In addition, the Government presented an extensive reverse proffer to the defense on November 19, 2025.

On May 1, 2026, pursuant to this Court's first scheduling order, [Doc. 36], the Government filed an expert disclosure for "Avi," an Israeli official who will testify at trial, [Doc. 46] (the "Avi Notice"), and a motion *in limine* to admit battlefield evidence, [Doc. 45] (the "Battlefield Motion").  The Battlefield Motion addressed six items— three documents, a spreadsheet, a map, and a photograph—that Israeli Defense

---

[1] Although the defense's Request for Discovery ambiguously references "Paragraph (I)(a)(1) of the Criminal Pretrial Discovery Order," [Doc. 37], the Government interpreted it to be a request for Rule 16 discovery and has acted accordingly.

2

Forces collected in Gaza during the war that the HAMAS attacks provoked, and which the Government intends to introduce into evidence at trial. [Doc.45]. The Avi Notice, which runs to 14 single-spaced pages, generally describes the nature and background of Avi's testimony and the experience that underlies it.

Despite having made its Rule 16 demand in November 2025, which already compels the Government to comply with all discovery obligations, the defense has nevertheless filed two self-styled "Requests for Specific Discovery" onto the docket. On May 18, 2026, the defense filed its "First Request for Specific Discovery: Battlefield Documents & Expert Witness Materials" [Doc. 47]. The Government responded with a letter to the defense on June 8, 2026, attached to the defense Motion as Exhibit B, which answered the defense's questions in a manner that provided insight into the Government's best understanding of the defense's inquiries while also recognizing and holding to the Government's Rule 16 obligations. The defense filed a second request for specific discovery on June 26, 2026, [Doc. 70], and the Government responded again by letter, attached to the defense Motion as Exhibit C, and again by providing insight into the Government's best understanding of the status of the evidence the defense requested but again recognizing and holding to its Rule 16 obligations.

Throughout, the Government has repeatedly advised, as this Court well knows, that parts of the total volume of records secured by the Government are classified and subject to the Classified Information Protection Act, 18a U.S.C. § 1 *et seq.* ("CIPA"), which will be litigated separately. The defendant's Motion to compel

specific discovery, [Doc. 74], followed on July 7, 2026, and the Government now files this Response.

## II.    ARGUMENT

Despite extensively citing *Brady*, *Giglio*, Rule 16, and other routine discovery principles, the defense fails to cite a single case supporting the impossible relief it seeks. The defense asks this Court to compel the Government to produce native files, metadata, forensic images, "communications reflecting doubt about the authenticity of the exhibits," and the like, when the simple truth is that <u>the Government does not have them</u>. If we did, then we would produce them pursuant to our discovery obligations. But as the Government has repeatedly advised the defense: We don't. So while the defense asks this Court to "direct the government to identify and preserve the complete set" of phone calls the Defendant made on October 7, for example, *see* [Doc. 74-1 at 13], the simple fact is that there is nothing to identify or to preserve: we do not have them, and we do not know whether the Israeli government or agencies possess them because they do not work for us or alongside us.

And while the defense appears to have requested the impossible so that it could lay the groundwork for alternative relief, *see* [Doc. 74-1 at 18], those alternatives are untethered to law or practical reality, with the defense referencing Rule 15 depositions and letters rogatory but failing to show "exceptional circumstances" required with its "conclusory allegations" that it could secure relevant records. *United States v. Tuma*, 738 F.3d 681, 689 (5th Cir. 2013), while also claiming it will request this Court to order the Government to request information via Mutual Legal

Assistance Treaty ("MLAT") despite its request being uniformly forbidden by appellate courts. If that is the defense's next move, then they should make it by separate motion. For this Motion, this Court should rule that the defense has failed to set forth a basis for relief because it sets forth no basis whatsoever to give this Court cause to believe that the Government is failing to comply with its Rule 16 obligations.

### A.  The State of Israel Is Not an Arm of the Prosecution

The Motion's most foundational misconception is the notion that the State of Israel, a sovereign nation, has acted at the United States' direction and control as an agent of the United States Government or has otherwise partnered with us in investigating the Defendant. *See, e.g.,* [Doc. 74-1 at 6-7] ("The Israeli agencies that seized … the battlefield evidence acted in cooperation with the FBI and the Department of Justice…"). Nothing could be further from the truth, and it bears noting that the defense, despite having received hundreds of thousands of pages of FBI reports and other evidence, has not presented a shred of it to support this claim in filing its Motion.  Rather, the Government did not become aware of the Defendant until May of 2025—approximately a year and a half after the events of October 7, 2023.  [Doc. 1-1 at 16 ¶ 28].

Israel was attacked on October 7, 2023, and some 1,300 of its citizens were massacred.  The government of Israel had every incentive to conduct its own investigation of what happened and who was culpable, has its own legal processes for prosecuting those involved, and is concerned with pursuing its own justice, not ours.

The notion that the prosecution team controls or controlled that investigation, or that Israel's investigation of such a consequential event was on behalf of the prosecution team, is absurd. Like any other investigation involving an international component, the Government is instead at the mercy of the materials that we can get ahold of to build our case.

The reality is that this was not a joint investigation involving Israeli agents working up a case against the Defendant and bringing it to the Department of Justice. Instead, it was an FBI investigation of Al-Muhtadi, a foreign national who the Government alleges participated in the October 7 HAMAS attacks upon Israel, and who, according to the Superseding Indictment, subsequently lied his way into the United States with false representations in his visa application. During the investigation, the FBI sought search warrants from United States district courts, issued grand jury subpoenas, surveilled the defendant, deployed an undercover agent who spent hours with the defendant, and made requests to Israel for information pursuant to treaty. And as with any other investigation, Israel provided the information requested in some instances and not in others.

Assistance from a foreign country does not equate to joining the prosecution team. Indeed, "interacting with the prosecution team, without more, does not make someone a team member." *United States v. Meregildo,* 920 F.Supp.2d 434, 441 (S.D.N.Y. 2013). "Instead, under the totality of the circumstances, the more involved individuals are with the prosecutor, the more likely they are team members. Among many others, these circumstances include whether the individual actively

6

investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy. *Id.* The analysis is case-by-case. *United States v. Antone,* 603 F.2d 566, 570 (5th Cir. 1979).

And even had this been a joint international investigation as the defense suggests (it was not), courts have still refused to read Rule 16 as broadly as the defense does. In *United States v. Mitrovich*, for example, the Seventh Circuit held that the Government had no obligation to produce "technical information about [a] software program that Australia and New Zealand used to identify his computer" in a "sprawling multinational investigation" where those two countries worked with federal agents to identify the defendant. 95 F.4th 1064, 1067 (7th Cir. 2024). As the *Mitrovich* court explained, holding that the Government's Rule 16 obligations extended to foreign state actors "would impose an unrealistic burden" because "[r]equiring U.S. prosecutors to produce all material and responsive documents held by foreign partners would expand their duty to produce beyond their capacity to obtain." *Id.* at 1070. In particular, the court reasoned that applying Rule 16 to this context would require prosecutors "to produce documents that they do not possess, cannot acquire, have not confirmed exist, and—because Rule 16 is triggered by merely a preliminary showing of materiality—may not even matter to the defendant's case." *Id.* (citing *United States v. Thompson,* 944 F.2d 1331, 1341 (7th Cir. 1991)).

The cases the defense cites suggest no different standard and concern American state governments, not foreign actors. Take the Fifth Circuit's seminal *Antone*, cited by the defense to frame its discussion of this case, *see* [Doc. 74-1 at 6].

*Antone* concerned a federal task force that had state officers as part of the team, and the Fifth Circuit there imputed the state's knowledge because the state and federal forces had "pooled their investigative energies to a considerable extent" and the investigation was "marked by the spirit of cooperation." *Id.* at 569. While *Antone* is a significant case cited by other circuits to discuss state-federal prosecution interests, courts that have discussed *Antone*'s reasoning in the foreign sovereigns context have held foreign sovereigns to present precisely the considerations that the *Mitrovich* court highlighted and distinguished the *Antone* facts accordingly. *See United States v. Reyeros*, 537 F.3d 270, 283 (3d Cir. 2008) (Discussing *Antone* then explaining that "[t]he situation in the present case is markedly different. First, and most obviously, it involves a foreign sovereign, which implicates issues that may well make a showing of effective federal control of foreign evidence more sensitive and demanding ...."); *United States v. Esquenazi*, 752 F.3d 912, 933-34 (11th Cir. 2014) (quoting *Antone* while holding that "no court, to our knowledge, has held that information known to an independent foreign government may be imputed to prosecutors in the United States simply when the foreign government cooperates in an investigation.").

The same is true of the defense's other preferred case, *United States v. Risha*, 445 F.3d 298 (3d Cir. 2008), which the defense cites to support its theory. *See Reyeros*, 537 F.3d at 283 (distinguishing *Risha* in the same breath as *Antone* for foreign sovereigns); *United States v. Meza*, No. 15-cr-3175, 2017 U.S. Dist. LEXIS 53973, at *8-9 (S.D. Cal. Apr. 7, 2017) ("While there may indeed be intermingling, the fact that Mexico is conducting its own investigation indicates that it is not acting on the

8

Government's behalf or under the Government's control. Thus, this case is not like *Risha*.").

The same conclusion follows here.  The Defendant's Motion asserts a level of joint action between the United States and the State of Israel that simply did not exist.  First, the investigation into the events of October 7 was initiated by Israel, the target of the attack.  It was not initiated at the behest of the prosecution.  Second, with respect to the Defendant specifically, the FBI conducted the investigation itself, only requesting from Israel information as necessary. Israel, however, neither actively participated in the investigation of the Defendant nor acted under the direction of the prosecution team.  The defense points to cell tower reports supplied by an Israeli cell phone carrier pursuant to a MLAT request and a dialogue posing questions about the report. [74-1 at 7]. But requesting evidence of a commercial cell phone carrier and asking questions about it cannot possibly equate to the State of Israel taking direction from the prosecution.  Nor is agreeing to provide information pursuant to treaty requests the equivalent of joining the prosecution teams.  *Cf.*, *United States v. Adler,* 605 F. Supp. 2d 829, 838 (W.D. Tex. 2009) (an MLAT request does not make a complying foreign government an American agent for Fourth Amendment purposes). Simply stated, the State of Israel, a sovereign nation, does not answer to the prosecution team; is free to deny or condition any material requested through the MLAT process; and does not and cannot craft trial strategy. Israel is plainly not an arm of the prosecution.

### B. Battlefield Documents

The defense uses the Motion to again re-litigate and pre-litigate issues relating to Avi's testimony at trial. The defense continues to misunderstand and mischaracterize the nature of Avi's anticipated testimony, as well as how "central" he is to the case. [74-1 at 10]. Avi's role is to authenticate six battlefield documents and to opine on the meaning of those documents.[2] He is not "conveying an absent analyst's statements" within the meaning of *Smith v. Arizona*, 602 U.S. 779 (2024), as the defense appears to contend, *see* [Doc. 74-1 at 8]. Indeed, in interpreting the six documents, he is not relying on anyone else's analysis other than his own. Nor is he conveying hearsay, as the declarants are co-conspirators whose statements are excluded from the rule against hearsay. *See* Fed. R. Evid. 801(d)(2)(e).

The defense asks for the Government to produce the entire AMSHAT database, with which Avi performs his day-to-day job.[3]  But that request is unfounded for

[2] As to the defense noting that Avi's testimony involved the disclosure of 20 volumes of material in *El-Mezain*, *see* [Doc. 74-1 at 11], this speaks to nothing more than the limited scope of Avi's testimony here compared to there. *El-Mezain* was a terrorist financing case involving, as one would imagine, voluminous financial records and information relating to parties and communities involved, and Avi provided essential analysis there. Here, in contrast, Avi's testimony is limited in scope to the six battlefield documents that are the subject of the Battlefield Motion. In this way, the defense highlighting the contrast in record volume cuts against their position that the Government owes it records, not for it. The simple truth is that Avi plays a more limited role here than he did there.

[3] Aside from matters such as identity that are going to be litigated in CIPA, and as the defense well knows, the Government has produced the information and materials required under Rule 16 as to Avi. Indeed, the Government has gone beyond the Rule 16 requirements where possible as well. In particular, the Government has produced both the transcript of Avi's Daubert hearing in *El-Mezain*, as well as his multi-day testimony in that case. Avi has no publications from the last ten years nor any testimony in the last four years in which he has testified as an excerpt at trial or by deposition.  Fed. R. Crim. P. 16(a)(G)(iii).

numerous reasons. To begin, the Government does not have the database, nor could it, as it is a collection of battlefield evidence to which only authorized individuals within the Israeli government have access. The database was not created for the prosecution, and the prosecution has no access to it or control over it. Even setting aside that this database is not within the Government's control, however, with respect to authentication, Avi is relying on his experience in working with the database as part of his job. Nothing in Rule 901 requires an authenticating witness to produce all documents and items that inform his testimony that an item is what it purports to be.

The defense's argument is akin to suggesting that a witness who testifies that a letter is authentic because she has seen thousands of letters sharing all the same characteristics needs to produce every letter she ever saw so that the defense can hire an expert to look at the thousands of letters and reach a different conclusion. Nothing of the sort is required. The defense will be free to cross-examine Avi about the authenticity of the documents, but he is not required to produce an entire database to testify that six documents are what they purport to be.

Avi will rely on his professional experience to give his opinion on the import of the six documents. That includes his decades of professional experience studying HAMAS and other terrorist organizations. His familiarity with the database is just one aspect of his professional experience. The defense is of course free to retain its own HAMAS expert to interpret the documents. And with respect to Avi's prior testimony, the Government has produced both the transcript of Avi's Daubert hearing

11

in *El-Mezain,* as well as his multi-day testimony in that case. He has no publications from the last ten years nor any testimony in the last four years in which he has testified as an excerpt at trial or by deposition. Fed. R. Crim. P. 16(a)(G)(iii). As it did in *El-Mezain*, the Government intends to provide any negative *Giglio* type information about its witnesses, including witnesses from the Israeli government.

## C. Audio Evidence

As the defense acknowledges, the Government has already produced the phone calls in its possession to the defense. A witness will authenticate them at trial, and a separate witness will testify that the voice on the recording is that of the Defendant. Other issues surrounding the phone calls will be addressed in CIPA.

With respect to the cell phone records, the Cellcom report is a certified business record from a private company kept in the ordinary course of its business reflecting that the Defendant's phone number pinged off a cell tower in Kfar Aza, in Israel. An FBI cell-site expert who reviewed that report will offer his opinion and interpretation. An expert disclosure with respect to that witness is forthcoming and will be provided at the time all expert disclosures from the Government are due. The defense suggests that it should be entitled to probe the methodology and accuracy of Cellcom's cell site collection. It is of course entitled to do that through its own witness from Cellcom (via a letter rogatory from the Court), and through cross-examination of the Government's expert.

12

### D. Remedies Supposedly Available to the Defense

To the extent the defense purports to reserve so-called "alternative relief," [74-1 at 18], it asks this Court to issue orders that have no grounding in law or logic. It contemplates this Court issuing "an order directing the Government to request the materials" under the U.S.-Israel MLAT, but courts have consistently recognized that the MLAT relationship with Israel, however, is not available to the Defendant either by way of the defense asking the Government to submit an MLAT request or asking this Court to compel the Government to do so. *United States v. Sedaghaty*, 728 F.3d 885, 917 (9th Cir. 2013) ("Not only does Seda's claim fail under the express terms of the treaty, the district court had no authority to order the Executive Branch to invoke the treaty process to obtain evidence abroad for a private citizen."). Section 1.4 of the Treaty provides that MLATs "shall not give rise to any right, that does not otherwise exist, on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request,"[4] which courts have understood to mean that defendants have no right or remedy under them.[5] It discusses the issuance of letters rogatory pursuant to 28 U.S.C. § 1781 if it can meet that high bar.

---

[4] *See* Mutual Assistance Legal Treaty with the State of Israel, available at https://www.congress.gov/105/cdoc/tdoc40/CDOC-105tdoc40.pdf (accessed July 17, 2026).

[5] *See, e.g. Sedaghaty,* 728 F.3d at 917 ("The express terms of the MLAT [between the United States and Egypt] preclude [the defendant's] reliance on it as a source of discovery."); *United States v. McLellan,* 959 F.3d 442, 471-76 (1st Cir. 2020) (rejecting Fifth and Sixth Amendment claims that district court erred in declining to order the issuance of an MLAT for the defense); *United States v. Moloney,* 685 F.3d 1, 13 (1st Cir. 2012) ("[T]he US-UK MLAT expressly disclaims the existence of any private rights under the treaty."); *United States v. $734,578.82 in U.S. Currency,* 286 F.3d 641, 659 (3d Cir. 2002) ("[T]he treaty explicitly states that it is not intended to provide a private remedy."); *United Kingdom v. United States,* 238 F.3d 1312, 1317 (11th Cir.

13

## III.    SPECIFIC RESPONSES TO THE MOTION TO COMPEL

Notwithstanding the objections set forth above, the Government addresses the

Motion's specific discovery requests below:

### AS TO PART ONE, [DOC 74-1 AT 8-12]

A.    Defense Request: The complete forensic image, native file, file directory, and hash values within the Government's possession for each of the six exhibits identified in the Government's motion in limine. *See* [74-1 at 9].

Government Response: The Government will address this in its motion filed under Section 4 of the Classified Information Procedures Act ("CIPA"). [6]

B.    Defense Request: The unredacted copies of Exhibits 2 and 3 as it has agreed to provide, and the identities of the declarants of Exhibits 2, 3, and 4 and of the person who compiled the payment ledger, together with the metadata and database cross-references used to attribute the documents to the Defendant.

1.    Unredacted copy of Exhibit 2.

Government Response: Personal identifying information – birthdates, Palestinian ID Numbers, and phone numbers associated with the individuals in question were redacted under standard protocols.  The

---

2001) ("A key feature of the [U.S.-U.K.] MLAT is the requirement that a request for assistance be made, not directly to the courts, but rather between the 'Central Authorities' . . . . There is no provision for private parties, such as individual criminal defendants . . . to request the production of information.").

[6] For this response and all others involving CIPA, the Government notes, as it did during the May 27, status conference, the District Court is the ultimate arbiter on the question of whether the Government must disclose classified information in its possession to the defense.  To determine whether a disclosure is required, the Fifth Circuit has adopted the test set forth in *United States v. Roviaro,* 353 U.S. 53, 62 (1957)), which addressed the Government's privilege to protect the identity of confidential informants.  *United States v. El-Mezain,* 664 F.3d 367, 523 (5th Cir. 2011).  In balancing the defendant's interest in mounting a defense and the Government's interest in protecting classified information, disclosure is required only when the information is both <u>relevant</u> and <u>helpful</u> to the defense.  *Id.* at 520-523.  CIPA provides no means for the Government to withhold information that is helpful to the defense.

Government is in the process of obtaining the needed approvals to provide unredacted copies and expects to produce them to the defense well in advance of the August 4, 2026, hearing.

2. Unredacted copy of Exhibit 3.

   Government Response: The Government's response is the same as for Exhibit 2, *supra*.

3. Identity of declarant of Exhibit 2.

   Government Response: The Government has no further information on this point.

4. Identity of declarant of Exhibit 3.

   Government Response: The Government has no further information on this point.

5. Identity of declarant of Exhibit 4.

   Government Response: The Government has no further information on this point.

6. Identity of the person who compiled the payment ledger.

   Government Response: The Government has no further information on this point.

7. "Metadata and the database cross-references 'Avi' used to attribute the documents."

   Government Response: The Government does not attribute the documents to the Defendant. Rather, the Defendant is identifiable in three documents and the database either through his name, his photograph, his birthdate, and his Palestinian ID number, or a combination of the same. *See* Doc. 45, Exhibits 1 through 4. The Defendant provided the same information in his U.S. visa application and supporting documents. If "attribute" refers to the fact that the documents, database, map, and photograph were gathered from HAMAS laptops, that has been discussed in the expert disclosure filed on May 1, 2026 [Doc. 46], and the memorandum in support of the Government's motion *in limine* also filed on May 1, 2026 [Doc. 45 at 19-

15

22].  Otherwise, this matter will be addressed in the Government's CIPA motion.

C.    Defense Request: The non-identifying curriculum vitae and qualifications, compensation and benefits, institutional-basis materials, methodology and validation materials, prior reports, and a list of prior proceedings of the expert identified as "Avi," reserving the question of the expert's true identity to the CIPA process.

1.  Avi's CV and qualifications.

Government Response: These were addressed in the Government's expert disclosure [Doc. 46, pp. 2-3].  The Government produced the transcript of Avi's testimony in the *El-Mezain* case, including his Daubert testimony, to the defense on June 12, 2026 [FBI-534217 through FBI-535680].

2.  Compensation and benefits.

Government Response: Avi is not being compensated for his expert testimony.  However, the Government will cover his travel, lodging, and a modest *per diem* consistent with Justice Department policies for witnesses.

3.  Institutional-bias materials.

Government Response: The Government has no such information in its possession.

4.  Methodology and validation materials.

Government Response: This point is addressed in the Government's expert notice.  [Doc. 46].

5.  Prior reports.

Government Response: This is addressed on page three of the Government's expert notice. [Doc. 46].

6.  List of prior proceedings.

Government Response: The Government has identified the trial, in 2007 and 2008, in which Avi previously testified and has further provided a transcript of his testimony.  Other than that, Avi has not testified in any

16

case in the last four years as an expert at trial or by deposition. Fed. R. Crim. P. 16(a)(G)(iii).

7. "Intelligence abuse or evidence manipulation."

Government Response: The Government is aware of no such information and has none in its possession.

D. Defense Request: AMSHAT protocols, the chain-of-custody records for each device, the identity of the AMSHAT analyst who processed each device, and the Israeli authorization for each seizure, or state that nothing further exists.

Government Response: The Government will address this in its CIPA 4 motion.

E. Defense Request: Search the sources within its reach, including materials known to Israeli agencies acting on its behalf, for any material reflecting doubt about, or tending to show the fabrication, alteration, or unreliability of, any of the six exhibits.

Government Response: The Government has no such information in its possession and categorically rejects any suggestion that this prosecution is based on fabricated or altered evidence.

## AS TO PART TWO, [DOC. 74-1 AT 13-17]

A. Defense Request: State whether the six produced recordings are the complete set of communications collected for the relevant identifiers or a selection, identify who made any selection, produce or preserve the remainder within its possession, and disclose any communication in which the defendant was not identified or was affirmatively excluded as a participant.

Government Response: The Government will address this in a classified, *ex parte* motion filed under Section 4 of CIPA.

B. Defense Request: Produce for each recording, the original native file, hash values, any record of editing, a complete chain-of-custody within its possession, and the legal authority for the interception of each call, and produce the promised FBI 302 on a date certain.

17

Government Response: Other than the 302 for "Maya," which will be produced before the hearing scheduled for August 4, 2026, the Government will address this in its CIPA motion.

C.    Defense Request: Produce the unredacted engineer's report, the items the report identifies as the bases for the opinion, and description of the automated process by which the records were produced.

   1. Unredacted engineer's report.

      Government Response: There are no substantive redactions to the engineer's report, other than the name of an Israeli official who tendered the report to the United States Government for use in this case.

   2. Items the report identifies as the bases for the opinion.

      Government Response: The Government has produced the report and has nothing else in its possession on this point.

   3. Description of the automated process by which the records were produced.

      Government Response: The Government has produced the report and has nothing else in its possession on this point.

D.    Defense Request: Produce the Cellcom and Jawwal roaming, registration, coverage, propagation, and network-engineering records material to the cross-border location question.

      Government Response: Other than the report and data already produced, the Government has no such information in its possession.

E.    Defense Request: Favorable location evidence and any fabrication evidence.

      Government Response: The Government has no "favorable location evidence" contradicting what has already been produced in discovery. The Government categorically rejects the suggestion that this case is based on fabricated evidence, and the defense has no basis to lodge such an allegation.

18

## IV.  CONCLUSION

For the reasons stated, the United States respectfully submits that this Court should deny the Defendant's Motion to Compel and that no evidentiary hearing is necessary.

Dated: July 17, 2026                    Respectfully submitted,

                                        ZACHARY A. KELLER
                                        UNITED STATES ATTORNEY

                            By:    _/s/ John W. Nickel_____
                                        ZACHARY A. KELLER
                                        JOHN W. NICKEL
                                        U.S. Attorney's Office – WDLA
                                        Special Bar No. 803262 (Keller)
                                        LA Bar No. 37819 (Nickel)
                                        800 Lafayette Street, Suite 2200
                                        Lafayette, Louisiana 70501
                                        Tel: (337) 262-6618
                                        Email: Zachary.keller@usdoj.gov

                                        ELIZABETH J. SHAPIRO
                                        D.C. Bar No. 418925
                                        U.S. Department of Justice
                                        1100 L Street NW
                                        Washington, DC 20005
                                        Phone: (202) 514-5302
                                        Email: Elizabeth.Shapiro@usdoj.gov

                                        D. ANDREW SIGLER
                                        Ala. Bar No. 5175-I72D
                                        Trial Attorney, Counterterrorism Section
                                        U.S. Department of Justice
                                        950 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20530
                                        Phone: 202-514-0849
                                        Email: Andrew.sigler@usdoj.gov

19

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 17, 2026, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

/s/ *John W. Nickel*
John W. Nickel
Assistant United States Attorney

20