UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

UNITED STATES OF AMERICA                    CRIMINAL NO. 25-00285-1

VERSUS                                      JUDGE JOSEPH

MAHMOUD AMIN YA'QUB AL-MUHTADI              MAGISTRATE JUDGE
                                            WHITEHURST

### DEFENDANT'S REPLY IN SUPPORT OF
### OMNIBUS MOTION TO COMPEL SPECIFIC DISCOVERY

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who respectfully submits this reply in support of his omnibus motion to compel specific discovery.

The Court directed this reply to clarify which discovery issues remain live after the government's response. [Doc. 82]. The stakes are concrete: the government's own bill of particulars ties the death-results enhancement to the deaths in Kfar Aza, the region its cell-site evidence places the defendant's phone. [Doc. 85 at 3]. The response follows one pattern. The government has produced the evidence that inculpates, the six calls in its complaint, the six battlefield exhibits, and the Cellcom record placing the phone near Kfar Aza. But it has deferred to CIPA, or disclaimed possession of, nearly everything that would let the defense test or rebut those pieces. The withheld foundation and the missing communications are what remain live.

The government does not dispute the governing Rule 16, *Brady v. Maryland*,

1

373 U.S. 83 (1963), and Confrontation Clause standards, or the materiality of what the defendant seeks. Its response rests on one premise, that the State of Israel is not an arm of the prosecution, and otherwise on CIPA and its lack of present possession. This reply answers that premise first, then sorts the remaining categories into what is resolved, what is live for the August 4 hearing, and what the government defers to CIPA.

## I.     The categories now before the Court

Several categories are resolved and no longer require the Court's attention. The government has addressed the expert Avi's curriculum vitae, compensation, methodology, prior reports, and prior proceedings in its expert notice, [Doc. 46], and it has produced the transcripts of his prior testimony, FBI-534217 through 535680. It has now produced the FBI 302 memorializing the interview of the witness "Maya." FBI-535725. The defendant treats these as resolved.

Several categories remain genuinely contested, and each can be resolved only on the record the August 4 hearing will build, because each turns on what the government obtained from Israel and what remains within its reach. They are the completeness of the intercepted communications; the continuing redaction of the battlefield exhibits; the foundation and chain of custody for the exhibits, the recordings, and the cell-site attribution the government will introduce; the identities of the declarants and interlocutors whose statements the government will offer; and the cross-sovereign possession question underlying them. The government never

provided the foreign-custody accounting both requests required. [Doc. 47 § III; Doc. 70 § IV]. That accounting is what the ordered agent testimony should supply.

The government has deferred the remaining categories to its CIPA litigation: the forensic images and native device data; the AMSHAT protocols, chain-of-custody records, analyst identity, and seizure authorizations; the expert's true identity; part of the database metadata; and the classified portion of the recordings' foundation. The defendant does not fight that process. For each deferred category he specifically requests the materials and preserves his entitlement.

A request-by-request schedule sorts every item into these categories, notes those only partly resolved, and is attached as Revised Exhibit A as a category-by-category guide for the Court.

## II.    The foundation for the evidence the government possesses and will use is within its control

The government is right on the narrow point its arm-of-the-prosecution argument makes: a foreign government's knowledge is not imputed to federal prosecutors merely because it cooperated. The Third Circuit held that the government need not "obtain and produce documents that the government had never seen and that were in the possession of a foreign sovereign." *United States v. Reyeros*, 537 F.3d 270, 279 (3d Cir. 2008). The Eleventh Circuit held that no court has imputed "information known to an independent foreign government . . . simply when the foreign government cooperates." *United States v. Esquenazi*, 752 F.3d 912, 933-34 (11th Cir. 2014). And the Seventh Circuit declined to require production of documents

3

prosecutors "do not possess, cannot acquire, [and] have not confirmed exist." *United States v. Mitrovich*, 95 F.4th 1064, 1070 (7th Cir. 2024). The defendant accepts these holdings.

But those authorities do not decide this dispute because each concerns material the United States did not possess. *Mitrovich* states the governing rule: the Rule 16 duty "extends to all qualifying documents within the 'possession, custody, or control' of any component of the U.S. federal government—but not beyond." *Id.* One category falls on the near side of that line: the evidence the government has obtained, possesses, and will introduce, the six exhibits, the six recordings, and the Cellcom report, with the native files, metadata, and hash values of those items. Because that evidence is in the government's hands, no imputation is required. A prosecutor cannot leave evidence "to repose in the hands of another agency while utilizing his access to it in preparing his case for trial," which places it "plainly within his Rule 16 'control.'" *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977). That principle turns on access and use, whatever the nationality of the agency that first held the evidence, and it reaches whatever any United States component has reviewed or accessed, in any form. The government is right that *United States v. Antone*, 603 F.2d 566, 569-70 (5th Cir. 1979), and *United States v. Risha*, 445 F.3d 298 (3d Cir. 2006), were state-federal cases; the defendant cites them, and *Trevino*, only for evidence the government possesses, and does not rely on them to impute foreign-held material.

The foundation that may remain with Israel or the carrier is different: the

4

AMSHAT processing and chain-of-custody logs, the analyst's identity, the seizure authorizations, and the engineer's underlying data. The defendant cannot claim at this time that the U.S. government holds those materials. He relies instead on the favorable-evidence duty of *Kyles*, which reaches evidence known to those acting on the government's behalf. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Here the record shows the connection that mere cooperation lacks: the government "made requests to Israel . . . pursuant to treaty" and received information "in some instances and not in others," [Doc. 82 at 6]; obtained the cell-site evidence "pursuant to a MLAT request"; and engaged in "a dialogue posing questions about the report." [Doc. 82 at 9]. Under the totality test the government invokes, that bears on whether those holding responsive material act on its behalf. *United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013); *see Kyles*, 514 U.S. at 437. The government's reliance on *United States v. Meza*, No. 15-cr-3175, 2017 U.S. Dist. LEXIS 53973 (S.D. Cal. Apr. 7, 2017), is misplaced for the same reason, because it too concerned a foreign sovereign's separate investigation of material the United States did not hold.[1]

The defendant does not ask the Court to resolve the control question on the papers. He asks that the August 4 hearing, and the foreign-custody accounting the

---

[1] The concern the defense presses has drawn attention in the analogous context of corporate internal investigations, which permit the government to select what information to demand from a private investigation and thereby leave exculpatory information in private hands, undetected by and inaccessible to the defense. *See* Sarah Patterson, Note, *Co-opted Cooperators: Corporate Internal Investigations and Brady v. Maryland*, 2021 Colum. Bus. L. Rev. 417, 421 (2021). The same concern arises when the government relies on a foreign sovereign to gather and screen the evidence it will use at trial while treating the exculpatory remainder as beyond its reach.

government still owes under Doc. 47 § III and Doc. 70 § IV, establish what the government requested from Israel, what Israel refused, and what remains within its reach.

### III.    The government has produced only the calls that appear in its complaint

The government produced six recordings, the six calls cited in its complaint, and represents that it turned over "all audio recordings in its possession." Gov't Second Disc. Resp. (July 6, 2026) [Doc. 74-4]. Those six are calls at 8:12, 8:42, 8:55, 9:07, 9:10, and 9:33 a.m. on October 7, 2023. The government's own productions show that the six are a selection from a far larger set.

The government has now produced the FBI 302 memorializing its interview of the Israeli Security Agency witness "Maya.[2]" FBI-535725. That document, produced in ordinary discovery, establishes three facts the government had not previously disclosed. Israel monitored the defendant's telephone lines (and presumably many of the Palestinian citizens living in Gaza) as early as August 2023. There were "a combined 50 records across both of al-Muhtadi's phone lines on October 7, 2023" alone. And "the listeners in [Maya's] branch filtered the calls and provided six to [Maya] for accuracy review." FBI-535725. The six are therefore, by the government's own account, a curated subset of a collection that began months before October 7 and numbered some fifty records that day.

Two other productions point the same way. The Cellcom engineer's report, FBI-

---

[2] "Maya" is a pseudonym.

464246, rests in part on a 9:49 a.m. communication it describes as a telephone call and on a call placed between 10:00 and 10:01 a.m. lasting thirty-nine seconds, neither of which is among the six produced calls (the last of which is at 9:33 a.m.). The Israeli National Police records, FBI-463126, reflect communications for the relevant identifiers from before October 7, 2023, confirming activity well beyond the six calls the government selected. No government report purports to catalog the defendant's communications from October 7 through October 14; that window is the period for which the defense requested the complete set, because a communication across that week in which the defendant is absent or excluded is where exculpatory evidence would appear.

The defendant thus has good cause to believe the six are not the complete set. A communication in which he does not appear, or from which he is excluded, is favorable by its nature, and it is exactly what a set filtered to the calls in the complaint would omit. Such communications must be disclosed, *Brady*, 373 U.S. at 87, and the government, which alone knows what it collected, must gauge and disclose them. *Kyles*, 514 U.S. at 437.

The Second Request sought a statement whether the six are the complete set or a selection and who made it, [Doc. 70, Request 9], and disclosure of any communication in which the defendant was excluded or that is inconsistent with the attribution, [Doc. 70, Request 10]. The government answers neither and defers both to "a classified, ex parte motion filed under Section 4 of CIPA." [Doc. 82 at 17]. But

7

the completeness question is not classified, as Part VII explains, and the Maya interview, produced in ordinary discovery, proves the point.

The defendant asks the Court to direct the government to state whether the six are the complete set or a selection and who made it; to state whether recordings of the 9:49 and 10:00 a.m. communications its own report describes exist and are obtainable; to produce the capture information, metadata, and chain of custody for the six; to disclose any communication in which the defendant was excluded; and to state whether it asked Israel for recordings beyond the six, on what terms, and with what result, which is not the work product Rule 16(a)(2) protects. He also asks the Court to direct the government to state whether any United States component participated in the collection, targeting, interception, or acquisition of the October 7 communications. The agent testimony the Court has ordered should establish whether the government asked Israel for records beyond the six, what Israel provided, and what it withheld.

## IV.    The battlefield exhibits remain redacted in the fields needed to identify potential witnesses

The government promised unredacted copies of the battlefield document exhibits before the hearing, [Doc. 82 at 14-15], but its productions do not satisfy the requests. The new native Exhibit 1 spreadsheet, FBI-535688, still redacts the "ID Number," "Cell Phone Number," and "Government Employee" columns, the very fields needed to identify and locate the individuals listed. [Doc. 47, Request 10]. The new Exhibit 3 versions, FBI-535682 and FBI-535689, make other individuals'

8

photographs visible but still redact identification numbers, dates of birth, and telephone numbers. [Doc. 47, Requests 5, 7]. No new copy of Exhibit 2 has been produced.

The government's redaction of "birthdates, Palestinian ID Numbers, and phone numbers," [Doc. 82 at 14], does not justify withholding them from the defense, because a protective order governs this case and permits disclosure of exactly this information to counsel. [Doc. 34]. Any independent safety or privacy interest of the third parties named can be met by producing the identifying fields to counsel under that order. The information is material: the government attributes the exhibits, and the charged conduct, to the defendant, and he is entitled to investigate that attribution, including by identifying the individuals named and testing the methodology by which the government connected the documents to him. Rule 16(a)(1)(E). This content is unclassified, distinct from the full forensic device image the government has placed on the CIPA track. The agent testimony should establish what the government holds in unredacted form and what it has sought from Israel.

## V. The government cannot offer statements as co-conspirator statements while withholding the declarants' and interlocutors' identities

The identities and foundation for the declarants of the documents and the interlocutors on the calls are material under Rule 16(a)(1)(E) and bear on the bias and credibility of the persons whose statements the government will offer, which is *Brady* and *Giglio* material. *Giglio v. United States*, 405 U.S. 150 (1972). Their materiality is heightened by the government's decision, confirmed in its bill of

9

particulars, to offer the documents and the October 7 calls as co-conspirator statements. [Doc. 85 at 4]. To admit those statements the government must establish that a conspiracy existed and that the declarant and the defendant were members of it, *Bourjaily v. United States*, 483 U.S. 171, 175 (1987), and the defense cannot assess that predicate, or the declarants' bias and credibility, without knowing who they are. Yet the government says it "has no further information" on the declarants, [Doc. 82 at 15], and defers the interlocutors' identities to CIPA, [Doc. 85 at 4], while relying on their statements. To the extent its expert conveys the declarants' statements for their truth, the Confrontation Clause applies, *Smith v. Arizona*, 602 U.S. 779 (2024), and Rule 806 independently permits the defense to impeach each non-testifying declarant with any evidence that would be admissible had the declarant testified. Fed. R. Evid. 806. The defendant seeks these identities as discovery and preserves his entitlement as to any that are classified. The agent testimony should establish what identifying information the government received from Israel about the declarants and interlocutors.

## VI.  The reliability foundation for the cell-site attribution is material to the government's own theory

The government produced the Cellcom report "reflecting that the Defendant's phone number pinged off a cell tower in Kfar Aza" and says it has "nothing else in its possession" as to the bases for that opinion. [Doc. 82 at 12, 18]. Its bill of particulars shows why the reliability of that attribution matters: its death-results theory rests on "the deaths that occurred in Kfar Aza," where it will call "a witness who will testify

10

to 64 deaths." [Doc. 85 at 3]. The bases of the attribution are therefore material under Rule 16(a)(1)(E), and the government's own "dialogue posing questions about the report" suggests it holds materials concerning the report beyond the report itself, which it should be required to identify. [Doc. 82 at 9]. The defendant seeks the bases in the government's possession, meaning the data the engineer transmitted and anything generated in that dialogue, and he asks that the carrier records be preserved; he does not seek the carrier's proprietary data or the not-yet-due cell-site expert disclosure. The agent testimony should establish what the government requested concerning the report and what it received.

## VII. The unclassified foundation cannot be withheld under a CIPA label the government has disclaimed

For the CIPA-deferred categories, the defendant does not fight the process or seek to compel classified information here, and he preserves his entitlement. He accepts that any ultimate disclosure is governed by the balancing this Circuit drew from *Roviaro v. United States*, 353 U.S. 53 (1957), and applied in *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011). [Doc. 82 at 14 n.6]. The government represents there is "no classified discovery in this case," only "classified documents that will be addressed in CIPA litigation." Gov't Second Disc. Resp. (July 6, 2026) [Doc. 74-4]. Whether it in fact possesses classified discovery cannot be settled by its own characterization; that is determined only after the Court reviews the materials submitted in a Section 4 application and measures them against the defendant's showing of materiality. The unclassified foundation, the native files and hash values,

11

the chain of custody, the interception authority, the exhibits' identifying fields, and the data behind the Cellcom opinion, does not become classified because the government routes it to the CIPA track.

Because the government proposes to resolve the completeness and related questions through a classified, ex parte motion under Section 4, the defendant will submit, ex parte, a statement of the defense theory and the materiality of the categories at issue, and to be heard ex parte in connection with any such application, so that the Court may meaningfully assess materiality in conducting its Section 4 review.

## VIII.   Preservation and reserved relief

The defendant asks the Court to order the government to preserve all responsive materials, whether in its possession or within the reach of the treaty process; that request imposes no disclosure burden. He reserves the further procedures the requests describe, letters rogatory under 28 U.S.C. § 1781 and Rule 15 depositions, for a later motion on a proper showing, and he does not ask the Court to order a Mutual Legal Assistance Treaty request.

## IX.   Conclusion

For these reasons, and as detailed in the attached schedule, the defendant asks the Court to direct the government to account for the completeness of the recorded calls and disclose any communication from which he was excluded; produce the unredacted exhibits and their identifying fields under the protective order; compel

12

the foundation and chain of custody for the evidence within its control and the identities of the declarants and interlocutors whose statements it will offer; compel the bases of the Cellcom opinion in its possession; establish at the August 4 hearing how it obtained the Israeli evidence; preserve all responsive materials; and confirm that the defendant's CIPA entitlement is preserved.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY:    *s/ Dustin C. Talbot*
       DUSTIN C. TALBOT
       First Assistant / Appellate Chief

       *s/ Aaron A. Adams*
       AARON A. ADAMS
       Assistant Federal Public Defender
       Federal Public Defender's Office
       Middle and Western Districts of Louisiana
       102 Versailles Boulevard, Suite 816
       Lafayette, Louisiana 70501
       Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 28, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*

13