UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285-01
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**USA'S MOTION *IN LIMINE* TO PERMIT VARIOUS FORMS OF EVIDENCE AT TRIAL**

In compliance with Local Rule 7.1, the Government respectfully submits the following table of contents and table of authorities as to this Motion, which respectfully asks this Court to permit various forms of evidence at trial.

**TABLE OF CONTENTS**


I. Relevant Background ........ 2

II. Legal Standard ........ 4

III. Argument ........ 6

A. *The Court Should Permit Testimony from 10/7 Victims Because It is Tailored to Areas Tied to the Defendant and Proves the Conspirators' Crimes and that Death Resulted* ........ 7

*B. The Court Should Permit Videos Depicting Violence that Occurred on 10/7 Because They Are Necessary to Proving the Material Support Charges.* ........ 9

*C. The Court Should Permit Propaganda Materials and Other Publicly Available Content from DFLP, NRB, and HAMAS Leadership During and After 10/7 Claiming Responsibility Because They are Co-Conspirator Statements, Statements Against Interest, Serve Nonhearsay Purposes, and are Permissible for Expert Analysis.* ........ 12

*D. Evidence of the Defendant's Support for and Belonging to the NRB in the Years Before and After 10/7 is Probative of Motive, Knowledge, and Intent and is Necessary Context.* ........ 14

*E. Testimony of Expert Witness Bruce Hoffman As Detailed in Expert Notice Lies Squarely Within Permissible Expert Testimony in Material Support Cases.* ........ 16

*F. Evidence Showing the Defendant Wielding and Possessing Firearms, Munitions, and Other Explosive Devices is Probative of Opportunity, Knowledge, Motive, and Intent.* ........ 17

*G. Evidence pertaining to A.F.A.J.—the Defendant's Facebook Friend Captured on Video Killing a Person at Nahal Oz During the October 7 Attack While Wearing NRB Insignia—is Evidence of Death Resulting from the Defendant's Conspiratorial Acts.* ........ 20

H. *Actions Taken by the Defendant's Wife, Nieama Al-Ghazzawi, in Furtherance of Their Perpetrating Visa Fraud by Lying on the Defendant's Visa Application Paperwork is Admissible to Prove the Defendant's Guilt.* ..... 22

I. *Materials on the Defendant's Wife's Smartphone and Email Account Depicting NRB Insignia, Including a Photo of the Defendant's Child Wearing NRB Insignia are Admissible to Prove the Defendant's Material Support and Visa Fraud.* ..... 23

J. *FBI Agents Explaining the Meaning of Palestinian Slang is Permissible Lay Testimony.* ..... 24

IV. Conclusion ..... 25

**TABLE OF AUTHORITIES**

**CASES**

*Davis v. United States*, 409 F.2d 1095 (5th Cir. 1969) ..... 23, 24
*Hicks-Fields v. Harris Cty.*, 860 F.3d 803 (5th Cir. 2017) ..... 5
*Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735 (5th Cir. 2020) ..... 5
*Old Chief v. United States*, 519 U.S. 172 (1997) ..... 8, 12
*Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) ..... 7, 18
*United States v. Abukhatallah*, 41 F.4th 608 (D.C. Cir. 2022) ..... 22
*United States v. Ahmed*, 107 F. Supp. 3d 1002 (D. Minn. 2015) ..... 15, 19
*United States v. Akins*, 746 F.3d 590 (5th Cir. 2014) ..... 26
*United States v. Albertelli*, 687 F.3d 439 (1st Cir. 2012) ..... 26
*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) ..... 9
*United States v. Baptiste*, 264 F.3d 578 (5th Cir. 2001) ..... 8
*United States v. Baptiste*, 309 F.3d 274 (5th Cir. 2002) ..... 8
*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) ..... 6
*United States v. Cabello*, 33 F.4th 281 (5th Cir. 2022) ..... 25
*United States v. Caldwell*, 586 F.3d 338 (5th Cir. 2009) ..... 10, 12
*United States v. Cardenas*, 9 F.3d 1139 (5th Cir. 1993) ..... 22
*United States v. Carpenter*, 117 F.4th 841 (6th Cir. 2025) ..... 6
*United States v. Castilla*, 20 F.3d 600 (5th Cir. 1994) ..... 22
*United States v. Covelli*, 738 F.2d 847 (7th Cir. 1984) ..... 19
*United States v. Curtis*, 635 F.3d 704 (5th Cir. 2011) ..... 6, 12
*United States v. Elhuzayel*, 807 F. App'x 621 (9th Cir. 2020) ..... 15
*United States v. El-Mezain,* 664 F.3d 467 (5th Cir. 2011) ..... 7, 11, 15, 18, 26
*United States v. Elsheikh*, 598 F. Supp. 3d 363 (E.D. Va. 2022), *aff'd*, 103 F.4th 1006 (4th Cir. 2024) ..... 13
*United States v. Farah*, 107 F. Supp. 3d 996 (D. Minn. 2015) ..... 22
*United States v. Fields*, 483 F.3d 313 (5th Cir. 2007) ..... 10
*United States v. Fischel*, 686 F.2d 1082 (5th Cir. 1982) ..... 23
*United States v. Flores*, 640 F.3d 638 (5th Cir. 2011) ..... 24
*United States v. Gallo*, 927 F.2d 815 (5th Cir. 1991) ..... 21

*United States v. Ghayth*, 709 F. App'x 718 (2d Cir. 2017) .................................................. 13, 14
*United States v. Gonzalez*, 328 F.3d 755 (5th Cir. 2003) ........................................................... 15
*United States v. Hammoud*, 381 F.3d 316 (4th Cir. 2004)........................................................... 14
*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ....................................................... 15, 22
*United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011) ........................................................ 26
*United States v. Jennings*, 527 F.2d 862 (5th Cir.1976)............................................................. 22
*United States v. Jones*, 664 F.3d 966 (5th Cir. 2011) ................................................................... 5
*United States v. Juarez*, 866 F.3d 622 (5th Cir. 2017)................................................................... 6
*United States v. Kandic*, No. 17-449, 2022 U.S. Dist. LEXIS 77439 (E.D.N.Y. Apr. 28, 2022) 14
*United States v. Kassir*, No. 04-cr-356, 2009 U.S. Dist. LEXIS 28837 (S.D.N.Y. Apr. 2, 2009) 18
*United States v. Krezdorn*, 639 F.2d 1327 (5th Cir. 1981) ......................................................... 22
*United States v. Lampley*, 781 F. App'x 282 (5th Cir. 2019) ............................................... 10, 12
*United States v. Lugo-Lopez*, 833 F.3d 453 (5th Cir. 2016) ............................................. 5, 15, 19
*United States v. Magee*, 821 F.2d 234 (5th Cir. 1987) ................................................................ 21
*United States v. Miranda*, 248 F.3d 434 (5th Cir. 2001) ............................................................. 26
*United States v. Mohamed Ibrahim Ahmed*, No. 20-40713, 2022 U.S. App. LEXIS 31437 (5th Cir. Nov. 14, 2022)................................................................................................................... 16
*United States v. Mohamed*, No. 19-02162, 2024 U.S. Dist. LEXIS 134038 (D. Ariz. Jul. 30, 2024)...................................................................................................................... 11, 15
*United States v. Morano*, 697 F.2d 923 (11th Cir. 1983) ............................................................ 22
*United States v. Old Chief*, 519 U.S. 172 (1997)........................................................................... 5
*United States v. Omar*, 786 F.3d 1104 (8th Cir. 2015)................................................................. 14
*United States v. Perry*, 35 F.4th 293 (5th Cir. 2022)............................................................... 8, 11
*United States v. Powers*, 168 F.3d 741 (5th Cir. 1999) ............................................................ 6, 12
*United States v. Pugh*, 162 F. Supp. 3d 97 (E.D.N.Y. 2016)......................................................... 7
*United States v. Quintanilla*, 114 F.4th 453 (5th Cir. 2024)........................................................... 5
*United States v. Rahim*, No. 17-0169, 2019 U.S. Dist. LEXIS 70683 (N.D. Tex. Apr. 26, 2019)16
*United States v. Ravich*, 421 F.2d 1196, 1204 (2d Cir. 1970), *cert. denied*, 400 U.S. 834 (1970)19
*United States v. Righter*, No. 24-2955, 2025 U.S. App. LEXIS 33267 (3d Cir. Dec. 19, 2025).. 19
*United States v. Saipov*, No. 17-722, 2023 U.S. Dist. LEXIS 93114 (S.D.N.Y. May 23, 2023) . 14
*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998)................................................................. 15
*United States v. Smith*, 584 F.2d 731 (5th Cir. 1978) .................................................................. 25
*United States v. Velasquez*, 881 F.3d 314 (5th Cir. 2018) ........................................................ 6, 8
*United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999) ........................................................... 16
*United States v. Virgen-Moreno*, 265 F.3d 276 (5th Cir. 2001) .................................................. 22
*United States v. Vosper*, 493 F.2d 433 (5th Cir. 1974)................................................................ 19
*United States v. Woods*, 613 F.2d 629 (6th Cir. 1980) ................................................................ 19
*United States v. Zheng Xiao Yi*, 460 F.3d 623 (5th Cir. 2006) ..................................................... 5

**STATUTES**

18 U.S.C. § 2339B ........ 10, 13, 26

**OTHER AUTHORITIES**

Fifth Circuit Pattern Jury Instruction 2.04 ........ 27

**RULES**

Fed. R. Evid. 402 ........ 5
Fed. R. Evid. 403 ........ 7, 9, 14
Fed. R. Evid. 404 ........ 6
Fed. R. Evid. 404(b) ........ 6
Fed. R. Evid. 404(b)(1) ........ 6
Fed. R. Evid. 404(b)(2) ........ 6
Fed. R. Evid. 902(11) ........ 11, 12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**USA'S MOTION *IN LIMINE* TO PERMIT VARIOUS FORMS OF EVIDENCE AT TRIAL**

Nearly a year after the Defendant helped perpetrate the October 7 terrorist attack,[1] and one week after the Defendant entered the United States in September 2024, an associate wrote him: "you are now under surveillance for everything." The Defendant responded, "It's no problem. I was thinking the same way." When the associate replied, "My advice: do not publish anything," the Defendant wrote, "here no one puts his nose in other people's business." And the Defendant was careful indeed: he wrote and said nothing about 10/7 that he could have known to be recorded.

The FBI caught up to the Defendant despite his great care, generating evidence that proves beyond a reasonable doubt that he perpetrated the crimes for which he stands trial in January 2027. This Motion concerns much of that evidence, explaining the Government's case-in-chief and moving the Court to enter a pre-trial order permitting it to present the following forms of evidence:

1. Testimony from witnesses who personally experienced 10/7 in Kfar Aza and Nachal Oz;
2. Videos of 10/7 unfolding that occurred in and around Kfar Aza and Nachal Oz;
3. Propaganda materials containing recorded statements and writings on social media and Telegram during and after 10/7 made by the leadership of groups at issue in this trial;
4. Evidence from the years before and after 10/7 showing the Defendant's sympathy with and

[1] For brevity, this Motion will refer to the October 7 terrorist attack in Israel as "10/7."

membership in a Palestinian militia group that participated in 10/7;

5. Testimony of expert witness Bruce Hoffman as described in his expert notice;

6. Evidence from before and after 10/7 showing the Defendant wielding and possessing firearms, munitions, and explosive devices;

7. Evidence pertaining to the Defendant's co-conspirator and Facebook friend "A.F.A.J.," who was captured on video killing a person during 10/7;

8. Actions taken by the Defendant's wife, Nieama Al-Ghazzawi, in perpetrating visa fraud alongside the Defendant;

9. Materials contained on Al-Ghazzawi's smartphone and email account depicting NRB insignia, including a photo of the Defendant's child wearing NRB insignia.

10. Testimony from an FBI undercover agent (the "FBI UC") as to the meaning of Palestinian slang and other words the Defendant uses in phone calls and recorded conversations based on the FBI UC's training and experience as well as upbringing in and near Palestine.

For the reasons set forth below, the Government respectfully submits that this evidence is relevant, not unduly prejudicial, and otherwise admissible to prove the Defendant's guilt. For those reasons, this Motion asks the Court to enter an order permitting these forms of evidence at trial.

## I. RELEVANT BACKGROUND

In preparing for this January trial, the Government makes no secret of its case-in-chief. While specific exhibits and some witnesses may change, the nature of the testimony we anticipate presenting is straightforward and falls into three general categories. First, the Government will call victims from 10/7 who witnessed the violence in Kfar Aza and Nachal Oz, the two kibbutzim[2] near the cellular tower that connected to the Defendant's phone that morning and near the breach in the border through which the Defendant entered Israel. Second, the Government will call witnesses who will give further context to the 10/7 attack, including expert witness Bruce

[2] "Kibbutzim" are rural, typically agrarian Israeli communities where the labor, property and other resources are held communally.

Hoffman, a witness from the Middle East Media Research Institute ("MEMRI") who will authenticate and explain video footage, and two Israel Security Agency ("ISA") employees, "Avi" and "Maya." Third, the Government will call a variety of federal agents and employees to testify about evidence generated from the FBI's investigation, including a case agent assigned to the investigation; a Customs and Border Protection ("CBP") officer who conducted a secondary inspection of the Defendant at Dallas-Fort Worth International Airport ("DFW"); witnesses from the Department of State ("DoS") and the United States Citizenship and Immigration Services ("USCIS") to explain the visa application process; an FBI undercover agent (the "FBI UC") who engaged with the Defendant in Lafayette, Louisiana; and an FBI linguist to attest to accurate Arabic to English translations of the evidence that FBI has collected during its investigation.

The Government's theory of the case is likewise clear. The evidence we present through these witnesses will show that the Defendant belonged to a Palestinian paramilitary organization called the "National Resistance Brigades" ("NRB"), which was a militant subgroup of the Democratic Front for the Liberation of Palestine ("DFLP"). From there, we will prove that NRB not only associated with HAMAS but also materially contributed to 10/7 through its members like the Defendant, who crossed into Israel through breaches in the fenceline separating Gaza from Israeli kibbutzim like Kfar Aza and Nachal Oz. We will show that 10/7 perpetrators included men wearing NRB and DFLP insignia and regalia and that video evidence of the attacks alongside other evidence shows one perpetrator who was not only an NRB member but an associate of the Defendant. As to the Defendant himself, intercepted phone calls and cell site evidence will prove that he heard HAMAS's call to arms and answered that call, reaching out to his comrades to gather firearms and cross over the border to contribute to HAMAS's mission on 10/7 of slaughtering Israelis. The evidence will show that the Defendant then fled Gaza to Egypt in the months after

10/7 with his U.S. citizen wife, Al-Ghazzawi, who worked with the Defendant to secure a U.S. visa by lying on the application and then lying to a DoS employee. From there, the Defendant flew through DFW to first settle in Tulsa, Oklahoma, before relocating to Lafayette. In Lafayette, the FBI UC engaged with the Defendant and discussed his activities in Gaza, among other things, before the FBI arrested the Defendant on the charges he faces here, with law enforcement searching the Defendant's residence at the time of arrest. Through these many months of investigating, law enforcement also secured warrants and issued subpoenas for a variety of records that include email accounts and social media accounts belonging to the Defendant and his wife. This evidence will show that the Defendant conspired to and substantively materially supported HAMAS on 10/7, lied about that on his visa application, and then lied again to the Department of State in an interview reaffirming his application statements.

## II. Legal Standard

It's well established that "the prosecution is entitled to prove its case by evidence of its own choice." *United States v. Old Chief*, 519 U.S. 172, 186 (1997). Of course, that essential principle is mediated by the Federal Rules of Evidence ("FRE"), which presents three other primary considerations that define whether authenticated evidence is admissible.

First, only relevant evidence is admissible, with irrelevant evidence not. FRE 402. On this front, "[e]vidence is relevant if it tends to prove the point or fact for which it is offered (probative worth) and if the point or fact counts in the case (materiality)," *United States v. Jones*, 664 F.3d 966, 975 (5th Cir. 2011), and the Fifth Circuit has repeatedly recognized that "[t]he bar for relevance is low," *United States v. Quintanilla*, 114 F.4th 453, 474 (5th Cir. 2024); *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 809 (5th Cir. 2017) ("the bar is low"); *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 741 (5th Cir. 2020) ("they cleared the low bar for relevance").

Second, evidence must be either intrinsic to the crime or extrinsic evidence offered for specific, non-propensity purposes. The Fifth Circuit has explained that "[e]vidence is intrinsic when it is inextricably intertwined with or a necessary preliminary to the crime charged, or when it is part of a single criminal episode with the charged act." *United States v. Lugo-Lopez*, 833 F.3d 453, 460 (5th Cir. 2016) (quotations omitted). This "evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place," *United States v. Zheng Xiao Yi*, 460 F.3d 623, 632 (5th Cir. 2006), and it "is permissible so that the jury may evaluate all the circumstances under which the defendant acted," *id.* (quotations omitted). Evidence that is not intrinsic is "extrinsic" and governed by FRE 404. "Under [FRE] 404(b), evidence of a 'crime, wrong, or other act is not admissible to prove a person's character'; however, such evidence may be admissible 'for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Juarez*, 866 F.3d 622, 626-27 (5th Cir. 2017) (quoting Fed. R. Evid. 404(b)(1)-(2)). On this front, the Fifth Circuit has recognized that "[e]xtrinsic evidence has high probative value when intent is the key issue at trial," *id.* at 627, and "[t]his is particularly true when the evidence is necessary to counter a defendant's claim that he was merely an ignorant participant in the operation and never knowingly agreed to participate in an illegal business," *id.* (cleaned up).

Third, evidence "must possess probative value that is not substantially outweighed by its undue prejudice," *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978), which includes "unfair prejudice, confusing the issues, misleading the jury, … or needlessly presenting cumulative evidence." FRE 403; *United States v. Velasquez*, 881 F.3d 314, 336 (5th Cir. 2018).[3] On this front,

[3] For extrinsic evidence, the Fifth Circuit "consider[s] several factors when weighing the evidence under Rule 403: "(1) the government's need for the extrinsic evidence, (2) the similarity between

the Fifth Circuit has long recognized that "all probative evidence is by its very nature prejudicial," *United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999), and that "the Federal Rules of Evidence embody a strong and undeniable preference in favor of admitting probative evidence," *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011) (quotations omitted). Thus, "[e]vidence is not unduly prejudicial simply because it provides powerful evidence that the defendant committed the charged crimes." *United States v. Carpenter*, 117 F.4th 841, 849 (6th Cir. 2025).

## III. ARGUMENT

The fallout from terrorist attacks like 10/7 are public spectacles, and that is often the goal. HAMAS and the NRB, for their part, attempted to turn 10/7 to their advantage through propaganda boasting of their roles in slaughtering Israeli men, women and children. Yet in stark contrast to their public execution, these attacks' planning happens in the shadows, with "firsthand evidence of terrorist activities [] difficult, if not impossible, to obtain." *Owens v. Republic of Sudan*, 864 F.3d 751, 787 (D.C. Cir. 2017). As a result, building a case against a terrorist conspirator like the Defendant necessarily requires a multi-pronged approach involving evidence that, like here, includes firsthand victim testimony, materials terrorist groups choose to publicize (often propaganda), communications secured by law enforcement through warrants and other means, undercover agent testimony, expert testimony giving all this evidence context, and other evidence. Building a narrative from that complex tapestry requires that each thread of evidence fit and blend with the others; and through this Motion, the Government asks this Court to rule on the most substantial categories of evidence that we plan to present in our tapestry showing the Defendant to have materially supported HAMAS, ruling each of them permissible at trial in January.

---

the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Juarez*, 866 F.3d at 627 (quotations omitted).

**A. *The Court Should Permit Testimony from 10/7 Victims Because It is Tailored to Areas Tied to the Defendant and Proves the Conspirators' Crimes and that Death Resulted.***

"'Because this is a case about supporting terrorists, it is inescapable that there will be some evidence about violence and terrorist activity.'" *United States v. Pugh*, 162 F. Supp. 3d 97, 117-18 (E.D.N.Y. 2016) (quoting *United States v. El-Mezain,* 664 F.3d 467, 511 (5th Cir. 2011)) (brackets omitted). So too here, where the trial will include firsthand testimony from victims of the October 7 terrorist attack. To be sure, none of these witnesses will testify to having seen the Defendant himself at the scene, much less perpetrating these attacks. Rather, these witnesses will testify about the 10/7 attack that the conspiracy here planned and executed, with a focus upon the kibbutzim Kfar Aza and Nachal Oz. Specifically, the Government intends to present witnesses who will testify about their firsthand experience at Kfar Aza, with at least one witness a survivor who holed up in a safe room, another a first responder, and a third who survived and remained in Kfar Aza and identified roughly 60 of her dead neighbors and friends, with at least one witness who can testify about firsthand experience in Nachal Oz as well. This testimony will necessarily involve descriptions of barbarism—of thoughtless killing of women and children in their homes and in the streets. Yet this Court should rule that it is squarely admissible as relevant to prove the enterprise at issue, the material support that the Defendant provided, and that death resulted from that material support.

To see why, it helps to start with first principles: the Fifth Circuit has long "allowed shocking and gruesome photographs to be shown to the jury in murder cases so long as those photos had a nontrivial probative value." *United States v. Perry*, 35 F.4th 293, 325 (5th Cir. 2022) (collecting cases). It has further explained that "nontrivial probative value" extends to "proving overt acts committed in furtherance of a conspiracy," *id*. (quotations omitted), or "for the jury to understand the brutal nature of the conspiracy," *United States v. Baptiste*, 264 F.3d 578, 590 (5th

Cir. 2001) (withdrawn in separate part by *United States v. Baptiste*, 309 F.3d 274 (5th Cir. 2002)). And while the defense may argue for a stipulation or some other form of evidence, the Fifth Circuit and Supreme Court have made clear that the "abuse of discretion standard for a Rule 403 decision is not satisfied 'by a mere showing of some alternative means of proof that the prosecution in its broad discretion chose not to rely upon.'" *United States v. Velasquez*, 881 F.3d 314, 336 (5th Cir. 2018) (quoting *Old Chief v. United States*, 519 U.S. 172, 183 n.7 (1997)).

Applying those principles, the Court should hold that victim testimony here will have "nontrivial probative value" in at least three respects. *First*, because the 10/7 attack was the primary object of HAMAS's conspiracy in our case-in-chief, the Government will necessarily need to present evidence concerning that attack and what it involved. *Second*, the Government's Section 2339B charges require that death have resulted from the Defendant's material support, and these four witnesses will offer firsthand testimony of death occurring because of the 10/7 attack. *Third*, the Government's victim testimony is confined geographically to the two locales where the evidence points the Defendant to have been: the areas in or around Kfar Aza and Nachal Oz.[4] And on top of that, the Government's factual presentation is tailored to its needs and non-cumulative, with each of the four witnesses offering materially different perspectives on the 10/7 attack, with one victim from each locale offering purely firsthand testimony, a third who was a first responder,

[4] These three ways that the testimony connects to the Defendant's conduct is why this case is manifestly different from the primary appellate case holding victim testimony inadmissible, *United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008). There, the Government presented testimony of a car bombing victim for the sole purpose of establishing that HAMAS was a terrorist organization, with the "bombing … almost entirely unrelated to the elements of the charges" and where the testimony "constituted a significant break from the substance of the rest of the government's case-in-chief." *Id*. at 161-62. Not so here, where the victim testimony and 10/7 event itself is the backdrop for every bit of the Government's case.

and a fourth whose testimony primarily concerns the aftermath. For these reasons, this Court should permit the Government to present these four witnesses at trial.

### *B. The Court Should Permit Videos Depicting Violence that Occurred on 10/7 Because They Are Necessary to Proving the Material Support Charges.*

Alongside firsthand testimony of 10/7, this Court should permit the Government to admit scenes from 10/7 captured and authenticated by MEMRI and other witnesses, with these videos discussed by a combination of the MEMRI witness, victims, and then the Government's terrorism-related experts and FBI agents.[5] The Court should permit this evidence because it is necessary for the Government to allow the jury to see for itself what happened on 10/7—in particular, what acts the Defendant materially supported and that death that resulted. The Fifth Circuit has recognized that "[j]urors have expectations as to the narrative that will unfold in the courtroom" and that "[i]f those expectations are not met, jurors may very well punish the party who disappoints by drawing a negative inference." *United States v. Caldwell*, 586 F.3d 338, 343 (5th Cir. 2009); *see also United States v. Lampley*, 781 F. App'x 282, 286 (5th Cir. 2019) ("failing to introduce" videos can "detract from the narrative strength of the prosecution's case and potentially upset jurors' expectations."). Indeed, nearly 20 years ago the Fifth Circuit recognized when confronted with photos of a victim's decomposing body that "in this age of the supposed 'CSI effect,'" the use of photos to "explain[] to the jury why the Government had little in the way of physical or scientific evidence was arguably critical to the Government's case." *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007).

These principles regarding juror expectations and the need to build out the Government's narrative apply with equal force to terrorism trials. Courts have long recognized that even "[t]errorist propaganda, including images and videos depicting graphic violence, is regularly

[5] The Government intends to authenticate these videos through a combination of FRE 902(11) records certificates and witness testimony.

admitted in trials involving terrorism and material support of an FTO to show the defendant's motive and intent." *United States v. Mohamed*, No. 19-02162, 2024 U.S. Dist. LEXIS 134038, at *5 (D. Ariz. Jul. 30, 2024) (collecting cases). And as the Fifth Circuit recognized in *El-Mezain*, "images of violence and videos glorifying Hamas and depicting Hamas leaders, was probative of the motive or intent of the [defendant] to support Hamas." *El-Mezain,* 664 F.3d at 509-11 ("Because this was a case about supporting terrorists, it is inescapable, we believe, that there would be some evidence about violence and terrorist activity."). That is all-the-more true here, where the 10/7 attack is precisely the event that the Government accuses the Defendant of supporting substantively and as a conspirator, which directly ties to video evidence of the event, because the Fifth Circuit's *Perry* line of cases applies with equal force to "photographs" as it does victim testimony. *See Perry*, 35 F.4th at 325 (applying to "shocking and gruesome photographs" and collecting cases).

Here, the Government anticipates presenting a variety of videos through a MEMRI witness[6] and the 10/7 victims who will testify, with those videos at times depicting violence that includes victims being killed by rifle fire while men maraud with weapons that range from machete-type blades to AK-47s.[7] In this, the Government is mindful not only of the Court and defense's sensitivities about this evidence but the jury's as well. That said, the Government submits that the videos it presents depicting 10/7 violence—six of which are attached as **Exhibits**

[6] MEMRI authenticates the videos via FRE 902(11) certification, and the MEMRI witness will explain that MEMRI captures these materials in the regular course of its operations.

[7] In this, it bears noting that many 10/7 videos maintained by MEMRI contain horrific, barbaric violence ranging from beheadings with gardening hoes to bludgeoning to death but that the Government does not intend to introduce these. Rather, as described here, the Government intends to introduce scenes depicting killings via shooting and stabbing, albeit with background violence and roving gangs of marauders inevitably around the scenes as well.

**1 through 6**—meet *Perry*'s low "nontrivial probative value" standard in three respects. *First*, every one of these videos is probative of the material support that the Defendant stands accused of providing because it shows HAMAS perpetrating a terrorist attack. This is a circumstantial case where the evidence shows that the Defendant discussed and actually crossed over into Israel on 10/7 to assist in HAMAS's operation, and the Government is entitled to show what that operation entailed. Indeed, by its very nature "material support" means advancing some end of the foreign terrorist organization involved, so the Government must connect the Defendant's conduct to HAMAS in a way that shows him to have supported it. *Second*, the videos depicting killings on 10/7 are necessary to prove that "death resulted" as charged in the two Section 2339B counts here. While victims will testify about what they saw on 10/7, the Fifth Circuit has wisely counseled courts to understand that jurors expect video evidence, with the Government entitled to meet that expectation with the evidence in its possession. *See Caldwell*, 586 F.3d at 343; *Lampley*, 781 F. App'x at 286; *Old Chief*, 519 U.S. at 186. *Third*, many of the videos depict 10/7 perpetrators wearing HAMAS or NRB insignia—in particular, green headbands for HAMAS and red headbands and distinctive patches for NRB. Showing the jurors people wearing that regalia is essential to proving the identity of the 10/7 perpetrators and is thus probative of the material support the Defendant provided.[8] On top of that, videos of 10/7 easily clear the FRE 403 bar due to the simple fact that the Defendant stands accused of participating in these horrific acts, and "all probative evidence is by its very nature prejudicial," *Powers*, 168 F.3d at 749, with "the Federal Rules of Evidence embody[ing] a strong and undeniable preference in favor of admitting probative

[8] Indeed, as discussed further in Section III.G *infra*., some of these videos will concern a close associate of the Defendant who is captured on these videos.

evidence," *Curtis*, 635 F.3d at 717. For these reasons, this Court should rule that videos depicting 10/7 in Kfar Aza and Nachal Oz are admissible.

### *C. The Court Should Permit Propaganda Materials and Other Publicly Available Content from DFLP, NRB, and HAMAS Leadership During and After 10/7 Claiming Responsibility Because They are Co-Conspirator Statements, Statements Against Interest, Serve Nonhearsay Purposes, and are Permissible for Expert Analysis.*

In addition to testimony and videos of 10/7 unfolding, the Court should also permit the Government to offer evidence of propaganda materials published by DFLP, NRB, and HAMAS through their Telegram channels and other media before, during, and shortly after 10/7. These publicly available propaganda materials will depict the type of resources and personnel used to perpetrate the attack, will identify HAMAS and NRB as perpetrators of the attack, and will display HAMAS and NRB as co-conspirators. In these respects, the videos are probative of the Defendant's material support in perpetrating 10/7 alongside his co-conspirators by connecting him with NRB insignia, showing his actions to have been part of HAMAS and NRB's broader plan, and the ends HAMAS contemplated in perpetrating 10/7—namely, to kill Israelis like the Defendant's intercepted discussions contemplate. Indeed, participating in acts that will create propaganda is itself a form of material support, *see, e.g., United States v. Elsheikh*, 598 F. Supp. 3d 363, 380 (E.D. Va. 2022), *aff'd*, 103 F.4th 1006 (4th Cir. 2024), as is creating propaganda, *see, e.g., United States v. Ghayth*, 709 F. App'x 718, 722 (2d Cir. 2017).

These public claims of responsibility and depictions of 10/7 violence, three of which are attached as **Exhibits 7 through 9**, are admissible in three respects. *First*, they qualify as co-conspirator statements because the evidence will show that the Defendant himself understood the HAMAS-led 10/7 attack to be the launching off point for a months-long campaign of terror. Specifically, in the Defendant's 8:42am call on 10/7, he tells his conspirators that if "things go the way they should, Syria will take part, Lebanon will take part," and the attack will lead to either a

one- or two-month war or a war of attrition. In this respect, propaganda put out by the Defendant's NRB comrades as well as HAMAS are statements they made in furtherance of the conspiracy to ignite a regional conflagration and recruit others to their cause. *See Ghayth*, 709 F. App'x at 722 (conspiratorial acts were to "deliver[] speeches with bin Laden, including on the day after the September 11 attacks…"). *Second*, they are statements against penal interest. *See, e.g., United States v. Saipov*, No. 17-722, 2023 U.S. Dist. LEXIS 93114, at *10-14 (S.D.N.Y. May 23, 2023) (admitting public claims of responsibility as "co-conspirator statements and statements against penal interest."). *Third*, propaganda statements by HAMAS and NRB claiming responsibility for 10/7 are admissible for the nonhearsay purpose of showing that the 10/7 attack materially supported HAMAS's recruiting efforts and the Defendant's intent, knowledge, and motive in perpetrating the attack. *See United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004) (tapes with speeches and "depict[ing] Hizballah military operations and encourage[ing] donations from those who could not participate" relevant to Hammoud's intent). *Fourth*, courts have recognized that experts who testify about terrorist groups may use public statements to formulate their opinions about the groups' actions. *See United States v. Omar*, 786 F.3d 1104, 1112-13 (8th Cir. 2015) (permitting testimony from expert witness regarding public statements by al Shabaab claiming responsibility for an April 2008 bombing); *see also United States v. Kandic*, No. 17-449, 2022 U.S. Dist. LEXIS 77439, at *14-15 (E.D.N.Y. Apr. 28, 2022) ("the Second Circuit has regularly allowed terrorist propaganda to be admitted in material support cases") (collecting cases). For all these reasons, this Court should permit the Government to introduce propaganda materials depicting 10/7 violence and claiming responsibility on behalf of HAMAS and NRB.

### D. *Evidence of the Defendant's Support for and Belonging to the NRB in the Years Before and After 10/7 is Probative of Motive, Knowledge, and Intent and is Necessary Context.*

Next, this Court should permit evidence from the years before and after 10/7 showing the Defendant to have sympathized with and belonged to the NRB because it shows his knowledge, opportunity, intent, and motive to perpetrate the crimes charged here. This evidence encompasses discussions the Defendant had from 2020 through 2025 with associates about the need to destroy Israel, the NRB engaging in training exercises and plotting future attacks, and images and videos containing NRB and HAMAS propaganda as well as other materials relating to the destruction of the State of Israel. Alongside the probative purpose of proving the Defendant's *mens rea*, opportunity, and motive, the Court should also hold such materials to be intrinsic to the story here in that they are "necessary preliminary" evidence, *United States v. Lugo-Lopez*, 833 F.3d 453, 460 (5th Cir. 2016) (internal quotation marks and citation omitted), or "necessary to complete the story of" the charged offenses, *United States v. Gonzalez*, 328 F.3d 755, 759 (5th Cir. 2003).

Courts have long recognized that "[t]errorist propaganda, including images and videos depicting graphic violence, is regularly admitted in trials involving terrorism and material support of an FTO to show the defendant's motive and intent." *United States v. Mohamed*, No. 19-02162, 2024 U.S. Dist. LEXIS 134038, at *5 (D. Ariz. Jul. 30, 2024) (collecting cases). That broad consensus includes the Fifth Circuit, which has held "images of violence and videos glorifying Hamas and depicting Hamas leaders [to be] probative of the motive or intent of the [defendant] to support Hamas." *El-Mezain*, 664 F.3d at 509-10. This also extends to evidence of "political speech or beliefs to prove the existence of a conspiracy and its motive. *United States v. Hassan*, 742 F.3d 104, 125-26 (4th Cir. 2014); *United States v. Salameh*, 152 F.3d 88, 110, 112 (2d Cir. 1998). That

recognition extends to social media accounts, including messages and public postings,[9] as well as the contents of a residence search, *see United States v. Viefhaus*, 168 F.3d 392, 395-97 (10th Cir. 1999) (affirming admission of Nazi propaganda, books on making bombs, chemicals used to make bombs, and weapons seized from home). Indeed, a Fifth Circuit court has recognized evidence of a defendant participating in a terrorism-related training camp from roughly 20 years before the charged offenses was "intrinsic because it was necessary preliminary evidence or necessary to complete the story of the charged offenses." *United States v. Mohamed Ibrahim Ahmed*, No. 20-40713, 2022 U.S. App. LEXIS 31437, at *2 (5th Cir. Nov. 14, 2022) (quotations omitted); *see also United States v. Rahim*, No. 17-0169, 2019 U.S. Dist. LEXIS 70683, at *4-5 (N.D. Tex. Apr. 26, 2019) (holding defendant statements supporting HAMAS to be intrinsic where he is charged with providing material support to ISIS as "probative of the context in which both the alleged conspiracy and material support occurred."), *conviction and sentence aff'd*, 860 F. App'x 47 (5th Cir. 2021).

Those same principles apply here. The Defendant's material support for HAMAS in October 2023 didn't occur on a whim or out of thin air; to the contrary, it was part of the Defendant's years-long NRB membership. And for the Defendant to participate in the extreme violence that he stands accused of, it couldn't be any other way: the phone calls the Defendant made on 10/7 would lack essential context if presented in a vacuum, and that's precisely why courts have long recognized the Government to be entitled to present the full context as intrinsic

---

[9] *See, e.g., United States v. Elhuzayel*, 807 F. App'x 621, 622 (9th Cir. 2020) (approving "images, including images of terrorist acts, found on defendants' social media accounts and digital devices."); *United States v. Ahmed*, 107 F. Supp. 3d 1002, 1006-07 (D. Minn. 2015) (because defendant "is being prosecuted for conspiracy to provide material support to a foreign terrorist organization and providing false statements," court holds "[t]he government could use the Defendant's comments on twitter as evidence of intent or motive.").

to the charged terrorism crime. For these reasons, and consistent with the law outlined above, the Court should enter an order permitting evidence from the years surrounding the Defendant's material support on 10/7 to prove his knowledge, intent, motive, and opportunity to commit the offense charged.

### *E. Testimony of Expert Witness Bruce Hoffman As Detailed in Expert Notice Lies Squarely Within Permissible Expert Testimony in Material Support Cases.*

Next, this Court should permit the Government's expert, Professor Bruce Hoffman, to use the aforementioned videos along with other evidence to discuss the history and relations between HAMAS, the DFLP, and the NRB, along with 10/7's chronology, geography, and involved groups, as further detailed in his expert report, *see* [Doc. 95]. This testimony will help the jurors to understand at least four things about the other evidence presented to them at trial. First, Professor Hoffman's testimony about the way that organizations like HAMAS and NRB use propaganda to communicate with their members while recruiting new ones. Professor Hoffman will explain that credibility is important for these groups and that, as a result, they place a premium upon putting out truthful information about their activities and associations. Second, Professor Hoffman will explain how terrorist networks interrelate, with larger groups like HAMAS often making use of smaller groups like NRB despite differing ideologies. Third, Professor Hoffman will explain the insignia that HAMAS and NRB are known to wear and the importance of insignia, as well as the way in which these groups police the use of their insignia by people not formally inducted into the group. And fourth, Professor Hoffman will testify about the background and proceedings of 10/7—the parties involved, the geography of where the attack originated and spread to, and the results of the attack in Gaza and Israel. The Court should hold all this testimony to be relevant to the material support charges here because it provides necessary context to understanding how the Defendant's

actions on 10/7 and his communications and records in the months and years surrounding that date show him to have materially supported HAMAS in perpetrating the attack.

Courts have long and uniformly recognized that "[t]he testimony of expert witnesses is of crucial importance in terrorism cases because firsthand evidence of terrorist activities is difficult, if not impossible, to obtain." *Owens v. Republic of Sudan*, 864 F.3d 751, 787 (D.C. Cir. 2017) (collecting cases). For that reason, "a number of courts have permitted expert testimony on the history, structure, leadership and methods of al Qaeda and other terrorist organizations" in criminal cases. *United States v. Kassir*, No. 04-cr-356, 2009 U.S. Dist. LEXIS 28837, at *11-12 (S.D.N.Y. Apr. 2, 2009) (collecting cases), *aff'd*, 406 F. App'x 526 (2d Cir. 2011); *El-Mezain,* 664 F.3d at 515 (approving expert testimony of Matthew Levitt on Hamas, its background and its leadership). Even if jurors may know about a particular attack or terrorist group, expert testimony remains helpful to jurors in understanding these groups and events. *See id.* at *12-14 (collecting cases).

So too here, where Professor Hoffman will offer expert testimony about the history and organizational structure of the groups that lie at the heart of this case and their roles in 10/7. Without this testimony, the Defendant's phone calls and cell site location information will exist in a vacuum, finding him discussing a statement by Al-Dief that exists without context and discussing rifles and personnel without the context necessary to show why it materially supported HAMAS on 10/7. This necessary context is consistent with that presented in the cases cited above and is permissible here too. The Court should thus enter an order permitting the testimony.

### ***F. Evidence Showing the Defendant Wielding and Possessing Firearms, Munitions, and Other Explosive Devices is Probative of Opportunity, Knowledge, Motive, and Intent.***

Along with evidence of his membership in and sympathy with the NRB and HAMAS, the Court should also admit social media and email evidence showing the Defendant's proclivity for possessing and wielding firearms, munitions, and explosive devices as further evidence probative

of his motive, intent, and opportunity to provide material support. Like other circuit courts, the Fifth Circuit has long recognized that evidence of prior and future firearm possession is admissible to prove a defendant's motive, intent, and opportunity to perpetrate an armed crime. *See United States v. Vosper*, 493 F.2d 433, 435-36 (5th Cir. 1974) (evidence of gun purchase years before robbery and recovered gun at time of arrest admissible "despite the lack of evidence relating the gun and gun-connected materials found in the car to the particular facts of the bank robbery").[10] Courts including the Fifth Circuit have applied these principles to the terrorism context. *See, e.g., United States v. Ahmed*, No. 20-40713, 2022 U.S. App. LEXIS 31437, at *2-3 (5th Cir. Nov. 14, 2022) (holding defendant's 1997 training camp participation intrinsic as "necessary preliminary" evidence.) (citing *Lugo-Lopez*, 833 F.3d at 460)).

Here, the Government intends to offer evidence that consists of social media and email messages showing the Defendant's possessing, wielding, and discussing firearms, munitions, and other explosive devices as well as (2) testimony from a U.S. Customs and Border Protection officer who conducted a secondary inspection of the Defendant at the time he crossed into the United States and saw videos and photos depicting the Defendant possessing and discharging firearms in his smartphone. The Court should permit this evidence for three reasons. *First*, the evidence is relevant to prove the Defendant's opportunity, motive, knowledge, and intent in providing material

[10] *See also United States v. Ravich*, 421 F.2d 1196, 1204 (2d Cir. 1970), *cert. denied*, 400 U.S. 834 (1970) (circumstantial evidence that defendants possessed firearms on or before date of bank robbery admissible in prosecution for bank robbery, as tending to prove opportunity and identity); *United States v. Covelli*, 738 F.2d 847, 855 (7th Cir. 1984) (defendant possessing a small-caliber pistol admissible to show opportunity to commit crime where similar weapon used); *United States v. Woods*, 613 F.2d 629, 636 (6th Cir. 1980) (defendant possessing .38-caliber revolver upon arrest relevant to show he had opportunity to commit robbery that involved use of that type of firearm); *United States v. Righter*, No. 24-2955, 2025 U.S. App. LEXIS 33267, at *5-6 (3d Cir. Dec. 19, 2025) (approving of admitting firearm recovered two months after robbery).

support to HAMAS. The Superseding Indictment specifically references "weapons" as material support provided, *see* [Doc. 60 at 3-4], and the Defendant possessing, wielding, and discussing weaponry in the years before and after 10/7 tends to prove that his ability to carry out the crimes charged here. *Second*, the firearm evidence here is inextricably intertwined with the Defendant's membership in NRB and collaboration with HAMAS. As detailed in the criminal complaint, *see* [Doc. 1-1], the Defendant does not possess, photograph, and discuss rifles and other weaponry in a vacuum; rather, they are all part-and-parcel of ongoing dialogues he engages in regarding his affiliation with the terrorist groups that lie at the heart of this case. In this way, the firearms evidence in this case is a natural part of the story here proving the crimes charged. And *third*, the Defendant possessing, wielding, and discussing firearms and other munitions directly disproves the misrepresentations made on the Defendant's visa application, where he denies "hav[ing] any specialized skills or training, including firearms [or] explosives," alongside having "ever served in … a paramilitary unit, vigilante unit, rebel group, guerilla group, or insurgent organization." The Defendant's photographs, videos, and discussions involving high-powered rifles and explosives in the years before and in the months after his visa application directly bear on the truth of those statements, making them relevant in that respect as well. And these three forms of probative value ensure that the only prejudice that attaches is precisely the right kind—that which shows his guilt for the charges he faces at this trial. For all these reasons, this Court should permit the Government to present evidence of the Defendant's possessing, wielding, and discussing firearms before and after he participated in 10/7.

### G. *Evidence pertaining to A.F.A.J.—the Defendant's Facebook Friend Captured on Video Killing a Person at Nahal Oz During the October 7 Attack While Wearing NRB Insignia—is Evidence of Death Resulting from the Defendant's Conspiratorial Acts.*

Alongside the Defendant's own conduct on 10/7, so too should the Court admit evidence of his NRB associate A.F.A.J. contributing to the attack. A.F.A.J. is a Palestinian associate of the Defendant, which the Government will prove circumstantially through (1) a photo stored on the Defendant's phone in which A.F.A.J. stands alongside other NRB comrades, which is one of many photos of NRB comrades on the Defendant's phone and shows A.F.A.J. to have been part of the group, and (2) A.F.A.J. being Facebook friends with both the Defendant and the Defendant's wife. From there, we will prove A.F.A.J.'s participation in 10/7 with clear video showing his face and a pair of shoes that we will match to photos he posted on Instagram. The 10/7 videos will also depict A.F.A.J. wearing an NRB patch insignia while perpetrating these acts while in Nachal Oz, with those acts including the murder of victim J.M. The Court should admit this evidence as relevant to prove several aspects of the material support charges here—namely, NRB's association with HAMAS in perpetrating 10/7, death resulting from NRB's participation, and that the Defendant's NRB associates were in Nachal Oz, one of the locations indicated by the Defendant's cell site evidence, perpetrating these acts.

To prove a conspiracy, the Government "may present circumstantial evidence, such as the co-conspirator's concerted actions, from which the jury may infer that a conspiracy existed." *United States v. Gallo*, 927 F.2d 815, 820 (5th Cir. 1991). In this, "the defendant's participation in the conspiracy may be inferred from the 'development and collocation of circumstances.'" *Id.* (quoting *United States v. Magee*, 821 F.2d 234, 239 (5th Cir. 1987)). The Fifth Circuit has long recognized that "presence and association with other members of a conspiracy, along with other evidence, may be relied upon to find a conspiracy." *United States v. Castilla*, 20 F.3d 600, 603

(5th Cir. 1994); *accord United States v. Virgen-Moreno*, 265 F.3d 276, 285 (5th Cir. 2001) (quoting *Castilla*); *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993) ("Association is a factor that, along with other evidence, may be relied upon to find conspiratorial activity by the defendant."). Courts in terrorism trials have approved of evidence showing a defendant's "comrades" participating in attacks as tending to show motive, intent, and opportunity. *United States v. Abukhatallah*, 41 F.4th 608, 639 (D.C. Cir. 2022) (discussing evidence connecting defendant to "third attacker from that night, a comrade of his known as Jamaica"); *United States v. Hassan*, 742 F.3d 104, 140 & n.33 (4th Cir. 2014) (noting with approval district court's instructions including "a defendant's relationship with other conspirators" as circumstantial evidence); *United States v. Farah*, 107 F. Supp. 3d 996, 1001 (D. Minn. 2015) ("the Defendant is being prosecuted for conspiracy to provide material support to a foreign terrorist organization. His associations and the statements he made may be used by the government to prove a pertinent fact, such as motive or intent."). Moreover, "[o]nce a defendant has been connected with the conspiracy through his own conduct, all acts and statements of his co-conspirators during the pendency and in furtherance of the conspiracy are admissible against him." *United States v. Jennings*, 527 F.2d 862, 869 (5th Cir.1976).[11]

This governing law shows that A.F.A.J.'s conduct to be admissible here. The Government will be putting on evidence of the Defendant's connection to this co-conspirator, which is enough to establish association relevant to a conspiracy charge. From there, A.F.A.J.'s presence in the region where the evidence shows the Defendant himself to have been present while belonging to

[11] The Fifth Circuit has also long recognized that when "extrinsic evidence was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith." *United States v. Krezdorn*, 639 F.2d 1327, 1333 (5th Cir. 1981); *accord United States v. Morano*, 697 F.2d 923, 926 (11th Cir. 1983).

the same NRB group as the Defendant places this evidence squarely within conspirator liability that makes A.F.A.J.'s killing of J.M. directly relevant to both Section 2339B charges, with the Defendant's material support in the form of personnel and weapons contributing to the deaths in Nachal Oz.

### *H. Actions Taken by the Defendant's Wife, Nieama Al-Ghazzawi, in Furtherance of Their Perpetrating Visa Fraud by Lying on the Defendant's Visa Application Paperwork is Admissible to Prove the Defendant's Guilt.*

The Court should also permit the Government to introduce statements and actions that the Defendant's wife, Nieama Al-Ghazzawi, made in furtherance of their visa fraud offense for three reasons. *First*, Al-Ghazzawi's acts are direct evidence because they were taken in furtherance of the crime. As the Fifth Circuit has explained, "[i]t has long been settled that the acts of all participants in the commission of a crime are admissible against the others even though no conspiracy is charged," *Davis v. United States*, 409 F.2d 1095, 1100 (5th Cir. 1969). And that makes sense because the aiding-and-abetting law is clear that "the law holds the defendant responsible for the acts and conduct of such other persons [whom the defendant joins in committing the crime] just as though the defendant had committed the acts or engaged in such conduct." Fifth Circuit Pattern Jury Instruction 2.04; *accord United States v. Fischel*, 686 F.2d 1082, 1088 & n.5 (5th Cir. 1982). For these reasons, the evidence is admissible as direct evidence of the Defendant's guilt. *Second*, even if they weren't admissible along those lines, they would still be admissible as inextricably intertwined evidence necessary to tell the story and thus admissible as intrinsic evidence. The Defendant's visa application charged in Count 3 and sworn interview charged in Count 4 didn't appear out of thin air but were rather the culmination of a lengthy process initiated by Al-Ghazzawi, and the Court should permit the Government to show that process to the jury instead of asking them to make logical leaps as to how the narrative

unfolded. *See United States v. Flores*, 640 F.3d 638, 643 (5th Cir. 2011) (aiding and abetting evidence held inextricably intertwined). Here, Al-Ghazzawi sent emails, created documents, and raised money in furtherance of her husband the Defendant lying on a visa application and swearing to those lies to secure a United States visa. Because this evidence falls squarely within the parameters set out in *Davis*, the Court should admit it at trial.

***I. Materials on the Defendant's Wife's Smartphone and Email Account Depicting NRB Insignia, Including a Photo of the Defendant's Child Wearing NRB Insignia are Admissible to Prove the Defendant's Material Support and Visa Fraud.***

Next, this Court should permit evidence secured from a smartphone and email account belonging to Al-Ghazzawi as relevant to prove the Defendant's motive, intent, and knowledge in both his material support and his visa fraud crimes. Al-Ghazzawi's email and smartphone were replete with evidence of the Defendant's membership in NRB and facility with firearms, with those records ranging from NRB propaganda to photos of firearms to photos of their own child wearing NRB regalia. The Court should hold evidence of this type to be relevant in two respects. First, the evidence is relevant to prove Al-Ghazzawi's knowledge of the Defendant's NRB associations, his firearms training, and his consequent lies on the visa application she helped him complete. Although the Government need not prove that Al-Ghazzawi knowingly lied to prove the Defendant's guilt, *see United States v. Smith*, 584 F.2d 731 (5th Cir. 1978) ("It is not necessary for the intermediary to have a criminal intent."), her knowing that the two would need to lie on the Defendant's visa application is relevant to prove the Defendant's knowledge and intent, *see, e.g., United States v. Cabello*, 33 F.4th 281, 290 (5th Cir. 2022) ("the moment the principal says, 'hey, I've got some meth,' the aider-and-abettor has knowledge of the possession and the opportunity to make the relevant legal and moral choice"). In this way, evidence of Al-Ghazzawi knowing of the Defendant's associations and abilities tends to prove that he had the criminal intent to knowingly

lie on the visa application and the interview with her preparing the application for him. On top of that, evidence of NRB propaganda, the Defendant wearing NRB insignia and possessing firearms, and the Defendant's child in NRB regalia is relevant to prove his intent, motive, and knowledge in joining and supporting NRB and thus HAMAS for the same reason the other evidence of the same is relevant, *see* Sections III.A and B, *supra*, with the source of the evidence a mere issue of its weight, not its admissibility. In this way, the evidence is squarely admissible to prove the Defendant and his wife's lies on the visa application in this case as well as the Defendant's material support, and the Court should consequently admit it at trial.

### *J. FBI Agents Explaining the Meaning of Palestinian Slang is Permissible Lay Testimony.*

Finally, the Court should permit FBI agents to offer lay testimony as to his understanding of specific terms in the Defendant's phone conversations and Facebook messages. This request encompasses terms such as "Malaka" and "inside" in the context of the six phone calls, and "the resistance guys," "Al-Sinwar's picture," and other related matters in the Defendant's social media and email accounts. The Fifth Circuit "has recognized that the meaning of drug code words can be within the proper ambit of the testimony of a lay witness with extensive involvement in the underlying investigation." *United States v. Akins*, 746 F.3d 590, 600 (5th Cir. 2014) (citing *United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001)), and those principles apply with equal force to terrorism cases. *See, e.g., United States v. Jayyousi*, 657 F.3d 1085, 1104 (11th Cir. 2011) (law enforcement agent may properly testify as a lay witness about the meaning of code words used in intercepted calls based on what the agent learned during his five-year terrorism investigation.); *United States v. Albertelli*, 687 F.3d 439, 447-48 & n.3 (1st Cir. 2012) (noting that agent interpretation of code as lay opinion testimony applies "especially in organized crime and terrorism cases."). Indeed, in *El-Mezain* the Fifth Circuit specifically permitted FBI agents to explain certain

word usages within the context of their investigation, including code words and the difference between "inside" and "outside" the Palestinian territories as used in some exhibits. *El-Mezain*, 664 F.3d at 513-14 (lay testimony was proper "because the agents' opinions were limited to their personal perceptions from their investigation" of the case). Here, this Court should permit the FBI agents such as the FBI UC to testify as to their understanding of code, slang, and common terms understood by Palestinians and used by the Defendant, including references to geographical locations, as proper lay testimony based on their training and experience working with Palestinians and working in that region.

## IV. CONCLUSION

For all these reasons, the Government respectfully submits that this Court should enter an order permitting the Government to introduce the aforementioned evidence as part of its case-in-chief at trial in this matter.

Dated: September 15, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By: *\/s/ Zachary A. Keller*

ZACHARY A. KELLER
JOHN W. NICKEL
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

## CERTIFICATE OF CONFERENCE

**I HEREBY CERTIFY** that on August 18, 2026, I conferred with Assistant Federal Public Defenders Dustin Talbot and Aaron Adams about another pre-trial motion in this matter, and on August 21, AFPD Talbot advised that the defense would not be stipulating to any matters at this time. As a result, the Government understands this Motion to be opposed.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 15, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney