UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION UNDER RULE 12(b)(3)(B)(v) TO DISMISS COUNTS 3 AND 4 OF THE SUPERSEDING INDICTMENT AS IMPERMISSIBLE EXTRATERRITORIAL APPLICATIONS OF 18 U.S.C. § 1546(a) AND 18 U.S.C. § 1001

[Page intentionally left blank]

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. THIS MOTION PRESENTS QUESTIONS OF LAW THAT RULE 12(B)(3) REQUIRES THE COURT TO DECIDE BEFORE TRIAL ........ 5

IV. THE SPECIAL MARITIME AND TERRITORIAL JURISDICTION ALLEGED IN COUNTS 3 AND 4 DOES NOT EXIST ........ 7

A. Section 7(9) extends the special maritime and territorial jurisdiction only to offenses committed by or against a national of the United States ........ 7

B. The term "national of the United States" is a narrow term of art that describes individuals and not the sovereign ........ 8

C. The condition is measured by the facts of the charged offense, and the superseding indictment alleges no facts that satisfy it ........ 10

D. On Count 3, the premises predicate independently fails because the application was prepared, signed, and transmitted electronically from Egypt ........ 14

V. NEITHER SECTION 1546 NOR SECTION 1001 GIVES A CLEAR INDICATION THAT CONGRESS MEANT IT TO REACH A FOREIGN NATIONAL'S STATEMENTS MADE ABROAD ........ 16

A. *Morrison* and *RJR Nabisco* supply the governing framework, and the Fifth Circuit has held that it applies to criminal statutes ........ 17

B. Section 1546(a) gives no clear, affirmative indication that it applies extraterritorially ........ 18

C. The decisions sustaining Section 1546 prosecutions for statements made abroad predate the modern framework, and the Fifth Circuit has never adopted them ........ 20

D. Section 1001(a) gives no clear indication of extraterritorial reach, and *Bowman* supplies no such indication as to a foreign national ........ 21

E. At the second step, the conduct relevant to the focus of each statute occurred in Egypt ........ 23

VI. CONCLUSION ........ 23

CERTIFICATE OF SERVICE ........ 24

# TABLE OF AUTHORITIES

CASES

*Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412 (2023) ..... 17, 23

*Abouammo v. United States*, 608 U.S. 597 (2026) ..... 16

*Lorillard v. Pons*, 434 U.S. 575 (1978) ..... 10

*Marquez-Almanzar v. INS*, 418 F.3d 210 (2d Cir. 2005) ..... 9

*Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015) ..... 9

*Morissette v. United States*, 342 U.S. 246 (1952) ..... 10

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ..... 17, 19, 21-22

*Omolo v. Gonzales*, 452 F.3d 404 (5th Cir. 2006) ..... 9

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) ..... 17-19, 21, 23

*Rocha v. United States*, 288 F.2d 545 (9th Cir. 1961) ..... 20-21

*United States v. Anderson*, 328 U.S. 699 (1946) ..... 14

*United States v. Bowman*, 260 U.S. 94 (1922) ..... 21-22

*United States v. Cabrales*, 524 U.S. 1 (1998) ..... 14

*United States v. Covington*, 395 U.S. 57 (1969) ..... 7, 15

*United States v. Flores*, 404 F.3d 320 (5th Cir. 2005) ..... 6, 15

*United States v. Gilliland*, 312 U.S. 86 (1941) ..... 14

*United States v. Khalje*, 658 F.2d 90 (2d Cir. 1981) ..... 20

*United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) ..... 10-12

*United States v. Pizzarusso*, 388 F.2d 8 (2d Cir. 1968) ..... 20-21

*United States v. Restrepo-Granda*, 575 F.2d 524 (5th Cir. 1978) ..... 20

*United States v. Rodgers*, 466 U.S. 475 (1984) ..... 14

*United States v. Rodriguez*, 182 F. Supp. 479 (S.D. Cal. 1960) ..... 20-21

*United States v. Vasquez*, 899 F.3d 363 (5th Cir. 2018) ................................ 6, 17-18

*United States v. Yoo*, 813 F. App'x 949 (5th Cir. 2020) ............................................ 9

STATUTES

8 U.S.C. § 1101(a)(22) ............................................................ 8-9, 13

8 U.S.C. § 1408 ............................................................ 9

18 U.S.C. § 2 ............................................................ 11-12

18 U.S.C. § 7(1)-(6) ............................................................ 7

18 U.S.C. § 7(7) ............................................................ 7-8

18 U.S.C. § 7(8) ............................................................ 8

18 U.S.C. § 7(9) ............................................................ 2, 6-8, 12, 14

18 U.S.C. § 1001 ............................................................ 1, 3, 13-14, 16, 22

18 U.S.C. § 1001(a) ............................................................ 18, 21

18 U.S.C. § 1001(a)(2) ............................................................ 3, 11, 23

18 U.S.C. § 1363 ............................................................ 10

18 U.S.C. § 1519 ............................................................ 16

18 U.S.C. § 1546 ............................................................ 3, 13-14, 16, 20

18 U.S.C. § 1546(a) ............................................................ 1, 3, 11, 18-19, 21, 23

18 U.S.C. § 2331 ............................................................ 4, 22

18 U.S.C. § 2339B(a)(1) ............................................................ 4

18 U.S.C. § 2339B(d) ............................................................ 2

18 U.S.C. § 2339B(d)(1) ............................................................ 19

18 U.S.C. § 2339B(d)(1)(C) ............................................................ 4

18 U.S.C. § 2339B(d)(2) ............................................................ 19

18 U.S.C. § 3238 ............................................................ 3

21 U.S.C. § 848(e)(1)(A) .......... 18

28 U.S.C. § 1746 .......... 5, 18-19, 21, 23

28 U.S.C. § 1746(1), (2) .......... 19

Immigration and Nationality Act § 101 .......... 7-8

RULES

FED. R. CRIM. P. 12(b)(2) .......... 7

FED. R. CRIM. P. 12(b)(3) .......... 5-6

FED. R. CRIM. P. 12(b)(3)(B) .......... 6

FED. R. CRIM. P. 12(b)(3)(B)(v) .......... 1

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 25-00285-1** |
| **VERSUS** | **JUDGE JOSEPH** |
| **MAHMOUD AMIN YA'QUB AL-MUHTADI** | **MAGISTRATE JUDGE WHITEHURST** |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION UNDER RULE 12(b)(3)(B)(v) TO DISMISS COUNTS 3 AND 4 OF THE SUPERSEDING INDICTMENT AS IMPERMISSIBLE EXTRATERRITORIAL APPLICATIONS OF 18 U.S.C. § 1546(a) AND 18 U.S.C. § 1001**

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who, for the reasons set forth below, respectfully moves the Court under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) to dismiss Counts 3 and 4 of the superseding indictment for failure to state an offense, because each count is an impermissible extraterritorial application of 18 U.S.C. § 1546(a) and 18 U.S.C. § 1001.

## I. INTRODUCTION

Counts 3 and 4 charge the same conduct: false statements that a foreign national is said to have made during an overseas immigrant visa process in Egypt. To reach that conduct, each count alleges that the offense occurred in the special maritime and territorial jurisdiction of the United States. That allegation is the only

thing tying either count to United States territory. The territorial allegation is an element of each offense as charged. Counts 1 and 2 in the same indictment, for example, carry no comparable allegation, because the material support statute, 18 U.S.C. § 2339B(d), supplies its own extraterritorial jurisdiction in express terms. But the immigration counts have no such provision and need a territorial anchor.

18 U.S.C. § 7(9) is the only provision that could place the United States Embassy in Cairo within the special maritime and territorial jurisdiction, and it does so *only* for offenses committed by or against a national of the United States. That phrase is a narrow term of art that describes individuals, not the sovereign and not a federal agency. Neither the defendant, a Palestinian visa applicant, nor the Department of State fits it. The government has separately indicted the defendant's wife, alleging that she is a United States citizen and that she prepared the Form DS-260, but that indictment charges her own offense in a separate case. It does not amend this one, and it alleges nothing at all about the oral statements charged in Count 4. The nationality condition is measured by the facts of the charged offense, and the superseding indictment alleges no fact that makes any national of the United States the person by or against whom either offense was committed. Count 3 fails for a second and independent reason as well: the government's own consular records place the preparer of the Form DS-260 at a residence in Giza, and record that the form was electronically signed and transmitted over a commercial Egyptian internet carrier, not on the premises of any United States mission.

Without the territorial allegation, the charged conduct is a set of statements made abroad by a foreign national. Neither Section 1546 nor Section 1001 gives the clear, affirmative indication that it reaches conduct abroad, and the conduct relevant to the focus of each statute occurred in Egypt. Both counts must be dismissed.[1]

## II. Background

Count 3 charges visa fraud under Section 1546(a). It alleges that on or about June 26, 2024, in the special maritime and territorial jurisdiction of the United States and being found and arrested in this district, the defendant knowingly made under oath, and knowingly subscribed as true as permitted under penalty of perjury, a false statement of material fact in a Form DS-260 Immigrant Visa and Alien Registration Application, and aided and abetted the same. (Superseding Indictment, Doc. 60, Count 3 ¶ 2). The count then lists five representations, concerning specialized skills or training, membership in a paramilitary or insurgent organization, terrorist activity, intent to support terrorists, and participation in extrajudicial killings or other acts of violence. (Doc. 60, Count 3 ¶ 2(a)-(e)).

Count 4 charges a false statement under Section 1001(a)(2). It alleges that on or about August 6, 2024, in the special maritime and territorial jurisdiction of the United States and being found and arrested in this district, in a matter within the

1 The defendant does not challenge venue. 18 U.S.C. § 3238 places venue in the district where the offender is arrested or is first brought, and the defendant was arrested in this district. Section 3238 presupposes that the substantive statute reaches the charged conduct and supplies no reach of its own.

jurisdiction of the Department of State, the defendant knowingly and willfully made a false statement to an employee of the Department of State. (Doc. 60, Count 4 ¶ 2). The count then lists the same five representations, in the same order and in the same words. (Doc. 60, Count 4 ¶ 2(a)-(e)). The counts differ only in medium and date: Count 3 charges them as made in the DS-260 submitted online on or about June 26, 2024, and Count 4 charges them as made orally at the United States Embassy in Cairo on or about August 6, 2024. Count 4 alone carries a further allegation that the offense involves international terrorism as defined in 18 U.S.C. § 2331. (Doc. 60, Count 4).

Counts 1 and 2 charge, in contrast, conspiracy to provide and providing material support to a designated foreign terrorist organization under Section 2339B(a)(1). Neither count alleges that the offense occurred in the special maritime and territorial jurisdiction. Each instead tracks Section 2339B(d)(1)(C), alleging conduct on or about October 7, 2023, and alleging that after the conduct required for the offense occurred, the defendant was found and arrested in this district. (Doc. 60, Counts 1 and 2 ¶ 2).

The certification of the Bureau of Consular Affairs states that Mr. Al-Muhtadi's immigrant visa application was "adjudicated at the U.S. Embassy in Cairo (Case ID CRO2024158021)." (Consular records certification, Defense Exhibit[2] 1 at 2). The applicant's place of birth is recorded as the Gaza Strip, and the visa issued in the spouse-of-a-citizen category, "SPOUSE OF UNITED STATES CITIZEN (IR1),"

2 The exhibits in this case have been filed under seal.

on August 8, 2024. (Exhibit 1 at 3).

The same certification records how the Form DS-260 came into being. It identifies the preparer of the application as Nieama Alghazzawi, describes her relationship to the applicant as spouse, and gives her address as Mariottia Corridor between Faisal and Haram Streets, Cairo, Giza, Egypt. (Defense Exhibit 1 at 9). On the same page it records a creation internet protocol address of XXX.XXX.XXX.87 and a separate submission internet protocol address of XXX.XX.XX.154, and on the page that follows it records that the DS-260 was signed on "26 JUNE 2024 11:23:57 PM (GMT -05.00)." (Defense Exhibit 1 at 9-10). The same information appears in a separate and earlier government production. (Defense Exhibit 2 at 8).

The form advises the applicant that "All declarations made in this form are unsworn declarations made under penalty of perjury (28 U.S.C. 1746)," and that "You will be required to swear under penalty of perjury to the statements contained in your application at the time of your visa interview." (Defense Exhibit 1 at 10; Defense Exhibit 2 at 8). The oath came later. The case note dated August 6, 2024, records that the August 6 interaction was the visa appointment, at which the oath was taken. (Defense Exhibit 1 at 11). The record thus establishes a single visa proceeding, opened by an unsworn electronic application transmitted from Egypt in June and completed under oath at the Embassy in August.

## III. THIS MOTION PRESENTS QUESTIONS OF LAW THAT RULE 12(B)(3) REQUIRES THE COURT TO DECIDE BEFORE TRIAL

Rule 12(b)(3) reaches defects in the indictment that the Court can determine

without a trial on the merits, and it requires that such defects be raised before trial. Fed. R. Crim. P. 12(b)(3)(B). The Fifth Circuit requires that defendants raise a legal challenge to a statute's extraterritorial reach in a Rule 12(b)(3) motion to dismiss the indictment rather than in a post-verdict motion. In *United States v. Vasquez*, 899 F.3d 363 (5th Cir. 2018), the court held that such a challenge was unpreserved because it came too late, explaining that the defendant "has briefed only the purely legal question of whether the statute applies extraterritorially at all," that "[t]he basis for that argument was 'reasonably available' long before trial and could have been 'determined without a trial on the merits,'" and that the defendant "therefore should have raised it in a pretrial motion to dismiss the indictment, not in a post-verdict motion for a judgment of acquittal." *Id.* at 371-72. *Vasquez* also explained that extraterritoriality "is a question on the merits rather than a question of a tribunal's power to hear the case," and that "an argument that a statute does not apply extraterritorially is not an argument that the court lacks jurisdiction." *Id.* at 371 (internal quotation marks omitted). This motion is the motion the Fifth Circuit described.

The same rule governs the nationality question under Section 7(9), which is resolved by measuring the superseding indictment's allegations against the statutory condition. A district court may decide such a question before trial, because a question of law that can be determined on undisputed facts may be resolved without a trial of the general issue. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005)

(construing the provision then numbered Rule 12(b)(2)); *see United States v. Covington*, 395 U.S. 57, 60-61 (1969). The premises question presented in Part IV.D is narrower still, and it rests on facts the government itself certified.

## IV. THE SPECIAL MARITIME AND TERRITORIAL JURISDICTION ALLEGED IN COUNTS 3 AND 4 DOES NOT EXIST

### A. Section 7(9) extends the special maritime and territorial jurisdiction only to offenses committed by or against a national of the United States

Section 7(9) is the only provision that could place the United States Embassy in Cairo within the special maritime and territorial jurisdiction of the United States. It provides:

> (9) With respect to offenses committed *by or against a national of the United States* as that term is used in section 101 of the Immigration and Nationality Act—
>
> (A) the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership; and
>
> (B) residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

18 U.S.C. § 7(9) (emphasis added).

Paragraphs (1) through (6) describe places the United States already controls, and none of them conditions jurisdiction on the nationality of the person who commits or suffers the offense. 18 U.S.C. § 7(1)-(6). The last three paragraphs are different, and they are different in the same way. Paragraph (7) reaches any place outside the

jurisdiction of any nation, and paragraph (8) reaches any foreign vessel on a voyage to or from the United States, each of them only with respect to an offense committed by or against a national of the United States. 18 U.S.C. § 7(7), (8). Paragraph (9) reaches the premises of United States missions in foreign States, again only "[w]ith respect to offenses committed by or against a national of the United States." 18 U.S.C. § 7(9).

The pattern answers the question this motion presents. When the jurisdiction reaches past American territory and American vessels, Congress conditioned it on the involvement of an American person. Unless the offense was committed by or against a national of the United States, consular premises abroad are not within the special maritime and territorial jurisdiction, and the territorial allegation has no statutory footing. The territorial theory depends on treating an offense against the United States as an institution as though it were an offense against a national of the United States, and the text does not permit the substitution.

### B. The term "national of the United States" is a narrow term of art that describes individuals and not the sovereign

Section 7(9) borrows its key term from the Immigration and Nationality Act, and that Act defines it precisely. Under 8 U.S.C. § 1101(a)(22), the term "national of the United States" means "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Both branches describe a natural person, and the courts have confined the second to a narrow class.

The Fifth Circuit construes the term narrowly. In *Omolo v. Gonzales*, 452 F.3d 404 (5th Cir. 2006), the court applied the Section 1101(a)(22) definition and joined "the majority of our sister circuits in holding that a person may become a national only by birth or by completing the naturalization process." *Id.* at 409. The Fifth Circuit applied that holding again in *United States v. Yoo*, 813 F. App'x 949, 952 (5th Cir. 2020) (unpublished), where it rejected a defendant's claim to national status because the record showed he had not completed the naturalization process.

Other courts read the term the same restrictive way. The Second Circuit has held that the permanent-allegiance branch "describes, rather than confers, U.S. nationality," and that the phrase is "a term of art that denotes a legal status for which individuals have never been able to qualify by demonstrating permanent allegiance, as that phrase is colloquially understood." *Marquez-Almanzar v. INS*, 418 F.3d 210, 218 (2d Cir. 2005). Non-citizen nationality is instead conferred by 8 U.S.C. § 1408, which reaches persons connected by birth or parentage to an outlying possession of the United States. *Id.* at 217 & n.11. The D.C. Circuit has read the same cross-reference the same way in construing a different statute, holding that the reference to one who "owes permanent allegiance to the United States" is "descriptive of someone who has attained the status of United States nationality through other statutory provisions; it does not itself set forth an independent basis by which to obtain that status." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 14-15 (D.C. Cir. 2015).

Nothing in that definition reaches a sovereign or a federal agency. The United States is not a citizen of itself and does not owe permanent allegiance to itself. Where Congress incorporates a defined term from another statute, courts give the term the meaning the defining statute assigns. "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken . . . ." *Morissette v. United States*, 342 U.S. 246, 263 (1952). *See also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) (Congress "normally can be presumed to have had knowledge of the interpretation given to the incorporated law"). That meaning describes individuals, and it cannot be enlarged to capture the sovereign in order to salvage a territorial allegation.

**C. The condition is measured by the facts of the charged offense, and the superseding indictment alleges no facts that satisfy it**

In *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022), the D.C. Circuit held that "whether an offense is 'committed by or against a national of the United States' is determined by the facts of the charged offense, not by the offense's legal elements," and concluded that "'offense' in the diplomatic premises definition is circumstance specific, not categorical." *Id.* at 626. Applying *Khatallah* disposes of both counts, because a circumstance-specific inquiry still requires circumstances and this indictment supplies none. *Khatallah* itself shows what the inquiry demands. The charged offense there was malicious destruction of property under 18 U.S.C. § 1363

in its enhanced form, which applies "if … the life of any person be placed in jeopardy." The court reasoned that "[w]hen placing a person in jeopardy is an element of the offense, that offense is committed against the person threatened," and held that the offense was on those facts one committed against a national of the United States. *Khatallah*, 41 F.4th at 625.

Counts 3 and 4 allege nothing of the kind. Neither Section 1546(a) nor Section 1001(a)(2) makes any person the object of the prohibited act. Neither count alleges that any person was harmed, threatened, deprived of anything, or placed in jeopardy, and neither names an individual victim. The superseding indictment identifies the object of Count 4 only as "an employee of the Department of State," and alleges nothing about that person beyond the fact that a statement was made in that person's presence. (Doc. 60, Count 4 ¶ 2). A statement is not made against the person who hears it merely because that person hears it.

Nor is Mr. Al-Muhtadi a national of the United States. He is a Palestinian, born in the Gaza Strip, who applied for an immigrant visa as the spouse of a United States citizen.

That Count 3 also charges aiding and abetting under 18 U.S.C. § 2 does not satisfy the condition. Mr. Al-Muhtadi must acknowledge that a grand jury in this division has separately indicted Mr. Al-Muhtadi's wife, Nieama Hsnein Al-Ghazzawi, for conspiracy to commit visa fraud and for visa fraud arising out of the same Form DS-260. That indictment alleges that she "was a citizen of the United States," that

she served "as the sponsor and preparer for Al-Muhtadi's Form DS-260," and that on June 26, 2024, she "prepared and assisted" him "in completing and submitting a Form DS-260." But the superseding indictment in this case against Mr. Al-Muhtadi does not mention Ms. Al-Ghazzawi. It does not allege her citizenship, her preparation of anything, or any part played by a national of the United States in the conduct charged in Counts 3 and 4. The special maritime and territorial jurisdiction is the only thing either count pleads to bring the charged conduct within the reach of the statute, and the government cannot supply a missing element of this indictment with allegations made in a different indictment, against a different defendant, in a different case.

Section 2 does not bridge the gap. It makes a person who aids and abets an offense punishable as a principal, which is a rule about how an aider may be punished rather than one that transfers a principal's nationality to another person's offense. *Khatallah* directs the Court to the facts of the charged offense, 41 F.4th at 626, and the offense charged in Count 3 is Mr. Al-Muhtadi's own making and subscribing of a false statement in his own application for his own visa. (Doc. 60, Count 3 ¶ 2). Ms. Al-Ghazzawi's conduct is charged as her offense in her case. Two offenses do not become one because they concern the same piece of paper.

The more fundamental answer is that her citizenship cannot rescue Count 3 in any event. Section 7(9) requires both that the offense have been committed by or against a national of the United States and that it have been committed on the premises the paragraph describes. The second requirement fails whoever committed

the offense, for the reasons given in Part IV.D, and the government's own indictment against Ms. Al-Ghazzawi confirms the point rather than answering it. That indictment alleges that she and Mr. Al-Muhtadi "would travel from Palestine to Egypt," and it describes her conduct as emails to Department of State inboxes and the online submission of a form. Nothing in it places anyone on the grounds of the Embassy in Cairo on June 26, 2024. The government has now alleged in two indictments that this conduct occurred within the special maritime and territorial jurisdiction, and both times it has alleged it of conduct that its own certified consular records place at a private residence in Giza.

None of this touches Count 4. Count 4 charges oral statements made by Mr. Al-Muhtadi at his own visa interview on August 6, 2024. The indictment against Ms. Al-Ghazzawi charges no offense arising out of that interview, alleges no overt act occurring at it, and charges no violation of Section 1001 at all. As to Count 4 the government has no candidate for the national of the United States by whom the offense was committed, and for the reasons already given none against whom it was committed. The nationality condition fails on Count 4 regardless of the companion case.

The victim of visa fraud and of a false statement to the Department of State is the United States as an institution, and the United States is not a national of the United States under Section 1101(a)(22).[3] Because the nationality condition fails

3 The government cannot fill the gap by naming the consular officer as the victim. Section

from both directions on the face of the indictment, the special maritime and territorial jurisdiction does not exist as to either count.

### D. On Count 3, the premises predicate independently fails because the application was prepared, signed, and transmitted electronically from Egypt

Even if this Court were to decide that the nationality condition in Section 7(9) is met, Count 3 fails for a separate and independently sufficient reason. The preparation, signing, and electronic transmission of the immigrant visa application all occurred at a private residence in Giza, over a commercial Egyptian internet carrier, and not on the premises of any United States mission.

Section 7(9) reaches only offenses committed on the premises it describes. The special maritime and territorial jurisdiction is a territorial concept, and it attaches to acts done on the covered premises and to nothing else. The situs of a false-statement offense is accordingly where the statement was made and submitted. "[T]he locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)) (applying that guide to a venue question). *Cabrales* and *Anderson* announced that guide in the venue setting,

---

1546 and Section 1001 protect the integrity of a government process, not any individual. Section 1001 exists "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *United States v. Gilliland*, 312 U.S. 86, 93 (1941) (construing Section 1001's predecessor); *see also United States v. Rodgers*, 466 U.S. 475, 479 (1984). That the statutes protect a governmental function matters here only to show the absence of an individual victim; it does not identify the focus of either statute for the second step, addressed in Part V.E.

but nothing in it is peculiar to venue. Venue and the special maritime and territorial jurisdiction both fix an offense in space, and both do it by asking where the defendant did the thing the statute forbids rather than where the consequences of his act were felt. For Count 3, the acts that constitute the charged offense were the making, signing, and electronic submission of the Form DS-260, and the government's own records show where they happened.

They happened in Egypt. As set out above, the consular certification gives the preparer's address as a residence in Giza, records separate creation and submission internet protocol addresses[4] for the application, and records the signature as occurring at "26 JUNE 2024 11:23:57 PM (GMT -05.00)." (Defense Exhibit 1 at 9-10; Defense Exhibit 2 at 8). The adjudication at the Embassy came later, at the August 6 appointment, where the oath was administered. (Defense Exhibit 1 at 11).

These facts are the government's own, they are not in dispute, and they are dispositive, so the Court may resolve the premises question on this motion. *Flores*, 404 F.3d at 325; *see Covington*, 395 U.S. at 60-61. An immigrant visa application prepared at a private residence and transmitted electronically over a commercial carrier is not an act committed on consular premises. The government's own

4 Open-source geolocation of the two internet protocol addresses corroborates what the certification already establishes. Two independent geolocation services resolve both the creation address and the submission address to a commercial Egyptian internet carrier, Telecom Egypt, in the Giza Governorate, and neither resolves to any United States facility. Consumer geolocation of this kind is approximate and does not identify a particular building. It is offered only as corroboration, and the defendant does not ask the Court to find the precise point of submission or to rest on the open-source data at all.

certification places the preparer at a residence in Giza, and nothing in that certification places the making, signing, or submission of the application on United States premises.

The government cannot save the premises predicate by pointing to the destination of the application. If Count 3 is said to have occurred at the consulate because the completed DS-260 was routed to a consular officer there, that is a contemplated-effects theory, and the Supreme Court rejected that theory in June 2026. In *Abouammo v. United States*, 608 U.S. 597 (2026), the Court held that "[t]he venue for trying a § 1519 offense is, and is only, where the defendant falsified a document, because that is the only conduct proscribed by the statute." *Id.* at 602. The Court rejected the argument that the "contemplated effects" of a falsification form part of the statute's essential conduct, explaining that those effects are "confined to the defendant's mens rea" and that a falsification undertaken with that intent "again occurs wherever the falsification does." *Id.* at 604-05. For the reasons given above, an authority that fixes the situs of a falsification offense at the place of falsification for venue fixes it there for the special maritime and territorial jurisdiction as well.[5]

## V. NEITHER SECTION 1546 NOR SECTION 1001 GIVES A CLEAR INDICATION THAT CONGRESS MEANT IT TO REACH A FOREIGN NATIONAL'S STATEMENTS MADE ABROAD

Because nothing else in Counts 3 or 4 ties the charged conduct to United States

5 This premises defect is confined to Count 3. Count 4 alleges an oral false statement at the visa appointment on August 6, 2024, and the consular record places that appointment at the Embassy in Cairo. (Defense Exhibit 1 at 11)

territory, the presumption against extraterritoriality governs both counts.

### A. *Morrison* and *RJR Nabisco* supply the governing framework, and the Fifth Circuit has held that it applies to criminal statutes

*Morrison v. National Australia Bank Ltd.* restated the longstanding principle that, absent a contrary intent, an Act of Congress applies only within the territorial jurisdiction of the United States. 561 U.S. 247, 255 (2010). Absent "the affirmative intention of the Congress clearly expressed," a court "must presume it is primarily concerned with domestic conditions," and "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id. RJR Nabisco, Inc. v. European Community* made the method explicit. At the first step a court asks whether the statute gives a clear, affirmative indication that it applies extraterritorially. If not, the second step asks where the conduct relevant to the statute's focus occurred. Conduct relevant to the focus that occurred in a foreign country makes the application impermissibly extraterritorial, whatever other conduct occurred in United States territory. 579 U.S. 325, 337 (2016). The Court applied that same framework most recently in *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412, 417-18 (2023), restating that step one turns on whether "Congress has affirmatively and unmistakably instructed that" the provision at issue should "apply to foreign conduct," and that step two asks "whether the conduct relevant to that focus occurred in United States territory." *Id.* at 418.

That framework governs criminal prosecutions. In *Vasquez* the Fifth Circuit

called the government's contrary position "puzzling" and rejected it, noting that the Supreme Court has said in dictum that the presumption applies to criminal statutes and collecting four circuits that had applied it in criminal cases. 899 F.3d at 373 n.6. The court held the presumption rebutted as to 21 U.S.C. § 848(e)(1)(A) for a narrow reason: a conviction under that section requires proof of underlying offenses that themselves apply extraterritorially, which is the incorporation principle the Supreme Court applied to RICO's predicate acts in *RJR Nabisco*. Neither Section 1546(a) nor Section 1001(a) incorporates a predicate offense of any kind, so *Vasquez* supplies this Court with the method without supplying its result.

### B. Section 1546(a) gives no clear, affirmative indication that it applies extraterritorially

The paragraph of Section 1546(a) charged in Count 3 reaches "[w]hoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." 18 U.S.C. § 1546(a). Nothing in that paragraph speaks to conduct abroad. It refers to no foreign country, no conduct outside the United States, no alien abroad, and no consular officer. The geographic references elsewhere in the subsection identify entry into this country as the consequence the statute guards against, and none says where the prohibited conduct may be committed. *Id.*

The reference in that paragraph to Section 1746 does not change the answer.

Section 1746 supplies two forms of unsworn declaration, one "[i]f executed without the United States" and one "[i]f executed within the United States, its territories, possessions, or commonwealths." 28 U.S.C. § 1746(1), (2). The government may argue that by accepting declarations made under a statute that contemplates execution abroad, Congress indicated that Section 1546(a) reaches conduct abroad. Section 1746 is a rule of verification. It creates no offense, defines no prohibited conduct, and says nothing about the reach of a criminal statute that accepts declarations made under it, and its two forms exist because a declaration executed outside the United States cannot invoke the laws of a particular State. A cross-reference to a verification formality is not the clear, affirmative indication that *Morrison* and *RJR Nabisco* require.

A visa is ordinarily sought from outside the United States, and Part V.C below addresses the inference drawn from that observation. An inference about where conduct will usually occur is not a clear, affirmative indication that Congress meant the prohibition to reach conduct occurring there. The contrast with the statute charged in Counts 1 and 2 is instructive. Section 2339B(d)(1) enumerates six bases of jurisdiction, most of them extraterritorial, and Section 2339B(d)(2) adds that "[t]here is extraterritorial Federal jurisdiction over an offense under this section." Section 1546(a) contains nothing comparable.

### C. The decisions sustaining Section 1546 prosecutions for statements made abroad predate the modern framework, and the Fifth Circuit has never adopted them

Two courts of appeals, albeit many decades ago, have applied Section 1546 to false statements made outside the United States. In *Rocha v. United States*, 288 F.2d 545, 547 (9th Cir. 1961), the Ninth Circuit adopted the district court's conclusion "that Congress intended to give to § 1546 extra territorial jurisdiction." The analysis so adopted, in *United States v. Rodriguez*, 182 F. Supp. 479, 484-85 (S.D. Cal. 1960), reasoned from the placement of Section 1546 at the end of Chapter 75 and from the requirement then in force that a visa application be "signed by the applicant in the presence of the consular officer, and verified by the oath of the applicant administered by the consular officer."

In *United States v. Pizzarusso*, 388 F.2d 8, 10-11 (2d Cir. 1968), the Second Circuit sustained a Section 1546 conviction for a false statement made at the American Consulate in Montreal, resting jurisdiction on the protective principle of international law. The Second Circuit reaffirmed that holding in *United States v. Khalje*, 658 F.2d 90, 92 (2d Cir. 1981).

Those decisions do not answer the question presented here. The Fifth Circuit has never adopted any of them. The closest Fifth Circuit decision affirming a Section 1546 conviction was in *United States v. Restrepo-Granda*, 575 F.2d 524, 530 (5th Cir. 1978), where the offense involved the use of another person's United States visa to enter this country, and so addressed domestic conduct.

More fundamentally, each of those decisions was rendered under a method the Supreme Court has since displaced. *Rocha* and *Rodriguez* asked what Congress intended and answered by inference from statutory context and legislative purpose. *Pizzarusso* asked whether international law permitted the exercise of jurisdiction. Neither is the inquiry *Morrison* and *RJR Nabisco* now require, which asks only whether the statute gives a clear, affirmative indication of extraterritorial reach. *Morrison* rejected the practice of discerning from a statute's silence the answer Congress would have preferred. 561 U.S. at 255.

The structural premise of the 1960 analysis has also been overtaken. The requirement that a visa application be signed before a consular officer and verified by an oath that officer administered has given way to the internet, and the Form DS-260 executed in this case, quoted above, advises the applicant that its declarations are unsworn declarations made under penalty of perjury under 28 U.S.C. § 1746. An inference drawn in 1960 from a mandatory consular oath cannot be drawn in 2026 from an unsworn electronic declaration prepared at a private residence and transmitted over a commercial carrier. Section 1546(a) gives no clear indication of extraterritorial reach, and under *Morrison* it has none.

### D. Section 1001(a) gives no clear indication of extraterritorial reach, and *Bowman* supplies no such indication as to a foreign national

Section 1001(a) punishes materially false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a). No subsection of the statute contains a

geographic term of any kind, and the only reference to conduct beyond our borders is the penalty clause's cross-reference to the definition of international terrorism in Section 2331. Section 1001 is silent, and a silent statute has no extraterritorial application.

*United States v. Bowman*, 260 U.S. 94 (1922), does not supply one. *Bowman* described a class of statutes "not logically dependent on their locality for the government's jurisdiction, but . . . enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents." *Id.* at 98. The qualifier matters. Having applied that reasoning to the three American defendants before it, the Court turned to the fourth and reserved the question: "The other defendant is a subject of Great Britain. He has never been apprehended, and it will be time enough to consider what, if any, jurisdiction the District Court below has to punish him when he is brought to trial." *Id.* at 102-03. Mr. Al-Muhtadi stands in that position. He is a foreign national who holds no office under the United States, draws no federal pay, and serves no federal agency. A reserved question is not a clear, affirmative indication of congressional intent, and it cannot supply what the text of Section 1001 does not.

*Bowman* is also a product of the interpretive method *Morrison* displaced. It permitted the locus of an offense to "be inferred from the nature of the offense," *id.* at 98, which is the inference from silence that *Morrison* forbids. 561 U.S. at 255. Whatever force *Bowman* retains, it cannot supply the clear, affirmative indication the

modern framework requires.

### E. At the second step, the conduct relevant to the focus of each statute occurred in Egypt

Because the presumption is not rebutted as to either statute at the first step, the Court proceeds to the second, which asks where the conduct relevant to each statute's focus occurred. *RJR Nabisco*, 579 U.S. at 337. Section 1546(a) as charged regulates the making of a false statement under oath and the subscribing of a false statement as true under Section 1746, and Section 1001(a)(2) as charged regulates the making of a materially false statement.

That conduct occurred in Egypt. The DS-260 was prepared at a residence in Giza, electronically signed, and transmitted from two commercial Egyptian internet protocol addresses. (Defense Exhibit 1 at 9-10; Defense Exhibit 2 at 8). The statements Count 4 alleges were made at the visa appointment in Cairo. (Defense Exhibit 1 at 11). No conduct relevant to the focus of either statute occurred in the United States, and each count is therefore an impermissible extraterritorial application. That the completed application was routed to a consular officer and that a visa ultimately issued does not change the answer. Step two exists to separate "the activity that matters from the activity that does not," and the presumption "would be meaningless if any domestic conduct could defeat it." *Abitron*, 600 U.S. at 417-19.

## VI. CONCLUSION

For these reasons, Mr. Al-Muhtadi respectfully requests that the Court dismiss Counts 3 and 4 of the superseding indictment.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
First Assistant / Appellate Chief

*s/ Aaron A. Adams*
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 15, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*