UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE THE DEATH-RESULTING ALLEGATIONS IN COUNTS 1 AND 2

[Page intentionally left blank]

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. The death-resulting allegations in the superseding indictment .......... 3

B. The defense request for particulars and this Court's July 15, 2026 order .......... 3

C. The government's bill of particulars .......... 4

III. THE QUESTION PRESENTED IS ONE OF LAW AND IS PROPERLY RESOLVED BEFORE TRIAL .......... 5

IV. ARGUMENT .......... 6

A. Section 2339B(a)(1) conditions the life maximum on proof that a particular death would not have occurred but for the charged offense .......... 6

B. The theory the government has disclosed is the contribution theory *Burrage* rejected .......... 8

C. No rule of conspiracy law permits the government to prove the death-resulting element as to the attack rather than as to Mr. Al-Muhtadi .......... 9

1. Where a death rather than a quantity is the penalty-raising fact, the finding must be made as to the defendant .......... 10

2. *Pinkerton* liability and 18 U.S.C. § 2 attribute conduct, and neither establishes causation .......... 11

3. The conspiracy-wide drug quantity rule, which construes 21 U.S.C. § 846 and traces to Guidelines allocation law, does not apply to the death-resulting enhancement .......... 13

D. The government's refusal to identify any death it attributes to Mr. Al-Muhtadi shows that the defect is substantive, and no grand jury found the causation the statute requires .......... 16

E. The government's reservation of the right to change its proof would work a constructive amendment or a fatal variance .......... 21

V. CONCLUSION .......... 22

CERTIFICATE OF SERVICE .......... 23

# TABLE OF AUTHORITIES

CASES

*Alleyne v. United States*, 570 U.S. 99 (2013) .................................... 1-2, 4, 10, 15, 22

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ........................................... 4, 13-14, 22

*Ex parte Bain*, 121 U.S. 1 (1887)........................................................................... 17

*Burrage v. United States*, 571 U.S. 204 (2014) .................................................*passim*

*Derman v. United States*, 298 F.3d 34 (1st Cir. 2002).......................................... 13-14

*Edwards v. United States*, 523 U.S. 511 (1998) ....................................................... 14

*Hamling v. United States*, 418 U.S. 87 (1974) ........................................................ 18

*Montague v. United States*, 144 S. Ct. 2654 (2024) .................................................. 19

*Pinkerton v. United States*, 328 U.S. 640 (1946) ................................................. 10-12

*Russell v. United States*, 369 U.S. 749 (1962)...................................................... 16, 18

*Stirone v. United States*, 361 U.S. 212 (1960)................................................ 17-18, 22

*United States v. Akins*, 746 F.3d 590 (5th Cir. 2014) ............................................... 14

*United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013)............................... 12

*United States v. Armstrong*, 619 F.3d 380 (5th Cir. 2010) ....................................... 12

*United States v. Carll*, 105 U.S. 611 (1882)............................................................. 18

*United States v. Causey*, No. CR 94-381, 2024 WL 4452325 (E.D. La. Oct. 9, 2024) ........................................................................................................... 11

*United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017) ............................................... 18

*United States v. Flores*, 404 F.3d 320 (5th Cir. 2005)................................................. 6

*United States v. Fontenot*, 665 F.3d 640 (5th Cir. 2011) ............................................ 6

*United States v. Gaytan*, 74 F.3d 545 (5th Cir. 1996)............................................... 21

*United States v. Gonzalez*, 686 F.3d 122 (2d Cir. 2012) ...................................... 19-20

*United States v. Haines*, 803 F.3d 713 (5th Cir. 2015) .......... 15

*United States v. Hamm*, 952 F.3d 728 (6th Cir. 2020) .......... 10-12

*United States v. Hess*, 124 U.S. 483 (1888) .......... 18

*United States v. Hoey*, No. S3 11-CR-337 PKC, 2014 WL 2998523 (S.D.N.Y. July 2, 2014) .......... 20

*United States v. Hoover*, 467 F.3d 496 (5th Cir. 2006) .......... 21

*United States v. Jacobs*, No. CR 19-94-RGA, 2020 WL 42826 (D. Del. Jan. 3, 2020) .......... 11

*United States v. Kandic*, 134 F.4th 92 (2d Cir. 2025) .......... 17

*United States v. Kilmartin*, 944 F.3d 315 (1st Cir. 2019) .......... 8

*United States v. McMillan*, 600 F.3d 434 (5th Cir. 2010) .......... 21

*United States v. Montague*, 84 F.4th 533 (2d Cir. 2023) .......... 19

*United States v. Montague*, No. 18-2975, 2024 WL 4100517 (2d Cir. Sept. 6, 2024) .......... 19

*United States v. Norris*, 281 U.S. 619 (1930) .......... 16

*United States v. Phillips*, 349 F.3d 138 (3d Cir. 2003) .......... 14-15

*United States v. Reasor*, 418 F.3d 466 (5th Cir. 2005) .......... 21

*United States v. Sadler*, 24 F.4th 515 (6th Cir. 2022) .......... 11

*United States v. Turner*, 319 F.3d 716 (5th Cir. 2003) .......... 13-15

*United States v. Williams*, 998 F.3d 716 (6th Cir. 2021) .......... 11

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V .......... 17

STATUTES

18 U.S.C. § 2 .......... 10-12

18 U.S.C. § 241 ........ 11

18 U.S.C. § 242 ........ 11

18 U.S.C. § 2339B ........ 17

18 U.S.C. § 2339B(a)(1) ........ *passim*

21 U.S.C. § 841(b)(1) ........ 8

21 U.S.C. § 841(b)(1)(C) ........ 7, 10

21 U.S.C. § 846 ........ 10, 13-14

### RULES

FED. R. CRIM. P. 6(e)(3)(E)(ii) ........ 20

FED. R. CRIM. P. 7(c)(1) ........ 4, 18-19

FED. R. CRIM. P. 7(d) ........ 1, 22

FED. R. CRIM. P. 12 ........ 17

FED. R. CRIM. P. 12(b) ........ 1

FED. R. CRIM. P. 12(b)(1) ........ 5

FED. R. CRIM. P. 12(b)(3)(B)(iii) ........ 5-6

### SENTENCING GUIDELINES

U.S.S.G. § 1B1.3 ........ 11

### OTHER AUTHORITIES

Model Penal Code § 2.03(1)(a) ........ 7

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41 (5th ed. 1984) ........ 9

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 25-00285-1** |
| **VERSUS** | **JUDGE JOSEPH** |
| **MAHMOUD AMIN YA'QUB AL-MUHTADI** | **MAGISTRATE JUDGE WHITEHURST** |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE THE DEATH-RESULTING ALLEGATIONS IN COUNTS 1 AND 2**

---

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who, for the factual and legal reasons set forth below, respectfully moves this Court under Federal Rule of Criminal Procedure 7(d) and 12(b) and *Burrage v. United States*, 571 U.S. 204 (2014), to strike the allegation appended to Count 1 and to Count 2 of the superseding indictment that death resulted from the commission of the offense. (Doc. 60 at 3, 4).

## I. INTRODUCTION

Counts 1 and 2 each close with a single sentence: "Pursuant to Title 18, United States Code, Section 2339B(a)(1), it is further alleged that death resulted from the commission of the offense." (Doc. 60 at 3, 4). That sentence raises the maximum term of imprisonment on each count from twenty years to life. 18 U.S.C. § 2339B(a)(1). It

is therefore an element that a jury must find beyond a reasonable doubt, *Alleyne v. United States*, 570 U.S. 99, 108 (2013), and the causation it describes is but-for causation, *Burrage v. United States*, 571 U.S. 204, 210-11 (2014).

In response to Mr. Al-Muhtadi's request for a bill of particulars, this Court ordered the government to "identify the names of the decedents of which it may offer evidence at trial." (Doc. 80 at 8). The government's response identified no decedent whose death it will trace to anything Mr. Al-Muhtadi did. It announced instead that "all deaths that resulted from the HAMAS-led October 7 attack" satisfy the element on Count 1, and that "the deaths that occurred in Kfar Aza and Nachal Oz on October 7" satisfy it on Count 2. (Doc. 85 at 2-3). It added that the burden is to prove "that any person died as a result of the Defendant's conduct or that of his conspirators or aiders-and-abettors," and that its evidence "will be evolving until we get closer to trial." (Doc. 85 at 3).

The government has thus described a theory under which the element is satisfied by aggregate contribution to a mass-casualty event rather than by proof that a particular person would have lived but for the charged offense. *Burrage* holds that a contribution theory does not satisfy a "results" element. 571 U.S. at 216, 218-19. Because the government has now told the Court what it intends to prove, and because that proof is insufficient as a matter of law, this Court must strike the death-resulting allegations from Counts 1 and 2.

## II. BACKGROUND

### A. The death-resulting allegations in the superseding indictment

The superseding indictment filed June 17, 2026, charges four counts. (Doc. 60). Count 1 charges that "on or about October 7, 2023" Mr. Al-Muhtadi conspired to provide material support to HAMAS, and Count 2 charges that on the same date he "did knowingly provide and attempt to provide material support" to HAMAS. (Doc. 60 at 2-4). The General Allegations state that HAMAS "acted with others, including Gaza-based paramilitary groups DFLP and its NRB subgroup, to perpetrate a terrorist attack in the State of Israel," and that Mr. Al-Muhtadi "was a member of DFLP and NRB." (Doc. 60 at 2).

Each material-support count then adds the same one-sentence death allegation, which names no decedent, gives no place or time of death, and describes no connection between any death and anything Mr. Al-Muhtadi is alleged to have done. (Doc. 60 at 3, 4).

### B. The defense request for particulars and this Court's July 15, 2026 order

Mr. Al-Muhtadi moved for a bill of particulars and asked the Court to direct the government to identify "by description, and by name where known, each death the government will contend resulted from the offense for purposes of the § 2339B(a)(1) enhancement," and to specify the date, time, and place of each identified death and "the manner in which each identified death is alleged to have resulted from

the offense." (Doc. 68-2, Requests 13, 14, and 15).

The supporting memorandum framed the request in causal terms and put *Burrage* squarely before the Court, explaining that the indictment "identifies no particular death, no location, no cause, and no causal connection to the defendant's conduct," and that "[t]he enhancement requires the government to prove but-for causation of a particular death." (Doc. 68-1 at 13-14). The government thus knew, before it answered, that the request was aimed at the causal link and not merely at a roster of names.

This Court granted the request in part. It found that the superseding indictment "generally satisfies the requirements of Rule 7(c)(1)." (Doc. 80 at 4). It observed that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne* "do not, however, dictate the degree of specificity required in an indictment or compel the Government to provide evidentiary details through a bill of particulars." (Doc. 80 at 8). It nonetheless concluded that "considering the statutory consequences of the alleged 'death results' enhancement and the need to ensure that Defendant has adequate notice of the charges against him and can prepare his defense," a limited bill of particulars was appropriate, and it ordered that "[t]he Government shall therefore identify the names of the decedents of which it may offer evidence at trial." (Doc. 80 at 8).

**C. The government's bill of particulars**

The government filed its bill of particulars on July 22, 2026. On the death

allegations it answered:

> The Government's theory of the case is that all deaths that resulted from the HAMAS-led October 7 attack qualify as deaths that resulted from the Defendant's conspiring to provide material support to HAMAS, as charged in Count One, and that the deaths that occurred in Kfar Aza and Nachal Oz on October 7 as part of this HAMAS-led terrorist attack qualify as deaths that resulted from the Defendant's substantive material support and attempted material support, as charged in Count Two. In this, the Government's burden is to prove that any person died as a result of the Defendant's conduct or that of his conspirators or aiders-and-abettors.

(Doc. 85 at 2-3). The government then identified two decedents by initials, J.M. and R.E., referred generally to "the victims specified in the Affidavit," and said it might call "a witness who will testify to 64 deaths that occurred in Kfar Aza." (Doc. 85 at 3). A footnote explained that the government does not intend "to introduce evidence proving up all of the approximately 1,200 deaths that resulted from the October 7 attack." (Doc. 85 at 3 n.2). The government closed by advising that the testimony it intends to elicit "will be evolving until we get closer to trial" and by reserving "the right to amend this Bill of Particulars as necessary." (Doc. 85 at 3, 6).

Thus, neither the indictment nor the bill of particulars alleges that Mr. Al-Muhtadi was the but-for cause of any particular death. Put another way, the government has not alleged that any particular person would still be alive if Mr. Al-Muhtadi had not provided the alleged support.

## III. THE QUESTION PRESENTED IS ONE OF LAW AND IS PROPERLY RESOLVED BEFORE TRIAL

Rule 12(b)(1) allows a party to raise by pretrial motion "any defense, objection,

or request that the court can determine without a trial on the merits," and Rule 12(b)(3)(B)(iii) lists a lack of specificity in the indictment among the objections that must be raised before trial. As the Fifth Circuit has put it, "[t]he propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact," and "[i]f a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005)) (internal quotation marks omitted).

This motion accepts both the allegations of the superseding indictment and every factual representation in the government's bill of particulars. Two propositions decide the motion. The first is that the death-resulting element requires proof that a particular person would not have died but for Mr. Al-Muhtadi's actions, which is what *Burrage* holds. The second is that the government has made clear that it does not intend to make that proof. The motion therefore presents a pure question of law, and the Court should strike the death-resulting allegations from Counts 1 and 2.

## IV. ARGUMENT

### A. Section 2339B(a)(1) conditions the life maximum on proof that a particular death would not have occurred but for the charged offense

Section 2339B(a)(1) provides that a person who violates it "shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life." The operative word

"results" is the same one the Supreme Court construed in *Burrage*.

In *Burrage v. United States*, 571 U.S. 204 (2014), the Supreme Court first made clear that because the "death results" enhancement in 21 U.S.C. § 841(b)(1)(C) "increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." 571 U.S. at 210. The same is true here. The allegation moves the ceiling on each material-support count from twenty years to life, so the government must plead and prove it as an element rather than argue it as a sentencing factor.

*Burrage* then settled what must be proved. Giving "results from" its ordinary meaning, the Court held that the phrase "imposes, in other words, a requirement of actual causality," which "[i]n the usual course" requires proof "'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Id.* at 211 (citation omitted). The Court grounded that reading in the Model Penal Code's statement that conduct is the cause of a result when "it is an antecedent but for which the result in question would not have occurred." *Id.* (quoting Model Penal Code § 2.03(1)(a)). The holding followed: absent an independently sufficient cause, "a defendant cannot be liable under the penalty enhancement provision . . . unless such use is a but-for cause of the death or injury." *Id.* at 218-19.

Applied to § 2339B(a)(1), the rule requires the government to identify a death and to prove that the person who died would have lived had Mr. Al-Muhtadi not committed the offense charged. The causation must run from Mr. Al-Muhtadi's own

conduct to the particular death alleged.[1]

### B. The theory the government has disclosed is the contribution theory *Burrage* rejected

The government's bill of particulars does not describe a causal chain running from Mr. Al-Muhtadi to a decedent. It describes a category of deaths and asserts that every death in the category counts. On Count 1 the category is every death the October 7 attack produced; on Count 2 it is every death in two kibbutzim. In neither instance does the government propose to show that any person in the category would have survived had Mr. Al-Muhtadi done nothing.

That is the argument the Supreme Court rejected. The government in *Burrage* urged "an interpretation of 'results from' under which use of a drug distributed by the defendant need not be a but-for cause of death, nor even independently sufficient to cause death, so long as it contributes to an aggregate force . . . that is itself a but-for cause of death." 571 U.S. at 214. The Court answered: "We decline to adopt the Government's permissive interpretation of § 841(b)(1). The language Congress enacted requires death to 'result from' use of the unlawfully distributed drug, not from a combination of factors to which drug use merely contributed." *Id.* at 216.

---

[1] For purposes of this motion, Mr. Al-Muhtadi accepts but-for causation as the governing standard. *Burrage* fixes but-for cause as the minimum that a results element requires, 571 U.S. at 210-11, and that minimum decides the question presented, because the government has not alleged that any identified person would have lived had Mr. Al-Muhtadi done nothing. Whether § 2339B(a)(1) demands more than but-for cause, and requires proof of proximate causation as well, is a separate question that a later ruling can reach. *See United States v. Kilmartin*, 944 F.3d 315, 330 (1st Cir. 2019) ("When a crime specifies both conduct and result elements, a defendant ordinarily may not be convicted unless his conduct is both the but-for and the proximate cause of the result.").

The government advances the same theory here. Its position is that Mr. Al-Muhtadi's support contributed to an aggregate force, the HAMAS-led attack, which was itself a but-for cause of approximately 1,200 deaths, and that the contribution suffices. *Burrage* addressed a formulation of that kind directly. Reviewing a treatise rule that would treat each actor in a combination as a cause in fact where the but-for rule "would absolve all of them," the Court observed that as of 1984 "no judicial opinion ha[d] approved th[at] formulation." *Id.* at 216 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41, p. 268 & n.40 (5th ed. 1984)). Congress wrote "the death of any person results" into § 2339B(a)(1) against the same background understanding of what a result requires.

Nor is the scale of the government's theory an argument for it. A rule that every participant in a mass-casualty attack causes every death within it would mean that the larger the attack, the easier the element becomes to satisfy. That inverts the causal inquiry the statute prescribes.[2]

### C. No rule of conspiracy law permits the government to prove the death-resulting element as to the attack rather than as to Mr. Al-Muhtadi

The bill of particulars rests the element on the attack rather than on Mr. Al-

[2] Two decedents the government has identified illustrate the consequence. The government alleges that Mr. Al-Muhtadi crossed the border into Israel around approximately 9:30 a.m., (Doc. 1-1 at 6), But Victim 1 listed in the affidavit was killed many hours earlier that morning. (Doc. 1-1 at 6-8). Victim 1 was therefore already dead roughly three hours before Mr. Al-Muhtadi is alleged to have provided any support to Hamas. The government also lists a 21-year-old Tanzanian agriculture student who was allegedly killed by a man wearing an NRB patch, but it neither places Mr. Al-Muhtadi at the scene nor connects him to it. (Doc. 1-1 at 11-12, 35). Under the theory the bill of particulars discloses, neither fact matters, because contribution to the attack supplies the causal link for every death.

Muhtadi. (Doc. 85 at 2-3). A death is personal to the person who died, and the statute asks whether that death resulted from the offense this defendant committed. The Sixth Circuit, the only court of appeals to address the question directly, has required a finding tied to the defendant. And the two doctrines the bill of particulars invokes to close the gap, *Pinkerton* liability and 18 U.S.C. § 2, attribute conduct without establishing causation. The only authorities that point the other way concern a unique rule about drug conspiracies and their aggregate drug quantities, built on sentencing-allocation law and confined to prosecutions under 21 U.S.C. § 846, that reaches neither this statute nor this element.

**1. Where a death rather than a quantity is the penalty-raising fact, the finding must be made as to the defendant**

The federal courts that have addressed a death-results element after *Alleyne* have required an individualized finding. In *United States v. Hamm*, 952 F.3d 728 (6th Cir. 2020), the Sixth Circuit held that "the jury could not use a *Pinkerton* theory to apply § 841(b)(1)(C)'s death-or-injury enhancement." *Id.* at 741. Because the enhancement "increases the minimum and maximum sentences, 'it is an element that must be submitted to the jury and found beyond a reasonable doubt.'" *Id.* at 743 (quoting *Burrage*, 571 U.S. at 210). To apply it, "the jury needed to find beyond a reasonable doubt that Hamm and Shields were part of the distribution chain" to the victims, and an instruction permitting the enhancement on a co-conspirator theory

"misstated the law." *Id.* at 747.[3] It does not appear that the Fifth Circuit has directly considered this issue.[4]

District courts have described the element in the same individualized terms. *See, e.g., United States v. Causey*, No. CR 94-381, 2024 WL 4452325, at *4 (E.D. La. Oct. 9, 2024) (rejecting a compassionate-release argument under *Burrage* and noting that "[i]n Causey's case, each count [under 18 U.S.C. §§ 241 and 242] provided jury instructions relating to death resulting from Causey's conduct and the jury convicted Causey on two counts."); *United States v. Jacobs*, No. CR 19-94-RGA, 2020 WL 42826, at *2 (D. Del. Jan. 3, 2020) (noting that "[t]he jury was instructed that the Government had to prove that the fentanyl distributed by Defendant was the 'but-for' cause of death").

### 2. *Pinkerton* liability and 18 U.S.C. § 2 attribute conduct, and neither establishes causation

The government frames its burden as proving "that any person died as a result of the Defendant's conduct or that of his conspirators or aiders-and-abettors." (Doc.

[3] The Sixth Circuit has continued to apply that rule. *See United States v. Williams*, 998 F.3d 716, 734 (6th Cir. 2021) ("the government cannot rely on *Pinkerton* liability, and must show that he was in the chain of distribution that caused the victim's death or injury"); *United States v. Sadler*, 24 F.4th 515, 546 (6th Cir. 2022) ("The causation inquiry thus has two parts for each victim: (1) did the victim use [the defendant's] drugs, and (2) were those drugs the but-for cause of the victim's overdose."); *id.* at 560 ("When a defendant's underlying crime relies on a conspiracy theory of liability, then the district court cannot impose the enhanced sentence unless the jury finds that the defendant was part of the distribution chain that led to the victim's overdose.").

[4] There is a developed body of caselaw concerning co-conspirator conduct in the judicial sentencing finding context. Most of the decisions about attributing a co-conspirator's conduct to a defendant, including the decisions about attributing a death, are decisions about what a district court may find at sentencing under U.S.S.G. § 1B1.3. They answer how a judge allocates responsibility beneath a fixed ceiling, and they say nothing about what a grand jury must charge or what a trial jury must find in order to raise that ceiling.

85 at 3). Neither *Pinkerton v. United States*, 328 U.S. 640 (1946), nor 18 U.S.C. § 2 supports that framing.

First, *Pinkerton* does not reach Count 1 at all. In this circuit, "*Pinkerton* liability arises only when a conspirator is charged with a substantive offense arising from the actions of a co-conspirator, not where, as here, a conspirator is charged solely with conspiracy." *United States v. Alvarado-Casas*, 715 F.3d 945, 951 n.6 (5th Cir. 2013) (citing *United States v. Armstrong*, 619 F.3d 380, 387 (5th Cir. 2010)); *see Armstrong*, 619 F.3d at 387 ("*Pinkerton* liability attaches only to substantive crimes, not to other conspiracies."). Count 1 charges a conspiracy and nothing else. (Doc. 60 at 2-3).

As to Count 2, *Pinkerton* and § 2 attribute another person's conduct to the defendant. They do not answer the separate question whether the attributed conduct caused a death. *Hamm* made exactly that point in rejecting the government's effort to confine the individualized-finding rule to conspiracy convictions. The defendants there stood convicted of substantive distribution counts, but "the sentencing enhancements on those counts were wholly subsidiary to the conspiracy count," and the government's attempt to distinguish the two rested "on a distinction without a conceptual difference." 952 F.3d at 747. The court added that *Pinkerton* "is a doctrine about guilt-stage liability for a co-conspirator's substantive offenses," and that "[i]t is not a sentencing doctrine." *Id.* On the theory disclosed in the bill of particulars, the government's "or that of his conspirators or aiders-and-abettors" clause would make

every conspirator the cause of every death any other conspirator brought about anywhere in Israel that day, which restates the aggregation problem rather than solving it.

Count 2 carries an additional difficulty. It charges in the conjunctive that Mr. Al-Muhtadi "did knowingly provide and attempt to provide material support." (Doc. 60 at 3). Support that was never delivered cannot be the but-for cause of anyone's death, so the enhancement cannot rest on the attempt theory the count charges. The bill of particulars treats the substantive and the attempted theories together and attaches the same aggregate causal claim to both. (Doc. 85 at 2-3).

### 3. The conspiracy-wide drug quantity rule, which construes 21 U.S.C. § 846 and traces to Guidelines allocation law, does not apply to the death-resulting enhancement

There is a line of cases supporting conspiracy wide liability, but it is unique to drug quantities and does not apply to death-resulting cases. In *United States v. Turner*, 319 F.3d 716 (5th Cir. 2003), the Fifth Circuit confronted "whether in drug conspiracies post-*Apprendi*, the drug quantity element must be proven as to each alleged co-conspirator or whether it merely must be proven to the conspiracy as a whole." *Id.* at 722. The court adopted the First Circuit's answer in *Derman v. United States*, 298 F.3d 34 (1st Cir. 2002), that the jury determines "any facts about the conspiracy that will increase the possible penalty for the crime of conviction beyond the default statutory maximum," while "the judge should determine, at sentencing, the particulars regarding the involvement of each participant in the conspiracy." *Id.*

at 42-43, quoted in *Turner*, 319 F.3d at 722. *Derman* in turn harmonized *Apprendi* with *Edwards v. United States*, 523 U.S. 511 (1998). *Derman*, 298 F.3d at 42. The Third Circuit reached the same result and named the premise: the quantity finding that sets the statutory maximum is "an offense-specific, not a defendant-specific, determination." *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003); *see United States v. Akins*, 746 F.3d 590, 607 (5th Cir. 2014) (restating *Turner*).

Tracing the lineage of *Edwards* is illuminating. First, consider that *Edwards*, which is the decision the whole line is harmonized with, is a Guidelines case that expressly declined to reach the statutory question. The Court held only that the Guidelines required the sentencing judge to determine the type and quantity of drugs involved, and it closed by saying: "For these reasons, we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims." 523 U.S. at 516. A rule built on a decision that reserved the statutory and constitutional questions cannot answer them now. Guidelines allocation law cannot establish the content of a statutory element, and it cannot establish a conspiracy-wide substitute for one either.

Second, consider that every case in the line is a prosecution under 21 U.S.C. § 846, and § 846 is not built like § 2339B(a)(1). Section 846 creates no penalty of its own. It provides that a conspirator "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. The penalty-setting fact is therefore measured at the

object offense rather than at the individual conspirator's conduct. Section 2339B(a)(1) borrows no penalty from an object offense. Conspiracy is one of three alternative means of committing the offense, set out in the same subsection that defines the crime and fixes the penalty in a single sentence, and the aggravator is written as a result: "if the death of any person results." Nothing in that structure directs the reader to measure the death at the level of the agreement.

The difference between a drug quantity and a death completes the point. A quantity is an attribute of an agreement, because parties can agree to distribute five kilograms. That is why *Phillips* could call the finding offense-specific. A death is not an attribute of an agreement. A death is an event that befell a particular person, and the statute asks whether that event resulted from the defendant's conduct. No court appears to have carried the conspiracy-wide rule from a quantity to a death.

Whether *Turner* controls statutory maximums after *Alleyne* is also an open question in this circuit. In *United States v. Haines*, 803 F.3d 713 (5th Cir. 2015), the government urged that *Turner* requires a conspiracy-wide finding for the statutory maximum, and the court declined to decide it, holding only that "for purposes of statutory minimums at sentencing, the relevant quantity is the quantity attributable to the individual defendant" and describing the maximum question as "a bridge we need not cross today." *Id.* at 741-42.

### D. The government's refusal to identify any death it attributes to Mr. Al-Muhtadi shows that the defect is substantive, and no grand jury found the causation the statute requires

This Court ordered the government to "identify the names of the decedents of which it may offer evidence at trial." (Doc. 80 at 8). The government supplied two sets of initials, a cross-reference to the affidavit, a reference to a witness who may describe 64 deaths, and a footnote declining to list the rest. (Doc. 85 at 3 & n.2). It never said which death it contends Mr. Al-Muhtadi caused, or how.

Mr. Al-Muhtadi's motion for a bill of particulars explained that "[t]he enhancement requires the government to prove but-for causation of a particular death" and cited *Burrage* for that proposition. (Doc. 68-1 at 14). The order itself rested on "the statutory consequences of the alleged 'death results' enhancement." (Doc. 80 at 8). The government knew what was asked and answered that the question does not arise, because in its view any death within the category will do.

That answer is why particularization cannot cure the problem. A bill of particulars supplies facts the government possesses but has not disclosed. It cannot supply what the grand jury never found, because "it is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962); *see United States v. Norris*, 281 U.S. 619, 622 (1930) (a stipulation adding particulars "must fall before the rule that nothing can be added to an indictment without the concurrence of the grand jury by which the bill was found"). Here the government has disclosed its position fully, and the position is that it need

not connect Mr. Al-Muhtadi to any death in particular. Ordering the government to say more would produce either a longer list of deaths it still will not tie to him or a concession that no such death exists. Rule 12 exists for the case in which the government's stated theory fails as a matter of law, and this is that case.

The Second Circuit's treatment of a § 2339B death-results element confirms the point by contrast. In *United States v. Kandic*, 134 F.4th 92 (2d Cir. 2025), the court held that a duplicitous count charging unspecified resulting deaths did not actually prejudice the defendant, relying on circumstances that included disclosure of the deaths "months, if not years, before trial" and the defendant's decision never to seek a bill of particulars or a continuance. *Id.* at 102. The court added that "[i]n the absence of some of these factors, the government's failure to specify the specific resulting deaths in the indictment may have been prejudicial." *Id.* Here the defense moved for particulars, the Court granted the motion in part, and the government still has not specified the deaths.

The same gap runs back to the charging instrument. The Fifth Amendment guarantees that a defendant answers only for the offense the grand jury charged. Since *Ex parte Bain*, 121 U.S. 1 (1887), "it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). The protection is structural. "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow

citizens acting independently of either prosecuting attorney or judge." *Id.* at 218.

Tracking the statutory language is usually enough, but not always. An indictment ordinarily suffices when it "set[s] forth the offense in the words of the statute itself," *Hamling v. United States*, 418 U.S. 87, 117 (1974), but only where those words "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). Otherwise, the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id.* at 117-18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). So too in *Russell*, 369 U.S. at 764: "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." An indictment must "descend to particulars" when the statutory definition uses generic terms. *Id.* at 765 (citation omitted).

A statutory citation does not supply what the facts must. Rule 7(c)(1) requires both "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and a citation to the provision violated, and those are "separate requirements, and a deficiency in the factual allegations cannot be cured by a statutory citation in the same count." *United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017). A grand jury does not deliberate in statutory shorthand. "The

text of an indictment gives the necessary assurance that the grand jurors knew and agreed to charge that which the text describes; but it gives no comparable assurance that the grand jurors considered or were advised as to the terms of a statutory section that is referred to only by a naked number." *United States v. Gonzalez*, 686 F.3d 122, 132 (2d Cir. 2012).[5] The death allegation here is a statutory citation followed by a legal conclusion, and it supplies no fact at all.

Under *Burrage*, the death-results element is exactly such a fact. It requires a finding that a particular person died and would not have died but for the offense, and the abstract proposition that people died will not do. The superseding indictment contains no such finding, and the government's bill of particulars gives the Court no basis to assume that one was made, because the government itself cannot say which death it means. On this record there is no way to know that the grand jury found any death caused by Mr. Al-Muhtadi, and the Court should not assume a finding the government declines to describe.

This Court's conclusion in its bill of particulars order that the superseding indictment "generally satisfies the requirements of Rule 7(c)(1)" should not resolve

---

5 The Second Circuit applied that principle to a continuing-criminal-enterprise indictment that alleged the predicate violations by statutory citation alone. After the Solicitor General confessed error, the Supreme Court granted certiorari, vacated, and remanded. *Montague v. United States*, 144 S. Ct. 2654 (2024) (mem.). On remand the court of appeals vacated the conviction in a non-precedential summary order, holding that it could not conclude the defect was harmless because "the indictment did not give Montague notice of specific predicate acts to be proven, which limited his ability to mount an effective defense." *United States v. Montague*, No. 18-2975, 2024 WL 4100517, at *2 (2d Cir. Sept. 6, 2024). The court expressly declined to decide whether such a defect is prejudicial per se. *Id.* Five judges had earlier dissented from the denial of rehearing en banc, reasoning that an indictment "may not simply replace factual elements with statutory citations." *United States v. Montague*, 84 F.4th 533, 535 (2d Cir. 2023) (Pérez, J., dissenting from the denial of rehearing en banc).

the question. (Doc. 80 at 4). That ruling addressed notice on the face of the pleading before the government disclosed its causal theory. The present objection is that the theory the government has now disclosed cannot be the theory on which a grand jury found probable cause that death resulted from Mr. Al-Muhtadi's offense, because it dispenses with the causal finding altogether.

If the Court is not prepared to strike the allegations on the present record, a narrower step is available. Rule 6(e)(3)(E)(ii) permits disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In *United States v. Hoey*, No. S3 11-CR-337 PKC, 2014 WL 2998523, at *1 (S.D.N.Y. July 2, 2014), the court denied the motion to strike but granted in camera review of the instructions the grand jury had received on the death-results enhancement, because the defendant had come forward with "more than mere speculation that the grand jury did not receive the proper instructions on the 'but-for' causation." *Id.* at *3. The showing here does not rest on speculation at all. The government has filed, by order of this Court, a statement of its own theory of causation under which no particular death need be traced to Mr. Al-Muhtadi. *Gonzalez* observed that a transcript of the prosecutor's advice to the grand jurors might bear on whether a bare statutory citation could be cured, while noting that no such transcript had been requested in that case. 686 F.3d at 132. This Court can request it. Mr. Al-Muhtadi therefore asks, in the alternative, that the Court direct the government to produce for in camera

review those portions of the grand jury transcript reflecting the instructions given on the death-resulting allegations in Counts 1 and 2.

### E. The government's reservation of the right to change its proof would work a constructive amendment or a fatal variance

The Fifth Circuit has held that "[a]n implicit or constructive amendment . . . occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." *United States v. Hoover*, 467 F.3d 496, 500-01 (5th Cir. 2006) (quoting *United States v. Reasor*, 418 F.3d 466, 475 (5th Cir. 2005)); *accord United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010). A variance supports reversal when the defendant "both proves a variance between the government's evidence at trial and the allegations in the indictment and demonstrates that the variance prejudiced his substantial rights." *United States v. Gaytan*, 74 F.3d 545, 552 (5th Cir. 1996).

The government has told the Court that the testimony it intends to elicit "will be evolving until we get closer to trial" and has reserved the right to amend its bill of particulars. (Doc. 85 at 3, 6). Taken with an indictment that identifies no death, the reservation means that whatever death the jury eventually hears about will be a death the grand jury never considered. If the government rests the element at trial on a decedent it has not yet named, the jury will convict on a factual basis the grand jury did not pass upon; if it rests the element on the aggregate, the jury will convict

on a legal theory the grand jury was never asked to endorse. Either path defeats the protection the grand jury was designed to afford, which is what *Stirone* forbids. 361 U.S. at 218.

A fact that raises the ceiling must be charged and proved as an element, because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; see *Alleyne*, 570 U.S. at 108; *Burrage*, 571 U.S. at 210. If the death-resulting allegations fall, the maximum term on each material-support count is twenty years. 18 U.S.C. § 2339B(a)(1). Resolving the defect now avoids a trial conducted under a ceiling of life imprisonment that the charging instrument does not support.

## V. CONCLUSION

The government has disclosed a theory of causation that *Burrage* forecloses, has ignored this Court's direction to identify the deaths it attributes to Mr. Al-Muhtadi, and has reserved the right to change its proof. The death-resulting allegations appended to Counts 1 and 2 should be stricken. In the alternative, the Court should strike those allegations as surplusage under Federal Rule of Criminal Procedure 7(d) or preclude the government from proving the element by aggregate contribution to the October 7 attack.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 15, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***