UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS 1 AND 2 OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND FOR UNCONSTITUTIONAL VAGUENESS

[Page intentionally left blank]

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 4

A. The Court is authorized to grant this motion and the government has supplied the undisputed factual predicate for doing so .......... 4

B. Section 2339B, properly construed, does not reach the conduct alleged .......... 6

1. The statute requires that the support run *to Hamas* and that the defendant work *under Hamas's* direction or control .......... 6

2. The Superseding Indictment alleges only membership in an organization that is not a designated foreign terrorist organization .......... 7

a. The DFLP is not a foreign terrorist organization, and the United States declined to redesignate it in 1999 .......... 7

b. Providing support to individuals or entities associated with an FTO is not ipso facto support to the FTO .......... 8

c. *El-Mezain* does not salvage the indictment .......... 9

3. The only alleged link between Al-Muhtadi and Hamas is a public broadcast, and a public broadcast is not "direction or control" .......... 11

a. *Ullah* holds that acting on a terrorist group's public exhortation is not working under its direction or control .......... 11

b. The government's affidavit describes "independent" action .......... 13

c. Whether Al-Muhtadi acted with a group does not distinguish *Ullah* .......... 14

4. The Superseding Indictment alleges no knowledge that the DFLP or NRB coordinated with Hamas .......... 16

5. The "weapons" theory fails on the face of the statute ............... 17

C. In the alternative, Section 2339B is unconstitutionally vague as applied to this conduct ........................................................... 18

1. Legal standard ............................................................. 18

2. *HLP* left the reach of the statute to await a concrete fact situation ........................................................................ 19

3. The government's theory eliminates the very feature that saved the statute in *HLP* ..................................................... 20

4. The arbitrary enforcement prong has never been adjudicated as to Section 2339B ............................................ 21

5. The Government's disclosures stretch the "on or about" allegation beyond any temporal limit ....................................... 22

6. *Warsame* supports narrowing relief in the alternative ............ 23

D. The Rule of Lenity independently requires dismissal or narrowing ........................................................................................ 24

III. CONCLUSION ......................................................................................... 25

CERTIFICATE OF SERVICE ......................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .................................. *passim*

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ......................... 16

*Kolender v. Lawson*, 461 U.S. 352 (1983) ................................................................ 22

*Russell v. United States*, 429 F.2d 237 (5th Cir. 1970) ............................................ 22

*Scales v. United States*, 367 U.S. 203 (1961) ....................................................... 15-16

*Smith v. Goguen*, 415 U.S. 566 (1974) ...................................................................... 22

*United States v. Alebbini*, 979 F.3d 537 (6th Cir. 2020) ........................................... 12

*United States v. Bass*, 404 U.S. 336 (1971) .............................................................. 24

*United States v. Calk*, 87 F.4th 164 (2d Cir. 2023) ..................................................... 5

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) .................................... 8-11

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) ............................................ 12

*United States v. Flores*, 404 F.3d 320 (5th Cir. 2005) ............................................. 4-5

*United States v. Fontenot*, 665 F.3d 640 (5th Cir. 2011) ............................................ 4

*United States v. Girod*, 646 F.3d 304 (5th Cir. 2011) ............................................... 22

*United States v. Greer*, 958 F. Supp. 188 (D. Vt. 1997) ........................................... 23

*United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-cr-240 (N.D. Tex.) ............................................................................................................ 8, 10

*United States v. Korn*, 557 F.2d 1089 (5th Cir. 1977) ................................................ 4

*United States v. Osadzinski*, 97 F.4th 484 (7th Cir. 2024) ....................................... 20

*United States v. Perry*, 638 F.2d 862 (5th Cir. 1981) ............................................... 23

*United States v. Pugh*, 945 F.3d 9 (2d Cir. 2019) ..................................................... 12

*United States v. Rudzavice*, 586 F.3d 310 (5th Cir. 2009) ........................................ 19

*United States v. Santos*, 553 U.S. 507 (2008) ........ 24

*United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026) ........ *passim*

*United States v. Wadi*, 153 F.4th 465 (5th Cir. 2025) ........ 9

*United States v. Warsame*, 537 F. Supp. 2d 1005 (D. Minn. 2008) ..... 4, 8-9, 16, 23-24

*United States v. Williams*, 553 U.S. 285 (2008) ........ 19

*Zemel v. Rusk*, 381 U.S. 1 (1965) ........ 19

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V ........ 1, 15

STATUTES

8 U.S.C. § 1189 ........ 8

18 U.S.C. § 2339A(b)(1) ........ 17

18 U.S.C. § 2339B ........ *passim*

18 U.S.C. § 2339B(a)(1) ........ 2, 6, 16

18 U.S.C. § 2339B(g)(6) ........ 8

18 U.S.C. § 2339B(h) ........ 2, 7, 12-14

International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706 ........ 8

RULES

FED. R. CRIM. P. 12 ........ 4

FED. R. CRIM. P. 12(b)(1) ........ 1, 4

FED. R. CRIM. P. 12(b)(3)(B)(iii) ........ 1

FED. R. CRIM. P. 12(b)(3)(B)(v) ........ 1

FED. R. EVID. 404(b) ........ 23

### OTHER AUTHORITIES

Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,112 (Oct. 8, 1999). 8

Exec. Order No. 13224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) .................................... 8

U.S. Dep't of State, 1999 Report Index (Oct. 8, 1999) ............................................ 7-8

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS 1 AND 2 OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND FOR UNCONSTITUTIONAL VAGUENESS**

---

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who, for the reasons set forth below, respectfully moves to dismiss Counts 1 and 2 of the Superseding Indictment under Federal Rules of Criminal Procedure 12(b)(1), 12(b)(3)(B)(iii), and 12(b)(3)(B)(v), and the Due Process Clause of the Fifth Amendment to the United States Constitution.

## I. INTRODUCTION

Counts 1 and 2 charge Mahmoud Al-Muhtadi with conspiring to provide, providing, and attempting to provide material support in the form of "personnel including himself, weapons, and services" to Hamas, "on or about October 7, 2023." (Doc. 60, at 2-4).

The Superseding Indictment does not allege that Al-Muhtadi ever provided

anything to Hamas or communicated with anyone identified as Hamas. It does not allege that Hamas ever directed him, requested anything of him, knew who he was, or would have had any recourse had he done nothing at all. And it does not allege that he knew that the organization to which he is said to have belonged coordinated with Hamas.

Instead, it merely stacks inferences: Al-Muhtadi was a member of the Democratic Front for the Liberation of Palestine ("DFLP") and its armed wing, the National Resistance Brigades ("NRB"). (Doc. 60, at 2). The DFLP and NRB "coordinated and cooperated with" Hamas. *Id.* On October 7, Hamas "acted with" the DFLP and NRB. *Id.* Therefore, the government reasons, Al-Muhtadi provided material support to Hamas.

This conclusion, backed only by non sequiturs and post hoc inferences, is an arch without its keystone—the offense. Section 2339B does not criminalize membership in an organization. It does not even criminalize membership in an organization that keeps company with a designated terrorist organization. Section 2339B criminalizes providing material support "to a [designated] foreign terrorist organization," and, where the theory is "personnel," it reaches only individuals provided "to work under *that* terrorist organization's direction or control." 18 U.S.C. §§ 2339B(a)(1), (h). The DFLP is not a designated foreign terrorist organization. The DFLP was designated in 1997, the Secretary of State did not redesignate it in 1999, and it has never been redesignated.

On the government's own account, the mechanism by which Hamas is said to have reached Al-Muhtadi was a public broadcast, a message Mohammed Deif addressed at approximately 7:53 a.m. to "the masses," to "all Arab and Islamic forces," and to "everyone who has a rifle." (Doc. 1-1 ¶ 9). The affidavit says Al-Muhtadi "answered Hamas's call to arms," *id.* ¶ 11, and "heard Hamas's call to arms," *id.* ¶ 84.

In April 2026, the Second Circuit held that materially similar conduct cannot constitute a § 2339B offense. In *United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026), the court reversed a material support conviction where the defendant consumed ISIS's broadcast propaganda, copied ISIS slogans onto his passport and his bomb components, detonated a pipe bomb in a Manhattan subway tunnel, and told detectives he had done it "on behalf of the Islamic State." That was not enough, the court held, because

> As a matter of ordinary meaning, a person cannot "work under [ISIS's] direction or control" if he is acting alone, and if ISIS does not know he exists, has no expectation he will hear ISIS's messages or act on them, and will not know, or care, or have any recourse if he ignores the message completely.

*Id.* at 415 (alteration in original).

The government's theory here is even weaker on the coordination element than the case the Second Circuit found insufficient. Ullah at least consumed ISIS's own media directly and professed to act for ISIS alone. Al-Muhtadi is alleged to have belonged to a different organization entirely—one the United States affirmatively delisted—and to have heard a public message.

Counts 1 and 2 should be dismissed. In the alternative, § 2339B is unconstitutionally vague as applied to this conduct, and the Court should, at minimum, enter the narrowing relief the court granted in *United States v. Warsame*, 537 F. Supp. 2d 1005, 1019-20 (D. Minn. 2008), where the court held that evidence lacking a "direct connection with underlying military or terrorist activities" would be inadmissible as evidence of guilt unless tied to conduct the statute actually reaches.

## II. ARGUMENT

### A. The Court is authorized to grant this motion and the government has supplied the undisputed factual predicate for doing so

Rule 12(b)(1) permits the Court to decide "any defense, objection, or request that the court can determine without a trial on the merits." In this Circuit, "the propriety of granting a motion to dismiss an indictment under [Rule] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (quoting *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977)). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* (quoting *Korn*, 557 F.2d at 1090). And "dismissing an indictment based on the resolution of a legal question in the presence of undisputed facts is authorized by the [Rules]." *Id.* at 325; *accord United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

Al-Muhtadi does not ask this Court to weigh evidence. He asks it to construe § 2339B and to decide a question of law: whether the statute reaches conduct

undertaken as a member of an organization that is *not* a designated foreign terrorist organization, where the government alleges only that the organization "coordinated and cooperated with" the FTO, (Doc. 60, at 2), but does not allege any communication between the defendant and the FTO or knowledge by the defendant of the interorganizational relationship, and where the government identifies a message broadcast to the general public as the sole operative link between the defendant and the FTO. This is the same question the Second Circuit resolved in *Ullah* as an "embedded question[] of statutory interpretation." 173 F.4th at 414 (quoting *United States v. Calk*, 87 F.4th 164, 177 (2d Cir. 2023)).

And the government has supplied the undisputed-facts predicate that *Flores* requires. Opposing the second motion for a bill of particulars, the United States represented to this Court:

> What the Government knows about the Defendant's affiliation with DFLP and about his actions on October 7, 2023, are set out in the criminal complaint. There is no alternative set of facts that the Government has relied upon in acquiring the Superseding Indictment.

(Doc. 72 at 18). After the Court granted the bill of particulars in part, (Doc. 80), the government confirmed that it "does not intend to offer any 'theories concerning the personnel, weapons, or services that the Defendant used' that are not contained in the Affidavit." (Doc. 85 at 2). The government has thus told the Court that the forty-four-page affidavit, (Doc. 1-1), sets out what it knows about Al-Muhtadi's DFLP affiliation and his actions on October 7, and that its personnel, weapons, and services theories rest on that affidavit. Although the government has reserved the right to

offer additional evidence in support of those theories, this motion accepts the affidavit's allegations as true.

Finally, this is not a sufficiency challenge. Al-Muhtadi contends that the conduct the government describes, taken as entirely true, is not the offense Congress defined in § 2339B. *See Ullah*, 173 F.4th at 414 n.4 ("[I]t is not unusual for the government to offer evidence that is indisputably—even overwhelmingly—sufficient for a conviction based on one interpretation of a statute, only for an appellate court to determine that the interpretation used by the government and the district court is incorrect.").

**B. Section 2339B, properly construed, does not reach the conduct alleged**

**1. The statute requires that the support run *to Hamas* and that the defendant work *under Hamas's* direction or control**

Section 2339B(a)(1) makes it a crime to "knowingly provide[] material support or resources to a foreign terrorist organization." The Supreme Court has explained: "The statute prohibits providing a service '*to* a foreign terrorist organization.' The use of the word 'to' indicates a connection between the service and the foreign group." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2010) ("*HLP*") (emphasis and citation omitted).

Where the theory is "personnel," Congress wrote an express limitation:

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) *to work under that terrorist organization's direction or control* or to organize, manage,

> supervise, or otherwise direct the operation of that organization. *Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.*

18 U.S.C. § 2339B(h) (emphasis added).

"Service" is read the same way. *HLP*, 561 U.S. at 23–24 (limiting "service" under the statute to "concerted activity, not independent advocacy" because "Congress would not have prohibited under 'service' what it specifically exempted from prohibition under 'personnel'"). "The statute reaches *only* material support coordinated with or under the direction of a designated foreign terrorist organization." *Id.* at 31.

The designated FTO here is Hamas. (Doc. 60, at 1-2). Every element must therefore be measured against Hamas—not against the DFLP, not against the NRB, and not against "the Palestinian factions."

**2. The Superseding Indictment alleges only membership in an organization that is not a designated foreign terrorist organization**

**a. The DFLP is not a foreign terrorist organization, and the United States declined to redesignate it in 1999**

The Secretary of State designated the DFLP as a foreign terrorist organization in 1997 and did not redesignate it on October 8, 1999. The Department's contemporaneous explanation was that the DFLP and one other group "were dropped primarily because of the absence of terrorist activity, as defined by relevant law, by those groups during the past two years." *See* U.S. Dep't of State, 1999 Report Index

(Oct. 8, 1999); Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,112 (Oct. 8, 1999).

Section 2339B(g)(6) defines "terrorist organization" by reference to designation under 8 U.S.C. § 1189. That is the only definition the statute uses. The government's allegation that the DFLP is a Specially Designated Global Terrorist ("SDGT"), (Doc. 60, at 2), is beside the point. SDGT status arises under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–1706, and Executive Order 13224, 66 Fed. Reg. 49,079 (Sept. 23, 2001), and violations are prosecuted under IEEPA, not § 2339B. The government has charged no IEEPA count here. It has charged under § 2339B, and § 2339B reaches only FTOs.

The government's charging practice confirms that the two regimes are distinct. In the Holy Land Foundation prosecution, the government charged § 2339B counts and, separately, IEEPA counts for providing funds, goods, and services "to a Specially Designated Terrorist (i.e., Hamas)." *United States v. El-Mezain*, 664 F.3d 467, 485 (5th Cir. 2011). Here, the government has charged no IEEPA count based on the DFLP's SDGT status. It has charged only § 2339B, so it must prove support to Hamas, the only designated foreign terrorist organization named in the Superseding Indictment.

**b. Providing support to individuals or entities associated with an FTO is not ipso facto support to the FTO**

This is not a novel proposition. In *Warsame*, the district court rejected the argument that § 2339B requires specific intent and explained why the statute

nonetheless does not sweep in incidental benefit:

> Under the plain language of § 2339B . . . the government must prove that the defendant "knowingly provides material support or resources to a foreign terrorist *organization*," rather than to individuals who happen to be FTO members. In other words, even where a donor's contribution to an individual FTO member confers some benefit upon the terrorist organization, the prosecution must prove that the donor knew that the intended recipient of his contribution was a designated FTO, or an organization that engages in terrorist activity.

537 F. Supp. 2d 1005, 1022 (D. Minn. 2008) (citation omitted). The court repeated the point in a footnote: "[T]he prosecution must prove that the donor knowingly provided material support or resources to the FTO." *Id.* at 1022 n.15.

If a contribution to an actual, individual member of a designated FTO is insufficient absent proof the defendant knew the recipient *was* the FTO, then participation in a separate organization, one the United States declined to redesignate, is insufficient as well.

And the Fifth Circuit has recently emphasized the relevance of the identity of the recipient organization. In *United States v. Wadi*, 153 F.4th 465 (5th Cir. 2025), the court noted record evidence that the intended beneficiaries "may actually have fought for Ahrar al-Sham, a distinct organization that has never been designated a foreign terrorist organization," and noted that the government had nonetheless "presented sufficient evidence for a reasonable jury to find that Wadi agreed to finance al-Nusra, rather than Ahrar al-Sham." *Id.* at 470 n.1.

#### c. *El-Mezain* does not salvage the indictment

The government may seek refuge in *United States v. El-Mezain*, 664 F.3d 467

(5th Cir. 2011), where this Circuit affirmed § 2339B convictions even though the funds went to charitable committees rather than to Hamas itself. *See id.* at 483 (describing funds "funneled to Hamas through various charitable entities in the West Bank and Gaza"). That decision binds this Court, but it is distinguishable because of what the government pleaded here, and what it chose not to plead.

First, *El-Mezain* was a control case; this is a coordination case. The evidence there was that the *zakat* committees "had come under the control of Hamas," *id.* at 489, such that they functioned as part of Hamas's own infrastructure. The Superseding Indictment here alleges something materially different: that the DFLP and NRB "coordinated and cooperated with" Hamas. (Doc. 60, at 2). Two organizations that coordinate do not become one organization, and the government does not allege that the DFLP had "come under the control of Hamas."

Second, the DFLP is not an arm of Hamas. It is a separate organization with its own designation history, and the United States declined to redesignate it in 1999.

Third, *El-Mezain* rested on extensive proof of the defendants' own knowledge of the Hamas relationship, including evidence that HLF sent funds to Hamas's future Political Bureau Chief, *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-cr-240 (N.D. Tex.), ECF No. 1243 at 8, sponsored Hamas officials to speak at HLF events, *id.*, and statements by the defendants expressing their support for Hamas, *id.* at 10. The Superseding Indictment here contains no knowledge allegation of any kind connecting Al-Muhtadi to the DFLP–Hamas relationship. *See infra* Section II.B.4.

Fourth, money actually changed hands in *El-Mezain*. Here, the indictment does not allege that *anything*—a person, a weapon, or a service—was ever transferred to Hamas.

*El-Mezain* therefore stands for the proposition that support routed through an intermediary can violate § 2339B where (1) the intermediary is an arm of the FTO and (2) the defendant knew where the support was going. It does not stand for the proposition that membership in an independent, delisted organization that coordinates with an FTO itself constitutes support to the FTO.

**3. The only alleged link between Al-Muhtadi and Hamas is a public broadcast, and a public broadcast is not "direction or control"**

**a. *Ullah* holds that acting on a terrorist group's public exhortation is not working under its direction or control**

As noted, the Second Circuit reversed Ullah's § 2339B conviction despite his professed allegiance to ISIS. 173 F.4th at 411-12. On the personnel theory, the court held that a person cannot "work under [ISIS's] direction or control" where ISIS "does not know he exists." *Id.* at 415 (alteration in original). "That Defendant subjectively conceived of himself as a soldier of ISIS does not establish that ISIS did, in fact, control or direct his actions," reasoned the Second Circuit, and "[t]he videos that Defendant watched that were issued by ISIS did not 'order' or 'command' him to do anything under any common understanding of those terms." *Id.*

The court held that hearing and obeying an exhortation is not working "under" direction:

> [E]ven if an ISIS YouTube video contained a "direction" in some sense, § 2339B(h) is not satisfied simply because one acts after hearing a direction from a terrorist organization. The statute requires that one "work under that terrorist organization's direction or control."

*Id.* at 416. "Under," the court held, means "suffering restriction, constraint, or control by." *Id.* Ullah "was not constrained by ISIS's hortatory, open-ended message. That total absence of constraint is inconsistent with the plain meaning . . . of acting 'under' someone else's 'direction or control.'" *Id.* at 416. And "[a] contrary interpretation would render Congress's exclusion of 'entirely independent' actors nonsensical." *Id.* The court reached the same result on the service theory "for essentially the same reason: Defendant acted 'entirely independently' of ISIS." *Id.* at 421. It rejected the government's argument that conduct benefiting an FTO is a "service," holding that reading "foreclosed by *Humanitarian Law Project*." *Id.* at 422. And it held the district court had erred in instructing that the jury could convict because the defendant acted "for the benefit of ISIS" or because ISIS "invited" him to: "Merely accepting an 'invitation' to act independently is not enough." *Id.* at 423 n.14.

The court also distinguished the cases the government relied on—*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011), *United States v. Pugh*, 945 F.3d 9 (2d Cir. 2019), and *United States v. Alebbini*, 979 F.3d 537 (6th Cir. 2020)—on the ground that "[e]ach of those individuals plainly attempted to submit to the 'direction or control' of a terrorist group by joining its ranks." *Id.* at 420. The Second Circuit highlighted the fact that "the government has not identified a prior case in which this Court or another Court of Appeals has upheld a conviction for providing 'personnel'

in violation of § 2339B based on independent conduct like Defendant's, and we are not aware of any." *Id.*

**b. The government's affidavit describes "independent" action**

The government's theory of how Hamas's will reached Al-Muhtadi is stated in its own words:

- Deif's approximately 7:53 a.m. message was addressed to "the masses," to "all Arab and Islamic forces," and to "everyone who has a rifle." (Doc. 1-1 ¶ 9).
- Al-Muhtadi "answered Hamas's call to arms." (Doc. 1-1 ¶ 11).
- He "had likely heard and was commenting on Deif's call to arms from that day." (Doc. 1-1 ¶ 54).
- He "heard Hamas's call to arms, armed himself, gathered others, and crossed into Israel." (Doc. 1-1 ¶ 84).

Every one of those formulations describes a man who heard a broadcast and decided what to do. None describes an individual instruction, an assignment, a report back, a chain of command, a rendezvous, or any two-way communication with anyone identified as Hamas. Under *Ullah*, and under the plain text of § 2339B(h), that is the statutory exemption, not the offense: "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." The affidavit confirms it. Every call Al-Muhtadi is alleged to have had on October 7 was with individuals not alleged to be members of Hamas. (Doc. 1-1 ¶¶ 50–67).

There is, moreover, no allegation anywhere in the Superseding Indictment or the affidavit that Hamas knew Mahmoud Al-Muhtadi existed. Under *Ullah*, that

alone is dispositive; an organization "could hardly provide 'guidance or supervision' of an individual without knowledge of that individual's existence." 173 F.4th at 416.

**c. Whether Al-Muhtadi acted with a group does not distinguish *Ullah***

The government may contend that unlike Ullah, Al-Muhtadi was no lone wolf: He belonged to an organization that was itself in a "HAMAS-led . . . Joint Operations Room," (Doc. 60, at 2), and that "acted with" Hamas on October 7, *id.* That answer fails for four reasons.

*First*, § 2339B(h) asks about this defendant. The question the statute poses is whether *this individual* was provided "to work under that terrorist organization's direction or control." Organizational coordination is not individual submission. The government has pleaded that the NRB was "organized into" the Joint Operations Room, (Doc. 60, at 2), an allegation about an institution. It has not pleaded that Al-Muhtadi participated in the Joint Operations Room, knew it acted with Hamas on October 7, or received anything through it.

*Second*, the Joint Operations Room predates the charged conduct by five years. Its first alleged operations were in 2018. (Doc. 1-1 ¶ 21). Counts 1 and 2 charge conduct "on or about October 7, 2023." The affidavit's reference to a May 2023 message about NRB strikes "as part of the Joint Operations Room," (Doc. 1-1 ¶ 25), concerns a different, earlier campaign and says nothing about direction from Hamas on October 7. The Superseding Indictment does not allege that any instruction reached Al-Muhtadi through the Joint Operations Room on or about that date.

*Third*, a coalition is not a command structure. Even accepting the Joint Operations Room as true, being "organized into" a body alongside a designated organization does not make one subject to that organization's direction or control. *Cf. Ullah*, 173 F.4th at 420 (distinguishing cases in which defendants "plainly attempted to submit to the 'direction or control' of a terrorist group by joining its ranks"). Al-Muhtadi is not alleged to have joined Hamas's ranks. He is alleged to have been in a different organization's ranks.

Fourth, coordination between two organizations is not the offense Congress defined. Section 2339B makes it a crime for a *person* to provide support to an FTO. It does not make it a crime for a person to belong to an organization that has relations with an FTO. That theory of liability, guilt derived from organizational association, collides with the Due Process Clause's personal-guilt requirement: "when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity . . . , that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment." *Scales v. United States*, 367 U.S. 203, 224–25 (1961). *Scales* upheld the conviction there because the statute reached "one who actively and knowingly works in the ranks of that organization, intending to contribute to the success of those specifically illegal activities." *Id.* at 226-27. The Superseding Indictment pleads no comparable knowledge connecting Al-Muhtadi's DFLP membership to Hamas. *See*

*also HLP*, 561 U.S. at 39 (§ 2339B "does not prohibit being a member of one of the designated groups" (quoting *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1133 (9th Cir. 2000))). *Warsame* rejected a *Scales* challenge to the base offense because the defendant's own act of provision supplied the personal involvement. 537 F. Supp. 2d at 1020–21. The theory here is different: it derives the defendant's guilt from his organization's relationship with a third organization, which is the kind of guilt by association *Scales* addresses.

**4. The Superseding Indictment alleges no knowledge that the DFLP or NRB coordinated with Hamas**

Section 2339B requires knowledge. 18 U.S.C. § 2339B(a)(1). *HLP* held the required mental state is "knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities." 561 U.S. at 16-17. Al-Muhtadi does not argue otherwise.

But knowledge of what? Under *Warsame*, "the prosecution must prove that the donor knew that the intended recipient of his contribution was a designated FTO." 537 F. Supp. 2d at 1022. Where the government's theory is that support reached Hamas through an intermediary organization, the defendant must have known his conduct was support to Hamas. Otherwise, § 2339B becomes a strict-liability offense as to the one fact, the identity of the recipient, that makes the conduct criminal at all.

The Superseding Indictment does not allege that Al-Muhtadi knew the DFLP or NRB coordinated with Hamas on October 7, 2023. It alleges he knew *Hamas* was

a designated FTO. (Doc. 60, at 3-4). That is a different fact, and on the government's theory, it is not the operative one. A person may know perfectly well that Hamas is designated and not know that his own organization's relationship with Hamas is legally capable of converting his conduct into support to Hamas particularly where his own organization is not designated.

The bill of particulars litigation is instructive. Asked to "[i]dentify the specific instructions, directions, agreements, or coordination from Hamas on which the government will rely to satisfy the requirement that the defendant acted under the direction or control of Hamas," Doc. 68-1 at 17, the government declined, characterizing the request as asking "how it plans on meeting the elements of each crime." Doc. 72 at 19. The Court did not order that disclosure, Doc. 80 at 6 n.3, 7, and the government's bill of particulars identifies no instruction, direction, or agreement from Hamas, *see* Doc. 85. Nowhere in its twenty pages of briefing or in its bill did the government assert that Al-Muhtadi knew of any relationship between his organization and Hamas on October 7, 2023.

**5. The "weapons" theory fails on the face of the statute**

*HLP* explained that the other types of material support listed in the statute, "including 'lodging,' 'weapons,' 'explosives,' and 'transportation,' § 2339A(b)(1), are not forms of support that could be provided independently of a foreign terrorist organization." 561 U.S. at 24. They necessarily involve a transfer *to* the organization. That is the entire basis on which the Court construed the intangible term "service."

*Accord Ullah*, 173 F.4th at 422.

The Superseding Indictment identifies no weapon. The affidavit describes weapons that were, on their face, the NRB's, including a Russian-made 1984 rifle, serial PS 20592, that an NRB form describes as "the property of the National Resistance Brigades." (Doc. 1-1 ¶ 31). It describes a photograph, shared in February 2025, of a handgun that appears to be in an apartment in Tulsa, Oklahoma, sixteen months after the charged date and on another continent. (Doc. 1-1 ¶¶ 80-81). The October 7 allegations, that Al-Muhtadi asked others to bring rifles, magazines, and a vest, (Doc. 1-1 ¶¶ 56-61), describe weapons gathered by and for his own group. None alleges that any weapon was given to Hamas.

There is no such thing as coordinated-weapons support in which a defendant keeps his own rifle. If no weapon was transferred to Hamas, the weapons theory is not a theory. At minimum, the Court should strike it.

### C. In the alternative, Section 2339B is unconstitutionally vague as applied to this conduct

If the Court concludes that § 2339B is capable of reaching support routed through an undesignated organization that merely "coordinated and cooperated with" an FTO, then the statute fails to give fair notice and fails to constrain enforcement discretion.

#### 1. Legal standard

"A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is

prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *HLP*, 561 U.S. at 18 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "Whether a criminal statute is unconstitutionally vague is a question of law." *United States v. Rudzavice*, 586 F.3d 310, 315 (5th Cir. 2009).

Al-Muhtadi raises the challenge as applied only. He does not contend that § 2339B is vague in all applications; *HLP* forecloses that. He contends it is vague as applied to a defendant whose organization the United States declined to redesignate, whose only alleged link to the designated organization is a public broadcast, and whose knowledge of the linking relationship is unpleaded.

### 2. *HLP* left the reach of the statute to await a concrete fact situation

*HLP* was a pre-enforcement challenge by plaintiffs who "ha[d] not provided any specific articulation of the degree to which *they* seek to coordinate their advocacy." 561 U.S. at 25. On that record, the Court declined to answer "how much direction or coordination is necessary":

> It is apparent with respect to these claims that "gradations of fact or charge would make a difference as to criminal liability," and so "adjudication of the reach and constitutionality of [the statute] must await a concrete fact situation."

*Id.* at 24-25 (quoting *Zemel v. Rusk*, 381 U.S. 1, 20 (1965)). The plaintiffs asked, among other things, "Would any communication with any member be sufficient? . . . What about a relationship through an intermediary?" The Court declined to answer those questions because, on that record, they were "entirely hypothetical." *Id.* at 24-

25 (quoting Reply Brief for Plaintiffs). And it framed its entire holding as a narrow one, declining to "address the resolution of more difficult cases that may arise under the statute in the future" and noting that "the scope of the material-support statute may not be clear in every application." *Id.* at 8, 21.

This case presents that "concrete fact situation." In the sixteen years since *HLP*, no court of appeals drew that line until *Ullah*. The Seventh Circuit acknowledged as much while affirming a conviction built on coordination, or attempted coordination, with ISIS's official media bureau: "The line dividing concerted conduct from independent advocacy will doubtless emerge as courts continue to consider challenges to convictions under § 2339B." *United States v. Osadzinski*, 97 F.4th 484, 494 (7th Cir. 2024).

#### 3. The government's theory eliminates the very feature that saved the statute in *HLP*

The Supreme Court treated the designation list as a meaningful limit on the statute's reach, citing it as evidence that Congress had been "conscious of its own responsibility to consider how its actions may implicate constitutional concerns":

> [Section] 2339B only applies to designated foreign terrorist organizations. There is, and always has been, a limited number of those organizations designated by the Executive Branch, . . . and any groups so designated may seek judicial review of the designation.

561 U.S. at 35. The published, finite, and judicially reviewable list is what allows a private person to determine what is prohibited.

The government's theory eliminates that safeguard from the statute. If

membership in an undesignated organization that coordinates with a designated one is itself support to the designated one, then the list no longer defines the prohibition. A person consulting the list would learn that his organization is not on it (indeed, that the United States declined to redesignate it) and would learn nothing about his exposure.

That is what happened here. The question is not whether a person in Gaza could have known that the DFLP coordinated with Hamas; the Joint Operations Room was publicly discussed. *See* (Doc. 1-1 ¶ 21). The question is whether any published legal instrument told him that such coordination turned his conduct into support to Hamas. Consider what a person of ordinary intelligence could have determined from published United States legal instruments before October 7, 2023:

- Hamas is a designated foreign terrorist organization.
- The DFLP was designated in October 1997, and when the Secretary of State redesignated foreign terrorist organizations on October 8, 1999, she did not redesignate the DFLP.
- The DFLP has never been redesignated.
- No published United States instrument, whether a designation, regulation, guidance document, or reported decision, states or suggests that DFLP or NRB membership is treated as support to Hamas for purposes of § 2339B.

#### 4. The arbitrary enforcement prong has never been adjudicated as to Section 2339B

*HLP* addressed only fair notice, not arbitrary enforcement. 561 U.S. at 20 ("Plaintiffs do not argue that the material-support statute grants too much enforcement discretion to the government. We therefore address only whether the statute 'provide[s] a person of ordinary intelligence fair notice of what is

prohibited.'"). The Supreme Court has called the enforcement-discretion prong "the more important aspect of vagueness doctrine," which requires "minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)).

The government's construction supplies no such guideline. If belonging to an armed faction that coordinates with Hamas is material support to Hamas, then every member of every faction in the Joint Operations Room and, on the government's own allegation, the "other Palestinian militant groups" in it, Doc. 60 ¶ 6, is a § 2339B defendant, on any day, for any conduct. Nothing in the statute distinguishes among them. The choice of whom to charge, on what conduct, from what year, is left entirely to prosecutorial selection, which is the as-applied vagueness problem here.

**5. The Government's disclosures stretch the "on or about" allegation beyond any temporal limit**

Counts 1 and 2 charge conduct "on or about October 7, 2023." The government's disclosures span January 2017 through February 2025. Doc. 68-1 at 4, 11. "On or about" cannot stretch six years backward to a 2017 document or sixteen months forward to a handgun photograph from Oklahoma. An "allegation as to the time of the offense is not an essential element of the offense charged in the indictment," *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011) (quoting *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970)), and proof of a date reasonably near the charged date ordinarily suffices, *id.* But "this does not mean that an indictment correctly charging a defendant with violating a particular statute on a specified date

can be read as charging that defendant with all violations of the statute that have occurred within the applicable statute of limitations." *United States v. Perry*, 638 F.2d 862, 871 (5th Cir. 1981).

If conduct in 2017 and 2025 can constitute an offense charged as occurring on October 7, 2023, then the statute as applied has no temporal boundary. That is a notice failure, and it creates a variance problem as well, because the grand jury was asked about one day. *Cf. United States v. Greer*, 958 F. Supp. 188, 191 (D. Vt. 1997) ("Even when viewed in the context of the entire duration of the charged conspiracies and continuing criminal enterprise, five years is simply too long. An indictment charging Defendants for conduct 'in or about 1980' cannot reasonably be expected to put Defendants on notice that their conduct as early as 1975 is also at issue.") (holding pre-1980 evidence inadmissible as direct proof of the charged offenses, while admitting it under Rule 404(b)).

#### 6. *Warsame* supports narrowing relief in the alternative

*Warsame* is the model for the alternative relief requested. The court there denied the motion to dismiss and found the bill of particulars adequate, but granted partial as-applied relief:

> [A]llegations that Warsame remained in communications with Al Qaeda associates after he returned to Canada are not sufficient, without more, to survive a vagueness challenge. While such evidence may be admissible at trial for limited purposes, it would be inadmissible as evidence of guilt unless the prosecution ties such evidence to additional conduct that would constitute provision of "personnel" under the statute.

537 F. Supp. 2d 1005, 1018 (D. Minn. 2008). And as to "training," the court

determined "that the term 'training' is unconstitutionally vague as applied to such conduct. Any such evidence would therefore be inadmissible as evidence of guilt unless it is tied to additional conduct that constitutes 'training' under § 2339B." *Id.* at 1020. Al-Muhtadi asks for the same order as applied to "personnel including himself, weapons, and services." (Doc. 60, at 3-4).

**D. The Rule of Lenity independently requires dismissal or narrowing**

If the Court finds § 2339B genuinely ambiguous as to whether it reaches conduct undertaken within an undesignated organization that coordinates with an FTO, the ambiguity must be resolved for the defendant. *United States v. Bass*, 404 U.S. 336, 347–48 (1971) (collecting cases applying the rule of lenity).

The Second Circuit reached lenity on materially similar facts in *Ullah*, holding that even "if any [ambiguity] remained after analyzing the 'language and structure, legislative history, and motivating policies' of § 2339B, we would nonetheless be compelled by the rule of lenity to resolve that ambiguity in Defendant's favor." 173 F.4th at 421.

Lenity has particular force here, because the exposure is a life sentence. *See United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion) (explaining that lenity "vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed," and "places the weight of inertia upon the party that can best induce Congress to speak more clearly").

## III. Conclusion

For these reasons, Mahmoud Al-Muhtadi respectfully asks the Court to dismiss Counts 1 and 2 of the Superseding Indictment. In the alternative, he asks the Court to strike the weapons theory from Counts 1 and 2 and to order that evidence not tied to conduct constituting support to Hamas is inadmissible as evidence of guilt on those counts.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 15, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***