UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | UNDER SEAL |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT DUE TO INABILITY TO INVESTIGATE AND PRESENT A DEFENSE

[Page intentionally left blank]

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 4

A. The charges turn on a single morning, and the only witnesses to it are in Gaza ........ 4

B. The defense can reach witnesses in Gaza only by telephone, and can conduct no investigation there ........ 5

C. The physical evidence in Gaza has been destroyed ........ 8

III. ARGUMENT ........ 8

A. The Court can and should decide this question before trial ........ 8

B. The alibi witnesses are material, and the defense can neither develop nor present their testimony ........ 10

1. The alibi testimony is material and favorable ........ 10

2. Telephone contact is not an investigation ........ 11

3. No process reaches Gaza to supply what the investigation cannot ........ 14

4. A Rule 15 deposition cannot produce the testimony this defense requires ........ 17

C. No alternate means exists by which Mr. Al-Muhtadi can demonstrate his innocence ........ 19

D. Dismissal is the only fair and appropriate remedy ........ 21

IV. CONCLUSION ........ 23

CERTIFICATE OF SERVICE ........ 24

# TABLE OF AUTHORITIES

## CASES

*Ake v. Oklahoma*, 470 U.S. 68 (1985) .......... 12

*Arizona v. Youngblood*, 488 U.S. 51 (1988) .......... 19

*California v. Trombetta*, 467 U.S. 479 (1984) .......... 3, 20

*Chambers v. Mississippi*, 410 U.S. 284 (1973) .......... 3, 21

*Cotemar SA de CV v. Hornbeck Offshore Servs., Inc.*, No. H-11-4409, 2013 WL 12080911 (S.D. Tex. Mar. 29, 2013) .......... 15

*Coy v. Iowa*, 487 U.S. 1012 (1988) .......... 17

*Crane v. Kentucky*, 476 U.S. 683 (1986) .......... 3

*Horn v. Quarterman*, 508 F.3d 306 (5th Cir. 2007) .......... 18

*United States v. Campos-Ayala*, 105 F.4th 235 (5th Cir. 2024) .......... 19

*United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018) .......... 17

*United States v. Covington*, 395 U.S. 57 (1969) .......... 8

*United States v. Dales*, No. 24-20184-CR, 2025 WL 522511 (S.D. Fla. Feb. 6, 2025) .......... 11

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) .......... 16

*United States v. Khan*, No. 06-cr-255, 2008 WL 2323375 (E.D.N.Y. June 2, 2008) .......... 18-19

*United States v. Mohamed*, No. 18-cr-603, 2020 WL 1545522 (E.D.N.Y. Apr. 1, 2020) .......... 18

*United States v. Morrison*, 449 U.S. 361 (1981) .......... 22

*United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004) .......... 11

*United States v. Rosen*, 240 F.R.D. 204 (E.D. Va. 2007) .......... 16

*United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009) ........................................... 12

*United States v. Slough*, 669 F. Supp. 2d 51 (D.D.C. 2009)...................................... 14

*United States v. Soape*, 169 F.3d 257 (5th Cir. 1999) ............................................. 12

*United States v. Tuma*, 738 F.3d 681 (5th Cir. 2013) .............................................. 15

*United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982) .................................. 10-11

*United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019)........................ 10

*United States v. Wadi*, 153 F.4th 465 (5th Cir. 2025)......................................... 19-20

*United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988) .......................................... 22

*United States v. Yates*, 438 F.3d 1307 (11th Cir. 2006)........................................... 18

*United States v. Zabaneh*, 837 F.2d 1249 (5th Cir. 1988)................................... 14-15

*Wardius v. Oregon*, 412 U.S. 470 (1973)....................................................................... 9

*Washington v. Texas*, 388 U.S. 14 (1967) ..................................................................... 3

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V..................................................................................................... 3

U.S. CONST. amend. VI ....................................................................................... 3, 14, 17

STATUTES

18 U.S.C. § 2339B ....................................................................................................... 4-5

28 U.S.C. § 1746.............................................................................................................. 5

28 U.S.C. § 1781(b)(2) ............................................................................................. 15-16

Section 1783 ................................................................................................................... 15

RULES

FED. R. CRIM. P. 12(b) ............................................................................... 1, 3, 8, 19

FED. R. CRIM. P. 12(c)(3) ................................................................................................ 9

FED. R. CRIM. P. 15...................................................................... 4, 9-10, 17-19, 23

FED. R. CRIM. P. 17(e)(2) .................................................................................. 16

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | UNDER SEAL |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT DUE TO INABILITY TO INVESTIGATE AND PRESENT A DEFENSE**

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who, for the factual and legal reasons set forth below, respectfully moves this Court under Federal Rule of Criminal Procedure 12(b) to dismiss the superseding indictment against him because he cannot investigate the case or present a defense.

## I. INTRODUCTION

The United States alleges that Mahmoud Al-Muhtadi provided material support to *Hamas* in the Gaza and in Israel on the morning of October 7, 2023. Counts One and Two rise or fall on where he was that morning. Counts Three and Four allege that he concealed the same conduct on a visa application and depend largely on the truth of Counts One and Two. The prosecution therefore turns on a single morning

in Gaza, a place neither Mr. Al-Muhtadi nor his defense team can enter, photograph, or search, and from which no alibi witness can depart to testify.

The defense has attempted to accumulate two categories of trial proof to prove Mr. Al-Muhtadi's innocence, and both are beyond reach. The first is testimony from the people who were with him on October 7, 2023. The defense has located several such witnesses, and undersigned counsel and the defense investigator have each spoken with them by telephone. Affidavit of Dustin C. Talbot ¶¶ 10-11 (Def. Ex. 01) ("Talbot Aff."). No investigator can sit with them, take a reliable statement, test their accounts, or find the witnesses they would lead to, and no process compels their appearance at trial. The second category is everything that would corroborate them: the scene, photographs and recordings, physical evidence, and records held by institutions in Gaza and by the organization the government says he belonged to. That category was destroyed by the war or lies with entities no order of this Court can reach.

The United States occupies a different position. Asked to identify and preserve the full set of communications on which its case depends, it responded that "there is nothing to identify or to preserve: we do not have them, and we do not know whether the Israeli government or agencies possess them because they do not work for us or alongside us." Doc. 82 at 4. It described itself as "at the mercy of the materials that we can get ahold of to build our case." Doc. 82 at 6. It says so while holding a mutual legal assistance treaty with Israel, legal attachés in Tel Aviv and Jerusalem, and

agents placed within Israeli government agencies. Mr. Al-Muhtadi, detained in Louisiana, holds none of these.

Admittedly, counsel can find no reported decision that has dismissed an indictment because the defense could not investigate abroad. The rights on which the motion rests, however, are not in doubt. The Fifth Amendment forbids the government to deprive any person "of life, liberty, or property, without due process of law," U.S. CONST. amend. V, and the Sixth Amendment guarantees the accused "compulsory process for obtaining witnesses in his favor" and "the Assistance of Counsel for his defence," U.S. CONST. amend. VI. Together they secure "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Due process is "in essence, the right to a fair opportunity to defend against the State's accusations," and "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 294, 302 (1973). Compulsory process is "in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Those principles have not been applied to a sealed war zone like Gaza because no prior prosecution has presented this record.

Mr. Al-Muhtadi asks the Court to dismiss the superseding indictment under FED. R. CRIM. P. 12(b). This motion is supported by the affidavit of undersigned

counsel and the declaration of the defense investigator.

## II. BACKGROUND

### A. The charges turn on a single morning, and the only witnesses to it are in Gaza

The superseding indictment charges four counts. Doc. 60. Counts One and Two arise under 18 U.S.C. § 2339B and allege conspiracy to provide and the provision of material support to *Hamas* on October 7, 2023, each with a death-resulted allegation. Counts Three and Four allege visa fraud and a false statement in a matter involving international terrorism, and each rests on the premise that he concealed that conduct.

The government will attempt to prove that conduct through evidence gathered by a foreign state: six intercepted telephone calls, cell-site records from an Israeli carrier said to place a telephone near Kfar Aza, six documents collected by the Israel Defense Forces in Gaza during the war, and the opinion testimony of an Israeli official testifying under a pseudonym. Doc. 45; Doc. 46; Doc. 82 at 10-12. The government's theory is that Mr. Al-Muhtadi was a longtime member of the *Democratic Front for the Liberation of Palestine* and of its military wing, the *National Resistance Brigades*, and several of the documents are offered to establish that affiliation. Doc. 45-1 at 2-3.

Mr. Al-Muhtadi has an alibi. Counsel advised the Court on August 4, 2026 that the defense was "investigating an alibi defense," Doc. 114 at 89:23, and the Rule 15 motion filed today establishes that the witnesses supporting it are in Gaza. Those presently known are named in that motion, and others may be identified before the

October 30, 2026 alibi notice deadline. Talbot Aff. ¶ 12. The Court set that deadline so that the defense "can do their independent investigation before they had to respond to the alibi." Doc. 114 at 89:17-18.

### B. The defense can reach witnesses in Gaza only by telephone, and can conduct no investigation there

Counsel understood from his appointment that defending Counts One and Two would require an investigation inside Gaza. Talbot Aff. ¶ 3. Once discovery was produced in early 2026, he consulted practitioners with national experience in prosecutions under 18 U.S.C. § 2339B and in terrorism litigation involving classified information, seeking an investigator qualified and willing to work in Gaza on a case arising from October 7. *Id.* ¶¶ 4-5. Several of those he approached maintained existing contacts inside Gaza and declined, citing the danger that contact with persons outside now presents for those who remain. *Id.* ¶ 6. In June 2026 counsel retained a consulting attorney experienced in international terrorism prosecutions, and with that assistance the office retained One World Research and its director, Bridget Prince, in July 2026. *Id.* ¶¶ 7-8.

Ms. Prince has worked as an international investigator for more than twenty years, has conducted field investigations in more than ten countries, and has directed One World Research since 2010. Statement of Bridget Prince ¶¶ 1-3 (Def. Ex. 02), made under 28 U.S.C. § 1746 ("Prince Decl."); *see also* Curriculum Vitae of Bridget Prince (Def. Ex. 03). Since 2007 her firm has gathered evidence for defense teams in terrorism prosecutions in seven States and the District of Columbia. *Id.* ¶ 11. Her

conclusion, reached after completing the assessment her practice requires and then attempting the work, is that she does not consider it currently possible to conduct a full investigation in this case. *Id.* ¶¶ 12-13, 40.

Entry into Gaza is foreclosed. Israeli authorities control all movement into and out of the territory, and the crossings have been closed to civilians since Israeli forces took Rafah on May 6, 2024. Rafah has since opened only for a capped number of medical patients, for which these witnesses do not qualify; Kerem Shalom admits goods and not persons; and Zikim has been closed since May 24, 2026. *Id.* ¶¶ 15-18. The Department of State classifies Gaza at Level 4, do not travel, and bars United States government employees from entering for any reason, and Israel has admitted no independent investigators or international journalists since October 2023. *Id.* ¶¶ 15, 19. The defense advised this Court of these conditions in July 2026, Doc. 75 at 3, and the government has never contended otherwise. Departure is equally foreclosed. The witnesses cannot leave to be interviewed in a neighboring state, the ordinary alternative when an investigator cannot enter, and one Ms. Prince has used by bringing Libyan and Syrian witnesses to Turkey and Somali witnesses to Djibouti. *Id.* ¶¶ 14-16; Talbot Aff. ¶ 14.

Retaining a local substitute is also foreclosed. In Somalia, Iraq, Afghanistan, Mali, and the Democratic Republic of the Congo, Ms. Prince has arranged for local lawyers, researchers, or journalists to interview witnesses in person and take statements usable in a United States court. Prince Decl. ¶¶ 20-21. The community in

Gaza that would supply such a person has been reduced beyond usefulness: Israel announced in December 2025 that it would revoke the licenses of thirty-seven international aid organizations, three of the most capable Palestinian documentation organizations are under United States sanctions whose reach extends to those who materially support them, and at least 209 Palestinian journalists and media workers have been killed since October 2023. *Id.* ¶¶ 22-24. Scarcity is compounded by exposure, because a person assisting this defense would risk being accused by Israeli authorities of ties to *Hamas* and at the same time treated by *Hamas*-affiliated forces as a collaborator, a category in which those forces have carried out summary executions as recently as July 2026. *Id.* ¶¶ 25-27. Those risks fall harder on the witnesses, and Ms. Prince states that her ability to protect them is very limited. *Id.* ¶¶ 28, 41.

What remains is the telephone, and it is barely that. Israeli authorities are reported to monitor mobile communications in Gaza, and commercially available intrusion software defeats encrypted applications by compromising the device itself, so no call can be assumed confidential. *Id.* ¶ 30. Service is limited to 2G, an estimated seventy-five percent of the telecommunications infrastructure had been damaged and at least half destroyed by October 2024, and by early 2025 sixty-four percent of mobile telephone towers remained out of service. *Id.* ¶ 31. Israel cut off the direct electricity supply in October 2023 and continues to block fuel for Gaza's sole power plant, so telephones often cannot be charged and the network often cannot run. *Id.* ¶ 32. Many

witnesses are among the 1.7 million people living in displacement sites and have no private place from which to speak. *Id.* ¶ 33. Ms. Prince has nonetheless reached witnesses, and counsel has spoken with several of them. *Id.* ¶ 37; Talbot Aff. ¶ 10.

### C. The physical evidence in Gaza has been destroyed

Mr. Al-Muhtadi's home and his business were destroyed during the war, together with their contents. The destruction is not isolated: as of August 2026, satellite assessment placed about eighty-two percent of all structures in Gaza as having sustained damage, with destroyed structures up roughly nine percent since the October 2025 ceasefire. Prince Decl. ¶ 35. Institutional records were destroyed with the buildings that held them, including Gaza's Palace of Justice, which housed the Palestinian Supreme Court and the courts below it and which the Israeli military destroyed in December 2023. *Id.*

## III. ARGUMENT

### A. The Court can and should decide this question before trial

Rule 12(b) authorizes a party to raise by pretrial motion any defense the court can determine without a trial on the merits. A defense satisfies that condition when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969). Whether Mr. Al-Muhtadi can investigate in Gaza is independent of whether he committed the charged offenses. It depends on border policy, the telecommunications network, the reach of federal process, and an

investigation already attempted, and those facts are not in dispute.

The Court may be asked whether a defense of this character can be assessed before any evidence is heard, on the view that whether the missing proof matters depends on how the government's case is tried. It does not. The prejudice here is structural. The complaint is not that some item of the government's proof will go unanswered, but that the adversary process will operate on one side only. The government will try this case having gathered evidence inside Gaza through a foreign military and having obtained material from Israel by treaty. Mr. Al-Muhtadi will answer it having never had an investigator in the territory, never interviewed a witness in a room, and never obtained a document. Due process "speak[s] to the balance of forces between the accused and his accuser," *Wardius v. Oregon*, 412 U.S. 470, 474 (1973), and that balance is fixed before the first witness is called. Whatever the government's proof turns out to be, Mr. Al-Muhtadi will meet it with the same nothing. A trial would display that deficit; it would not measure it, and it is not needed to find it.

Mr. Al-Muhtadi files this motion on the date the Court set for the defense Rule 15 requests and the defense ex parte CIPA memorandum, in connection with and as an alternative to the Rule 15 motion. To the extent leave is required, good cause exists under Rule 12(c)(3). The investigator's assessment establishing the deficits described below was completed only recently, and counsel did not possess it when the omnibus deadline passed. Because the same findings support both filings, presenting them

together serves the orderly resolution of a single problem.

### B. The alibi witnesses are material, and the defense can neither develop nor present their testimony

#### 1. The alibi testimony is material and favorable

A defendant complaining that a witness has been rendered unavailable must make a plausible showing that the testimony would be material and favorable. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). That requirement "applies even where the witness is unavailable to the defendant." *United States v. Vasquez-Hernandez*, 924 F.3d 164, 171 (5th Cir. 2019).

Counsel and the defense investigator have each spoken by telephone with several eyewitnesses in Gaza. Each has stated that he or she was with Mr. Al-Muhtadi, or saw him in Gaza, on the morning of October 7, 2023 and at points throughout that day, and counsel expects each to so testify. Talbot Aff. ¶¶ 10-11. They are identified in the sealed Rule 15 motion filed today and will be further identified in the notice of alibi defense due October 30, 2026. *Id.* ¶ 12. The conduct alleged occupied the hours of a single morning at identifiable locations inside Israel, so testimony placing Mr. Al-Muhtadi in Gaza during those hours is a complete defense to Counts One and Two, and through them to Counts Three and Four. The government has identified no unindicted co-conspirator from whom it will offer testimony at trial. Doc. 85 at 4.

The specificity demanded of a defendant who has never been permitted to interview the witnesses in person is lower than that demanded in an ordinary case.

The Supreme Court held that the inability to interview "may well support a relaxation of the specificity required in showing materiality," 458 U.S. at 870, and that "the defendant cannot be expected to render a detailed description of their lost testimony," *id.* at 873. The Fourth Circuit applied the same principle to a defendant with no access at all, holding that he "cannot be required to show materiality with the degree of specificity that applies in the ordinary case." *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004).

*United States v. Dales*, No. 24-20184-CR, 2025 WL 522511 (S.D. Fla. Feb. 6, 2025), marks the line this showing must clear. The motion there sought dismissal for pre-indictment delay, a claim Mr. Al-Muhtadi does not make, but its reasoning on foreign inaccessibility is instructive. The magistrate judge accepted that Haiti was inaccessible, that counsel could not enter, and that communication was nearly impossible, yet recommended denial because the defense had pleaded those conditions in the abstract, faulting "vague assertions about the inability to gather unspecified Haitian documents, to take unspecified steps to investigate in Haiti, and to communicate with additional unspecified witnesses in Haiti." *Id.* at *6. Mr. Al-Muhtadi identifies the date, the locations, the witnesses, the substance of their testimony, and the element it defeats, and supports each with sworn statements from counsel and an investigator who attempted the work.

**2. Telephone contact is not an investigation**

The Constitution protects more than the accused's admission to the courtroom.

It protects his capacity to build a defense. The Supreme Court has recognized "that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). The Fifth Circuit applies the same premise to witnesses: "[w]itnesses . . . to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." *United States v. Skilling*, 554 F.3d 529, 567 (5th Cir. 2009) (quoting *United States v. Soape*, 169 F.3d 257, 270 (5th Cir. 1999)). Mr. Al-Muhtadi has neither the raw materials nor the equal opportunity, and unlike the defendant in *Skilling*, his account of what the witnesses would say comes first-hand from counsel who spoke with them. Talbot Aff. ¶¶ 10-11.

The defense can reach some of these witnesses by telephone. Ms. Prince explains why that capacity does not permit an investigation. Remote interviews are a recognized method in international fact-finding, and she states that they can produce reliable evidence where their limitations are recognized and appropriately mitigated. Prince Decl. ¶ 29. Even under good conditions an investigator who is not in the room finds it harder to build rapport, read non-verbal cues, and manage a distressed witness, and an interpreter adds a third party. *Id.* Her conclusion here is that these barriers cannot be fully mitigated. *Id.* ¶¶ 40-41.

What she has been able to accomplish demonstrates the point. Calls cut out after a few seconds and sometimes do not resume for hours; video calls last only minutes, and the video must be switched off to preserve the connection at all; and scheduling has proved impracticable, because even where a time is agreed there is no way to know whether power or signal will exist at that hour. *Id.* ¶ 37. Some of the buildings the witnesses shelter in have no windows or doors, and despite using the most secure communications available she cannot be confident the calls are not monitored. *Id.* ¶ 38. She has therefore spoken with witnesses only in short, disconnected fragments, which has made it difficult to introduce herself, explain the purpose of an interview, or establish the trust this work requires. *Id.* ¶ 39. Counsel's experience is the same. Talbot Aff. ¶ 13.

A competent investigation of an alibi requires an investigator on the ground: someone who can sit with a witness long enough to take a statement that will survive cross-examination, show him photographs and documents and record his response, judge whether he is credible, and return to test his account against others. None of that can be done in fragments over a 2G connection, with a witness who may fear the call is monitored and his cooperation punished. Talbot Aff. ¶ 15; Prince Decl. ¶¶ 28, 30, 37-39. Four categories of proof are lost as a result. The defense cannot canvass on the ground for alibi witnesses it has not already found. It cannot obtain photographic or video material placing Mr. Al-Muhtadi in Gaza rather than in Israel, or collect physical evidence from the locations or the witnesses. And it cannot obtain records

held by the *Democratic Front for the Liberation of Palestine*, which bear on the contention that Mr. Al-Muhtadi belonged to that organization and its military wing on October 7, 2023, Doc. 45-1 at 2-3, or records held by the authorities administering Gaza. Talbot Aff. ¶ 15(c)-(g).

That distinction separates this case from the war-zone prosecutions in which courts have denied relief. In *United States v. Slough*, 669 F. Supp. 2d 51 (D.D.C. 2009), arising from a shooting in Baghdad with the scene and more than one hundred Iraqi witnesses in a country recently at war, the court denied the defendants' request that the government provide security for their investigation, because entry into Iraq was lawful, private security was available and unconsulted, and the witnesses could be interviewed once the government disclosed contact information. *Id.* at 57-58, 60. The court nonetheless "declin[ed] to speculate as to whether there may be circumstances in which fundamental fairness and due process require the government to take a more direct role in providing security measures to defense counsel conducting a pretrial investigation in a hostile foreign war zone." *Id.* at 57 n.5. Every condition that made *Slough* a case of adequate alternative means is absent here. No visa admits this defense team to Gaza, no security contractor can escort it, and no contact information would put an investigator in a room with a witness.

**3. No process reaches Gaza to supply what the investigation cannot**

The Sixth Amendment right to compulsory process "does not ordinarily extend beyond the boundaries of the United States." *United States v. Zabaneh*, 837 F.2d

1249, 1260 (5th Cir. 1988). The Fifth Circuit reaffirmed that rule in *United States v. Tuma*, 738 F.3d 681 (5th Cir. 2013), holding it "well-established that a conviction is constitutional and does not violate a defendant's right to compulsory process even when the court lacks the power to subpoena potential defense witnesses from foreign countries." *Id.* at 688-89. Mr. Al-Muhtadi accepts both decisions and asks the Court to apply them to a record neither presented. Neither involved a defendant who had exhausted every avenue and obtained nothing. Zabaneh had subpoenas served on twelve witnesses in Belize, three of whom appeared at trial, and the absent witnesses' depositions were before the jury. 837 F.2d at 1259-60. Tuma sought one deposition of a Canadian executive and moved for letters rogatory under 28 U.S.C. § 1781(b)(2) to obtain it; that channel was at least open to him, because Canada has courts that can act on a letter rogatory. 738 F.3d at 688-89. Both decide the reach of the subpoena power; neither decides what becomes of a prosecution when the accused, having tried everything the law permits, obtains nothing. *Tuma* also supplies the standard governing this half of the motion: "[w]e review violations of the compulsory process clause de novo, but the defendant must demonstrate the necessity of the witness's testimony." *Id.* at 688.

The statutory alternatives do not close the gap. Section 1783 authorizes a subpoena to a national or resident of the United States who is abroad, and that authority "does not extend to foreign citizens or residents." *Cotemar SA de CV v. Hornbeck Offshore Servs., Inc.*, No. H-11-4409, 2013 WL 12080911, at *6 (S.D. Tex.

Mar. 29, 2013). The witnesses here are Palestinian residents of Gaza, and Rule 17(e)(2) incorporates the same limitation. No provision of Title 28 and no rule of criminal procedure will compel these witnesses to appear at trial in Lafayette.

Letters rogatory supply nothing. A letter rogatory runs from a federal court to a court in a foreign country, 28 U.S.C. § 1781(b)(2), and Gaza has no functioning judicial system to receive one, because the courts that would have done so, including the Palace of Justice housing the Palestinian Supreme Court and the courts below it, were destroyed in December 2023. Prince Decl. ¶ 35. None runs to the *Democratic Front for the Liberation of Palestine*, which is a political organization and not a tribunal, or to the authorities administering Gaza. Even where a receiving court exists, the Fifth Circuit has recognized that the process "has been described as 'complicated, dilatory, and expensive.'" *United States v. El-Mezain*, 664 F.3d 467, 517 (5th Cir. 2011) (quoting *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007)). *El-Mezain* found no abuse of discretion in the refusal of a letter rogatory that "would enable only a fishing expedition," *id.* at 518, but the request there sought review of some two thousand boxes of seized material and was directed to Israel, a state with functioning courts. *Id.* at 517-18. Mr. Al-Muhtadi seeks no comparable review, and no court in Gaza could receive a request.

The treaty channel is closed to Mr. Al-Muhtadi as a matter of law. As the government explained in its response to the motion to compel, a criminal defendant may neither invoke a mutual legal assistance treaty nor obtain an order compelling

the government to invoke one, and the United States-Israel treaty provides that it "shall not give rise to any right, that does not otherwise exist, on the part of any private person to obtain, suppress, or exclude any evidence." Doc. 82 at 13 & n.4. Mr. Al-Muhtadi does not dispute that authority. Its consequence is that the United States has a channel to evidence held in Israel and he has none, and the record shows the government has used it. The case agent testified that two or three such requests were made in this case. Doc. 114 at 65:12-14.

#### 4. A Rule 15 deposition cannot produce the testimony this defense requires

Mr. Al-Muhtadi has today moved in the alternative for depositions under FED. R. CRIM. P. 15, should the Court deny this motion. A deposition would preserve some record of what these witnesses say. It would not give him the defense that the closure of Gaza and the destruction of its evidence have taken from him. The testimony at issue is alibi testimony, and a jury evaluates such testimony by watching the witness answer questions. The cases examining remote testimony arise under the Confrontation Clause, but the deficiencies they identify do not depend on which party calls the witness. As the Ninth Circuit put it, "[a]ny procedure that allows an adverse witness to testify remotely necessarily diminishes 'the profound [truth-inducing] effect upon a witness of standing in the presence of the person the witness accuses.'" *United States v. Carter*, 907 F.3d 1199, 1207 (9th Cir. 2018) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1020 (1988)).

The Fifth Circuit's own inventory of what makes remote testimony adequate

confirms the deficiency. In *Horn v. Quarterman*, 508 F.3d 306, 317, 320 (5th Cir. 2007), a habeas case, the Court identified the elements that together preserve the function confrontation serves: physical presence, an oath, contemporaneous cross-examination, and observation of the witness's demeanor by the trier of fact. A deposition from Gaza fails the first outright and cannot reliably deliver the fourth, because Ms. Prince reports that video must often be switched off to hold the connection at all. Prince Decl. ¶ 37.

Sitting en banc, the Eleventh Circuit explained that "Rule 15, properly utilized, protects a defendant's confrontation rights by affording the defendant an opportunity to be present at the deposition." *United States v. Yates*, 438 F.3d 1307, 1317 (11th Cir. 2006) (en banc). Mr. Al-Muhtadi cannot be present at a deposition in Gaza, so the premise on which the deposition remedy rests is unavailable to him.

The conditions that prevent the investigation also degrade the deposition, which will face the same network, the same electricity, the same absence of a private room, and the same exposure of the witness to reprisal. Prince Decl. ¶¶ 28, 30-33, 41. It faces an obstacle the investigation does not, because a deposition requires a place. There has never been a United States embassy or consulate in Gaza, the nearest mission is in Jerusalem, and these witnesses cannot reach it. *Id.* ¶ 34. Courts that have ordered depositions of unreachable foreign witnesses have relied on such a facility inside the territory where the witnesses were. *See United States v. Mohamed*, No. 18-cr-603, 2020 WL 1545522, at *8 (E.D.N.Y. Apr. 1, 2020); *United States v.*

*Khan*, No. 06-cr-255, 2008 WL 2323375, at *4 (E.D.N.Y. June 2, 2008). Gaza has none and has never had one. The buildings that would house a formal proceeding are gone, and the hotels that might have served were destroyed in the war. Prince Decl. ¶¶ 35-36.

The imbalance is a feature of this case rather than an incident of it. The government's witnesses will travel from Israel and testify in this courtroom, where the jury can watch them. Mr. Al-Muhtadi's will appear, if at all, on a recording made over a 2G connection with the video switched off. The Rule 15 motion asks whether these conditions can be managed well enough to preserve a usable record. This motion asks whether the record so preserved would afford Mr. Al-Muhtadi a fair trial.

### C. No alternate means exists by which Mr. Al-Muhtadi can demonstrate his innocence

Mr. Al-Muhtadi acknowledges that the destruction of the evidence and his inability to present alibi witnesses were not caused by any officer of the United States. A war destroyed the evidence. He alleges no bad faith and asks for no sanction, and the Fifth Circuit has imposed no bad-faith condition on a claim of this kind in any event. *See United States v. Campos-Ayala*, 105 F.4th 235, 248 n.11 (5th Cir. 2024) (en banc). He pleads no violation under *Arizona v. Youngblood*, 488 U.S. 51 (1988), which conditions relief on "bad faith on the part of the police," *id.* at 58, and raises instead a defect in the prosecution committed to the Court by Rule 12(b). The distinction governs the standard of review. In *United States v. Wadi*, 153 F.4th 465 (5th Cir. 2025), the Fifth Circuit reviewed a denial of dismissal only for abuse of

discretion because the defendant "contend[ed] that dismissal should have occurred as a form of sanction," *id.* at 477-78, and Mr. Al-Muhtadi makes no such contention.

The question that remains is not who is answerable for the loss but what the loss leaves Mr. Al-Muhtadi able to do. *California v. Trombetta*, 467 U.S. 479 (1984), frames the inquiry in those terms. The Court described constitutionally material evidence as evidence that must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. It denied relief only after satisfying itself that the defendants were not "without alternative means of demonstrating their innocence." *Id.* at 490. The availability of those means is what made the loss tolerable there. Mr. Al-Muhtadi has none.

The scene and its contents are gone. Mr. Al-Muhtadi cannot inspect, photograph, or measure the locations the government identifies, or determine what stood there on October 7, 2023, because the structures were destroyed and he cannot enter the territory. Prince Decl. ¶ 35; Talbot Aff. ¶ 15(d). Records that might establish his presence elsewhere were destroyed with the buildings that held them, and no archive in Gaza can be searched because no one acting for the defense may enter it. Prince Decl. ¶ 35; Talbot Aff. ¶ 15(f)-(g). Nor can the defense subpoena the Gazan mobile providers for the location and cell-site information that would refute or explain the Israeli carrier's records. Prince Decl. ¶ 31.

The final alternative, that another party obtain the evidence and furnish it, is

foreclosed by the government's own representations. It states that as to the intercepted communications "there is nothing to identify or to preserve," that it does not know whether Israel holds them, and that Israeli agencies "do not work for us or alongside us." Doc. 82 at 4. It does not have the AMSHAT database and states that it "nor could it" obtain it. Doc. 82 at 10-11. Where the party holding a treaty, attachés, and embedded agents cannot obtain the material, a detained defendant cannot.

**D. Dismissal is the only fair and appropriate remedy**

The deprivation is complete and continuing. Mr. Al-Muhtadi cannot develop the only defense available to him, corroborate the witnesses he has found, find the witnesses he has not, obtain the records that would refute the affiliation theory, or improve his position by any means the law affords. Conditions have not improved since the ceasefire, the crossings remain closed, and the physical evidence continues to disappear. Talbot Aff. ¶ 16; Prince Decl. ¶¶ 35, 40. No order entered in this case will change any of it.

An injury of this character must be assessed as a whole. In *Chambers v. Mississippi*, the Court declined to evaluate the claims separately, explaining that it "need not decide, however, whether this error alone would occasion reversal since Chambers' claimed denial of due process rests on the ultimate impact of that error when viewed in conjunction with the trial court's refusal to permit him to call other witnesses." 410 U.S. at 298. It measured the injury comparatively, concluding that Chambers' defense "was far less persuasive than it might have been." *Id.* at 294.

A remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). A district court "exceeds the proper bounds of its power to order dismissal of an indictment with prejudice when it fails to consider whether less extreme sanctions might maintain the integrity of the court without punishing the United States for a prosecutor's misconduct." *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988). Mr. Al-Muhtadi asks the Court to punish no one, and agrees that a lesser measure should be preferred if one would repair the injury.

Each lesser measure fails for a reason specific to this record. Granting the pending motion to suppress the products of Israeli warrantless surveillance, Doc. 109, would remove evidence the government seeks to use without placing an investigator in Gaza, producing a witness in this courtroom, or supplying a document refuting the affiliation theory. A continuance would extend a period during which conditions have not improved. An adverse-inference instruction would tell the jury evidence is missing while giving Mr. Al-Muhtadi nothing to put before it. A deposition, for the reasons in Section III.B.4, would be welcome but insufficient. *Morrison* identified the case that calls for more, noting that "[t]here is no claim here that there was continuing prejudice which, because it could not be remedied by a new trial or suppression of evidence, called for more drastic treatment." 449 U.S. at 365 n.2. The prejudice here is continuing, and no new trial and no suppression order reaches it.

Should the Court deny dismissal, Mr. Al-Muhtadi asks in good faith, and subject to every objection lodged in this motion, that the Court grant the accompanying Rule 15 motion and permit depositions of the Gazan witnesses in whatever manner can be accomplished. He makes that request without abandoning his position that a recorded examination is no substitute for testimony delivered before the jury, least of all for alibi witnesses, whose value lies in whether the jury believes them.

## IV. CONCLUSION

Mr. Al-Muhtadi does not dispute the government's authority to charge these offenses in this District. He disputes that a trial on them can be conducted consistently with the Constitution. The government has chosen to prosecute conduct alleged to have occurred during one morning in Gaza, on evidence gathered there by a foreign military and records it concedes it can neither produce nor obtain. That territory is sealed to everyone acting for the defense. The witnesses who hold the answer can be reached only by a failing telephone line, cannot be interviewed as any competent investigation requires, and cannot be compelled to appear before the jury that will judge him. The proof that would corroborate them no longer exists.

Mr. Al-Muhtadi respectfully requests that the Court dismiss the superseding indictment. In the alternative, and subject to the objections stated above, he requests an order granting the accompanying motion for depositions under FED. R. CRIM. P. 15.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 23, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***