UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:25-CR-00285-01 |
| | JUDGE JOSEPH |
| v. | MAGISTRATE JUDGE WHITEHURST |
| MAHMOUD AMIN YA'QUB AL-MUHTADI, | |
| Defendant | |

______________________________________/

**USA'S OPPOSITION TO DEFENSE MOTION TO DISMISS COUNTS 3 AND 4**

In compliance with Local Rule 7.1, the Government respectfully submits the following table of contents and table of authorities as to this Opposition, which asks this Court to deny the Defendant's motion to dismiss, [Doc. 105].

**TABLE OF CONTENTS**


I. RELEVANT BACKGROUND .......... 2

II. LEGAL STANDARD .......... 3

III. ARGUMENT .......... 4

A. The Cairo Consulate Falls Within Section 7(3) of Title 18's SMTJ Definition, which Confers Jurisdiction for Crimes Committed at the Consulate. .......... 5

B. Even Were Only Section 7(9) to Apply, It Would Still Cover Both Crimes. .......... 7

C. Even Were the Crimes "Extraterritorial," Courts Have Recognized Sections 1001 and 1546 to be Valid Crimes to Charge Extraterritorially Under *Bowman* and its Progeny... 10

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

***CASES***

*Agee v. Muskie,* 629 F.2d 80 (D.C. Cir. 1980) ........ 6
*Costello v. United States*, 350 U.S. 359 (1956) ........ 4
*In re Ski Train Fire in Kaprun, Aus.*, No. 01-1428, 2003 U.S. Dist. LEXIS 22139 (S.D.N.Y. Dec. 8, 2003) ........ 6
*Nijhawan v. Holder*, 557 U.S. 29 (2009) ........ 10
*Rocha v. United States*, 288 F.2d 545 (9th Cir. 1961) ........ 11
*United States v, Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) ........ 13
*United States v. Abukhatallah*, 41 F.4th 608 (D.C. Cir. 2002) ........ 8, 9, 10
United States v. *Ashley,* 128 F.4th 641 (5th Cir. 2025) ........ 8
*United States v. Bin Laden*, 92 F. Supp. 2d 189 (S.D.N.Y. 2000) ........ 12
United States v. *Bleuler,* 60 F.4th 982 (5th Cir. 2023) ........ 11
*United States v. Bowman, 260 U.S. 94 (1922)* ........ 11, 12
*United States v. De Bruhl-Daniels,* 118 F.4th 735 (5th Cir. 2024) ........ 13
*United States v. Brunson*,549 F.2d 348 (5th Cir. 1997) ........ 6
*United States v. Corey,* 232 F.3d 1166 (9th Cir.) ........ 6
*United States v. Delgado-Garcia*, 374 F.3d 1337 (D.C. Cir. 2004) ........ 13
*United States v. Erdos*, 474 F.2d 157 (4th Cir.) ........ 5, 6
*United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000) ........ 6, 11
*United States v. Giles*, 756 F.2d 1085 (5th Cir. 1985) ........ 11
United States v. *Khatallah,* 313 F. Supp. 3d 176 (D.D.C. 2018) ........ 8
*United States v. Korn*, 557 F.2d 1089 (5th Cir. 1977) ........ 4
*United States v. Lawrence*, 727 F.3d 386 (5th Cir. 2013) ........ 12
*United States v. Mann*, 517 F.2d 259 (5th Cir. 1975) ........ 4
*United States v. Pizzarusso*, 388 F.2d 8 (2d Cir. 1968) ........ 6, 11
*United States v. Rabhan*, 540 F.3d 344 (5th Cir. 2008) ........ 8
*United States v. Rolle*, 65 F.4th 1273 (11th Cir. 2023) ........ 12, 13
*United States v. Thorn,* 917 F.2d 170 (5th Cir. 1990) ........ 8
*United States v. Villanueva, 408 F.3d 193 (5th Cir. 2005)* ........ 13, 14
*United States v. Walczak*, 83 F.2d 852 (9th Cir. 1986) ........ 11
*United States v. Williams*, 616 F.2d 759 (5th Cir. 1980) ........ 8, 13
*United States v. Yuan Chen Ling*, 460 F.App'x 822 (11th Cir. 2012) ........ 12

***STATUTES***

8 U.S.C. § 1101 ........ 7
18 U.S.C. § 2 ........ 7
18 U.S.C. § 7 ........ 5, 7
18 U.S.C. § 1001 ........ 6, 10, 11, 13

18 U.S.C. § 1363 ........ 9, 10
18 U.S.C. § 1546 ........ 11, 12, 13
18 U.S.C. § 1546(a) ........ 8
18 U.S.C. § 2339B ........ 11
18 U.S.C. § 2339B(d)(1)(C) ........ 3
18 U.S.C. § 3237(a) ........ 8
18 U.S.C. § 3261 ........ 6

***OTHER AUTHORITIES***

Fifth Circuit Pattern Jury Instruction 2.45 ........ 10
Immigration and Nationality Act ........ 7
Military Extraterritorial Jurisdiction Act of 2000 ........ 6

***RULES***

Fed. R. Crim. P. 12 ........ 3, 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant
_______________________________________/

CRIMINAL NO. 6:25-CR-00285-01
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**USA'S OPPOSITION TO DEFENSE MOTION TO DISMISS COUNTS 3 AND 4**

The United States respectfully submits the following Opposition to the Defense's Motion to Motion to Dismiss Counts 3 and 4, [Doc. 105-1] ("Motion"):

The 23-page Motion asks the Court to make a bizarre, counterintuitive ruling: that the Defendant cannot be prosecuted in a United States court for (1) lying on a United States visa application submitted to a United States Consulate, and (2) physically going into that Consulate and lying to a federal employee, all to secure a visa to smuggle himself into the United States.

To be sure, the law can be bizarre and counterintuitive at times. But this is not one of them. To the contrary, the law squarely provides for several ways that the Defendant's frauds charged as Counts 3 and 4 in the Superseding Indictment fall within this Court's jurisdiction, and the Court should therefore deny the Motion for three independent reasons. *First*, the defense's arguments are premised upon the notion that the Cairo Consulate could only qualify as part of the "special maritime and territorial jurisdiction" under Section 7(9), when in fact the Cairo Consulate qualifies under Section 7(3) as well. This fact undercuts the defense argument that Sections 1001 and 1546 are excluded by the "offenses committed by or against a national of the United States" proviso contained in Section 7(9), and leaves its various extraterritorial arguments moot. *Second*, even

were only Section 7(9) to apply to the Cairo Consulate, the crimes charged here would qualify nevertheless because the Defendant committed his Section 1546 offense with a United States citizen (his wife) and his Section 1001 offense against a United States citizen (an employee at the Cairo Consulate). And *third*, even were the Defendant successful in ducking Section 7 altogether, his Section 1001 and 1546 crimes fall within the category of crimes against the United States government that circuit courts including the Fifth Circuit have uniformly held to authorize extraterritorial prosecution based on century-old Supreme Court law.

In support of these three arguments, the Government respectfully submits the following:

## I. RELEVANT BACKGROUND

The Defendant stands charged of both substantively providing material support to HAMAS and conspiring to do so, as well as lying both on his visa application and to a Department of State employee who interviewed him about his visa application. The material support charges he faces involves purely extraterritorial conduct, with the Defendant discussing his participation in the October 7 terrorist attack in Israel while he resided in Gaza and then when crossing over into Israel. The two false statement charges involve his conduct after he fled to Egypt with his wife Nieama-Al-Ghazzawi, who is a United States citizen. The visa fraud found Al-Ghazzawi and him submitting the visa application to the Cairo Consulate while residing in Egypt, and the Defendant doubled down on that lie when he met with the Department of State employee.

After the Defendant's initial arrest by criminal complaint in October 2025, *see* [Doc. 1], and initial indictment that same month, *see* [Doc. 16], a grand jury returned the four-count Superseding Indictment on June 17, 2026, [Doc. 60]. The Superseding Indictment charges the material support crimes as Count 1 and 2 extraterritorially, with the venue and jurisdictional provisions describing the Defendant "after the conduct required for the offense occurred and being

found and arrested in the Western District of Louisiana after such conduct occurred," [Doc. 60 at 2-3], which mirrors the language in 18 U.S.C. § 2339B(d)(1)(C), and further contains an "and elsewhere" statement to reference the fact that conduct occurred outside the District.

For the Count 3 visa fraud and Count 4 false statement, the venue[1] and jurisdictional provisions contain the same "being found and arrested in the Western District of Louisiana" and "and elsewhere" language as Counts 1 and 2, and also states "in the special maritime and territorial jurisdiction of the United States" (the "SMTJ"). [Doc. 60 at 4, 6]. In the Bill of Particulars filed in July 2026, the Government further notes that the Defendant stands charged of aiding and abetting Al-Ghazzawi in the Count 3 visa fraud offense. [Doc. 85 at 5].

## II. LEGAL STANDARD

Because the defense moves to dismiss the Superseding Indictment under Rule 12, *see* Mot. at 1, the Motion is governed by Rule 12's strictures. For that reason, the Court should only consider Rule 12 arguments insofar as they raise purely legal arguments based on uncontested facts—namely, (1) whether the Cairo Consulate falls within the SMTJ and (2) whether Sections 1001 and 1546 may not be prosecuted extraterritorially. So while the defense spills much ink on IP addresses, *see* Mot. at 5 at 23 (discussing "Egyptian internet protocol addresses), electronic signatures, *see* Mot. at 15, and the indictment against the Defendant's wife, *see* Mot. at 11-12, the Court here should limit itself to the charging documents, the Superseding Indictment and Bill of Particulars, [Docs. 60 & 85], and the Government does not object to the Court taking judicial notice of Al-Ghazzawi and the consular employee's statuses as United States citizens.

[1] Because the Defendant does not challenge venue, *see* Mot. at 3 n.1, this Opposition addresses only the jurisdictional aspect of this language.

This limited scope of review is grounded in the fact that "the propriety of granting a motion to dismiss an indictment under [Rule] 12 is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact," *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977), with issues of fact being matters for the jury to find. As the Supreme Court has long held, "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Thus, "[w]hether the indictment sufficiently alleges a crime is an issue of law, not of fact," *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), and "the indictment is to be tested not by the truth of its allegations but 'by its sufficiency to charge an offense,'" *id.* (quoting *United States v. Sampson*, 371 U.S. 75, 78-79). So too here.

## III. ARGUMENT

As the following explains, the Defendant's Motion fails for three reasons. *First*, the defense fails to account for Section 7(3) of the SMTJ statute entirely, when courts have recognized crimes occurring at consulates to fall within that sub-provision. *Second*, even if Section 7(9) were the only SMTJ provision that applied, the Defendant's offenses—one involving his United States citizen wife's participation and the other involving him lying to a United States national employee—would squarely qualify under that sub-provision as well. *Third*, even if neither of those SMTJ sub-provisions applied, the Defendant's crimes—lying on a visa application and to a consular employee for admission to the United States—squarely fall within the category of crimes against the United States that courts including the Fifth Circuit has recognized to be subject to

extraterritorial prosecution. For each of these independent reasons, this Court should deny the Motion without a hearing.

***A. The Cairo Consulate Falls Within Section 7(3) of Title 18's SMTJ Definition, which Confers Jurisdiction for Crimes Committed at the Consulate.***

As a threshold matter, the Court should deny the defense Motion because it incorrectly assumes that Section 7 of Title 18 confers jurisdiction for only a narrow class of crimes committed at consulates. The Motion summarily states early on that "18 U.S.C. § 7(9) is the only provision that could place the United States Embassy in Cairo within the special maritime and territorial jurisdiction," Mot. at 2, and its entire argument builds upon that foundational premise. *See* Mot. at 7-14. As the defense would have it, the Cairo Consulate being covered only by 18 U.S.C. § 7(9), which limits that coverage to "'offenses committed by or against a national of the United States,'" Mot. at 7 (quoting 18 U.S.C. § 7(9)), provides a loophole that the Defendant's crimes can pass straight through untouched. And while the defense acknowledges that six other sub-provisions of Section 7, "Paragraphs (1) through (6)[,] describe places the United States already controls, and none of them conditions jurisdiction on the nationality of the person who commits or suffers the offense," Mot. at 7, the defense appears to take as a given that the Cairo Consulate does not fall within any of those six, citing no law and providing no analysis.

Yet that is not so. Rather, courts have long held consulates to fall within Section 7(3), which confers jurisdiction for "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof …." The seminal case on this point is *United States v. Erdos*, 474 F.2d 157 (4th Cir.), *cert. denied*, 414 U.S. 876 (1973), which involved a killing in the United States Consulate of Equatorial Guinea. There, the *Erdos* court recognized that "although [a consulate is] not owned by the United States, it is a part of the territory of the United States of America" and that "[t]he test, as to property within or without the United States,

is one of practical usage and dominion exercised over the embassy or other federal establishment by the United States Government," *id.* at 159 (quotations omitted), it held that Section 7(3) "is a proper grant of 'special' territorial jurisdiction embracing an embassy in a foreign country acquired for the use of the United States and under its concurrent jurisdiction," *id.* at 160. Other courts to have evaluated Section 7(3) as to consulates have held similarly. *See United States v. Corey*, 232 F.3d 1166, 1171 (9th Cir. 2000) ("Our conclusion that subsection 7(3) applies to territory outside the borders of the fifty states agrees with that of the Fourth Circuit," citing *Erdos*); *Agee v. Muskie*, 629 F.2d 80, 111 (D.C. Cir. 1980) (holding U.S. embassy in Tehran to fall within Section 7(3), citing *Erdos*); *see also United States v. Brunson,* 549 F.2d 348, 351 n.1 (5th Cir. 1977) (citing *Erdos* with approval).[2] This case law tracks common sense: as the Second Circuit observed in 1968, "[s]tatutes imposing criminal liability on aliens for committing perjury in United States Consulates in foreign countries have been in existence for over one hundred years, … and oftentimes courts have routinely sustained convictions without even considering the jurisdictional question." *United States v. Pizzarusso*, 388 F.2d 8, 11 (2d Cir. 1968).

The Cairo Consulate falling under Section 7(3) renders the Defendant's crimes committed there subject to United States prosecution. The Section 1546 charge concerns a visa application he submitted to the Cairo Consulate riddled with lies about his terrorist connections; Section 1001 charge concerns a false statement the Defendant gave at the Cairo Consulate to a consular official, swearing to the veracity of the visa application he submitted to that consulate. Because both

---

[2] The *Corey* court also gives a lengthy explanation of why the only circuit to squarely disagree with *Erdos*, the Second Circuit, is wrong. *See Corey*, 232 F.3d at 1172-1176 (discussing *United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000). Notably, *Gatlin* involved a military installation, not a consulate, and Congress created Section 7(9) through the Military Extraterritorial Jurisdiction Act of 2000, 18 U.S.C. § 3261 *et seq*. to respond to *Gatlin*. *See In re Ski Train Fire in Kaprun, Aus.*, No. 01-1428, 2003 U.S. Dist. LEXIS 22139, at 24 n.70 (S.D.N.Y. Dec. 8, 2003).

crimes' *actus reus* occurred at that building where United States laws control and jurisdiction is conferred by Section 7(3), there can be no claim that this prosecution is extraterritorial at all and the defense Motion must fail. And beyond the actual facts, the Superseding Indictment is correct in listing the SMTJ in its charging language because the Cairo Consulate falls within the SMTJ pursuant to Section 7(3). The Court should therefore deny the Motion on this basis.

***B. Even Were Only Section 7(9) to Apply, It Would Still Cover Both Crimes.***

Yet even were only Section 7(9) to control, the defense would fail to make its case anyway. The defense correctly states that for a prosecution under Section 7(9) to be viable, it must concern "offenses committed by or against a national of the United States as that term is used in section 101 of the Immigration and Nationality Act" ("INA"), 18 U.S.C. § 7(9); Mot. at 8-10. The defense is also correct that Section 101 of the INA defines "national of the United States" to mean "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22); Mot. at 8. Yet for both offenses here, the circumstances of the crime comply with the proviso.

<u>Count 3</u>. The charged visa fraud offense falls within Section 7(9)'s coverage proviso because, as the defense acknowledges and as specified in the Bill of Particulars, the Defendant's wife Nieama Al-Ghazzawi, who is a United States citizen and thus a "national of the United States" as defined by the INA, perpetrated the crime alongside the Defendant. *See* Mot. at 11-12; [Doc. 85 at 5 (listing Al-Ghazzawi as person the Defendant aided and abetted)]. The defense tries to shimmy away from Ms. Al-Ghazzawi's participation with pithy phrases like "offenses do not become one because they concern the same piece of paper" and "Section 2 does not bridge the gap" and "her citizenship cannot rescue Count 3," Mot. at 12, but these suppositions defy not just common sense but case law too. Section 2 clearly states that both persons committing and aiding and abetting in

an offense are "punishable as a principal," 18 U.S.C. § 2, and the case law uniformly treats aiding and abetting and the commission as a single offense. *See, e.g.,* U*nited States v. Thorn,* 917 F.2d 170 (5th Cir. 1990) ("Aiding and abetting the commission of the offense is treated exactly the same under the statutory wording as the actual commission of the offense."); *United States v. Williams*, 449 F.3d 635, 647-48 (5th Cir. 2006) (holding that "a person who aids and abets the commission of an offense is treated the same as a principal actor"). Indeed, the Fifth Circuit has said directly: "[Section] 2 does not create a separate offense." *United States v. Rabhan*, 540 F.3d 344, 348 n.15 (5th Cir. 2008). And while the defense attempts to cast the D.C. Circuit's decision in *Abukhatallah* as favoring his position, *see* Mot. at 12 ("*Khatallah*[3] directs the Court to the facts of the charged offense"), the case actually cuts against his position by holding "Khatallah as vicariously liable for [his co-conspirator's] actions" in holding the "offense committed … against a national of the United States" to be satisfied, with his conspirators' "violent actions against Americans [] a reasonably foreseeable consequence of the conspiracy." *United States v. Abukhatallah*, 41 F.4th 608, 626 (D.C. Cir. 2022). For those reasons, this Court should hold that under Section 7(9), the charged Count 3 visa fraud qualifies under the "offenses committed by or against a national of the United States" proviso because the Defendant's wife, a United States citizen, participated.[4]

---

[3] The defense uses the name "Khatallah," which is the name used at the district court level; *see, e.g.,* U*nited States v. Khatallah,* 313 F. Supp. 3d 176 (D.D.C. 2018), but this Opposition uses the name "Abukhatallah" due to the D.C. Circuit appearing to use this last name in its styling instead. The parties are discussing the same Circuit Court case.

[4] The defense tosses in an argument at the end of its Section 7(9) section involving the visa application being completed and sent to the Cairo Consulate from Giza, citing the Supreme Court's recent *Abouammo* case in support. Mot. at 15-16. As the defense would have it, " Section 7(9) reaches only offenses committed on the premises it describes," Mot. at 14, and "[f]or Count 3, the acts that constitute the charged offense were the making, signing, and electronic submission of the Form DS-260," Mot. at 15.

But here the defense again ignores the statute and the Superseding Indictment. Section 1546(a) (Third Paragraph) criminalizes not just making the statement under oath and subscribing to it as true but also "present[ing] any such application, affidavit, or other document which contains any

Count 4. The defense arguments as to the false statement charged as Count 4 fare no better. Count 4 involves a false statement the Defendant made when he physically entered the Cairo Consulate and affirmed the accuracy of his visa application to "an employee of the Department of State," Mot. at 11; [Doc. 60 at 6]. Citing no law, the defense claims that this is not an offense "against" the Department of State employee noted in the Superseding Indictment because "[a] statement is not made against the person who hears it merely because that person hears it."

The defense again cites the D.C. Circuit's *Abukhatallah* holding in support of its position but misunderstands its import in the process. 41 F.4th 608 (D.C. Cir. 2022); Mot. at 10-11. As the defense correctly states, *Abukhatallah* involved the malicious destruction of property offense 18 U.S.C. § 1363, which typically criminalizes "willfully and maliciously destroy[ing] or injur[ing] any structure, conveyance, or other real or personal property." Under those terms alone, there is no person involved whatsoever, rendering it "exclusively [a] property crime[]."*Abukhattalah*, 41 F.4th at 68. But there is an enhanced offense under the same statute for when "the life of any person be placed in jeopardy," 18 U.S.C. § 1363, and "[w]hen placing a person in jeopardy is an element of the offense, that offense is committed against the person threatened." 41 F.4th at 625. In this, as the defense notes, the *Abukhatallah* court rejected the notion that "whether an offense is 'committed by or against a national of the United States' is determined by the facts of the charged

---

such false statement." 18 U.S.C. 1546(a); [Doc. 60 at 4-5 ("… did knowingly present any such application, affidavit …")]. By submitting the form electronically, he was submitting it to the Cairo Consulate. *See, e.g.,* U*nited States v. Ashley,* 128 F.4th 641, 654 (5th Cir. 2025) (venue proper in location of "destination" bank account where funds were wired); *see also* 18 U.S.C. § 3237(a) ("[a]ny offense involving … transportation in interstate or foreign commerce … is a continuing offense and … may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves."). In this respect, the defense argument ignores both the crime charged and the law governing venue.

offense, not the offense's legal elements" and "can also 'refer to the specific acts in which an offender engaged on a specific occasion, say, the fraud that the defendant planned and executed.'" *Id*. at 626 (quoting *Nijhawan v. Holder*, 557 U.S. 33-34 (2016)).

Like Section 1363, Section 1001 offenses present three different modalities: subsection (1) criminalizes a defendant "falsif[ying], conceal[ing], or cover[ing] up, and subsection (3) criminalizes "false writing[s] or document[s]," both of which could conceivably not involve another person being on the receiving end of the offense. But the Defendant stands charged with Section 1001(a)(2), which criminalizes a "materially false, fictitious, or fraudulent statement or representation," which in both normal usage and in the Superseding Indictment are direct at someone—in this case, "an employee of the Department of State." [Doc. 60 at 6]; *see also* Fifth Circuit Pattern Jury Instruction 2.45, "False Statements to Federal Agencies *and Agents*" (emphasis added). Indeed, the Department of State employee is an essential witness because the crime was committed "against" her, with whether she actually sustained harm or was actually a victim as irrelevant as it is in the 1363 "placed in jeopardy" offense. The Department of State here received "the specific act in which the offender engaged on [the] specific occasion" we charge, with the false statement attesting to his visa application being "the fraud that the defendant planned and executed." *Nijhawan*, 557 U.S. at 34. For that reason, this Court should hold, consistent with *Abukhatallah*, that the false statement the Defendant made to the Department of State employee while in the embassy is an "offense committed … against a national of the United States."

***C. Even Were the Crimes "Extraterritorial," Courts Have Recognized Sections 1001 and 1546 to be Valid Crimes to Charge Extraterritorially Under Bowman and its Progeny.***

Yet even were the offenses extraterritorial, the Motion would still fail because the Defendant's Section 1001 and Section 1546 crimes are offenses against the United States

government that courts have uniformly recognized to be subject to extraterritorial prosecution.[5] Courts have long recognized that "some criminal statutes—for example, offenses against the United States government—apply extraterritorially whether or not there is 'clear evidence' of such intent by Congress due to the nature of the offenses involved." *Gatlin*, 216 F.3d at 223. Thus the question of extraterritoriality turns not just on the plain wording of the statute, including specific extraterritoriality language like that seen in Section 2339B, but also on the character of the crime itself and whether it's the type involving offenses against the United States government that naturally and logically involve protecting its interests.

Following this law and logic, circuit courts to consider the question have uniformly held each of Section 1001 and Section 1546, which both involve defrauding the United States government, to have extraterritorial reach. *See, e.g., United States v. Pizzarusso*, 388 F.2d 8, 9 (2d Cir. 1968) (holding Section 1546 to apply extraterritorially); *Rocha v. United States*, 288 F.2d 545, 547 (9th Cir. 1961) (same); *United States v. Walczak*, 783 F.2d 852, 854 (9th Cir. 1986) (Section 1001 applies extraterritorially). Indeed, the Fifth Circuit has repeatedly affirmed Section 1001 convictions where the conduct occurred outside the United States without comment upon the obvious: that crimes against the United States may be prosecuted by United States Courts even when the conduct occurred abroad. This principle flows from the Supreme Court's seminal holding in *United States v. Bowman*, where Justice Holmes explained that while "[c]rimes against private

[5] Even if Counts 3 and 4 were only prosecutable under the extraterritorial approach outlined here, it bears noting that the Superseding Indictment still appropriately captures extraterritorial conduct for these crimes on their face. That's so for a simple reason: Counts 3 and 4, like Counts 1 and 2, contain the "and elsewhere" phrasing that the Fifth Circuit has affirmed time and again as sufficient to provide that actions occurred elsewhere. *See, e.g.,* U*nited States v. Bleuler,* 60 F.4th 982, 998-99 (5th Cir. 2023); *United States v. Giles*, 756 F.2d 1085, 1087 (5th Cir. 1985). In this way, the Indictment adequately alleges that conduct occurred outside the District and the SMTJ, rendering it a valid description of the charges.

individuals or their property" were "committed within the territorial jurisdiction of the government where it may properly exercise it," 260 U.S. 94, 98 (1922), "the same rule of interpretation should not be applied to criminal statutes which are, as a class … enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated," *id.* And while the *Bowman* Court goes on to say this applies "especially if committed by its own citizens, officers, or agents," *id*. courts have uniformly applied that same stricture to foreign nationals. *See United States v. Bin Laden*, 92 F. Supp. 2d 189, 195 (S.D.N.Y. 2000) (collecting cases while noting that "no court, to date, has refused to apply the Bowman rule on the ground that the defendant was a foreign national").[6]

Indeed, many circuit courts have acknowledged that international law's "protective principle" justifies extraterritorial jurisdiction over non-citizens whose extraterritorial crimes involve a threat to a country's security or governmental operations as well. *See Lawrence*, 727 F.3d at 395. "Under the protective theory … a country's legislature is competent to enact … [and] enforce criminal laws *wherever and by whomever* the act is performed that threatens the country's security or directly interferes with its governmental operations." *Id.* (emphasis in original and quotations omitted). Recognizing this principle, circuit courts have found criminal jurisdiction over non-citizens violating Section 1546 or similar immigration laws, even where their criminal conduct took place in a foreign country. *See, e.g.*, *United States v. Yuan Chen Ling*, 460 F.App'x

[6] The defense devotes several pages to discussing the Supreme Court's holdings in *RJR Nabisco* and *Morrison*, *see* Mot. at 17-23, going so far as to say that these two civil cases overruled *Bowman*, *see* Mot. at 22 ("*Bowman* is also a product of the interpretive method *Morrison* displaced."). Suffice to say that circuits including the Fifth Circuit have continued to rely upon *Bowman* post-*Morrison*, *see, e.g.,* U*nited States v. Lawrence,* 727 F.3d 386, 394 (5th Cir. 2013), and courts that have squarely confronted this same argument have rejected it, *see, e.g.,* U*nited States v. Rolle,* 65 F.4th 1273, 1277 (11th Cir. 2023) ("The Supreme Court did not indicate in *Morrison*, *Kiobel*, nor *RJR Nabisco* that *Bowman* has been overturned, and it is not our prerogative to overrule the Supreme Court.").

822, 824 n.2 (11th Cir. 2012) (invoking the protective principle in a Section 1546(a) prosecution while stating that "the district court had jurisdiction to indict and convict Yuan, a foreign citizen, even where her illegal acts took place, at least in part, outside of the United States"); *United States v, Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) (invoking protective principle to reject defendant's argument that the district court lacked jurisdiction over his visa fraud crime because he was a non-citizen, his visa fraud occurred at a U.S. consulate in Montreal, and the United States caught his fraud prior to granting the visa); *Rocha*, 288 F.2d at 549 ("The acts done to violate 1546 of Title 18 were all done outside the state, but they were intended (at least at the point of time when the fraudulent document was used to gain entry) to produce, and they did so produce, a detrimental effect on the sovereignty of the United States. Thus under 'the protective principle,' . . . there is, and should be, jurisdiction."). These same principles are at play here, where the Defendant's visa fraud permitted a terrorist who had perpetrated an extreme act of violence into the United States.

And where the Fifth Circuit has directly addressed extraterritorial prosecution, its law is consistent with this framework. In *United States v. Villanueva*, the Fifth Circuit held that the alien smuggling statute, 8 U.S.C. § 1324, applied to extraterritorial conduct. 408 F.3d 193 (5th Cir. 2005); *accord United States v. Rolle*, 65 F.4th 1273, 1277 (11th Cir. 2023) (same); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004) (same). In so doing, the *Villanueva* court recognized that "the context of immigration statutes make it natural to expect that Congress intends for them to reach extraterritorial conduct." 408 F.3d at 199. Because "[i]mmigration statutes, by their very nature, pertain to activity at or near international borders," the court further explained, "[i]t is natural to expect that Congress intends for the laws that regulate conduct that occurs near international borders to apply to some activity that takes place on the foreign side of those borders." *Id.* It has also repeatedly affirmed false statement cases involving statements made abroad. *See,*

*e.g.,* U*nited States v. De Bruhl-Daniels,* 118 F.4th 735 (5th Cir. 2024) (false statements made in Dubai); *United States v. Williams*, 616 F.2d 759 (5th Cir. 1980) (affirming Section 1001 convictions where "evidence at trial established that while in Honduras, Williams prepared and sold four letters purportedly offering employment with a New Orleans-based corporation" and "Williams knew the purchasers would present the letters to secure visas from the United States consulate and obtain entry from immigration officials in the United States.").

The same principles underlying *Villanueva* apply here. The Defendant's visa fraud and false statement in furtherance of securing a visa are precisely the type of crimes that "by their very nature, pertain to activity at or near international borders" that *Villanueva* endorsed for extraterritorial prosecution. 408 F.3d at 199. The Defendant's conduct is case-in-point: the entire purpose of his visa fraud was to secure entry into the United States, which is precisely what he did afterward. For that reason, "[i]t is natural to expect that Congress intend[ed] for the[se] laws that regulate conduct near international borders" to apply to the Defendant's criminal conduct, *id.*, lying in wait outside the Cairo Consulate until he had the chance to defraud the Department of State and thereby lie his way into the United States. The Court should therefore hold that the Section 1001 and Section 1546 crimes charged here are prosecutable extraterritorially, even had they not already fallen within the SMTJ, and that the Motion seeking dismissal fails.

[Remainder of Page Intentionally Left Blank]

## IV. CONCLUSION

For all these reasons, the Court should deny the Motion without a hearing.

Dated: September 29, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

*/s/ Zachary A. Keller*
ZACHARY A. KELLER
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney