UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285-01
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

# USA'S OPPOSITION TO MOTION TO STRIKE DEATH RESULTING ALLEGATION

In compliance with Local Rule 7.1, the Government respectfully submits the following table of contents and table of authorities as to this Opposition, which asks this Court to deny the Defendant's motion to strike, [Doc. 107].

## TABLE OF CONTENTS

I. RELEVANT BACKGROUND ........ 2
II. LEGAL STANDARD ........ 4
III. ARGUMENT ........ 4
A. The Court Should Deny the Motion Because It Concerns Matters of Fact, Not of Law, That are Appropriate for Rule 29, Not Rule 12, Disposition. ........ 5
B. The Defense is Wrong about What But-For Causation Requires, and the Government's Theory Regarding the Defendant's Participation in the October 7 Attack is Sound. ........ 8
1. *Burrage*'s Full Scope Does Not Apply to Section 2339B. ........ 8
2. Even if *Burrage* Did Apply in Full, the Defense Misconstrues It. ........ 11
IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

***CASES***

*Burrage v. United States,* 571 U.S. 204 (2014) ........................................ 5, 8, 9, 10, 11, 12, 14, 15
*Camacho v. English*, 872 F.3d 811 (7th Cir. 2017) ........................................................... 9, 11
*Costello v. United States*, 350 U.S. 359 (1956) ........................................................... 4, 6, 7
*Edwards v. United States*, 523 U.S. 511 (1998) ........................................................... 14
*United States v. deBerardinis*, No. 18-00030, 2021 U.S. Dist. LEXIS 81619 (W.D. La. Apr. 28, 2021) ........................................................... 6, 7
*United States v. Dillon*, No. 26-00159, 2026 U.S. Dist. LEXIS 141779 (W.D. La. Jun. 25, 2026) ........................................................... 6, 8
*United States v. Gaspar-Felipe*, 4 F.4th 330 (5th Cir. 2021)........................................................... 12
*United States v. Kandic*, 134 F.4th 92 (2d Cir. 2025)........................................................... 13, 14
*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004)........................................................... 6
*United States v. Kor*, 557 F.2d 1089 (5th Cir. 1977) ........................................................... 4, 5
*United States v. Mann*, 517 F.2d 259 (5th Cir. 1975)........................................................... 1, 4, 6
*United States v. Ruiz-Hernandez*, 890 F.3d 202 (5th Cir. 2018) ........................................................... 12
*United States v. Salinas*, 918 F.3d 463 (5th Cir. 2019) ........................................................... 12, 14, 15
*United States v. Sampson*, 371 U.S. 75 (1962) ........................................................... 4, 6
*United States v. Sharifullah*, 831 F. Supp. 3d 387 (E.D. Va. 2026) ........................................................... 7
*United States v. Sharifullah*, No. 25-00143, 2026 U.S. Dist. LEXIS 191777 (E.D. Va. Aug. 25, 2026) ........................................................... 7, 12
*United States v. Tamez*, No. 20-40848, 2021 U.S. App. LEXIS 37746 (5th Cir. Dec. 21, 2021) 10
*United States v. Thompson*, 945 F.3d 340 (5th Cir. 2019)........................................................... 11, 12
*United States v. Turner*, 319 F.3d 716 (5th Cir. 2003) ........................................................... 14
*United States v. Williams*, No. 15-00063, 2016 U.S. Dist. LEXIS 201963 (W.D. La. Jan. 14, 2026) ........................................................... 7

***STATUTES***

8 U.S.C. § 1324........................................................... 9
8 U.S.C. § 1324(a)(1)(B)(iv)........................................................... 9
18 U.S.C. § 1201(a) ........................................................... 9
18 U.S.C. § 1203(a) ........................................................... 9
18 U.S.C. § 2339B ........................................................... 8, 9, 10, 11, 13
18 U.S.C. § 2339B(a)(1) ........................................................... 9
21 U.S.C. § 841........................................................... 9, 10, 12, 13, 14
21 U.S.C. § 841(b)(1)(C) ........................................................... 12

***OTHER AUTHORITIES***

Fifth Circuit Pattern Jury Instruction 2.01A ........................................................... 10
Fifth Circuit Pattern Jury Instruction 2.01B ........................................................... 10
Fifth Circuit Pattern Jury Instruction 2.54 ........................................................... 10
Fifth Circuit Pattern Jury Instruction 2.55 ........................................................... 10

Fifth Circuit Pattern Jury Instruction 2.94 .......... 10

***RULES***

Fed. R. Crim. P. 7(c)(1) .......... 3, 7
Fed. R. Crim. P. 7(d) .......... 4
Fed. R. Crim. P. 12 .......... 4, 5, 6, 7, 8
Fed. R. Crim. P. 12(b) .......... 4
Fed. R. Crim. P. 29 .......... 8, 12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285-01
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

/

**USA'S OPPOSITION TO MOTION TO STRIKE DEATH RESULTING ALLEGATION**

The United States respectfully submits the following Opposition to the Defense's Motion to Strike Death-Resulting Allegations in Counts 1 and 2, [Doc. 107-1] ("Motion"):

The Court should dispose of the Defendant's Motion—a summary judgment motion masquerading as a Rule 12 one—at page six, leaving the remaining 16 pages for another day. It should do so because, as a threshold matter, the Motion improperly asks this Court to delve into the facts of this case, anticipate the Government's proof, and rule on how those facts fit with the defense's version of the law. That is not the stuff of a Rule 12 motion. Rather, the Fifth Circuit has stressed time and again, echoing the Supreme Court, that "the indictment is to be tested not by the truth of its allegations but by its sufficiency to charge an offense, since the allegations contained in the indictment must be taken as true," *United States v. Mann*, 517 F.2d 259 (5th Cir. 1975) (citations and quotations omitted), and that "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence," *id*. Yet that is precisely what the defense proposes here, insisting that it "accepts both the allegations of the superseding indictment and every factual representation in the government's bill of particulars," Mot. at 6, as though that were the Government's entire case and despite both

this Court and the Government recognizing that the Government's bill of particulars, [Doc. 85] (the "Bill"), as the Court stressed, "does not require the Government to provide a detailed accounting of its anticipated evidence, witnesses, or trial strategy" as to the death resulting enhancement. [Doc. 80 at 8]. So while this Opposition goes on to assess and reject the defense's various mistaken legal theories regarding the "death resulted" enhancement for Section 2338B so as to not waive them, the Government respectfully submits that this Court should not reach those issues at all, instead denying the Motion based on its Rule 12 arguments being premised upon factual matters for trial, not pre-trial litigation. In support, the Government submits the following:

## I. RELEVANT BACKGROUND

The Defendant stands charged of both substantively providing material support to HAMAS and conspiring to do so, as well as lying both on his visa application and to a Department of State employee who interviewed him about his visa application. The material support charges he faces involves purely extraterritorial conduct, with the Defendant discussing his participation in the October 7 terrorist attack in Israel while he resided in Gaza and then when crossing over into Israel. The two false statement charges involve his conduct after he fled to Egypt with his wife Nieama-Al-Ghazzawi, who is a United States citizen. The visa fraud found Al-Ghazzawi and him submitting the visa application to the Cairo Consulate while residing in Egypt, and the Defendant doubled down on that lie when he met with the Department of State employee.

After the Defendant's initial arrest by criminal complaint in October 2025, *see* [Doc. 1], and initial indictment that same month, *see* [Doc. 16], a grand jury returned the four-count Superseding Indictment on June 17, 2026, [Doc. 60]. The Superseding Indictment charges the material support crimes as Count 1 and 2, with both counts "further alleg[ing] that death resulted from the commission of the offense." [Doc. 60 at 3-4].

On July 15, 2026, the Court entered an order requiring the Government to file a bill of particulars that included providing greater specificity as to the "death resulted" aspect of Counts 1 and 2. In so doing, the Court carefully noted "[a]s an initial matter, [that] the Court finds that the Superseding Indictment generally satisfies the requirements of Rule 7(c)(1)" and that "when considered together with the Government's extensive discovery and the detailed Affidavit submitted in support of the criminal Complaint, the Defendant has been provided constitutionally adequate notice of the Government's theory of prosecution." [Doc. 80 at 4-5]. Given the gravity of the charges and the complexity of the case, however, the Court did order the Government to disclose, as to the "death resulted" enhancement, the "names of the decedents of which it may offer evidence at trial," [Doc. 80 at 8], while noting that "[t]his disclosure is limited to identifying the factual basis or bases for the enhancement and does not require the Government to provide a detailed accounting of its anticipated evidence, witnesses, or trial strategy." [Doc. 80 at 8].

The Government filed the Bill on July 22, 2026. [Doc. 85]. In it, the Government disclosed the deaths that it alleged to have occurred as a result of the Defendant's material support crime. In particular, the Government cited the deaths that occurred in Kfar Aza and Nahal Oz on October 7, including specific deaths in those locations, as to the substantive count, while citing the deaths of all Israelis killed in the October 7 attack as to the conspiracy count. [Doc. 85 at 2-3]. In so doing, the Government carefully "notes that because this case involves a mass casualty event that was charged in a reactive context, the specific testimony that we intend to elicit, which will always be disclosed to the defense via agency reports as we conduct interviews, will be evolving until we get closer to trial." [Doc. 85 at 3].

## II. LEGAL STANDARD

While the Defendant moves pursuant to Rules 7(d) and 12(b) of the Federal Rules of Criminal Procedure, *see* Mot. at 1, the requested relief of striking the "death results" provisos in Counts 1 and 2 is governed by Rule 12's narrow dismissal parameters.[1] This limited scope of review is grounded in the fact that "the propriety of granting a motion to dismiss an indictment under [Rule] 12 is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact," *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977), with issues of fact being matters for the jury to find. As the Supreme Court has long held, "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Thus, "[w]hether the indictment sufficiently alleges a crime is an issue of law, not of fact," *Mann*, 517 F.2d at 267, and "the indictment is to be tested not by the truth of its allegations but 'by its sufficiency to charge an offense,'" *id.* (quoting *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)).

## III. ARGUMENT

The Court should deny the Motion for two reasons. *First*, the defense's claims that the Motion "presents a pure question of law," Mot. at 6, rests on the absurd premise that its preferred and limited set of facts (the Superseding Indictment and Bill) are all this Court needs to dispose of the fact-intensive question of whether death resulted from the Defendant's crimes. That's not so: as this Court recognized when ordering the Bill, [*see* Doc. 80 at 8], the Government intends to put

[1] Rule 7(d) involves the striking of "surplusage" in the charging document, and the "death resulted" proviso could only be surplusage subject to Rule 7(d) if the Court were to dismiss those enhancements pursuant to Rule 12(b). In that sense, Rule 7 relief is premised upon Rule 12 relief.

on a full case proving up the conduct of the Defendant and his National Resistance Brigades associates, as well as other circumstantial evidence further proving up those crimes, and the Court cannot and should not rule on whether death resulted until all that evidence is in, as Fifth Circuit and Supreme Court law clearly require. *Second*, even were the defense's Motion indeed a "pure question of law," the Court should also deny it because it gets the law wrong. The defense presents a picture of a hyper-constrained, hyper-narrow "death resulted" law that simply doesn't exist—law that, as the defense would have it, forecloses conspirator liability and any form of conduct where contributory forces are at play. To the contrary, the Fifth Circuit has recognized that but-for causation is not a high bar at all, and courts have routinely applied conspirator liability and broader ranges of causal connection than the narrow path that the defense paves in its Motion—and that's even assuming *Burrage* applies at all, which the case law set forth below gives good reason to doubt. Because the defense misconstrues the law in its supposed "pure question of law," Mot. at 6, the Court could therefore deny the Motion on that basis as well were it to reach it.

### *A. The Court Should Deny the Motion Because It Concerns Matters of Fact, Not of Law, That are Appropriate for Rule 29, Not Rule 12, Disposition.*

As a threshold matter, the Court should deny the Motion because it necessarily involves this Court determining whether the facts that the Government presents at trial are sufficient to prove, as the Superseding Indictment alleges, that death resulted from the offenses. As already noted, the limited scope of Rule 12 review is grounded in the fact that "the propriety of granting a motion to dismiss an indictment under [Rule] 12 is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact," *Korn*, 557 F.2d at 1090, with issues of fact being matters for the jury to find. As the Supreme Court has long held, "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally

constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Costello*, 350 U.S. at 363. For that reason, "[a] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment," *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004), and "[w]hether the indictment sufficiently alleges a crime is an issue of law, not of fact," *Mann*, 517 F.2d at 267, with "the indictment is to be tested not by the truth of its allegations but 'by its sufficiency to charge an offense,'" *id.* (quoting *Sampson*, 371 U.S. at 78-79).

So too here, where the defense fails in its 22 pages of argument to cite a *single* case of a district court granting the relief it seeks while arguing about facts throughout. The defense says that it "accepts both the allegations of the superseding indictment and every factual representation in the government's bill of particulars," Mot. at 6, but that is not all there is or enough for this Court to entertain the Motion. Indeed, in ordering the Government to file the Bill, the Court was careful to note that the bill "does not require the Government to provide a detailed accounting of its anticipated evidence, witnesses, or trial strategy" as to the death resulting enhancement. [Doc. 80 at 8]. And in submitting its Bill, the Government took care to say that "because this case involves a mass casualty event that was charged in a reactive context, the specific testimony that we intend to elicit … will be evolving until we get closer to trial." [Doc. 85 at 3]. In other words, the defense's reliance on the Bill is well enough but inadequate to evade Rule 12's strictures distinguishing between legal and factual issues.

The reality is that the Court will need to see all the evidence play out and the full scope of testimony the Government elicits before it could possibly rule on this issue, which is why courts routinely dismiss motions like the Defendant's here.[2] And it will be doing so, as the Federal Rules

---

[2] *See, e.g., United States v. Dillon*, No. 26-00159, 2026 U.S. Dist. LEXIS 141779, at *5 (W.D. La. Jun. 25, 2026) (Doughty, C.J.); *United States v. deBerardinis*, No. 18-00030, 2021 U.S. Dist.

and caselaw provide, after a "trial of the charge on the merits," *Costello*, 350 U.S. at 363, with the "Court lack[ing] the authority under Rule 12 'to dismiss on the basis of sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue.'" *DeBerardinis*, 2021 U.S. Dist. LEXIS 81619, at *7. To the extent that the defense is seeking a pre-trial determination of the law, that would be an entirely different motion for it to file—as others have in this precise context. *Compare United States v. Sharifullah*, 831 F. Supp. 3d 387, 388 (E.D. Va. 2026), (court deciding pre-trial motion concerning whether proximate cause is required to prove death resulted from material support), *with Sharifullah, No. 25-00143,* 2026 U.S. Dist. LEXIS 191777, at *20 (E.D. Va. Aug. 25, 2026) (deciding whether death resulted after jury trial).[3] But the defense chose to file a motion to dismiss governed by Rule 12 instead, and on that front the defense has no basis for relief. Because the Superseding Indictment adequately alleges the offenses at issue, *see* [Doc. 80 at 4-5] ("the Court finds that the Superseding Indictment generally satisfies the requirements of Rule 7(c)(1)"), and because the Motion inherently involves the Court seeing the Government's full factual proof of the Defendant's involvement in the conspiracy and in providing material support, the Motion must fail at this Rule 12 stage. If the defense disagrees with the Government's theory of prosecution, as clearly it does, *see* Mot. at 11-12, then it will have the opportunity to

LEXIS 81619, at *6 (W.D. La. Apr. 28, 2021) (Hicks, C.J.); *United States v. Williams*, No. 15-00063, 2016 U.S. Dist. LEXIS 201963, at *4-5 (W.D. La. Jan. 14, 2026) (Hicks, J.).

[3] Because the defense expressly declined to file a motion asking this Court to make a formal ruling as to the contours of but-for causation or any other legal theory relating to the "death resulted" aspect of this case, *see* Mot. at 8 n.1 (noting causation standard to be "a separate question that a later ruling can reach"), the Government respectfully requests that the Court forebear on ruling formally on that point until after the Government has put on its case or these issues are litigated through the jury instructions.

make that case at the close of the Government's evidence, at the Rule 29 stage. The Court should therefore deny the Motion.[4]

***B. The Defense is Wrong about What But-For Causation Requires, and the Government's Theory Regarding the Defendant's Participation in the October 7 Attack is Sound.***

If the Court agrees that the Motion fails for delving into facts and finds that *Burrage* applies, then it should end its inquiry there. *See Dillon*, 2026 U.S. Dist. LEXIS 141779, at *5 (rejecting Rule 12 motion as delving into facts and holding that "this reason alone is sufficient to defeat the Motion to Dismiss, and the Court need not address the remaining arguments."). But were the Court to entertain the Motion's position at this early stage, it would find that the defense's legal theories are simply incorrect about the "death resulted" aspect of the Section 2339B statute. As explained further below, Motion fails on two fronts on this *Burrage* issue, first mistakenly assuming that *Burrage* applies in all its contours to Section 2339B at all when the statutory language and case law surrounding Section 2339B suggests it doesn't, and then failing to correctly describe and apply *Burrage* in any event. For these reasons, the defense's Motion fails to make even its "pure[ly]" legal case, Mot. at 6, even had it not delved into the facts in a manner prohibited by Rule 12. The Motion should fail on that account as well.

***1.* Burrage*'s Full Scope Does Not Apply to Section 2339B.***

*First*, as a threshold matter, this Court should hold that *Burrage* doesn't apply to Section 2339B at all. That's not to say, of course, that no causal standard applies, but merely that the Defendant's Motion framing the case as turning around *Burrage*'s every causal contour is

[4] The Government notes that its position is that the Court should end its analysis here, forbearing as to the legal issues discussed in Sections III.B and III.C. The Government includes them only so as not to waive any response in light of the Motion's procedurally improper arguments. The Government does not contest that but-for causation applies, but instead the defense's gloss on the term as reflected in the Motion.

mistaken.[5] And while the defense appears to take that as a given, *see* Mot. at 2 (stating, as a matter of fact, that "the causation it describes is but-for causation," citing *Burrage*), Section 2339B's specific "death resulted" language and the case law surrounding that language holds otherwise. The reason centers around a key difference between the highly specific Section 841 "death resulting" language that *Burrage* parses and Section 2339B's "death resulting" language. The drug trafficking statute that the Supreme Court parsed in *Burrage* concerns "if death or serious bodily injury results from the use of such substance." *Burrage*, 571 U.S. at 206 (2014); 21 U.S.C. § 841. That language plainly requires an individual victim using the specific substance charged, with the defendants in those cases charged with distributing those substances. Not so for Section 2339B(a)(1), which instead contains an enhancement that applies "if the death of any person results" from the material support. This provision is more akin to the alien smuggling statute, 8 U.S.C. § 1324, which contains a similar enhancement for "a violation … resulting in the death of any person." *Id.* § 1324(a)(1)(B)(iv), or the kidnapping or hostage taking statutes, 18 U.S.C. §§ 1201(a) & 1203(a), which again contain a sentencing enhancement if "the death of any person results."

Circuit courts have recognized that this distinction matters. As to the kidnapping statute, the Seventh Circuit has rejected applying *Burrage* and held instead that "but-for causation is incompatible with the statutory goal of [Section] 1201(a)" based on its "any death results" statement. *Camacho v. English*, 872 F.3d 811, 814 (7th Cir. 2017). Similarly, on plain error review, the Fifth Circuit recognized that "neither our court nor the Supreme Court has applied *Burrage*, involving a different statute, to a conviction under § 1324(a)(1)(B)(iv)," and declined to find

[5] The Government's alternative is, to borrow the defense's words, "a separate question that a later ruling can reach." Mot. at 8 n.1.

*Burrage*'s application plain or obvious. *United States v. Tamez*, No. 20-40848, 2021 U.S. App. LEXIS 37746, at *2 (5th Cir. Dec. 21, 2021).[6] This distinction between Section 841 and these Title 8 and 18 offenses is not mere semantics or an accident of language but instead reflects three key differences between the drug trafficking in *Burrage* and these crimes. *First*, Section 2339B, unlike Section 841, inherently criminalizes conduct that involves criminal conduct engaged in by others and so naturally invites liability for the conduct of those actors. By its plain language, Section 2339B criminalizes supporting "a foreign terrorist organization," which unlike Section 841 broadens the scope of criminal liability away from a discrete action like distributing a drug at a discrete time. Thus while *Burrage* disclaims liability for "merely contribut[ing]" to a death, *Burrage*, 571 U.S. at 216, Section 2339B's *actus reus* specifically criminalizes precisely contributing to terroristic conduct, which renders the two incompatible. *Second* and relatedly, alien smuggling, kidnapping, hostage taking, and materially supporting terrorism are offenses that typically occur in groups, with the resulting chaos naturally inviting violence that includes lethal force. For that reason, it's understandable that Congress declined to include a limiting proviso for the "death resulted" language in these statutes in the way it did in Section 841, which is specifically tied to the drug distribution itself. And *third*, Section 841's narrow scope tracks with the fact that

---

[6] A look at the Fifth Circuit Pattern Jury Instructions reinforces this reading. Pattern Instructions 2.01A and 2.01B, covering 8 U.S.C. § 1324, require the jury only to find "[t]hat the death of any person resulted from the offense." The same is true of Pattern Instruction 2.54 for kidnapping, which includes full blanks "_________" for the kidnapped person in the second, third, and fourth elements but then has a fifth element simply requiring the jury to find that "the death of any person results from the defendant's conduct." And in fact, Pattern Instruction 2.54's lengthy explanation of "death results" says nothing whatsoever about the jury needing to identify a specific person they unanimously agree to have died as a result; instead, the supplemental instruction asks the jury only to unanimously decide whether a person died as a result. The hostage taking pattern instruction, Pattern Instruction 2.55, has the same "the death of any person resulted from the offense" description. In contrast, the Section 841 special instruction is tied to "the use of the substance" having "caused serious bodily injury [death]." Fifth Circuit Pattern Instruction 2.94.

it falls under Title 21, which generally relates to drug trafficking crimes specifically, with collateral or related conduct typically falling within Title 18—often, Section 922 or 924 of Title 18 where firearms are involved. In that way, it's natural both that Congress would so limit Section 841 and that the *Burrage* Court, interpreting that statute, would narrow its reach. But it's similarly natural that *Burrage*'s scope is therefore limited to its Title 21 offense, as the Seventh Circuit held in *Camacho* by declining to apply it to the kidnapping statute. For this reason, the Court should decline to hold that *Burrage* applies in all its particulars to this case.

***2. Even if* Burrage *Did Apply in Full, the Defense Misconstrues It.***

Yet even assuming *Burrage* applies, the defense's "contribution theory" discussion misses the difference between Section 841's drug distribution crime and Section 2339B's material support one. In *Burrage*, the Supreme Court held that the charged drug needed to be a but-for cause of the death rather than "merely contribut[ing]" to the death. *Burrage*, 571 U.S. at 216; Mot. at 8. As the defense would have it, *Burrage* applying to Section 2339B would set a high bar for the Government to prove that "a particular person would not have died but for Mr. Al-Muhtadi's actions," Mot. at 6, citing *Burrage v. United States*, 571 U.S. 204 (2014), with "[t]he causation [] run[ning] from Mr. Al-Muhtadi's own conduct to the particular death alleged." Mot. at 7-8. As the defense would have it, any "contribution theory" of but-for causation is something "*Burrage* rejected," Mot. at 8, and any "aggregate force" argument is wholly forlorn and "directly" rejected by *Burrage*, Mot. at 9.

But that's not what *Burrage* says. Sure enough, a death results if the conspiracy or substantive crime is a "but-for" cause of death. *See Burrage v. United States*, 571 U.S. 204, 218-19 (2014). "But-for causation requires the Government to show merely that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *United States v. Thompson*, 945 F.3d 340, 344 (5th Cir. 2019). But "[e]ven when many factors converge to cause

a result, 'one of those single factors will still be considered a but-for cause so long as the result would not have occurred in its absence.'" *United States v. Gaspar-Felipe*, 4 F.4th 330, 343 (5th Cir. 2021) (quoting *United States v. Ruiz-Hernandez*, 890 F.3d 202, 212-13 (5th Cir. 2018). "Thus, there may be many but-for causes of any given event," *Thompson*, 945 F.3d at 344, and "there is no requirement … [a defendant] be the final link in the causal chain," *id*., or have pulled the trigger himself, *see id*. Indeed, the Fifth Circuit has held that "[t]his is not a difficult burden to meet." *United States v. Salinas*, 918 F.3d 463, 466 (5th Cir. 2019). So while the defense pushes a restrictive but-for causation standard by selectively quoting what the *Burrage* Court declined to hold, *see* Mot. at 8 (quoting *Burrage* for what the Court "'decline[s] to adopt …'"), the Court should focus its attention on what *Burrage* actually says and the much more reasonable and sensible reality of what circuit courts have made of it, as outlined here.

The same is true for conspirator liability under *Burrage*. The defense appears to believe that there simply is no conspirator liability when it comes to death resulting. *See* Mot. at 9-15, but that is not so. In that way, the Defendant's wooden application of *Burrage*'s statutory interpretation misses the difference between the two crimes. While Section 841 involves the distribution of a particular drug and ties the enhancement to that drug in a highly specific way, *see* 21 U.S.C. § 841(b)(1)(C), the material support statute is not so constrained. Rather, courts that have ruled against defendants challenging "death resulting" in the Rule 29 context have recognized that people who participated in large, coordinated terrorist attacks are responsible for the deaths that result from the actions of their conspirators and compatriots, as the term "material support" facially suggests. Two cases reflect this commonsense approach to the material support statute:

In *United States v. Sharifullah*, a defendant charged with conspiracy to provide material support to ISIS moved for a Rule 29 judgment of acquittal as to death resulting when he was a

scout for a route during a planned ISIS bombing. Rejecting the defendant's claim, the district court ruled that "even assuming that the particular scouting role that Sharifullah played was not a but-for cause of any death at Abbey Gate, a rational jury could still reasonably conclude that Sharifullah participated in a conspiracy to provide material support to ISIS-K that was the but-for cause of the deaths at Abbey Gate." No. 25-00143, 2026 U.S. Dist. LEXIS 191777, at *20 (E.D. Va. Aug. 25, 2026). And as the district court explained, "[t]he dispositive issue is not whether Defendant's particular actions within the conspiracy had a 'direct, completed link' to the deaths, but rather whether the charged conspiracy in which he participated had that effect." *Id*. at *19-20. This makes sense not just as a matter of statutory application for "material support" but also as a matter of common sense: unlike a hand-to-hand drug transaction criminalized by Section 841, Section 2339B was enacted precisely to criminalize large, coordinated terrorist attacks that lead to mass casualty events, and holding that a terrorist scout like Sharifullah was not responsible for the deaths that resulted due (for example) to a lack of evidence that the actual bomber took Sharifullah's specific route would be a bizarre result.

The Second Circuit case *United States v. Kandic*, 134 F.4th 92 (2d Cir. 2025), stands for the same principles of liability. Kandic himself was a "prolific recruiter and emir for ISIS media," using social media and propaganda materials to recruit people to support terrorist campaigns. He was convicted of conspiracy to provide material support of terrorism resulting in death, with the legal theory that a specific recruit of his became a suicide bomber who, along with 10 other bombers, coordinated an attack that resulted in more than 30 deaths. *Kandic*, 134 F.4th at 97-98. Affirming, the Second Circuit explained that "although the indictment did not identify other decedents, [the defendant] had notice as to the scope of the charged conspiracy," *id.* at 102, which "did not include an infinite number of incidents but rather some particularly well-documented

ones" in which his recruits had participated, *id.* Here again we see conspirator liability for the people those recruits killed, with the trial case particularized to discrete incidents—like, say, the one single incident that this case concerns, the October 7 terrorist attack on Israel. Indeed, the fact that the Defendant's case here concerns this one discrete event is why the defense could never claim prejudice or complain of unfairness like Kandic did, where the conspiracy charge at issue contained a four-year timeframe of terrorist recruiting that opened the door (the defense claimed) for "an infinite number of incidents" in the first place. *Id*. And while the defense claims that *Pinkerton* liability is impermissible in this context, the *Kandic* district court that the Second Circuit affirmed found the opposite. *See United States v. Kandic*, No. 17-449, 2022 U.S. Dist. LEXIS 81060, at *11 n.3 (E.D.N.Y. May 4, 2022) ("the legal issues concerning the scope of the Count One conspiracy are not new in the abstract. The Supreme Court decided *Pinkerton* in 1946, and the doctrine borne of that case has occasioned no shortage of opinions, both scholarly and judicial.").[7] So while the defense would prefer that every terrorist defendant be only liable when they pull the trigger or there is evidence that the defendant handed off a specific rifle that someone used to do so, the reality is much more commonsense and permissive—"not a difficult burden to meet," as the Fifth Circuit holds. *Salinas*, 918 F.3d at 466.

Which is all to say: Even if this Court were to reach the defense's "pure[ly]" legal arguments it improperly advances in the Motion, the Court should find that the Motion mis-applies the law to the defense's preferred facts in any event. *Burrage* creates a set of parameters for Section

[7] The defense ignores these aspects of *Kandic*, *see* Mot. at 17, instead leading the Court through a law review article about *Pinkerton*, *United States v. Turner*, 319 F.3d 716 (5th Cir. 2003), and *Edwards v. United States*, 523 U.S. 511 (1998), *see* Mot. at 11-14; Mot. at 14 ("Tracing the lineage of *Edwards* is illuminating."). The total lack of case law in these sections that applies the Defendant's preferred modalities to situations like this case speaks for itself: there is simply no case law supporting the Defendant's reading of these cases or applying the principles he outlines in the manner he proposes.

841 that courts have used to guide their analysis of but-for causation, but they have not applied *Burrage* to other statutes in the wooden, literalistic way the defense would have this Court do. Rather, the but-for causation standard—"not a difficult burden to meet," as the Fifth Circuit explains, *Salinas*, 918 F.3d at 466—permits both the type of conspirator liability and causal chain that the Government's evidence will prove to have existed here at trial. But because the defense's so-called "pure question of law," Mot. at 6, badly misstates the law, it cannot succeed. For that reason also, the Court should find that the Motion fails and deny its requested relief.

## IV. CONCLUSION

For all these reasons, the Court should deny the Motion without a hearing.

Dated: September 29, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By: */s/ Zachary A. Keller*
ZACHARY A. KELLER
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney