UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285

JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I AND II OF THE SUPERSEDING INDICTMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................ 2

I. Counts I and II of the Superseding Indictment Properly Plead the Elements of the Offenses and Thus Easily State a Criminal Offense ........................................................................ 2

II. Defendant's Reliance on *Ullah* is Misplaced ........................................ 7

III. The Material Support Statute is Not Unconstitutionally Vague as Applied To This Case ........................................................... 10

IV. The Remainder of Defendant's Arguments are Meritless .................... 12

CONCLUSION ........................................................................................ 15

## TABLE OF AUTHORITIES

### Cases

*Chapman v. United States*,
500 U.S. 453 (1991) ........ 14

*Costello v. United States*,
350 U.S. 359 (1956) ........ 2

*Hamling v. United States*,
418 U.S. 87 (1974) ........ 2

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ........ 7, 10, 12

*Salinas v. United States*,
522 U.S. 52, (1997) ........ 14

*United States v. Ahmed*,
94 F. Supp. 3d 394 (E.D.N.Y. 2015) ........ 15

*United States v. Al-Azhari*,
No. 20-CR-206, 2020 WL 7360175 (M.D. Fla. Dec. 15, 2020) ........ 8

*United States v. Alfonso*,
143 F.3d 772 (2d Cir. 1998) ........ 3

*United States v. Augustine*,
No. 18-CR-393 (SJ), 2021 WL 1381060 (E.D.N.Y. Apr. 13, 2021) ........ 8

*United States. v. Covington*,
395 U.S. 57 (1969) ........ 6

*United States v. El-Mezain*,
664 F.3d 467 (2011) ........ 13

*United States v. Elshinawy*,
228 F. Supp. 3d 520 (D. Md. 2016) ........ 6

*United States v. Gordon*,
780 F.2d 1165 (5th Cir. 1986) ........ 2

*United States v. Korn*,
557 F.2d 1089 (5th Cir. 1977) ........ 6

*United States v. Lindh*,
212 F. Supp. 2d 541 (E.D. Va. 2002) ........ 6

*United States v. Ludke*,
No. 16-CR-175, 2017 WL 9772960 (E.D. Wisc. Dec. 11, 2017) .............................. 8

*United States v. Manuchekhri*,
No. 25-CR-0088, 2026 WL 2225614 (E.D.N.Y. Aug. 3, 2026) ............................... 6

*United States v. McAuliffe*,
490 F.3d 526 (6th Cir. 2007) ........................................................................ 3

*United States v. Osadzinski*,
97 F.4th 481 (7th Cir. 2024) ......................................................................... 8

*United States v. Pugh*,
15-cr-116, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ........................................ 8

*United States v. Resendiz–Ponce*,
549 U.S. 102 (2007) ................................................................................... 2

*United States v. Rubin*,
743 F.3d 31 (2d Cir.2014) ............................................................................ 2

*United States v. Sampson*,
898 F.3d 270 (2d Cir. 2018) ......................................................................... 3

*United States v. Shafi*,
252 F. Supp. 3d 787 (N.D. Cal. 2017)............................................................ 8

*United States v. Shelton*,
937 F.2d 140 (5th Cir. 1991) ........................................................................ 2

*United States v. Ullah*,
173 F.4th 399 (2d Cir. 2026) .................................................................. *passim*

*United States v. Warsame,*
537 F. Supp. 2d 1005 (D. Minn. 2008) ........................................................ 13, 14

**Statutes**

18 U.S.C. § 2339A ................................................................................. 3, 4

18 U.S.C. § 2339B ........................................................................... 1, 3, 4, 7

**Rules**

Fed. R. Crim. P. 7 ...................................................................................... 2

Fed. R. Crim. P. 29 .................................................................................... 5

**Other Authorities**

Fifth Circuit Pattern Jury Instruction 2.92B (2024).................................................. 4

## INTRODUCTION

Defendant seeks to dismiss Counts 1 and 2 of the Superseding Indictment charging conspiracy to provide material support to HAMAS, a designated foreign terrorist organization, and a substantive count of providing and attempting to provide material support to HAMAS, both in violation of 18 U.S.C. § 2339B. But there are no grounds to do so. [Doc. 108] ("Def. Mot."). The Superseding Indictment recites the required elements of the crimes, and the Complaint provides a detailed factual account of what the Government expects to prove at trial. Nothing more is required pre-trial. Nor does the Second Circuit's recent decision in connection with a "lone wolf" attack change the legal requirements of the charging document pre-trial. *United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026). That decision addressed the sufficiency of the evidence post-trial and is neither final nor binding. In any event, the facts of this case – a militant who gathered arms and joined HAMAS in its rampage through Southern Israel – bear no resemblance to the lone individual radicalized by watching ISIS videos on-line in the confines of his home in New York.

Defendant's alternative argument to dismiss for vagueness fares no better. A person of ordinary intelligence would easily understand that picking up arms and joining HAMAS in its attack on October 7 would constitute material support for terrorism. HAMAS has been a designated foreign terrorist organization since 1995, and it is well known in Gaza that HAMAS has engaged and engages in terrorism and terrorist activity. The Superseding Indictment alleges that the Defendant – not any

particular organization – provided himself and his services to HAMAS. The defendant's protestations that DFLP itself was undesignated miss the mark.

Defendant's motion to dismiss raises no serious challenge to the Superseding Indictment and therefore should be denied.

## ARGUMENT

### I. Counts I and II of the Superseding Indictment Properly Plead the Elements of the Offenses and Thus Easily State a Criminal Offense

In general, "[a]n indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States,* 350 U.S. 359, 363 (1956). An indictment is facially valid if it, first, "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and, second, "enables [a defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz–Ponce,* 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)); *United States v. Shelton*, 937 F.2d 140, 142 (5th Cir. 1991); *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986); *United States v. Rubin,* 743 F.3d 31, 38 (2d Cir. 2014).

It is thus well established that an indictment need not include all of the government's factual evidence. An indictment that tracks the language of a statute and states the time and place of the alleged crime is sufficient to survive a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 7(c) (an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."). *See* Mem. Op. & Order, *United States v. Holy Land Found. for*

*Relief & Dev.*, No. 3:04-cr-240 (N.D. Tex May 23, 2007), ECF No. 650 at 3-5 ("*Holy Land* Op."). Moreover, challenges that invite the court to "look [ ] beyond the face of the indictment" and draw "inferences as to the proof that would be introduced by the government at trial" are premature and not appropriately addressed in a Rule 12(b) pretrial motion to dismiss. *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998); *see also United States v. Sampson*, 898 F.3d 270, 285 (2d Cir. 2018) ("[W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be."). At bottom, an indictment "is to be construed liberally in favor of its sufficiency." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

Here, the Superseding Indictment states the necessary elements of the crime. Section 2339B proscribes the knowing provision of "material support or resources to a foreign terrorist organization" as well as attempting or conspiring to provide such support if the person providing the support knows that the organization (1) is a "designated terrorist organization" that (2) has engaged or engages in "terrorist activity" or that (3) has engaged or engages in "terrorism," as those terms are defined by relevant statutes. 18 U.S.C. § 2339B(a)(1). [T]he term "material support or resources" has the same meaning given that term in section 2339A . . .. 18 U.S.C. § 2339B(g)(4).

Section 2339A states, in relevant part:

> [T]he term "material support or resources" means any property, tangible or intangible, or *service*, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification,

> communications equipment, facilities, *weapons*, lethal substances, explosives, *personnel (1 or more individuals who may be or include oneself)*, and transportation, except medicine or religious materials[.]

*Id.* § 2339A(b)(1) (emphasis added). Thus, the elements of the crime of providing material support, or attempting or conspiring to do so, are: (1) that the defendant knowingly provided, attempted to provide, or conspired to provide material support or resources to an organization; and (2) that the defendant did so knowing that the organization is a designated terrorist organization, or alternatively, that the organization has engaged or engages in terrorist activity or terrorism. *See* Fifth Circuit Pattern Jury Instruction 2.92B (2024).[1]

The Superseding Indictment satisfies each of these elements. It alleges that the Defendant (1) provided material support or attempted or conspired to do so by providing "personnel, including himself, weapons and services;" to HAMAS; (2) that Defendant did so knowing HAMAS was a designated foreign terrorist organization, knowing that HAMAS has engaged and engages in terrorist activity, and knowing that HAMAS has engaged in terrorism; (3) and the Defendant "did knowingly combine, conspire, confederate, and agree with other persons" to provide such material support. Superseding Indictment. [Doc. 60 at 3-4]. And the Defendant has ample notice of the facts that the government expects to prove in satisfaction of each element, as the Complaint provides a detailed explanation of the Defendant's membership in the DFLP and NRB, his organization's relationship with HAMAS, his

[1] It is also required that the offense occur in the extraterritorial jurisdiction of the United States. 18 U.S.C. § 2339B(d). Defendant has not disputed that this element is satisfied.

knowledge of HAMAS' terrorist activities, and his gathering of men and weapons on the morning of October 7, 2023, in support of HAMAS' attack on Israel. *See generally*, Complaint, [Doc. 1] ("Compl.").

Defendant primarily argues that the Superseding Indictment fails to state an offense because the Defendant was a "lone wolf" whom HAMAS neither directed nor controlled, and that the DFLP was not itself designated. [Doc. 108-1 at 6-17] ("Def. Mem."). But those arguments are specious. That the DFLP (or the NRB) is not itself a designated terrorist organization is immaterial – the Foreign Terrorist Organization ("FTO") to which Defendant provided material support is HAMAS, and its status as an FTO is undisputed. Indeed, by definition, the person alleged to have provided the material support is never an FTO, as only organizations can be so designated. The defense argues that "[s]ection 2339B makes it a crime for *a person* to provide support to an FTO." [Doc. 108 at 15] (emphasis in original). Just so, the offense is that the Defendant Al-Muhtadi conspired to provide, provided, and attempted to provide material support to HAMAS, and that is the conduct with which the Defendant is charged in Counts 1 and 2 of the Superseding Indictment. Defendant's attempt to find refuge in the undesignated status of DFLP is mere distraction. [Doc. 108 at 7-9].

With respect to Defendant's "lone wolf" theory, he relies on the recent, non-final, and non-binding decision of the Second Circuit in *United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026) to argue that the indictment must contain factual allegations of direction and control by the FTO in order to establish that the Defendant provided

personnel or services to that FTO. But, as explained in more detail below, *Ullah* says nothing of the sort. That case was decided under Fed. R. Crim. P. 29 and involved the sufficiency of the evidence post-trial. It has no application to a pre-trial challenge to the indictment. *United States v. Manuchekhri*, No. 25-CR-0088, 2026 WL 2225614, at *5 (E.D.N.Y. Aug. 3, 2026) ("In *Ullah* the Circuit considered a Rule 29 challenge to the sufficiency of the evidence, but here, Defendant moves for reconsideration of his Rule 12 challenge to whether the Indictment alleges the necessary elements").

A pre-trial motion to dismiss is only appropriate "if trial on the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Korn*, 557 F.2d 1089, 1091 n.3 (5th Cir. 1977) (quoting *United States. v. Covington*, 395 U.S. 57, 60 (1969)); *see also United States v. Elshinawy*, 228 F. Supp. 3d 520, 539 (D. Md. 2016) ("a pre-trial motion to dismiss under Rule 12(b) ... 'cannot be based on a sufficiency of the evidence argument' ....") (quoting *United States v. Lindh* 212 F. Supp. 2d 541, 576 (E.D. Va. 2002)).

Here, the elements of the offense have been properly pled in the Superseding Indictment. And the facts at trial will amply demonstrate DFLP's and Defendant's relationship to HAMAS, and Defendant's actions to gather arms and men, including himself, in support of the HAMAS-led massacre inside Israel. Nothing more is required of the indictment pre-trial.

## II. Defendant's Reliance on *Ullah* is Misplaced

Defendant relies heavily on *Ullah* to argue that the Superseding Indictment is facially deficient. As noted, however, that case was a post-trial Rule 29 challenge to the sufficiency of the evidence. *See Ullah*, 173 F.4th at 413 (resolving "[the] narrow legal question" of "[w]hether the evidence permitted the jury to conclude that, by committing a 'lone-wolf' terrorist attack, [d]efendant also provided 'material support or resources' to ISIS"). *Ullah* involved a defendant who viewed ISIS propaganda videos on his home computer, was inspired by them, built a pipe bomb filled with metal screws using ISIS instruction manuals, and ignited the bomb in a New York City subway tunnel, injuring and traumatizing surrounding commuters. *See id.* at 411-12 (describing the attack at issue). The Second Circuit ultimately held, in a splintered decision, that the evidence at trial failed to show that Ullah had a sufficient nexus with ISIS to establish that he operated under ISIS's direction and control. *Id.* at 410. Analyzing the language of section 2339B, the court imported the "direction and control" language from 2339B(h), which cabins the prohibition on the provision of "personnel" so as not to capture protected First Amendment activity, such as advocacy. *See* 18 U.S.C. § 2339B(h).

As the dissent pointed out, the majority's decision is in tension with decisions in multiple other circuits, as well as the Supreme Court's decision in *Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010). *Ullah*, 173 F.4th at 451-53 (Menashi,

J., dissenting)[2]; *see also United States v. Osadzinski*, 97 F. 4th 481 (7th Cir. 2024) (holding that the conviction of man who created computer program to enable ISIS to more rapidly duplicate terrorist propaganda online did not violate First Amendment.) Both the defendant and the government in *Ullah* have filed petitions for rehearing *en banc*, and both petitions remaining pending. *Ullah*, Docket No. 21-1058, ECF Nos. 130, 133 (2d Cir. July 10, 2026). Thus, not only is *Ullah* a non-binding, out-of-circuit decision adjudicating a Rule 29 motion, but the decision itself is not final and likely to be further reviewed. *Ullah*, 173 F.4th 399.

Even setting aside all of that, the facts of this case bear no resemblance to those in *Ullah.* In *Ullah*, the defendant was a prototypical "lone wolf" whose "closest contact with a terrorist group was as a consumer of broadly distributed YouTube videos" from his home in New York. The *Ullah* majority distinguished this scenario

---

[2] Because Section 2339B(h) is merely a "definitional provision," and not an essential element of the offense, it need not be pled in the indictment. *See United States v. Pugh*, 15-cr-116, 2015 WL 9450598, at *11 (E.D.N.Y. Dec. 21, 2015) ("Section 2339B(h) further defines 'personnel' and is not an affirmative defense or an essential element of the offense of providing material support to an FTO."). Instead, where provision of personnel or services is alleged, the government must offer sufficient proof *at trial* that the personnel or services in question satisfy the requirements in Section 2339B(h). *See, e.g. United States v. Augustine*, No. 18-CR-393 (SJ), 2021 WL 1381060, at *2 (E.D.N.Y. Apr. 13, 2021) (citing *Pugh*); *United States v. Shafi*, 252 F. Supp. 3d 787, 793-94 (N.D. Cal. 2017) ("Construing subsection (h) as an element would be largely redundant because it simply modifies the meaning of the word 'personnel' as used in subsection (a). In this way, subsection (h) functions in the same way a statutory definition section does."); *United States v. Ludke*, No. 16-CR-175, 2017 WL 9772960, at *6 (E.D. Wisc. Dec. 11, 2017) (finding that "subsection (h) is a definition and not an element, it need not be pled in the indictment."), *report and recommendation adopted*, 2018 WL 2059556 (E.D. Wis. May 2, 2018); *United States v. Al-Azhari*, No. 20-CR-206, 2020 WL 7360175, at *2 (M.D. Fla. Dec. 15, 2020) ("At least three district courts have considered this issue and have ruled that § 2339B(h) is a definition that is not required to be pled in the indictment.")

from the "foreign fighter" who attempts to pick up arms and join the fight, a fact pattern the court recognized as obviously giving rise to a charge of material support through the rendering of services, including oneself. *Ullah*, 173 F.4th at 420-21 (foreign fighters "'plainly' submit to the 'direction or control' of a terrorist group by joining its ranks").

The Defendant in this case is akin to the foreign fighter, not the lone wolf. He was not some distant bystander who became radicalized through social media. As described in the Complaint, the Defendant has for years been active in the militant wing of the DFLP (the National Resistance Brigade), an organization operating in the Gaza Strip, itself a territory that HAMAS rules with an iron fist. He has participated in attacks against Israel in the past and trained other militants. HAMAS is aware of the Defendant, whom HAMAS disciplined for firing missiles into Israel without authorization years before the October 7 attacks. *See* Motion in Limine, [Doc. 45, Exs. 2 and 3]. The NRB participated in joint exercises with HAMAS through the Joint Operations Room for the purpose of attacking Israel. When the Defendant heard the call to arms from HAMAS Commander Mohammed al-Dief early on the morning of October 7, the Defendant organized the collection of arms with others and headed "east" until he finally arrived "inside." [Doc. 1, ¶¶ 50-63]. In short, the defense's portrayal of the Defendant as someone who had no idea of "any relationship between his organization and Hamas on October 7, 2023," [Doc. 108, p. 17], blinkers reality. This will be amply demonstrated through evidence at trial.

## III. The Material Support Statute is Not Unconstitutionally Vague as Applied to This Case

In the alternative, the defense argues that Section 2339B violates the Defendant's due process rights because the statute is unconstitutionally vague as applied to him. *Id.* at 14-22. Specifically, he argues that the statute fails to "provide[s] a person of ordinary intelligence fair notice of what is prohibited." *Id.* at 21-22 (quoting *Humanitarian Law Project*, 561 U.S. at 20). That is because, the defense argues, no "published legal instrument told him" that his conduct was illegal. *Id.* at 21. But that is an odd claim, because the defense rebuts its own argument: "Consider what a person of ordinary intelligence could have determined from published United States legal instruments before October 7, 2023," the defense rhetorically asks. *Id.* The answer, as set forth by the defense in its first bullet point, is that "Hamas is a designated foreign terrorist organization." *Id.* And it is widely known that HAMAS has engaged and engages in terrorist activity and terrorism. That knowledge would inform a person of ordinary intelligence that taking up arms and crossing into Israel to assist HAMAS in the fight on October 7 was prohibited conduct constituting a crime. Nothing more is required, and it is of no moment that neither DFLP nor NRB is separately designated. The Defendant is not charged with providing material support to those organizations – he is charged with assisting HAMAS. Of course, the fact that the Defendant was part of DFLP and NRB is highly relevant to his state of mind because it shows his knowledge and mindset, his participation in a long-standing enterprise of attacking Israel with the goal of its ultimate destruction, his co-conspirator *bona fides*, and his obvious motive for providing material support to

HAMAS. But the Defendant – not DFLP, not NRB – is charged with material support to HAMAS, and the basis for the charge could not be clearer.

Defendant's vagueness argument here, in fact, is just a weaker version of the argument that the district court in *Holy Land* rejected when faced with a similar motion. There, the defendants argued that the Section 2339 counts should be dismissed as unconstitutionally vague because the charitable committees to which defendants gave money were not separately designated, and therefore the defendants had no notice that they could not legally send money to them. *See Holy Land* Op. at 5. (quoting defendants' motion arguing that "[n]othing in the language of the statute gives a person of common intelligence notice that he or she may be found guilty of violating that statute by providing humanitarian aid through organizations alleged (although not designated) to be associated with" a foreign terrorist organization). As the district court remarked, "[t]he defendants give insufficient credit to people of 'common intelligence.'" *Id*. If the evidence showed – as it did – that the so-called humanitarian organizations were controlled by HAMAS, there was nothing vague or deficient about the indictment. *Id*. at 5-6. Here, of course, there are no issues of conduits or control. The Defendant in this case is charged with providing and attempting to provide material support directly to HAMAS, on the battlefield.

Nor does the Supreme Court's decision in *Humanitarian Law Project* ("HLP") help the defense's cause. That case was about the difficult line-drawing surrounding the provision of services that could be characterized as First Amendment protected activity. In HLP, the issue was whether 2339B's prohibition on services and training

applied to advocacy groups that wanted to provide conflict-resolution training and advice to designated FTOs, the PKK (Kurdistan Workers' Party) and the LTTE (Tamil Tigers). The Supreme Court found the statute constitutional under the facts presented, rejecting a vagueness challenge and famously holding that the First Amendment does not protect speech or expressive conduct that materially supports a foreign terrorist organization. *See generally Humanitarian Law Project*, 561 U.S. 1 (2010). Contrary to Defendant's argument, this case presents the easy scenario rather than the difficult fact pattern that the HLP court left to another day. *See* [Doc. 108, pp. 12, 16]. No First Amendment activity is implicated in this case, and there is nothing vague about a prohibition on joining armed conflict in support of HAMAS, a designated FTO. Defendant's due process claims are easily rejected.

**IV. The Remainder of Defendant's Arguments are Meritless**

The defense offers a medley of additional arguments in support of a dismissal or narrowing of Counts I and II. None has merit.

**(a) "arbitrary enforcement."** Like his due process argument, Defendant complains that no guidelines govern whom the government can charge under 2339B. The Defendant posits that, "[i]f belonging to an armed faction that coordinates with Hamas is material support to Hamas, then every member of every faction in the Joint Operations Room" might also be charged. [Doc. 108, p. 22]. The fallacy in Defendant's argument is that he is not being charged for his membership in "an armed faction." *Id.* Rather, he is being charged for his conduct on the morning of October 7, 2023, to assist or attempt to assist HAMAS in its attack on Israel. If a member of another

armed faction also provided material support to HAMAS in its October 7 massacre, and then made his way to the United States, that person could also be charged. The charge does not depend on the group to which the Defendant belongs, but on his own actions in support of HAMAS.

**(b) "temporal limit."** Defendant complains that the government's evidence pre-dates and post-dates the events of October 7. But there is no vagueness in the time period of "on or about October 7, 2023." [Doc. 60, pp. 2-3]. That is the date of the material support for HAMAS at the center of the offense. That does not mean, however, that evidence that tends to prove the charges true cannot pre-date or post-date October 7. In *United States v. El-Mezain*, 664 F.3d 467 (2011), for example, the Fifth Circuit upheld the admission of evidence that pre-dated by decades the prohibited financial transactions constituting the offense. Those documents constituted evidence of a joint enterprise involving the defendants, demonstrating their knowledge that the committees to which they sent money were part of the HAMAS organization. *See id.* at 501-07. So too here. There can be no dispute that evidence showing the Defendant's knowledge and intent can pre-date and post-date October 7, 2023.

**(c) "Limiting Order" as alternative relief.** *Warsame* provides no basis for limiting the scope of the charges in this case or for providing "narrowing relief." Def. Mem. at 23-24 [Doc. 108] (citing *United States v. Warsame*, 537 F. Supp. 2d 1005 (D. Minn. 2008)). In *Warsame*, the defendant was charged with traveling to Afghanistan and Pakistan to attend Al Qaeda training camps. The indictment also

charged that Al Qaeda paid Warsame's travel expenses to return to Canada, that Warsame sent money back as repayment, and that Warsame maintained communications with individuals associated with Al Qaeda after his return to Canada. *Warsame*, 537 F. Supp. 2d at 1009. The Court rejected each of the defendant's constitutional challenges to the charges. It noted, though, that to survive a vagueness challenge to the allegation that the defendant maintained communications with Al Qaeda once he returned to Canada, the evidence at trial would need to be connected to criminal conduct. It therefore deferred ruling on that one allegation. *Id.* at 1018 n.10. No such concern is present here. There are no allegations in the indictment here that would otherwise represent innocent activity unless tied to additional incriminating facts at trial. To the contrary. The indictment alleging material support to HAMAS could not be clearer in connecting Defendant to criminal activity.

(d) **"Rule of Lenity."** Lastly, Defendant argues that the "Rule of Lenity" should apply if the Court finds 2339B ambiguous. [Doc 108, p. 24]. The rule of lenity, however, has no application to an unambiguous statute. *Chapman v. United States,* 500 U.S. 453, 463 (1991) ("The rule of lenity, however, is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, . . . such that even after a court has seize[d] everything from which aid can be derived, it is still left with an ambiguous statute." (citations omitted)); *Salinas v. United States,* 522 U.S. 52, 65 (1997) ("The rule [of lenity] does not apply when a statute is unambiguous or when invoked to engraft an illogical requirement to its text."); *see*

*also United States v. Ahmed*, 94 F. Supp. 3d 394, 429 (E.D.N.Y. 2015) (same). Here, as demonstrated above, there is nothing ambiguous about Section 2339B as applied to this case. *See supra* at 2-6. The rule of lenity does not apply.

**CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss Counts 1 and 2 of the Superseding Indictment should be denied.

Date: Sept. 29, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By: */s/ Elizabeth J. Shapiro*

ZACHARY A. KELLER
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Elizabeth J. Shapiro*
ELIZABETH J. SHAPIRO