UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO PERMIT VARIOUS FORMS OF EVIDENCE AT TRIAL: ALLEGED NRB MEMBERSHIP, FIREARMS, AND HIS WIFE'S STATEMENTS, ACTS, PHONE, AND EMAIL (SECTIONS III.D, III.F, III.H, AND III.I)**

---

[Page intentionally left blank]

## TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. BACKGROUND .......... 3

III. ARGUMENT IN OPPOSITION .......... 5

- A. Section III.D: evidence of alleged membership in the years before and after October 7 does not prove what Mr. Al-Muhtadi did on October 7 .......... 5
  - 1. Counts One and Two require proof of conduct and intent on or about October 7, 2023 .......... 5
  - 2. Material from the years before and after October 7 is extrinsic and must pass *Beechum* and Rule 404(b)(3) .......... 6
  - 3. Propaganda and the conduct of other people prove only association .......... 10
  - 4. If membership evidence is admitted on Counts Three and Four, the Court should limit it .......... 12
- B. Section III.F: the firearms evidence is propensity evidence .......... 12
- C. Section III.H: the wife's acts may be relevant to the visa counts, but her statements offered for their truth must satisfy Rule 801(d)(2)(E) .......... 16
- D. Section III.I: the contents of the wife's accounts do not prove Mr. Al- Muhtadi's knowledge, motive, or intent .......... 18

IV. RESERVATION OF OBJECTIONS .......... 21

V. CONCLUSION .......... 21

CERTIFICATE OF SERVICE .......... 23

## TABLE OF AUTHORITIES


*Bourjaily v. United States*, 483 U.S. 171 (1987) ........ 17

*Davis v. United States*, 409 F.2d 1095 (5th Cir. 1969) ........ 16, 18

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ........ 6

*Lutwak v. United States*, 344 U.S. 604 (1953) ........ 17-18

*Old Chief v. United States*, 519 U.S. 172 (1997) ........ 7, 13

*Scales v. United States*, 367 U.S. 203 (1961) ........ 6

*Trammel v. United States*, 445 U.S. 40 (1980) ........ 20

*United States v. Ahmed*, 107 F. Supp. 3d 1002 (D. Minn. 2015) ........ 7, 11

*United States v. Ahmed*, 2022 WL 16914540 (5th Cir. Nov. 14, 2022) (unpublished) ........ 7-8, 11

*United States v. Anderson*, 933 F.2d 1261 (5th Cir. 1991) ........ 9

*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc) ........ 5-8

*United States v. Bennett*, 363 F.3d 947 (9th Cir. 2004) ........ 16

*United States v. Cabello*, 33 F.4th 281 (5th Cir. 2022) ........ 19

*United States v. Covelli*, 738 F.2d 847 (7th Cir. 1984) ........ 14

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) ........ 10, 17

*United States v. Elhuzayel*, 807 F. App'x 621 (9th Cir. 2020) (unpublished) ........ 11

*United States v. Fischel*, 686 F.2d 1082 (5th Cir. 1982) ........ 16

*United States v. Flores*, 640 F.3d 638 (5th Cir. 2011) ........ 8-9

*United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980) ........ 19

*United States v. Gonzalez*, 328 F.3d 755 (5th Cir. 2003) ........ 6-7

*United States v. Gray*, 669 F.3d 556 (5th Cir. 2012) ........ 14

*United States v. Hamilton*, 723 F.3d 542 (5th Cir. 2013) ........ 2, 5, 8

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ........................................ 10-11

*United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992) ................................................... 14

*United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc) ..................... 3, 17, 22

*United States v. Labarbera*, 581 F.2d 107 (5th Cir. 1978)........................................ 20

*United States v. Lugo-Lopez*, 833 F.3d 453 (5th Cir. 2016)......................................... 6

*United States v. Mohamed*, No. CR-19-02162-001-TUC-JGZ, 2024 WL 3606422 (D. Ariz. July 30, 2024) ............................................................................ 11

*United States v. Rahim*, No. 3:17-CR-0169-B, 2019 WL 1880032, at *1 (N.D. Tex. Apr. 26, 2019), aff'd, 860 F. App'x 47 (5th Cir. 2021) (unpublished) ...... 11

*United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970) .............................................. 14

*United States v. Righter*, 2025 WL 3688852 (3d Cir. Dec. 19, 2025) (unpublished) ............................................................................ 14

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) .............................................. 11

*United States v. Singleterry*, 646 F.2d 1014 (5th Cir. 1981) ..................................... 20

*United States v. Smith*, 584 F.2d 731 (5th Cir. 1978)........................................... 7, 18

*United States v. Smith*, 804 F.3d 724 (5th Cir. 2015)........................................... 7, 18

*United States v. Sumlin*, 489 F.3d 683 (5th Cir. 2007) ........................................... 6, 9

*United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014) .............................................. 19

*United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999) ........................................ 11

*United States v. Vosper*, 493 F.2d 433 (5th Cir. 1974) ............................................. 13

*United States v. Woods*, 613 F.2d 629 (6th Cir. 1980) .............................................. 14

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I.......................................................................................... 21

U.S. CONST. amend. V.......................................................................................... 21

U.S. CONST. amend. VI ........................................................................................ 21

RULES

FED. R. EVID. 104 ........................................................................................ 19, 22

FED. R. EVID. 105 ........................................................................................ 12, 15, 21

FED. R. EVID. 106 ........................................................................................ 16

FED. R. EVID. 403 ........................................................................................ 7, 9, 12, 20, 22

FED. R. EVID. 404(b) ........................................................................................ 2, 7

FED. R. EVID. 404(b)(1) ........................................................................................ 12

FED. R. EVID. 404(b)(3) ........................................................................................ 2, 6, 8-9, 21

FED. R. EVID. 801(c)(2) ........................................................................................ 17

FED. R. EVID. 801(d)(2)(E) ........................................................................................ 16-18, 22

FED. R. EVID. 901 ........................................................................................ 19, 22

FED. R. EVID. 1002 ........................................................................................ 16

FED. R. EVID. 1004 ........................................................................................ 16

OTHER AUTHORITIES

Fifth Circuit Pattern Jury Instructions (Criminal) § 2.04 (2024) ............................ 16

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO PERMIT VARIOUS FORMS OF EVIDENCE AT TRIAL: ALLEGED NRB MEMBERSHIP, FIREARMS, AND HIS WIFE'S STATEMENTS, ACTS, PHONE, AND EMAIL (SECTIONS III.D, III.F, III.H, AND III.I)**

---

NOW INTO COURT, through undersigned counsel, comes the defendant, Mahmoud Al-Muhtadi, who files this opposition to the government's motion in limine to permit various forms of evidence at trial, Doc. 100, as it applies to four categories of evidence: evidence the government offers of his membership in the National Resistance Brigades (NRB) in the years before and after October 7, 2023; evidence that he possessed or handled firearms; his wife's statements and acts in the visa process; and material from his wife's phone and email account. This opposition answers Sections III.D, III.F, III.H, and III.I of the government's memorandum, which is cited here as "Gov't Memo" by its internal page numbers. Two companion oppositions answer the remaining sections.

## I. Introduction

The four sections this opposition answers rest on a shared premise: that the jury can decide what Mr. Al-Muhtadi did on October 7, 2023, by learning who he was in the years around that date and what turned up in his wife's accounts. Section III.D seeks to admit "evidence from the years surrounding" October 7. Gov't Memo at 16. Section III.F seeks to admit evidence of "the Defendant's proclivity for possessing and wielding firearms." *Id.* at 17. Sections III.H and III.I turn to his wife's role in the visa process and to her accounts, including photographs of their child. *Id.* at 22-24.

For purposes of this motion, Mr. Al-Muhtadi does not dispute that he was affiliated with the Democratic Front for the Liberation of Palestine (DFLP) in the past. But Counts One and Two charge conduct "[o]n or about October 7, 2023." Doc. 60. The material support statute punishes what a person does, and the government must prove what Mr. Al-Muhtadi did and intended on or about that date. Evidence of what he belonged to years earlier, or of what he said about the group years later, invites the propensity inference Rule 404(b) forbids. The Fifth Circuit reversed a conviction where the government moved from a defendant's admitted past affiliation to testimony about his probable current membership and its connection to motive. *United States v. Hamilton*, 723 F.3d 542, 543, 546 (5th Cir. 2013).

The Court should deny Section III.D as to Counts One and Two and require item-by-item notice under Rule 404(b)(3); deny Sections III.F and III.I; and limit Section III.H to the wife's acts and to statements the government shows are

admissible, after a hearing under *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc). At a minimum, it should exclude the 2025 photographs of another man's handgun, the photographs of the child, and a CBP officer's description of images the government has not produced.

## II. Background

Counts One and Two charge a conspiracy to provide, and the provision of, material support to *Hamas* "[o]n or about October 7, 2023." Doc. 60. Count Three charges visa fraud based on a DS-260 application submitted "[o]n or about June 26, 2024," and Count Four charges a false statement to a Department of State employee "[o]n or about August 6, 2024." *Id.* Both visa counts allege that Mr. Al-Muhtadi falsely denied having "specialized skills or training, including firearms or explosives," and falsely denied that he had "ever served in, been a member of, or been involved with a paramilitary unit." *Id.*

The criminal complaint affidavit describes the membership and weapons material the government has in mind. Its items date from April 2019 through May 27, 2022, and include photographs of a grenade launcher and rifles on a table from November 2020. Doc. 1-1 ¶¶ 29-42. The most recent item predates October 7, 2023, by more than sixteen months. The affiant's conclusions about what the items show rest on "training and experience." *Id.* ¶¶ 30, 35.

The affidavit's post-October 7 firearms evidence consists of photographs from February 2025. On February 20, 2025, Mr. Al-Muhtadi "shared a photograph in a

social media message that appears to depict a Glock 26," and other photographs show what appear to be his children posing with the same gun in the family's Tulsa apartment. *Id.* ¶¶ 80-81 & n.12. The FBI later found that pistol in an acquaintance's workplace safe. The agents confirmed the serial number was "a positive match to the handgun observed in the photos AL-MUHTADI had posted," and noted that the acquaintance "is a US citizen and can lawfully posses [sic] the firearm." The ATF's trace results show the pistol was bought by a third party at a sporting goods store in Owasso, Oklahoma, in October 2020. When agents surveilled him, they never saw him with any firearms and when agents searched the family's Lafayette residence on October 16, 2025, there were no firearms.

When Mr. Al-Muhtadi entered the United States on September 12, 2024, a CBP officer searched his phone. The officer's report states that a "media search was conducted and nothing derogatory was found," and then notes, as "[o]f possible interest," images of Mr. Al-Muhtadi "posing with firearms" and a video of "what appeared to be ALMUHTADI shooting an AK-47 into the air." Nothing in the report indicates that CBP copied or preserved any of those images.

Mr. Al-Muhtadi's wife is not charged in this case, but is charged with visa fraud via a separate indictment. *See* Indictment, No. 6:26-cr-316-1 (W.D. La.). The visa paperwork lists her as the petitioner and gives her Gmail address as the petitioner's email. Agents seized her iPhone from her person during the October 16, 2025, search and interviewed her the same day. In that interview, she told agents she thought her

Gmail account was linked to ten to fifteen devices. The only photographs of the child in NRB insignia that the defense has located in the discovery are described in an FBI summary of Facebook messages between the spouses (the Facebook Message Summary). On September 18, 2019, the wife sent Mr. Al-Muhtadi two photographs of their daughter wearing a red NRB headband. The summary cautions that the messages were "machine-translated into English" and that it "is not a comprehensive account" of the conversation.

## III. ARGUMENT IN OPPOSITION

### A. Section III.D: evidence of alleged membership in the years before and after October 7 does not prove what Mr. Al-Muhtadi did on October 7

#### 1. Counts One and Two require proof of conduct and intent on or about October 7, 2023

The Fifth Circuit's decision in *Hamilton* shows why the date matters. The defendant there admitted he had been a member of a gang, and the court explained that the evidence showing "that he was a member" would have been intrinsic because it came from the on-scene investigation. 723 F.3d at 546. But "there was no direct evidence that Hamilton was currently in the BD gang," and an officer's testimony "considerably elaborated on Hamilton's probable current gang membership" and its connection to motive. *Id.* That inference was extrinsic and had to satisfy *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc). *Hamilton*, 723 F.3d at 546. The court reversed because the error "was not harmless under the close facts of this case." *Id.* at 543. Section III.D asks the Court to let the jury draw a similar inference:

that because of Mr. Al-Muhtadi's past affiliation with the DFLP, he must have been acting for the NRB on October 7. The government describes the charged conduct as "part of the Defendant's years-long NRB membership." Gov't Memo at 15.

That line follows from the statute itself. "[T]he statute does not penalize mere association with a foreign terrorist organization." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 39 (2010); *see Scales v. United States*, 367 U.S. 203, 224 (1961) ("In our jurisprudence guilt is personal."). The government must prove that Mr. Al-Muhtadi knowingly provided or attempted to provide personnel, weapons, or services to *Hamas*, not the DFLP or NRB, on or about October 7, 2023, and what he believed or belonged to in other years is not an element of either count.

**2. Material from the years before and after October 7 is extrinsic and must pass *Beechum* and Rule 404(b)(3)**

Evidence is intrinsic "when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). None of those categories fits photographs and messages from years before the offense, or discussions years after it. In *United States v. Lugo-Lopez*, 833 F.3d 453 (5th Cir. 2016), the defendant's cartel membership was intrinsic because it was "relevant to his culpability for particular criminal acts intrinsic to the conspiracy," including testimony that he directed co-conspirators' actions to further the cartel's purpose. *Id.* at 460-61. In *United States v. Gonzalez*, 328 F.3d 755 (5th Cir. 2003), an officer's knowledge of the defendant's prior arrests was intrinsic

because it prompted questioning during the very traffic stop that produced the charges and "allowed him to know that Gonzalez was lying." *Id.* at 759. Both cases involved evidence that arose within the charged episode. Neither holds that a defendant's history with an organization becomes intrinsic to every later crime the organization commits.

Extrinsic evidence must satisfy both steps of *Beechum*: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." 582 F.2d at 911. Because "[e]vidence in criminal trials must be strictly relevant to the particular offense charged," the Fifth Circuit reviews the admission of Rule 404(b) evidence under a heightened standard. *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015) (citation and internal quotation marks omitted). And the second step asks whether the evidence does its work by "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The government relies on *United States v. Ahmed*, 2022 WL 16914540 (5th Cir. Nov. 14, 2022) (unpublished), which affirmed the admission of evidence of the defendant's participation in a training camp in 1997, roughly two decades before the charged conduct. The panel held the camp evidence intrinsic and noted that Ahmed

had not pointed to "any case law citing time as a relevant factor when considering whether evidence is intrinsic." *Id.* at *1. The panel's reason for calling the evidence a "necessary preliminary" matters, though. The camp evidence showed that Ahmed "was familiar with the ideological roots of ISIS, supported its objectives, sought to further those objectives by attempting to train and recruit other inmates, and had at least some knowledge of bomb-making." *Id.* In other words, the old evidence explained the knowledge and skills the charged conduct used. The panel's *Beechum* analysis rested on the same tie. It acknowledged that "the remoteness of the evidence in time militates in favor of exclusion," and relied on "major similarities between the skills learned at the training camp and the offenses charged" and on a limiting instruction. *Id.* at *2. Section III.D offers older material for a different purpose: to prove continuing membership in the group, which Mr. Al-Muhtadi disputes. That is the inference *Hamilton*, a published decision, treats as extrinsic. And unlike *United States v. Flores*, 640 F.3d 638 (5th Cir. 2011), where a drug lab found nine months after the charged conduct reflected "continuing acts" of the same organization, *id.* at 642-43 (quoting the district court), the government has made no showing of continuity here.

Rule 404(b)(3) supplies the procedure. The government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it," and must "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence

and the reasoning that supports the purpose." FED. R. EVID. 404(b)(3)(A)-(B). Section III.D does neither. It lists categories spanning six years and four purposes without tying any item to any purpose. Gov't Memo at 14, 16. "For these extrinsic offenses to be relevant to an issue other than character, they must be shown to be offenses and also that they are similar to the charged offense." *United States v. Anderson*, 933 F.2d 1261, 1268 (5th Cir. 1991). The Court should require the government to identify each item it intends to offer and explain, item by item, how it bears on a non-character issue.

The same analysis applies to material from after October 7. Section III.D reaches "discussions the Defendant had from 2020 through 2025." Gov't Memo at 14. Evidence that is a "necessary preliminary to the crime charged" comes before the crime. *Sumlin*, 489 F.3d at 689. Discussions in 2024 and 2025 are not needed to complete the story of what happened on October 7, 2023, and the government has made no *Flores*-type showing that they were continuing acts of the charged offense. Unless the government ties a later statement to the charged events, the statement shows at most what Mr. Al-Muhtadi thought later. Using it to prove his earlier intent asks the jury to reason from character to conduct, and whatever probative value remains is substantially outweighed by the danger of unfair prejudice and of misleading the jury. FED. R. EVID. 403. The Court should exclude the pre- and post-October 7 material from the government's case on Counts One and Two and, at a minimum, require the item-by-item notice described above.

### 3. Propaganda and the conduct of other people prove only association

Much of Section III.D concerns "images and videos containing NRB and HAMAS propaganda" and discussions about "the NRB engaging in training exercises and plotting future attacks." Gov't Memo at 14. Evidence of what an organization publishes or what its members do connects to Mr. Al-Muhtadi only through membership.

The government's authorities do not hold otherwise. The government quotes *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), for the proposition that such images are "probative of the motive or intent of the [defendant] to support Hamas." Gov't Memo at 14. The bracket replaces the words "committees and HLF." The unaltered text reads: "evidence seized from HLF and the zakat committees, including images of violence and videos glorifying Hamas and depicting Hamas leaders, was probative of the motive or intent of the committees and HLF to support Hamas." *El-Mezain*, 664 F.3d at 509-10. The evidence was seized from the charged organizations themselves and "served the probative purpose of providing context and explanation in the case, and to rebut defensive theories that the defendants intended to support only charitable endeavors." *Id.* at 508. *El-Mezain* does not hold that years-old propaganda is admissible without a tie to the defendant and to a disputed issue.

The government's other authorities follow the same pattern. In *United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014), the evidence was the defendants' own words. Their discussions "allowed the jury to attach nefarious intent to what otherwise

might have been considered innocent acts," and their own Facebook postings supported the finding that they traveled abroad hoping to act on their beliefs. *Id.* at 127. In *United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998), the trial judge "scrupulously reviewed each item and heard extensive argument from counsel" before admitting anything, and "[s]pecific pages of these materials contained formulae for the same explosives that were used to construct the World Trade Center bomb." *Id.* at 111. The trial court also gave a limiting instruction. *Id.* at 112. In *United States v. Elhuzayel*, 807 F. App'x 621 (9th Cir. 2020) (unpublished), the images were "found on defendants' social media accounts and digital devices," were "typically accompanied by commentary approving their depictions," and "rebutted defendants' arguments" about the purpose of planned travel. *Id.* at 622. The remaining cases are similar. *See United States v. Rahim*, No. 3:17-CR-0169-B, 2019 WL 1880032, at *1 (N.D. Tex. Apr. 26, 2019) (statements made "within the period of the charged conspiracy"), *aff'd*, 860 F. App'x 47 (5th Cir. 2021) (unpublished); *United States v. Mohamed*, No. CR-19-02162-001-TUC-JGZ, 2024 WL 3606422, at *1-2 (D. Ariz. July 30, 2024) (addressing "[t]he images and videos Mohamed shared"); *United States v. Ahmed*, 107 F. Supp. 3d 1002, 1006-07 (D. Minn. 2015) (different defendant; detention ruling addressing his own social media comments); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (threats case in which evidence seized from the defendant's home "tends to counter his allegation of benign purpose"). Each case involved the defendant's own statements or materials tied to the charged conduct. None approved admitting years-

old propaganda, or other people's training and planning, to prove conduct on a specific date.

#### 4. If membership evidence is admitted on Counts Three and Four, the Court should limit it

Mr. Al-Muhtadi acknowledges that the visa counts are different. The DS-260 and Count Four's questions asked whether he had "ever" served in a paramilitary unit and whether he had firearms training. Doc. 60. Some evidence of service or training could be relevant to those questions. That relevance, however, is narrow. Propaganda and discussions about "the need to destroy Israel" do not show service in a unit or weapons training, and so they bear on neither visa question. Gov't Memo at 14. If the Court admits older service or training evidence for Counts Three and Four, it should confine that evidence to items that bear on the two questions, exclude cumulative items under Rule 403, and instruct the jury under Rule 105 that it may consider the evidence only on Counts Three and Four and not as evidence of what Mr. Al-Muhtadi did or intended on October 7, 2023. The instruction should be given both when the evidence comes in and in the final charge. The Court should also bar the government from arguing that evidence admitted only on the visa counts shows what Mr. Al-Muhtadi intended on October 7.

### B. Section III.F: the firearms evidence is propensity evidence

Section III.F asks the Court to admit evidence of "the Defendant's proclivity for possessing and wielding firearms." Gov't Memo at 17. A proclivity is a propensity, and Rule 404(b)(1) bars evidence offered to show that a person acted "in accordance

with" a character trait. The government advances three theories for admitting it anyway.

The first theory is that the indictment lists "weapons" as a form of material support, so evidence of weapons "in the years before and after 10/7 tends to prove that his ability to carry out the crimes charged here." Gov't Memo at 19. The affidavit's October 7 weapons allegations concern particular rifles on the morning of October 7. Doc. 1-1 ¶¶ 56-58. Photographs of rifles on a table in 2020 and of another man's handgun in Oklahoma in 2025 are not those weapons. The inference the government asks for (that a man who handled guns in other years must have supplied or used weapons on October 7) is the propensity chain *Old Chief* describes.

The government's lead case confirms the problem. In *United States v. Vosper*, 493 F.2d 433 (5th Cir. 1974), the guns were found in the defendant's own car, the same car whose trunk the robber climbed into as he fled the bank. *Id.* at 434-35. The court reasoned that "guns were available to him since they were in his own automobile which could be used in the commission of such a crime." *Id.* at 436. The receipt from years earlier was for a pistol purchased by the defendant's wife. *Id.* at 435 n.2. And the court ordered a new trial because "two pieces of testimony should not have been admitted," *id.* at 434, one of which was other-crimes evidence that "created the hazard of prejudice not only that Vosper was a law breaker, but that he ran with other such law breakers," *id.* at 437. *Vosper* says nothing about photographs

taken years before or more than a year after the offense.[1] The government also cites *United States v. Righter*, 2025 WL 3688852 (3d Cir. Dec. 19, 2025) (unpublished), but there the court noted that "the video call occurred only two months after the January 24 carjacking, and the gun in the video matched Singleton's description of the gun used during the incident." *Id.* at *2. The government identifies no gun that matches any weapon used on October 7.

The Fifth Circuit has rejected the use of photographs like these. In *United States v. Gray*, 669 F.3d 556 (5th Cir. 2012), the court held that "the fact that Gray held a gun (perhaps legally) in a photograph" was not probative of intent, and that "[t]here was no probative value to the photographs, and therefore, the district court abused its discretion through its admission of the evidence." *Id.* at 567. The court found the error harmless, concluding that "there is no reversible error based on the admission of the four photographs," *id.*, but its analysis of probative value applies here. The Ninth Circuit has explained why the prejudice is so strong: "photographs of firearms often have a visceral impact that far exceeds their probative value." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). The February 2025

[1] The government's other weapons cases involved crimes committed with guns. In *United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970), the court cautioned that evidence offered "only to prove that defendants were the sort of persons who carried guns" might violate the rules on character evidence, and it said the trial judge "would have been justified in excluding" the guns found at the defendants' arrest. *Id.* at 1204. In *United States v. Covelli*, 738 F.2d 847 (7th Cir. 1984), there was independent evidence that the victim was shot with .25 and .38 caliber guns. *Id.* at 856. And in *United States v. Woods*, 613 F.2d 629 (6th Cir. 1980), the guns were found where agents had been told they would find the robbery shotgun, and the trial judge "refused to admit the handguns and ammunition into evidence." *Id.* at 632, 635.

photographs present that risk. The Glock belonged to an acquaintance who lawfully owned it and kept it in his workplace safe, and the ATF trace shows a third-party purchase. No weapons were found in the family's home. Photographs of the children with that pistol add nothing but prejudice.

The second theory is that the firearms evidence is "inextricably intertwined" with NRB membership, "[a]s detailed in the criminal complaint." Gov't Memo at 19. A complaint affidavit states allegations, and the government must prove any connection at trial with admissible evidence. If the firearms evidence is intertwined only with membership in earlier years, it shares the defects discussed in Part III.A above.

The third theory is that the evidence disproves the visa answers about "specialized skills or training, including firearms [or] explosives." Gov't Memo at 19. As with Section III.D, the visa counts can support some narrowly tailored evidence of training. Photographs taken after the June and August 2024 statements say nothing about what he knew when he answered. And the visa counts do not justify admitting the evidence for Counts One and Two. Any training evidence admitted for the visa counts should come with a Rule 105 instruction.

The CBP officer's proposed testimony raises a separate problem. The government wants the officer to describe "videos and photos depicting the Defendant possessing and discharging firearms in his smartphone." Gov't Memo at 18. "An original writing, recording, or photograph is required in order to prove its content

unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. The rule "does apply when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). The government has not produced the images or shown that Rule 1004 applies, so the Court should exclude the testimony. If the Court permits the government to offer any part of the officer's report or testimony, the notation that a "media search was conducted and nothing derogatory was found" is a part that "in fairness ought to be considered at the same time." FED. R. EVID. 106.

### C. Section III.H: the wife's acts may be relevant to the visa counts, but her statements offered for their truth must satisfy Rule 801(d)(2)(E)

Mr. Al-Muhtadi does not dispute that the wife's acts in the visa process may be relevant to Counts Three and Four. "It has long been settled that the acts of all participants in the commission of a crime are admissible against the others even though no conspiracy is charged." *Davis v. United States*, 409 F.2d 1095, 1100 (5th Cir. 1969). The motion, however, reaches both "statements and actions." Gov't Memo at 22. *Davis* addresses acts. So do the government's other authorities. The pattern instruction the government cites holds a defendant responsible for "the acts and conduct of such other persons," Fifth Circuit Pattern Jury Instructions (Criminal) § 2.04 (2024), and *United States v. Fischel*, 686 F.2d 1082, 1088 (5th Cir. 1982), addressed an aiding-and-abetting charge. Statements offered for their truth are hearsay, and the Supreme Court has long distinguished acts from declarations. The

hearsay objection "is not applicable to acts which are not intended to be a means of expression." *Lutwak v. United States*, 344 U.S. 604, 618 (1953). Declarations, by contrast, "can be used against the co-conspirator only when made in furtherance of the conspiracy." *Id.* at 617.

Some of the wife's statements may not be hearsay at all. Answers on a visa form offered to show that they were false are not offered "to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c)(2). And a statement "may be admissible under Rule 801(d)(2)(E) if it is made in furtherance of a lawful joint undertaking." *El-Mezain*, 664 F.3d at 502. The concern is her other assertions, such as emails or messages describing Mr. Al-Muhtadi, offered for their truth. For those, the government must satisfy Rule 801(d)(2)(E), which requires that the statement "was made by the party's coconspirator during and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). And "when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Bourjaily v. United States*, 483 U.S. 171, 176 (1987). In this circuit, "[t]he district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator." *James*, 590 F.2d at 582. The Court should require that showing before any such statement is offered for its truth.

Timing also matters. The visa offenses charged in Counts Three and Four occurred on or about June 26 and August 6, 2024. Doc. 60. "There can be no

furtherance of a conspiracy that has ended." *Lutwak*, 344 U.S. at 617-18. Statements the wife made after Mr. Al-Muhtadi entered the United States on September 12, 2024, could not have furthered the visa offenses.

The government's intrinsic-evidence theory adds nothing. That the wife "sent emails, created documents, and raised money" describes acts, which *Davis* already covers. Gov't Memo at 23. What those emails and documents assert, if offered for its truth, remains hearsay unless the government makes the Rule 801(d)(2)(E) showing. Neither theory converts the wife's out-of-court assertions into admissible evidence.

### D. Section III.I: the contents of the wife's accounts do not prove Mr. Al-Muhtadi's knowledge, motive, or intent

Section III.I describes the wife's phone and email as "replete with evidence" of NRB membership and firearms, "ranging from NRB propaganda to photos of firearms to photos of their own child wearing NRB regalia." Gov't Memo at 23. The government offers two theories.

The first theory is that the material shows the wife's knowledge, and that "her knowing that the two would need to lie on the Defendant's visa application is relevant to prove the Defendant's knowledge and intent." Gov't Memo at 23. The government concedes that it "need not prove that [the wife] knowingly lied," citing *United States v. Smith*, 584 F.2d 731 (5th Cir. 1978). Gov't Memo at 23. "It is not necessary for the intermediary to have a criminal intent." *Smith*, 584 F.2d at 734. Because the wife's knowledge is not an element, evidence offered to prove it is relevant only if her knowledge proves his. The Fifth Circuit rejects that inference: "That one is married

to, associated with, or in the company of a criminal does not support the inference that that person is a criminal or shares the criminal's guilty knowledge." *United States v. Forrest*, 620 F.2d 446, 451 (5th Cir. 1980) (footnotes omitted) (reversing a wife's conviction for insufficient evidence and declining to infer her guilty knowledge from her marriage). *United States v. Cabello*, 33 F.4th 281, 290 (5th Cir. 2022), does not help the government. It addressed what an aider and abettor must know about the principal's crime. It did not hold that one person's knowledge proves another's.

The second theory is that the material is relevant "for the same reason the other evidence of the same is relevant, see Sections III.A and B, supra, with the source of the evidence a mere issue of its weight, not its admissibility." Gov't Memo at 24. That cross-reference supplies no analysis, because Sections III.A and III.B concern testimony from October 7 victims and videos of the attack, not insignia, propaganda, or photographs found on a spouse's phone. Whether an item is what the government claims it is, and whether Mr. Al-Muhtadi had anything to do with it, are questions of admissibility. The proponent must produce "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (citation and internal quotation marks omitted). Material found on the wife's phone or in a Gmail account that she told agents she thought was linked to ten to fifteen devices does not, without more, show that Mr. Al-Muhtadi created, sent, received, or even saw it. Where the government offers an item as his statement or his conduct, it must lay that foundation under Rules 104 and 901

before the jury sees the item.

The child photographs deserve separate attention. The only such photographs the defense has located are described in the Facebook Message Summary of 2019 messages the wife sent to Mr. Al-Muhtadi. They show a young child in a headband four years before the charged conduct. They prove nothing about what Mr. Al-Muhtadi did on October 7, 2023, or what he knew when he answered the visa questions in 2024. Their only function would be to invite the jury to judge the family, and the Fifth Circuit has condemned that kind of appeal. *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978) (describing reference to a family member's arrest as "a highly prejudicial attempt to taint defendant's character through 'guilt by association'"); *United States v. Singleterry*, 646 F.2d 1014, 1020 (5th Cir. 1981) (reversing because of "the spectre of guilt by association"). Any probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403.

Some of this material may also be privileged. The Supreme Court has recognized that marital confidences "are privileged under the independent rule protecting confidential marital communications." *Trammel v. United States*, 445 U.S. 40, 51 (1980). Mr. Al-Muhtadi reserves that privilege as to any communication between the spouses, including the 2019 messages described above, and asks the Court to require the government to identify any spousal communication it intends to offer so that the privilege can be resolved item by item before trial.

The Facebook Message Summary also cannot substitute for the messages

themselves. It is hearsay, it describes itself as "not a comprehensive account," and it relies on messages "machine-translated into English." The defense does not object to the translation-review schedule the government has proposed and intends to have its own linguist review the government's transcripts and translations on that schedule. Doc. 101. The Court should require the government to identify each item it intends to offer under Section III.I, produce a translation it intends to rely on, and lay the foundation outside the jury's presence.

## IV. Reservation of Objections

This opposition addresses the grounds the government has raised in Sections III.D, III.F, III.H, and III.I. Mr. Al-Muhtadi reserves all other objections to this evidence, including objections under the Confrontation Clause, the Due Process Clause, and the First Amendment, objections to the authentication and translation of any recording or document, the marital communications privilege, and objections to specific exhibits and testimony once the government identifies them.

## V. Conclusion

For these reasons, Mr. Al-Muhtadi asks the Court to deny Section III.D as to Counts One and Two, for material from both before and after October 7, 2023, and to require item-by-item notice under Rule 404(b)(3). Any membership evidence admitted on Counts Three and Four should be limited to the visa questions, accompanied by a Rule 105 instruction when it comes in and in the final charge, and kept out of the government's argument on Counts One and Two. He asks the Court

to deny Section III.F or, at a minimum, exclude the February 2025 photographs and the CBP officer's testimony about images the government has not produced. He asks the Court to limit Section III.H to the wife's acts and to statements that are not hearsay or that the government shows are admissible under Rule 801(d)(2)(E) after a *James* hearing. And he asks the Court to deny Section III.I or, in the alternative, require the government to identify each item and lay a foundation under Rules 104 and 901 outside the jury's presence, exclude the photographs of the child under Rule 403, and require the government to identify any spousal communication it intends to offer.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 29, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*