UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION TO SHIELD THE IDENTITY OF CERTAIN WITNESSES AND FOR OTHER PROTECTIVE MEASURES TO ENSURE WITNESS SAFETY**

[Page intentionally left blank]

## TABLE OF CONTENTS


**I. INTRODUCTION** ..... **1**

**II. BACKGROUND** ..... **2**

- **A.** The protected witnesses ..... 2
- **B.** The government's statements about classified information and clearances ..... 3
- **C.** Avi's role in this investigation ..... 5

**III. ARGUMENT** ..... **6**

- **A.** The government bears the burden on each measure, for each witness, and has not carried it on the public record ..... 7
- **B.** The government must declassify the information or sponsor clearances before it may invoke classification against counsel ..... 8
- **C.** Counsel must receive the true names of the witnesses who will identify the voice and authenticate the calls, and of the witness who selected the documents ..... 11
  - **1.** The undercover employee ..... 13
  - **2.** Maya ..... 15
  - **3.** Avi ..... 16
  - **4.** The IDF witness ..... 18
- **D.** Any closure order must permit Mr. Al-Muhtadi and his full defense team to remain in the courtroom ..... 19
- **E.** The trial must be recorded in one official transcript ..... 20
- **F.** Cross-examination must reach Avi's selection of the evidence, and classified questions should be resolved under CIPA § 8(c) with defense counsel present ..... 20
- **G.** The Court should hold a live evidentiary hearing and make findings for each witness ..... 23
- **H.** The defense does not oppose narrower measures that protect the witnesses without impairing confrontation ..... 23

**IV. RESERVATION OF OBJECTIONS** ..... **24**

**V. CONCLUSION** ..... **24**

CERTIFICATE OF SERVICE .......... 25

# TABLE OF AUTHORITIES

## CASES

*Alford v. United States*, 282 U.S. 687 (1931) ............ 16

*Clark v. Ricketts*, 958 F.2d 851 (9th Cir. 1991) ............ 12

*Davis v. Alaska*, 415 U.S. 308 (1974) ............ 13, 16

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ............ 13

*Estelle v. Williams*, 425 U.S. 501 (1976) ............ 24

*Fountain v. United States*, 384 F.2d 624 (5th Cir. 1967) ............ 23

*Geders v. United States*, 425 U.S. 80 (1976) ............ 19

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............ 16

*Olden v. Kentucky*, 488 U.S. 227 (1988) (per curiam) ............ 16

*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) ............ 10

*Perry v. Leeke*, 488 U.S. 272 (1989) ............ 22

*Siegfriedt v. Fair*, 982 F.2d 14 (1st Cir. 1992) ............ 12

*Smith v. Arizona*, 602 U.S. 779 (2024) ............ 24

*Smith v. Illinois*, 390 U.S. 129 (1968) ............ 11

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) ............ 10

*United States v. Abu Marzook*, 412 F. Supp. 2d 913 (N.D. Ill. 2006) ............ 14-15, 19

*United States v. Celis*, 608 F.3d 818 (D.C. Cir. 2010) ............ 7, 9, 11

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) ............ *passim*

*United States v. Gutierrez de Lopez*, 761 F.3d 1123 (10th Cir. 2014) ............ 6-7, 12

*United States v. Hernandez*, No. S1 12 Cr. 809 (PKC), 2013 WL 3936185 (S.D.N.Y. July 29, 2013) ............ 12, 14

*United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007

WL 2059722 (N.D. Tex. July 16, 2007) .......................................................... 23

*United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 9658814 (N.D. Tex. May 4, 2007) ............................................ 9, 19, 21-22

*United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-0240-P, 2008 WL 11355369 (N.D. Tex. Aug. 13, 2008) .................................................... 17-18

*United States v. Machado-Erazo*, 951 F. Supp. 2d 148 (D.D.C. 2013) ...................... 14

*United States v. Maldonado-Benitez*, No. 23-cr-00315 (SRN/DTS), 2025 WL 1166515 (D. Minn. Apr. 22, 2025) .................................................................. 7

*United States v. Mohamed*, 727 F.3d 832 (8th Cir. 2013).................................. 11, 14

*United States v. Naseer*, No. 10 CR 19 (S-4) (RJD), 2015 WL 13843166 (E.D.N.Y. Jan. 26, 2015) .......................................................................... 14

*United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012) ...................................... 7

*United States v. Reyeros*, 537 F.3d 270 (3d Cir. 2008) ............................................ 17

*United States v. Salah*, No. 03 CR 978, Order at 5-6 (N.D. Ill. Aug. 29, 2006) (Doc. 652) ......................................................................... 15, 19, 23-24

*United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977)............................................... 20

*United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013)............................................ 12

*United States v. Thompson*, 827 F.2d 1254 (9th Cir. 1987)....................................... 22

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V.......................................................................... 11, 24

U.S. CONST. amend. VI ........................................................................ 11, 24

STATUTES

18 U.S.C. app. 3 § 4........................................................................................ 24

18 U.S.C. app. 3 § 6.............................................................................. 9, 22-24

18 U.S.C. app. 3 § 8 .......... 9, 20, 22, 24

28 U.S.C. § 753(b) .......... 20, 24

50 U.S.C. § 3121(a) .......... 13

50 U.S.C. § 3126(2) .......... 8, 13

RULES

FED. R. CRIM. P. 16 .......... 16

FED. R. CRIM. P. 43(a)(2) .......... 19

FED. R. EVID. 104(a) .......... 24

FED. R. EVID. 611(b) .......... 20, 24

FED. R. EVID. 615(a)(1) .......... 19

FED. R. EVID. 615(a)(3) .......... 19

FED. R. EVID. 702 .......... 24

OTHER AUTHORITIES

Exec. Order No. 13,526, § 1.6(e) .......... 9

Exec. Order No. 13,526, § 4.1(a), 75 Fed. Reg. 707, 720 (Jan. 5, 2010) .......... 9

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION TO SHIELD THE IDENTITY OF CERTAIN WITNESSES AND FOR OTHER PROTECTIVE MEASURES TO ENSURE WITNESS SAFETY**

NOW INTO COURT, through undersigned counsel, comes the defendant, Mahmoud Al-Muhtadi, who files this opposition to the government's Memorandum in Support of Motion to Shield the Identity of Certain Witnesses and for Other Protective Measures to Ensure Witness Safety (Doc. 102) ("Gov't Memo"). The Court should deny the motion. In the alternative, the Court should grant only the narrower measures described below, and only after a live evidentiary hearing and findings specific to each witness.

## I. INTRODUCTION

The government asks the Court to let three of its witnesses, and a fourth it may call, testify without the defense ever learning who they are: an FBI undercover employee, two Israeli officials called "Avi" and "Maya," and an Israel Defense Forces witness. Gov't Memo at 1-3, 16. For these witnesses the government seeks

pseudonyms, a courtroom closed to "all non-parties except for the defendants' immediate family members," a separate stenotype record, limits on cross-examination, a legal advisor with whom a witness may confer "if a question calls for a classified response," and ex parte hearings during testimony. *Id.* at 7.

The motion rests on classification. The government says the witnesses' true identities "are classified under Israeli and U.S. law and cannot be disclosed." *Id.* at 10. Yet the government told the defense that "there is no classified discovery in this case" and "no need for members of the defense team to obtain security clearances." Doc. 74-4, at 1. The government and the classified information security officer also "denied the defense team's request to apply for clearance." Doc. 47, at 1 n.1. Defense counsel raised that denial with the Court at the May 27, 2026, status conference because the defense foresaw that clearances would one day be needed. Doc. 49, at 5; Doc. 56. Having kept defense counsel out of the one process that would let them receive classified information, the government now invokes classification to keep counsel from learning who its witnesses are. The Court should not let classification work in only one direction. It should require the government to declassify the witnesses' names for disclosure to counsel or sponsor clearances for the defense team, and withhold every classification-dependent measure until it does.

## II. BACKGROUND

### A. The protected witnesses

The government describes Avi as "an ISA expert on HAMAS and the

Democratic Front for the Liberation of Palestine ('DFLP') who will authenticate and opine upon specific documents recovered during recent Israeli military operations." Gov't Memo at 2. Its expert notice identifies him as a director at Israel's National Bureau of Counter Terror Financing (NBCTF), "serving as the representative for the ISA," whose work is carried out "with the goal of identifying opportunities to enforce sanctions and build criminal cases." Doc. 46, at 2. The government describes Maya as "a supervisor at the Gaza desk of the Israel Security Agency ('ISA'), which is responsible for monitoring, intercepting, and storing calls like the six at issue here." Doc. 99, at 1.

The undercover employee is "an FBI undercover agent with a skillset and personal background that is unique within the FBI who communicated with the defendant while in the United States and who will authenticate the defendant's voice on the phone call recordings." Gov't Memo at 3. The government has publicly disclosed that he was "known to the defendant as Samir Khader." *Id.* at 17. The government also "may decide to call a witness from the IDF" to authenticate the battlefield documents, *id.* at 16, and it may add a State Department witness. *Id.* at 3 n.2.

### B. The government's statements about classified information and clearances

The defense has sought security clearances since December 2025. That month and the next, the government and the classified information security officer told the defense team that no member needed a clearance and denied the team's request to

apply for one. Doc. 47, at 1 n.1. On May 18, 2026, the defense told the Court that the government and the officer had "turned away defense counsel's request to pursue the security clearance necessary to independently evaluate those representations," and that counsel would raise "the question of security clearance for the defense team" at a status conference. Doc. 49, at 5. At that conference, held in chambers on May 27, 2026, Doc. 56, undersigned counsel raised the issue directly with the Court. Counsel explained that the defense team wanted to apply for clearances, had been denied that opportunity, and wanted to make a record of the denial, because the defense was concerned that clearances would become necessary at some point in this case and did not want the time needed to obtain them to put the trial date at risk. In June, the defense again asked the government to identify any classified material "so that defense counsel can seek the appropriate security clearances." Doc. 70, at 2 n.2. The government answered that footnote on July 6, 2026, referring to what had been "noted during the May 27, 2026, status hearing":

> [T]he Government has never represented that there are no classified documents in this case. There are a number of classified documents that will be addressed in CIPA litigation, but there is no classified discovery in this case. Because there is no classified discovery, there is no need for members of the defense team to obtain security clearances. Doc. 74-4, at 1.

On September 15, 2026, the government made these statements in its motion: "The identities of ISA personnel are classified in Israel and therefore classified under the laws of the United States," and "the identity of the FBI UC is classified under United States law." Gov't Memo at 3. "[T]he true identities of these witnesses are classified

under Israeli and U.S. law and cannot be disclosed." *Id.* at 10. "The witnesses' testimony should not implicate classified information." *Id.* at 7 n.4. The same day, in a separate motion, the government wrote:

> While there are no classified documents that are discoverable in this case, the Government's case-in-chief will involve a slew of witnesses, from "Avi" to "Maya" to the FBI undercover agent to other FBI agents testifying, who have classified knowledge and may be asked about it in a situation where they are compelled to answer absent objection or court intervention. Doc. 97, at 6.

At the August 4, 2026, hearing, Agent Grimes testified that FBI requests containing "information that was classified by Israel would then be classified in our systems, as well." Doc. 114, at 27:6-9. The Israeli letter that authorized use of Avi's documents in this prosecution is headed "State of Israel" and "For release to: FBI, DOJ." The produced copy bears no visible classification marking.

**C. Avi's role in this investigation**

The government has told the Court that "the United States Government was completely unaware of Mr. Al-Muhtadi until the Government of Israel notified us." Doc. 114, at 25:13-15. Beginning in February 2025, the FBI placed agents inside the NBCTF. *Id.* at 20:3-7. Avi works for the NBCTF. *Id.* at 67:12-13; Doc. 46, at 2. Asked whether the FBI received "just the documents that Avi selected, he gave to the FBI agent embedded in the NBCTF," Agent Grimes answered, "That's my understanding." Doc. 114, at 46:12-14.[1] No FBI witness can authenticate the

[1] Agent Grimes earlier testified that Israel did not participate in the investigation beyond responding to requests, explaining, "They were not embedded in our space. We were not embedded in

battlefield documents ("I would think not") or the ISA recordings ("I would expect not, no"). *Id.* at 67:23-68:8.

The discovery fills in the rest. The FBI's May 2025 memo recording receipt of the NBCTF information reports that "Avi provided that the above information could be used to pursue legal process up to and including use in search warrant affidavits." NBCTF Records Receipt Memo. In July 2025, "Avi reviewed the information provided in tracking number [redacted], including documents Avi provided to the FBI regarding al-Muhtadi," and then sent the FBI the written approval: "I hereby authorize you to use the documents referenced in your request for the purposes of judicial proceedings to support criminal charges and satisfy your discovery obligations."

## III. ARGUMENT

The government frames the pseudonym question in two steps: whether the government has established a threat to the witness, and, if so, "whether the lack of the witness's identifying information deprive[s] the defendant of an opportunity for effective cross-examination." Gov't Memo at 10 (quoting *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1141 (10th Cir. 2014)). Mr. Al-Muhtadi accepts that framework. Parts III.A and III.B address the first step, and Parts III.C and III.F address the second.

their space." Doc. 114, at 13:9-15. He later agreed that the FBI had placed agents inside the NBCTF. *Id.* at 20:3-15.

### A. The government bears the burden on each measure, for each witness, and has not carried it on the public record

The government is the proponent of every measure, and its own authorities place the burden on it. To withhold a witness's identity, the government "bears the burden of demonstrating that the threat to the witness [is] actual and not a result of conjecture." *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (internal quotation marks omitted). Cursory "generalized statement[s]" about danger do not meet that burden. *Gutierrez de Lopez*, 761 F.3d at 1145 (quoting *Ramos-Cruz*, 667 F.3d at 501). The decision the government cites for collecting cases, Gov't Memo at 10, denied the government's pseudonym request because "the Government must first produce evidence to justify a departure from ordinary expectations of transparency." *United States v. Maldonado-Benitez*, No. 23-cr-00315 (SRN/DTS), 2025 WL 1166515, at *1, *4 (D. Minn. Apr. 22, 2025).

The public motion makes no witness-specific showing. The threat need not come from the defendant himself, Gov't Memo at 12 (citing *United States v. Celis*, 608 F.3d 818, 832 (D.C. Cir. 2010)), but whatever its source, it must be shown for these witnesses. For Avi and Maya, the motion points to a classified ISA declaration, Gov't Memo at 10, and to what "[t]he Government showed" in *United States v. El-Mezain*, 664 F.3d 467, 492 (5th Cir. 2011), about conditions before a trial that ended in 2008. Gov't Memo at 12-13. That showing concerned different witnesses in different roles almost twenty years ago. For the undercover employee, the motion

offers assertions that disclosure "would compromise any prior or ongoing investigations" and would endanger him and his family. Gov't Memo at 17. It identifies no threat to him. The defense cannot answer declarations it has not seen. In *Holy Land Foundation*, the government undertook to submit its ISA, IDF, and FBI affidavits to "cleared defense counsel." HLF Doc. 384, at 2.[2] At a minimum, the Court should require an unclassified summary of each declaration here. *See* Part III.G.

### B. The government must declassify the information or sponsor clearances before it may invoke classification against counsel

The Classified Information Procedures Act (CIPA) supplies no privilege of its own. "CIPA is procedural and neither creates nor limits a defendant's right of discovery." *El-Mezain*, 664 F.3d at 519-20. The government's interest in classified information "cannot override the defendant's right to a fair trial," and the privilege gives way "when the information is helpful to the defense or essential to a fair determination of the cause." *Id.* at 523 n.16 (internal quotation marks omitted). Classified information may lawfully go to persons "authorized" to receive it, and authorization includes permission granted by "order of any United States court." 50 U.S.C. § 3126(2).

The government's statements in Part II.B cannot all govern at once. If the names are classified and the defense needs them, then counsel need clearances, and the government's refusal to sponsor them stands in the way. If the testimony "should

[2] "HLF Doc." refers to the district court docket in *United States v. Holy Land Foundation for Relief & Development*, No. 3:04-CR-240-G (N.D. Tex.).

not implicate classified information," Gov't Memo at 7 n.4, the CIPA-based trial measures have nothing to protect. And if the witnesses "have classified knowledge and may be asked about it," Doc. 97, at 6, cross-examination will approach that knowledge, and the defense needs cleared counsel to litigate those questions under CIPA §§ 6 and 8.

The executive order the government invokes points the same way. Section 1.6(e) of Executive Order 13,526 calls for protecting foreign government information at least as strictly as the furnishing government requires. Gov't Memo at 11. Section 4.1(a) permits access by a person with a favorable eligibility determination, a signed nondisclosure agreement, and "a need-to-know the information." Exec. Order No. 13,526 § 4.1(a), 75 Fed. Reg. 707, 720 (Jan. 5, 2010). The *Holy Land Foundation* court presumed that disclosing the ISA witness's classified identity would harm national security, *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 9658814, at *3 (N.D. Tex. May 4, 2007), but it applied that presumption to public disclosure in a case where defense counsel were cleared and the government had undertaken to provide them its affidavits. HLF Doc. 384, at 2; HLF Doc. 388, at 2, 6 n.4.

*El-Mezain* differs for the same reason. The *Holy Land Foundation* defense had cleared counsel who reviewed classified disclosures. HLF Doc. 582, at 31. The Fifth Circuit reasoned that "[b]ecause the names of the witnesses were classified, unlike in *Celis*, it is unlikely that anyone who knew the witnesses' true names could or would

discuss them with defense counsel." 664 F.3d at 493. That post-trial prejudice analysis did not address whether the government may deny counsel clearances and then invoke classification to withhold names. Nor does Israel's stated concern reach disclosure to counsel. By the government's account, Israeli authorities must prevent "unauthorized disclosure of this classified information to the general public." Gov't Memo at 11. A court-ordered disclosure to counsel is neither unauthorized nor public. *Pennsylvania v. Ritchie* approved in camera review of a confidential file, 480 U.S. 39, 60-61 (1987), but that case concerned pretrial review of records. It said nothing about withholding the identity of a witness who testifies against the accused. *United States v. Abu Ali* holds that a defendant and counsel "lacking in the requisite security clearance, must be excluded from hearings that determine what classified information is material." 528 F.3d 210, 254 (4th Cir. 2008). That rule explains why clearances matter here, and it shows the cost of the government's refusal to sponsor them.

The problem the defense raised on May 27 has arrived. The government asks the Court to withhold the witnesses' names because they are classified, to record their testimony on a separate machine, to let them confer with a legal advisor when a question calls for a classified answer, and to resolve those questions ex parte and in camera. Gov't Memo at 7, 10. Each request depends on counsel's inability to receive classified information, and that inability exists because the government will not let counsel apply. In May, the defense said it would seek "an appropriate order

authorizing or directing the initiation of the clearance process." Doc. 49, at 5. The government cannot build a barrier and then cite it to justify measures that restrict the defense. The Court should put the government to a choice: declassify the witnesses' true names and the declarations bearing on them for disclosure to counsel under the protective order, or sponsor clearances for the defense team now. Until it does one or the other, no classification-dependent measure should issue. Proceeding otherwise would deny Mr. Al-Muhtadi the assistance of counsel and the confrontation the Sixth Amendment guarantees, and the fair trial the Fifth Amendment's Due Process Clause protects.

### C. Counsel must receive the true names of the witnesses who will identify the voice and authenticate the calls, and of the witness who selected the documents

The "very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives." *Smith v. Illinois*, 390 U.S. 129, 131 (1968); *see El-Mezain*, 664 F.3d at 491. *El-Mezain* recognized an exception because *Smith* "did not involve classified information or issues of witness safety," and it looked to "the particular circumstances of each case." *Id.* (internal quotation marks omitted). The circumstances here call for disclosure to counsel. Courts have given counsel the true names of protected witnesses while allowing pseudonyms in public. *Celis*, 608 F.3d at 829 (defense received true identities six days before each witness testified); *United States v. Mohamed*, 727 F.3d 832, 838 (8th Cir. 2013) (FBI linguist's true name disclosed to

defense counsel); *United States v. Sterling*, 724 F.3d 482, 516-17 (4th Cir. 2013) (true names of covert CIA officers disclosed to the defendant and counsel).

Disclosure to counsel is the usual way to reconcile witness safety with the right to cross-examine. "[I]n the appropriate case, disclosing a witness's true identity to defense counsel through a protective order that still allows the witness to testify under an alias may help ensure an adequate opportunity for effective cross-examination without jeopardizing witness safety." *Gutierrez de Lopez*, 761 F.3d at 1147 n.25; *see id.* at 1142. That is the relief Mr. Al-Muhtadi seeks, and the government's own authorities rest on it. In *Clark v. Ricketts*, the government disclosed the witness's true name and felony record before trial, so "[t]he defense had every opportunity to discover material which might be used to impeach Doe's credibility." 958 F.2d 851, 854-55 (9th Cir. 1991); *see* Gov't Memo at 9. In *Hernandez*, the government "offered to provide the Agent's real name privately to defense counsel under a stipulation or protective order." *United States v. Hernandez*, No. S1 12 Cr. 809 (PKC), 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013).

*Siegfriedt v. Fair*, which the government cites, Gov't Memo at 16, 20, drew the line this way: "Sometimes, as in *Smith* itself, a witness's use of a fictitious name will transform him into a wraith and thereby thwart the efficacy of cross-examination. Other times, the use of a fictitious name will be no more than a mere curiosity, possessing no constitutional significance." 982 F.2d 14, 18 (1st Cir. 1992). A pseudonym may be a curiosity when counsel know the witness's true name. When no

one on the defense side knows it, the witness is a wraith.

The Court should therefore order disclosure of the true names of Avi, Maya, and the undercover employee, and the declarations bearing on them, to defense counsel under the protective order (Doc. 34) or a counsel-only order. If the government maintains that the names are classified, it must either declassify them for that purpose or sponsor clearances for the defense team, as Part III.B explains.

**1. The undercover employee**

The undercover employee is a percipient witness, and the government's case depends on his familiarity with Mr. Al-Muhtadi. "The FBI UC will identify the voice on the intercepted audio recordings as the voice of the defendant." Gov't Memo at 7. His basis is that he "spent many hours conversing with him." *Id.* at 6. The FBI recorded six in-person meetings between them from July 24 to September 23, 2025. As the investigating agent who built that relationship, he is subject to cross on bias and motive as a matter of right. *Davis v. Alaska*, 415 U.S. 308, 316-18 (1974); *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

Neither basis for the *El-Mezain* exception applies to him. No foreign statute classifies his name. The Intelligence Identities Protection Act penalizes only disclosure "to any individual not authorized to receive classified information," 50 U.S.C. § 3121(a), and a court order supplies authorization. *Id.* § 3126(2). The government has already disclosed his cover name, Gov't Memo at 17, and Mr. Al-Muhtadi has seen his face. The Eighth Circuit found no confrontation problem with

a pseudonymous FBI linguist where counsel had his true name and "the ability to investigate" his background. *Mohamed*, 727 F.3d at 838.

The government's undercover authorities rested on showings absent here. In *Machado-Erazo*, the witness testified at a hearing to an imminent and grave risk to himself and his family. *United States v. Machado-Erazo*, 951 F. Supp. 2d 148, 152 (D.D.C. 2013). In *Naseer*, a declaration supported the finding that "[t]he officers continue to work in undercover capacities on sensitive investigations." *United States v. Naseer*, No. 10 CR 19 (S-4) (RJD), 2015 WL 13843166, at *3 (E.D.N.Y. Jan. 26, 2015). The government offers only its own assertion that its undercover employee resembles those officers. Gov't Memo at 18.

*Hernandez* reasoned that "nothing about the Agent's real name goes to the Agent's credibility or knowledge regarding the subject of the Agent's testimony." 2013 WL 3936185, at *3. Here, the defense has received nothing about the undercover employee's qualifications, background, or prior testimony, and nothing else that would let it investigate his earlier work for bias or impeachment. The government promises *Giglio* material, Gov't Memo at 18, but that promise leaves the government to decide what counts as impeachment. The true name is the defense's only route to his prior undercover work, his training, his testimony in other cases, and any history of discipline, all of which bear on a voice identification resting on his own familiarity with Mr. Al-Muhtadi.

The government acknowledges that *Abu Marzook* denied a disguise because

the defendant "had already seen the witness' face during his interrogation." Gov't Memo at 8 n.5; *see United States v. Abu Marzook*, 412 F. Supp. 2d 913, 927-28 (N.D. Ill. 2006). Mr. Al-Muhtadi has likewise seen the undercover employee's face. The *Abu Marzook* ruling "pertains to the suppression hearing only." *Abu Marzook*, 412 F. Supp. 2d at 928 n.13. For trial, the same court permitted light disguise because the jury and family members would be present, but held that the disguise "may not obstruct the jury's ability to assess the witnesses' demeanor and mannerisms." *United States v. Salah*, No. 03 CR 978, Order at 5-6 (N.D. Ill. Aug. 29, 2006) (Doc. 652).

**2. Maya**

The government says Maya will authenticate the recordings it describes as its most important evidence. Doc. 99, at 1-2. The government has told the Court that her cross will be "constrained by CIPA Section 5 due to the classified nature of the State of Israel's data interception program." *Id.* at 5. The government compares her to Major Lior, whose pseudonym *El-Mezain* upheld. Gov't Memo at 16. Lior authenticated documents seized by the Israel Defense Forces, and the defense established that he "did not personally seize the evidence at issue." 664 F.3d at 490, 492. Maya works inside the agency that captured the calls. Her nationality and employer, the only bias topics the government offers, Gov't Memo at 16, tell the jury little about a supervisor whose own desk produced the recordings.

### 3. Avi

Avi is a participant in this investigation. As Part II.C shows, he chose the documents the FBI received and reviewed them before Israel approved their use in this prosecution, while FBI agents worked inside his agency. His work at the NBCTF is carried out "with the goal of identifying opportunities to enforce sanctions and build criminal cases." Doc. 46, at 2. That role matters in two ways.

First, a witness's part in the investigation and his motives are core subjects of cross-examination. *Alford v. United States*, 282 U.S. 687, 691-94 (1931); *Davis*, 415 U.S. at 316-18; *Olden v. Kentucky*, 488 U.S. 227, 231-32 (1988) (per curiam). *El-Mezain* upheld pseudonyms for an expert and a document-authentication witness who had no role in gathering the evidence. 664 F.3d at 490, 492. Avi selected and transmitted the evidence against Mr. Al-Muhtadi.

Second, the Court has ruled that Israeli agencies were not part of the prosecution team and that the government's discovery obligations do not "include anything in the possession of Israeli agencies." Doc. 114, at 87:13-20. The Court added: "I just reaffirm the Government has Rule 16 discovery obligations that they have to follow. They have Brady and Giglio obligations independent of that that they have to follow." *Id.* at 87:22-24. Those obligations, and the government's promise to honor them, Gov't Memo at 15, reach what the government possesses. Under the Court's ruling, they do not reach impeachment material held only in Israel, by the agencies where Avi works and has worked. *See Kyles v. Whitley*, 514 U.S. 419, 437-

38 (1995); *United States v. Reyeros*, 537 F.3d 270, 283 (3d Cir. 2008). Independent investigation by true name is the one tool that could reach that material, and the government's proposal removes it.

The government has not shown that the classification rationale that protected Avi in 2007 applies to his current position. In *Holy Land Foundation*, he was an ISA legal advisor, qualified only on "the zakat committees and the influence or control of HAMAS over those zakat committees." HLF *Daubert* Tr. (Aug. 13, 2007) 7:7-10, 57:18-21. He is now a director at the NBCTF, "serving as the representative for the ISA," and will testify about a different organization and events that postdate that trial. Doc. 46, at 2. The government has said that its "case does not rise and fall on these two documents." Doc. 114, at 84:22. But Avi's testimony about the relationship between the DFLP and Hamas "has been informed in part by the documents produced to the defense in the original Arabic and with English translation," files he sent the FBI on disc. Doc. 46, at 4; *see* NBCTF Additional Information EC.

Before the 2008 retrial, the *Holy Land Foundation* court denied a motion to compel Avi's true name. *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-0240-P, 2008 WL 11355369, at *3-4 (N.D. Tex. Aug. 13, 2008). It found no showing that the names would help the defense: "The most Defendants can say is they hope the information will lead to some evidence that will be useful to their case." *Id.* at *3. The defense here can say more. Outside sources have approached the defense team claiming to have information about Avi. The defense has so far declined

to accept, consider, or vet that information. With Avi's true name, the defense could investigate him, test what those sources offer, and use what proves reliable to challenge his assertions and qualifications and to impeach his opinions. The court's other premises also fail here. It relied on earlier examinations, which had "enabled Defendants to cross-examine Avi at a *Daubert* hearing and both Avi and Major Lior at the first trial." *Id.* at *4. Mr. Al-Muhtadi has never examined Avi. The court treated Avi as an expert. *Id.* at *1. He is now a fact participant in the investigation. *See* Part II.C. The defense there had cleared counsel, and no ruling placed Avi's agency outside the government's *Brady* obligations. And the court's balancing turned on the harm from "unauthorized disclosure," *id.* at *3, which a court-ordered disclosure to counsel is not. *See* Part III.B. At the retrial that followed, when defense counsel put to him that there was no way to do "any research on you or your writings or your work or who you are or your credentials" because "we don't know your real name," Avi agreed: "Only what you heard here, yes. You cannot research me. That is correct."

#### 4. The IDF witness

The Court should deny every measure for the IDF witness without prejudice. The government names no witness, describes no testimony, and makes no public showing. Gov't Memo at 16-17. According to the FBI's own witness, the battlefield documents came to the FBI from the NBCTF through Avi. Doc. 114, at 46:12-14. In *Holy Land Foundation*, the court denied the same measures for an IDF witness: "Because no evidence has been presented showing that the requested security

measures are necessary to keep classified information from being disseminated to the public, the court finds that those measures should not be implemented regarding the IDF witness." *Holy Land Found.*, 2007 WL 9658814, at *3. The same ruling should apply to any State Department witness the government adds.

### D. Any closure order must permit Mr. Al-Muhtadi and his full defense team to remain in the courtroom

Mr. Al-Muhtadi takes no position on public access, except that the defendant and every member of the defense team, including attorneys, staff, and experts, must be allowed to remain in the courtroom and directly observe all proceedings. Read literally, measure (2) would exclude "all non-parties except for the defendants' immediate family members." Gov't Memo at 7. Courts that closed their courtrooms for ISA witnesses kept the defense inside. *Salah*, Order at 4; *Holy Land Found.*, 2007 WL 9658814, at *3; *Abu Marzook*, 412 F. Supp. 2d at 928. This Court has already defined the defense team to include "co-counsel, paralegals, investigators, translators, litigation support personnel, the defendant, and secretarial staff," along with "experts retained to assist in the preparation of the defense." Doc. 34, at 2. The defendant "as a matter of right can be and usually is present for all testimony," and "ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Geders v. United States*, 425 U.S. 80, 88 (1976); *see* FED. R. CRIM. P. 43(a)(2); FED. R. EVID. 615(a)(1), (3). Any closure order should expressly permit the defendant, counsel, staff, and retained experts to remain and observe.

### E. The trial must be recorded in one official transcript

The government calls its "protections against the spillage of classified information" "non-controversial." Gov't Memo at 15 n.10. Mr. Al-Muhtadi opposes three of them: the separate transcript, the legal advisor, and ex parte hearings during testimony.

The court reporter must record each session of the court verbatim, and "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record." 28 U.S.C. § 753(b). The Fifth Circuit has said of § 753(b): "This language is clear, and its requirements are mandatory." *United States v. Selva*, 559 F.2d 1303, 1305 (5th Cir. 1977). The government concedes the testimony "should not implicate classified information." Gov't Memo at 7 n.4. Yet measure (4) asks for "a stand-alone system (i.e., a separate stenotype machine) to transcribe the witnesses' testimony." *Id.* at 7. If a classified answer slips out, the remedy is to seal or redact that passage of the single official record afterward.

### F. Cross-examination must reach Avi's selection of the evidence, and classified questions should be resolved under CIPA § 8(c) with defense counsel present

The government asks to limit cross to "the scope of direct or matters sounding in impeachment." Gov't Memo at 7. Federal Rule of Evidence 611(b) already sets that limit, so the dispute lies in how the government defines those subjects. When the government sought a narrower rule for Avi in *Holy Land Foundation*, the court

refused: "The government has offered no reason for a greater restriction on the scope of cross-examination or an explanation of how such a restriction would advance a substantial government interest." 2007 WL 9658814, at *3. The government offers no more here. Its list of permissible topics for the ISA witnesses covers "their background, training and experience with the ISA, their education, and their potential bias in favor of Israelis." Gov't Memo at 15. It omits Avi's selection, transmission, and approval of the evidence. The government has told the Court that its "only burden at trial is to show that the document purports to be what it is and anything behind that goes to weight, not admissibility," Doc. 114, at 84:6-8, and that jurors who "don't know where those came from" "can decide to discount them." *Id.* at 84:9-11. A jury can weigh how the documents were chosen only if it hears from the person who chose them. Any order should state that cross of Avi extends to his selection, transmission, and approval of the evidence.

The legal advisor should not sit in the courtroom. The government proposes that "if a question calls for a classified response, the witnesses can confer with their own legal advisor, who would be in the courtroom for the testimony," as a safeguard against inadvertent disclosure. Gov't Memo at 7 & n.4. *Holy Land Foundation* allowed consultation only because "[t]he defendants have no objection." 2007 WL 9658814, at *4. Mr. Al-Muhtadi objects. In practice, consultation there reached questions far from classified operations. Asked his rank, Avi said, "I don't know if I'm entitled to say that," and answered only after consulting his lawyer. HLF *Daubert*

Tr. (Aug. 13, 2007) 16:18-17:2. Consultation during testimony "grants the witness an opportunity to regroup and regain a poise and sense of strategy that the unaided witness would not possess." *Perry v. Leeke*, 488 U.S. 272, 282 (1989). *Perry* explained that the reason for barring consultation during testimony "applies to all witnesses—not just defendants." *Id.* at 281.

Ex parte hearings in the middle of testimony find no support in CIPA. At trial, § 6 provides for an in camera hearing on the use, relevance, or admissibility of classified information, with the defense present. 18 U.S.C. app. 3 § 6(a). Section 8(c) addresses the problem the government raises. When a question may require a witness to disclose classified information not previously found admissible, the government may object, and the Court takes "such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information," which may include a proffer from each side. *Id.* § 8(c). Nothing in § 8(c) excludes defense counsel. Ex parte proceedings are "the disfavored exception." *United States v. Thompson*, 827 F.2d 1254, 1257 (9th Cir. 1987). The *Holy Land Foundation* court adopted question-by-question ex parte determinations at trial because "it appears that the defendants do not object." 2007 WL 9658814, at *4. Mr. Al-Muhtadi objects.

If the government will not permit a witness to answer a question the Court finds proper, the remedy is to strike the direct testimony the defense could not test. CIPA authorizes "striking or precluding all or part of the testimony of a witness." 18

U.S.C. app. 3 § 6(e)(2)(C). The Fifth Circuit has applied the same principle, by analogy, when a witness's refusal to answer prevents the defense from testing the direct. *Fountain v. United States*, 384 F.2d 624, 627 n.2, 628 (5th Cir. 1967).

### G. The Court should hold a live evidentiary hearing and make findings for each witness

Before ruling, the Court should require a witness-by-witness showing at a live evidentiary hearing, an unclassified summary of each threat declaration that the defense can answer, and findings for each witness and each measure. The hearing should also address Avi's qualifications. The *Holy Land Foundation* court ordered a *Daubert* hearing before he testified there, reasoning that "[w]ith the additional protective measures allowed by the court comes a heightened need to assure that procedural safeguards are satisfied with regard to this witness." *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 2059722, at *8 (N.D. Tex. July 16, 2007).

### H. The defense does not oppose narrower measures that protect the witnesses without impairing confrontation

Mr. Al-Muhtadi does not object to public pseudonyms for Avi, Maya, and the undercover employee once counsel have their true names and the declarations bearing on them. He does not object to first names only for the FBI linguists, whose true names the government will give counsel. Gov't Memo at 19. He does not object to a non-public entrance and exit on conditions drawn in part from *Salah*: the entrance may never be used in the jury's presence, and the defense may ask that its

own witnesses use it. *See Salah*, Order at 6. He also asks that no one suggest to the jury that any witness is in danger.

## IV. RESERVATION OF OBJECTIONS

Mr. Al-Muhtadi opposes the motion under the Fifth and Sixth Amendments, 28 U.S.C. § 753(b), CIPA §§ 4, 6, and 8, and Federal Rules of Evidence 104(a), 611(b), and 702. He will renew at trial his as-applied confrontation objections, his motion to strike untested testimony, his request for no-inference instructions, his Rule 702 challenge to Avi, and his authentication and confrontation objections to the battlefield documents and recordings. *See Smith v. Arizona*, 602 U.S. 779 (2024). He specifically objects, under the Fifth and Sixth Amendments, to any measure premised on classification while the government bars the defense team from applying for security clearances, and he asks the Court to rule expressly on his request that the government declassify the information or sponsor clearances. He will object contemporaneously to any measure as implemented. *See Estelle v. Williams*, 425 U.S. 501, 512-13 (1976).

## V. CONCLUSION

The Court should deny the motion. In the alternative, it should order disclosure of the true names of Avi, Maya, and the undercover employee, and the declarations bearing on them, to defense counsel before trial. If the government will not declassify that information for disclosure to counsel, the Court should require it to sponsor clearances for the defense team and defer every classification-dependent measure

until it does. The Court should also grant the further relief described in Parts III.D through III.H, and it should hold a live evidentiary hearing and make findings for each witness and each measure before ruling.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 29, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***