UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO AUTHENTICATE SIX INTERCEPTED PHONE CALLS AND MOTION OPPOSING ADMISSION UNDER 18 U.S.C. § 3505(b)**

---

[Page intentionally left blank]

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. The motion and the Maya certificate ........ 2

B. The system that held the calls ........ 3

C. How the six calls were selected ........ 4

D. What the record does not account for ........ 4

III. ARGUMENT IN OPPOSITION ........ 6

A. The calls are not self-authenticating ........ 7

1. Rule 902(11) applies only to domestic records ........ 7

2. The Maya certificate does not satisfy § 3505 ........ 8

3. Any ruling on the certificate should reach only the hearsay question ........ 12

B. The certificate does not establish the accuracy of the recordings under *Biggins* ........ 13

C. CIPA cannot supply the foundation, and the Court should hear Maya and any other foundation witness before ruling ........ 15

D. Rule 403 bars the curated six-call set ........ 19

IV. RESERVATION OF OBJECTIONS ........ 22

V. CONCLUSION ........ 23

CERTIFICATE OF SERVICE ........ 24

## TABLE OF AUTHORITIES

### CASES

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) ........ 20

*Bourjaily v. United States*, 483 U.S. 171 (1987) ........ 22

*Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999) ........ 20

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ........ 9

*Old Chief v. United States*, 519 U.S. 172 (1997) ........ 21

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) ........ 16

*United States v. Age*, 136 F.4th 193 (5th Cir. 2025) ........ 7, 12-13

*United States v. Al-Farekh*, 956 F.3d 99 (2d Cir. 2020) ........ 16

*United States v. Al-Imam*, 382 F. Supp. 3d 51 (D.D.C. 2019) ........ 7

*United States v. Bertoli*, 854 F. Supp. 975 (D.N.J. 1994) ........ 9

*United States v. Biggins*, 551 F.2d 64 (5th Cir. 1977) ........ 13, 15, 19

*United States v. Branch*, 91 F.3d 699 (5th Cir. 1996) ........ 21

*United States v. Bright*, 630 F.2d 804 (5th Cir. 1980) ........ 13

*United States v. Buchanan*, 70 F.3d 818 (5th Cir. 1995) ........ 14, 16

*United States v. Bustamante*, 687 F.3d 1190 (9th Cir. 2012) ........ 18

*United States v. Carpenter*, 140 F.4th 733 (5th Cir. 2025) ........ 20

*United States v. Cragg*, No. 1:17-cr-00012 JLT SKO, 2025 WL 2456291 (E.D. Cal. Aug. 26, 2025) ........ 21

*United States v. Ehmer*, 87 F.4th 1073 (9th Cir. 2023) ........ 20

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) ........ 17

*United States v. Fullwood*, 342 F.3d 409 (5th Cir. 2003) ........ 6

*United States v. Garcia Abrego*, 141 F.3d 142 (5th Cir. 1998) ........ 9, 12, 21

*United States v. Green*, 324 F.3d 375 (5th Cir. 2003) .......... 14

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) (en banc) (per curiam) .......... 15

*United States v. Herman*, 997 F.3d 251 (5th Cir. 2021) .......... 20

*United States v. Hernandez*, No. 2:19-CR-00117-SB, 2026 WL 1129912 (C.D. Cal. Apr. 23, 2026) .......... 8, 15

*United States v. Hing Shair Chan*, 680 F. Supp. 521 (E.D.N.Y. 1988) .......... 11

*United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 9658814 (N.D. Tex. May 4, 2007) .......... 17

*United States v. Hunt*, 534 F. Supp. 3d 233 (E.D.N.Y. 2021) .......... 12

*United States v. Jackson*, 636 F.3d 687 (5th Cir. 2011) .......... 6, 18

*United States v. Johnson*, 943 F.3d 214 (5th Cir. 2019) .......... 8, 15

*United States v. Khatallah*, 278 F. Supp. 3d 1 (D.D.C. 2017) .......... 7

*United States v. Maga*, 475 F. App'x 538 (6th Cir. 2012) (unpublished) .......... 18

*United States v. Marzook*, 435 F. Supp. 2d 708 (N.D. Ill. 2006) .......... 16

*United States v. Mosquera-Castro*, No. 17-13-JWD-RLB-4, 2020 WL 5868464 (M.D. La. Oct. 1, 2020) .......... 15

*United States v. Polk*, 56 F.3d 613 (5th Cir. 1995) .......... 13

*United States v. Rochan*, 563 F.2d 1246 (5th Cir. 1977) .......... 22

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) .......... 15

*United States v. Stone*, 960 F.2d 426 (5th Cir. 1992) .......... 14-15

*United States v. Strickland*, 935 F.2d 822 (7th Cir. 1991) .......... 9, 11

*United States v. Thompson*, 130 F.3d 676 (5th Cir. 1997) .......... 15

*United States v. Wardlaw*, 977 F. Supp. 1481 (N.D. Ga. 1997) .......... 20

*United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989) .......... 16

STATUTES

18 U.S.C. app. 3 § 4.......... 16

18 U.S.C. app. 3 § 5.......... 17, 22

18 U.S.C. app. 3 § 6.......... 17, 22

18 U.S.C. app. 3 § 8.......... 17, 22

18 U.S.C. § 3505.......... *passim*

RULES

FED. R. CRIM. P. 16.......... 19

FED. R. EVID. 104(a) .......... 6, 16

FED. R. EVID. 104(c)(3) .......... 16-17, 23

FED. R. EVID. 104(e) .......... 12, 23

FED. R. EVID. 106 .......... 20, 22

FED. R. EVID. 403 .......... 2, 19-23

FED. R. EVID. 611(b) .......... 17

FED. R. EVID. 801(d)(2)(E).......... 22

FED. R. EVID. 803(6) .......... 2, 6-7, 11

FED. R. EVID. 803(6)(D) .......... 11

FED. R. EVID. 803(6)(E) .......... 9

FED. R. EVID. 901(a) .......... 7, 19-20

FED. R. EVID. 901(b)(5).......... 22

FED. R. EVID. 902(11) .......... 2, 7, 11-12

FED. R. EVID. 902(12) .......... 7, 12

FED. R. EVID. 902 advisory committee's note to 2000 amendment.......... 7

FED. R. EVID. 1002 .......... 22

FED. R. EVID. 1003 .......... 22

FED. R. EVID. 1004 .......... 22

FED. R. EVID. 1006 .......... 22

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**DEFENDANT'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO AUTHENTICATE SIX INTERCEPTED PHONE CALLS AND MOTION OPPOSING ADMISSION UNDER 18 U.S.C. § 3505(b)**

---

NOW INTO COURT, through undersigned counsel, comes the defendant, Mahmoud Al-Muhtadi, who opposes the government's motion in limine to authenticate six intercepted phone calls and, under 18 U.S.C. § 3505(b), moves the Court to deny admission of those recordings.

## I. INTRODUCTION

The government asks the Court to rule, before trial and on paper, that six audio files are accurate recordings of calls made on October 7, 2023, from a telephone number it attributes to Mr. Al-Muhtadi. Doc. 99, at 1-2, 5. Its only evidence is a three-page certificate signed by "Maya," a pseudonymous manager at the Israeli Security Agency (ISA). Doc. 99-1. The certificate does not mention that listeners in Maya's branch chose these six calls from a day on which ISA held fifty records, as she told the FBI. Maya 302, Def. Ex. A, at 1 (under seal). It does not say who made the files

the defense received, what happened to them at the FBI, why one of them stops partway through, or why ISA summarized twelve communications from that day but produced audio of six. Nor does it describe the system that held the calls, which, as Mr. Al-Muhtadi's pending motion to suppress explains, stored the calls of an entire civilian population collected without warrant or suspicion. Doc. 109-1, at 8-10, 25-27. The motion would fill those gaps with ex parte CIPA material and a cross-examination of Maya that the government says will be "constrained." Doc. 99, at 5.

The government bears the burden of laying a foundation for its evidence, and this certificate does not carry it. Mr. Al-Muhtadi asks the Court to deny the motion, to grant his motion opposing admission under § 3505(b), and to exclude the recordings under Rule 403. He also asks the Court to hold an evidentiary hearing at the motions hearing set for November 2-3, 2026, at which the government must present Maya and any other foundation witness on whom it relies, and to order production beforehand of the forensic materials in the FBI's possession.

## II. BACKGROUND

### A. The motion and the Maya certificate

The motion's first sentence asks the Court "to admit the six attached phone recordings." Doc. 99, at 1. It relies on "18 U.S.C. § 3505 as well as Federal Rules of Evidence 902(11) and 803(6)." *Id.* It leaves voice identification and the hearsay status of the other speakers' statements for trial. *Id.* at 1 n.1.

The certificate's author states that her "identity is classified under Israeli law,

and 'Maya' is a pseudonym." Doc. 99-1, ¶ 1. She now oversees "the team that intercepted and maintained six phone calls made on October 7, 2023, by the phone number [Redacted]-4855." *Id.* ¶ 5. She says she is "familiar with these six recordings," that they are "true and accurate copies," and that "[t]he calls have not been altered in any way by the ISA." *Id.* ¶ 7. She reviewed the certificate in a Hebrew translation prepared by ISA personnel. *Id.* ¶ 1. An attorney identified only by the signature "Eyal" attests that on September 10, 2026, "the person known as 'Maya' appeared before me with official identification" and certified the contents "to be correct to the best of her knowledge and belief." *Id.* at 2-3. Her oath runs "on penalty of criminal punishment for false statements or attestations under Israeli law." *Id.* at 1. The motion describes the certificate as made "under penalty of perjury in Israel and the United States." Doc. 99, at 4.

**B. The system that held the calls**

The certificate describes ISA's work only in general terms. Doc. 99-1, ¶¶ 2-3. Mr. Al-Muhtadi's pending motion to suppress describes the system behind those terms. Doc. 109-1, at 9-10, 25-27. The government has told the defense that the audio of these calls sat in the cloud storage Microsoft disabled in September 2025. Aug. 3, 2026 Discovery Letter, Def. Ex. B, at 1 (under seal); Doc. 109-1, at 9. The reporting that the government's letter invokes describes that storage as holding audio of millions of calls by Palestinians in the occupied territories, recorded without suspicion or judicial authorization and kept indefinitely. Doc. 109-1, at 9-10, 25-26.

Microsoft cut off access after concluding that it would not "provide technology to facilitate mass surveillance of civilians." *Id.* at 8. Doc. 109 argues that recording an entire civilian population's calls in this way shocks the conscience of an American court and requires suppression. *Id.* at 23-27. The government has not disclosed which Israeli component operated that storage. *Id.* at 10.

### C. How the six calls were selected

The government's discovery describes a selection process the certificate omits, and Maya is its source. The FBI interviewed her on May 13, 2026. Def. Ex. A, at 1. She told the agents that ISA supposedly held a combined fifty records across what were believed to be Mr. Al-Muhtadi's two telephone lines for October 7, 2023, many of them missed calls. *Id.*; *see* Doc. 109-1, at 10-11. In June 2025, the FBI asked ISA for the calls it had saved. Listeners in Maya's branch filtered the calls and passed six to her, and her job was to confirm that the audio matched the Hebrew translations before approving them. Def. Ex. A, at 1; *see* Doc. 109-1, at 12. Her certificate mentions none of this. The United States obtained the six recordings on or about August 12, 2025. Doc. 1-1, at 27 ¶ 45. They are the six calls the complaint affidavit quotes. Doc. 109-1, at 12.

### D. What the record does not account for

The government's discovery letter of August 3, 2026, transmits what it calls "a verbatim summary from the Israeli government" of Mr. Al-Muhtadi's communications on October 7, 2023, across both lines. Def. Ex. B, at 1. The phrase

contradicts itself. A verbatim account reproduces the words spoken, and a summary replaces them with someone else's description of what was said. The document is a summary. If "verbatim" means only that the letter copies ISA's summary word for word, the summary is still ISA's account of what was said. ISA knows how to make a verbatim record: Maya told the FBI that its listeners translated his calls "word-for-word into Hebrew" and saved them. Def. Ex. A, at 1. The letter's first entry reports: "According to intercepted calls he worked on the beach during the night before the attack, offering beach chairs and tables for rent." Def. Ex. B, at 1. The letter does not say who wrote the summary, from what sources, or when. It describes twelve communications. *Id.* at 1-2; Doc. 109-1, at 12-13. Audio exists for six. The letter states that "[t]he Israeli government does not have the underlying audio calls from the telephone line ending in 8708" because Microsoft disabled access to the cloud storage where they were held in September 2025. Def. Ex. B, at 2; *see* Doc. 114, at 58:19-22. That was three months after the FBI's request. The letter does not say which summarized communications took place on the 8708 line. If any took place on the other line, nothing in the record explains why its audio is missing. The letter then asserts that the produced audio and the summaries "are the entirety of what exists for Al-Muhtadi's communications for October 7, 2023." Def. Ex. B, at 2-3. No declaration or witness supports that assertion.

The files themselves raise further questions. The government's English transcript of the 8:55 call notes that at 00:32 the recording "gets interrupted, and no

voices could be heard." The produced files are .mp4s, and the government has not said whether they are re-encodings of original masters or identified any transcoding step. *See* Doc. 70, at 5 (Request 7); Doc. 74-2, at 5. Nothing documents the transfer of the recordings from ISA to the FBI or their handling after August 12, 2025. The defense asked in June for the chain of custody, the native files and hash values, the intercept logs, and the facts of the selection. Doc. 70, at 5 (Requests 6-9); Doc. 74-2, at 5. The government answered that it would address those subjects through CIPA. Doc. 82, at 22-23; *see* Doc. 74-4, at 2. None has been produced. Mr. Al-Muhtadi intends to challenge the integrity of the audio. His audio expert needs the native files and hash values to do that work, and the defense is waiting to learn whether any will be produced through the CIPA process.

## III. ARGUMENT IN OPPOSITION

The motion presents two preliminary questions with different standards. Whether the certificate makes the recordings admissible under § 3505 and Rule 803(6) is a question for the Court under Rule 104(a), on which "[t]he proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003); *see United States v. Jackson*, 636 F.3d 687, 695 (5th Cir. 2011). The Court weighs the evidence on that question, including whether "the method or circumstances of preparation indicate lack of trustworthiness." 18 U.S.C. § 3505(a)(1). Authentication requires the government to "produce evidence sufficient

to support a finding that the item is what the proponent claims it is," FED. R. EVID. 901(a), which here means evidence that the six files accurately record the calls. The government offers three routes to those showings: self-authentication, the Fifth Circuit's foundation cases for recordings, and ex parte CIPA review. None of them works.

### A. The calls are not self-authenticating

#### 1. Rule 902(11) applies only to domestic records

Rule 902(11) reaches "[t]he original or a copy of a domestic record." Its counterpart for foreign records, Rule 902(12), applies only "[i]n a civil case." The advisory committee explained the division when it adopted both provisions: "18 U.S.C. § 3505 currently provides a means for certifying foreign records of regularly conducted activity in criminal cases, and this amendment is intended to establish a similar procedure for domestic records, and for foreign records offered in civil cases." FED. R. EVID. 902 advisory committee's note to 2000 amendment. Courts have applied the rule as written in terrorism prosecutions involving foreign records. *United States v. Khatallah*, 278 F. Supp. 3d 1, 5 (D.D.C. 2017); *accord United States v. Al-Imam*, 382 F. Supp. 3d 51, 56 (D.D.C. 2019).

*United States v. Age*, 136 F.4th 193 (5th Cir. 2025), on which the motion relies, does not hold otherwise. The records there came from Sprint, T-Mobile, and Charter, the custodians' affidavits tracked Rule 803(6) "nearly word for word," and the defendants conceded that the prosecution "followed proper procedures." *Id.* at 226.

The motion's comparison to jail calls fails for a related reason. In *United States v. Johnson*, 943 F.3d 214, 220-21 (5th Cir. 2019), a live witness who administered the jail's automated system showed "his knowledge about the equipment and recording process." Maya's certificate says nothing about how ISA's system captured or stored these calls.

### 2. The Maya certificate does not satisfy § 3505

Section 3505 excuses a foreign record from the hearsay rule "if a foreign certification attests" four facts, "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." 18 U.S.C. § 3505(a)(1). A qualifying certification "shall authenticate such record or duplicate." *Id.* § 3505(a)(2). The certificate fails for two reasons.

First, the exhibit set is a 2025 selection, and § 3505 reaches records a business keeps. The statute requires that the record "was kept in the course of a regularly conducted business activity" and that "the business activity made such a record as a regular practice." *Id.* § 3505(a)(1)(B), (C). ISA kept intercepted calls and translations. Doc. 99-1, ¶¶ 2-3. The government offers six files that unnamed listeners chose, at the FBI's request, from a day on which ISA held fifty records, and it has not explained the form in which they were produced. Def. Ex. A, at 1. A district court facing a foreign wiretap earlier this year noted that the government "has not identified authority addressing whether wiretap recordings qualify as foreign records." *United States v. Hernandez*, No. 2:19-CR-00117-SB, 2026 WL 1129912, at *8 (C.D. Cal. Apr. 23, 2026).

*Cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322-23 (2009) (a clerk may "authenticate or provide a copy of an otherwise admissible record," but may not "create a record for the sole purpose of providing evidence against a defendant"). The Fifth Circuit has upheld § 3505 certificates prepared for a different prosecution, *United States v. Garcia Abrego*, 141 F.3d 142, 177 n.25 (5th Cir. 1998), but the thing certified here, a set of six calls, did not exist as an ISA record until the FBI asked for it. The motion's point that no one could have foreseen in 2023 that Mr. Al-Muhtadi would come to the United States, Doc. 99, at 4, speaks to the capture of the calls. The selection and the preparation of the files came later, for this case.

Second, the circumstances of preparation indicate a lack of trustworthiness. Rule 803(6)(E) places on the opponent the burden to show "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," and at least one court has read § 3505 the same way. *United States v. Bertoli*, 854 F. Supp. 975, 1031 (D.N.J. 1994). Even on that allocation, the question remains whether "the documents bear the indicia of reliability." *United States v. Strickland*, 935 F.2d 822, 831 (7th Cir. 1991). Mr. Al-Muhtadi meets any such burden with the government's own documents. Unnamed listeners chose six of fifty records. No one has said whether or how the files were converted. The 8:55 recording is interrupted. The summary of the day is described as verbatim, though it is not. ISA summarized six communications for which it produced no audio, and its explanation reaches only one line. The certificate describes Maya's team as having "intercepted

and maintained six phone calls," Doc. 99-1, ¶ 5, though her branch held fifty records for that day and she told the FBI that her listeners chose the six. Def. Ex. A, at 1. And the certificate's author is anonymous, read it in an unproduced Hebrew translation, and vouched for it only "to the best of her knowledge and belief." Doc. 99-1, ¶ 1; *id.* at 3.

The regular practice the certificate relies on points the same way. Section 3505 asks the Court to trust these files because ISA made and kept them as a regular practice. That practice is the program described in Part II.B, whose products Mr. Al-Muhtadi has asked the Court to suppress because the program shocks the conscience by American standards. Doc. 109-1, at 23-27. Whatever the Court decides on that motion, the certificate does not answer the question of trustworthiness. It says nothing about how the system decides whose calls to capture, how it stores and indexes them, who can alter them, or what record it keeps of access. Maya told the FBI that the system "was accurate" and that, in her experience, the dates and times of the calls were correct. Def. Ex. A, at 2. Neither statement explains how the system works. The government asks the Court to presume the regularity of a system it has not described.

The certificate's anonymity matters for two further reasons. A foreign certification must be made "by the custodian of a foreign record of regularly conducted activity or another qualified person." 18 U.S.C. § 3505(c)(2). The certificate identifies its author by a single name that it calls a pseudonym. Doc. 99-1, ¶ 1. The attestation

that "the person known as 'Maya' appeared before me with official identification," *id.* at 2, comes from an attorney identified only by a single-name signature, does not say what the identification showed, and tells the Court nothing about Maya's position, her custody of these records, or her qualifications. With her identity withheld, the Court has nothing beyond her own description to show that she is a custodian or other qualified person. And "[t]he trustworthiness of the foreign certification depends essentially on the deterrent force of the criminal law of the foreign country." *United States v. Hing Shair Chan*, 680 F. Supp. 521, 523 (E.D.N.Y. 1988). The oath the motion describes, one taken under the penalties of both countries, is not the oath Maya took. And the government has not explained how Israeli law would reach a false certification by a declarant whose identity it classifies and who is known only by a single pseudonymous name.

The certificate also departs from the statute's terms. It never states that the files are "a duplicate of the original." 18 U.S.C. § 3505(a)(1)(D). *Strickland* declined to require a "magic form," 935 F.2d at 831, and Mr. Al-Muhtadi does not ask for one. The omission matters because whether these files duplicate what ISA captured is the question the record leaves open. Rule 803(6) adds nothing. It accepts a certification only if it complies "with Rule 902(11) or (12) or with a statute permitting certification," FED. R. EVID. 803(6)(D), so it rises or falls with § 3505, and its trustworthiness clause fails for the same reasons.[1]

[1] The motion quotes § 3505(b) as permitting a party to offer a foreign record "[with] written

### 3. Any ruling on the certificate should reach only the hearsay question

A certificate can establish that a record existed and was regularly kept. It cannot establish that a file accurately records the defendant's call. "[A] business-records certification shows nothing more than that a record existed or was created at a particular time and that it was regularly kept in the course of a regularly conducted business activity." *United States v. Hunt*, 534 F. Supp. 3d 233, 255 (E.D.N.Y. 2021). The motion agrees that the government must "separately prove the intercepted calls' relevance" through voice identification at trial. Doc. 99, at 1 n.1. If the Court finds the certificate sufficient under § 3505, its ruling should therefore reach only the hearsay question, the accuracy of the recordings should be shown through a live witness under the standards discussed in Part III.B, and Rule 104(e) should preserve Mr. Al-Muhtadi's right to contest their weight and credibility before the jury.

Section 3505(a)(2) and *Age* do not require a broader ruling. The statute provides that a qualifying certification "shall authenticate such record or duplicate," 18 U.S.C. § 3505(a)(2), and *Age* held that "valid Rule 902(11) certificates are sufficient for admissibility." 136 F.4th at 226. Both presuppose a certificate that meets the statute or rule, and Part III.A.2 explains why this one does not. Even a valid

---

notice." Doc. 99, at 2. The statute requires that notice be given "[a]t the arraignment or as soon after the arraignment as practicable." 18 U.S.C. § 3505(b). The government's notice of intent to authenticate records omitted the calls, Doc. 87, its letter of April 10, 2026, announced only a general intent to offer foreign records under § 3505 and Rule 902(12), Apr. 10, 2026 Discovery Letter, at 1, and the certificate is dated September 10, 2026 (written "10/9/2026," day first). Doc. 99-1, at 2. *Garcia Abrego* held that notice is not a prerequisite to admissibility, 141 F.3d at 177, but left open whether prejudice from late notice may matter. *Id.* at 178 n.26. Mr. Al-Muhtadi preserves the point.

certificate shows only that the file is the ISA record it describes. It does not show that ISA's record accurately captured the call or that the six files are complete, and those are the questions *Biggins* asks. *Age* did not face them. *See supra* Part III.A.1.

### B. The certificate does not establish the accuracy of the recordings under *Biggins*

To admit a recording, the government must "go forward with respect to the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording, and the identification of the relevant speakers." *United States v. Biggins*, 551 F.2d 64, 66 (5th Cir. 1977). The government "bears the burden of going forward with foundation evidence demonstrating that the recording as played is an accurate representation of the conversation or other sounds at issue." *United States v. Polk*, 56 F.3d 613, 631 (5th Cir. 1995). And "[w]hen circumstantial evidence is necessary to authenticate the accuracy of the recording, the court must be exacting in its requirements." *United States v. Bright*, 630 F.2d 804, 820 (5th Cir. 1980).

The certificate does not meet those requirements. It says nothing about the competency of the listeners who chose the calls or of whoever prepared the produced files. On equipment, it offers one sentence: Maya has "found those means to produce an accurate result at the time and date of their interception." Doc. 99-1, ¶ 4. On alteration, it says the calls were not altered "by the ISA," *id.* ¶ 7, which does not address how the produced files were made or how they were handled after August 12, 2025. On speaker identification it is silent, and the motion leaves that element for

trial. Doc. 99, at 1 n.1. At the August 4 hearing, counsel asked the government's FBI witness, a supervisory special agent who served on the Attorney General's task force investigating the October 7 attacks, whether "nobody from the FBI can authenticate recordings that were recovered by the Israeli Security Agency of the defendant," and he answered, "I would expect not, no." Doc. 114, at 6:5-7:5, 68:5-8.

The motion's authorities do not fill the gap. It cites *United States v. Green*, 324 F.3d 375, 380 (5th Cir. 2003), for the proposition that a case agent who "was unaware of the specific workings of the equipment and the operator's competency" may authenticate intercepts. Doc. 99, at 3. The sentence in *Green* continues: "the record reflects that both he and Agent Rabin listened to each intercepted call and corroborated Green's conversations with his actions on numerous occasions." 324 F.3d at 380. Maya claims familiarity with "these six recordings" and their translations, Doc. 99-1, ¶ 7, and says nothing of the other calls her branch held. The motion also invokes the alternative that a court may admit a recording if, "upon independent examination, the district court is convinced that 'the recording accurately reproduces the auditory experience.'" *United States v. Buchanan*, 70 F.3d 818, 827 (5th Cir. 1995) (quoting *United States v. Stone*, 960 F.2d 426, 436 (5th Cir. 1992)). Listening can confirm that a recording is clear. It cannot reveal what the selection left out, and the Court cannot listen to calls that were not produced. A court that recently ruled in limine that a foreign wiretap could come in on a proffer had chain-of-custody records before it, treated a gap in storage as a matter of weight, and noted that the defendant

"has not identified any gaps in the call or other flaws." *Hernandez*, 2026 WL 1129912, at *9. The gaps here go to what was recorded and selected, and they are documented. The cases the motion relies on each had a witness who could account for the recordings. In *United States v. Haldeman*, 559 F.2d 31, 108 (D.C. Cir. 1976) (en banc) (per curiam), the government "accounted for every stage from the inception of the tape recording system to the introduction of the tapes into evidence." In *United States v. Ross*, 33 F.3d 1507, 1514 (11th Cir. 1994), the Spanish officers who transcribed the intercepts were cross-examined. And in *United States v. Mosquera-Castro*, No. 17-13-JWD-RLB-4, 2020 WL 5868464, at *5 (M.D. La. Oct. 1, 2020), the DEA's wiretap system administrator, whom the court found to be the operator, testified at the hearing about his training, his experience, and the storage of the intercepts.

The Fifth Circuit's cases allow flexibility. *Stone* upheld a foundation although "not all of the *Biggins* factors were thoroughly covered." 960 F.2d at 436. *Johnson* found operator competency "not particularly salient" for an automated system. 943 F.3d at 220. *United States v. Thompson*, 130 F.3d 676, 683 (5th Cir. 1997), placed the burden on the challenger once a foundation was laid. Each of those cases began with a witness who knew how the recordings were made and kept. The government has told the Court that "[a] witness will authenticate them at trial." Doc. 82, at 17. If that witness exists, the Court should hear from the witness before ruling.

### C. CIPA cannot supply the foundation, and the Court should hear Maya and any other foundation witness before ruling

The motion asks the Court to rely on its "review of materials in the ex parte

CIPA process" to make the *Buchanan* examination. Doc. 99, at 5. CIPA § 4 lets the government ask to delete or substitute classified information in discovery through "a written statement to be inspected by the court alone." 18 U.S.C. app. 3 § 4. It is a discovery provision. "[T]he plain language of § 4 makes clear that a district court is required to decide in the first instance whether the Government's classified information is discoverable and the extent and form of any disclosure to the defendant." *United States v. Al-Farekh*, 956 F.3d 99, 107 (2d Cir. 2020). "CIPA creates no new rule of evidence regarding admissibility." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Both courts approved ex parte review for discovery. Neither approved using ex parte material to carry the government's burden on admissibility.

Courts that have faced that question have refused. In a case involving pseudonymous ISA witnesses, the court declined to "permit the government to use this classified information to meet its burden" because neither the defendant nor his counsel had access to it. *United States v. Marzook*, 435 F. Supp. 2d 708, 750 (N.D. Ill. 2006). "What the government cannot do is hide the evidence from the defendant, but give it to the jury." *United States v. Abu Ali*, 528 F.3d 210, 255 (4th Cir. 2008). The motion proposes exactly that: a foundation hidden from the defense and the calls given to the jury. Rule 104(a) frees the Court from the rules of evidence on preliminary questions, "except those on privilege." It does not dispense with the adversarial testing of a contested foundation, and Rule 104(c)(3) contemplates a

hearing outside the jury's presence when "justice so requires."

The motion's account of CIPA's trial provisions is also incomplete. It says Maya's cross-examination will be "constrained by CIPA Section 5." Doc. 99, at 5. Section 5 requires the defense to give notice of classified information it expects to disclose, and it permits a court to limit examination when the defense fails to give that notice. 18 U.S.C. app. 3 § 5(a)-(b). Section 6 hearings are held in camera on the Attorney General's certification, after notice to the defendant of the classified information at issue, and § 8(c) governs objections to particular questions at trial. *Id.* §§ 6(a), (b)(1), 8(c). In the district-court phase of *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), the court allowed an ISA employee to testify under a pseudonym but refused to restrict cross beyond Rule 611(b) because the government had offered no reason for a greater restriction. *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 9658814, at *3 (N.D. Tex. May 4, 2007). The government has told the defense that classified documents exist but that "there is no classified discovery in this case," Doc. 74-4, at 1, and now says that Maya and others have "classified knowledge." Doc. 97, at 6. Yet the motion relies on ex parte CIPA material, and a CIPA placeholder entry appears on the docket the same day. Doc. 103. The defense therefore cannot tell what ex parte material bears on these recordings.

The motion concedes that "the Government intends to have 'Maya' testify at trial." Doc. 99, at 5. If she can testify at trial, she can testify at a Rule 104 hearing.

The government bears the burden on both preliminary questions, *Jackson*, 636 F.3d at 695, and the certificate is silent on the facts in dispute. The Court should hear Maya and any other witness on whom the government relies for the foundation, and cross-examination on the foundation facts should not be limited in advance by CIPA.

Those witnesses overlap with the witnesses Doc. 109 asks the Court to hear, Doc. 109-1, at 28-29, and the Court can take the evidence on both motions at the same hearing. If the Court grants the motion to suppress, this motion is moot.

The claimed absence of prejudice rests on the premise that her cross-examination will be confined, and that confinement is the prejudice. *See* Doc. 99, at 5. Nor can the certificate substitute for Maya at trial. Maya told the FBI that her role in approving the six calls was to ensure that the audio matched the Hebrew translations. Def. Ex. A, at 1. The Sixth Circuit has reasoned that "once a certifier assesses the substantive similarity of the content, as opposed to authenticating the exactness of the copy, he crosses the testimonial line." *United States v. Maga*, 475 F. App'x 538, 542 (6th Cir. 2012) (unpublished); *see United States v. Bustamante*, 687 F.3d 1190, 1194 (9th Cir. 2012).

The Court should also order the government to produce, before the hearing, the materials in the FBI's possession that bear on the files' integrity: the files as the FBI received them in August 2025, its intake and transfer records, and any hash values it generated. The defense sought them in June. Doc. 70, at 5 (Requests 6-9); Doc. 74-1, at 14. The government answered that "the simple truth is that the

Government does not have" the native files and metadata the defense sought, and that as for the complete set of calls, "we do not have them." Doc. 82, at 9. Those statements do not account for the FBI's own holdings. The United States obtained the six files in August 2025, Doc. 1-1, at 27 ¶ 45, after the FBI asked ISA for them, *see* Def. Ex. A, at 1, and the files as they arrived, along with any record of their receipt, are in the government's possession. The Court reaffirmed on August 4 that the government's Rule 16 and *Brady* obligations remain. Doc. 114, at 87:21-88:2. The Court also ruled that those obligations do not reach "anything in the possession of Israeli agencies," *id.* at 87:19-20, and Mr. Al-Muhtadi does not ask it to revisit that ruling. The Israeli-held materials matter for a different reason. Rule 901 and *Biggins* place the foundation burden on the government, and if the government cannot obtain the native files, logs, and records that would show what ISA captured and how the six files were made, its foundation remains unproven.

**D. Rule 403 bars the curated six-call set**

The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury . . . ." FED. R. EVID. 403. The danger here is that the jury will hear six calls chosen by a foreign intelligence agency, carrying that agency's imprimatur, as if they were the whole morning. Parts II.C and II.D describe what the six leave out: ISA held fifty records and summarized twelve communications, one of the six recordings is interrupted, and no audio has been produced for the other six

summarized communications, including the one at 10:00. Def. Ex. B, at 1-2.

The authorities support exclusion on this record. When a recording is incomplete because the remainder is lost, the question "whether a recorded statement should be admitted, despite its unavoidable incompleteness, instead raises a question of undue prejudice under Rule 403." *United States v. Ehmer*, 87 F.4th 1073, 1125 (9th Cir. 2023). Completeness matters because "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). The Fifth Circuit, assuming the issue was preserved, concluded that a district court misapplied circuit precedent when it ruled that the remainder of a recording "stays out as self-serving hearsay," though it found the error harmless. *United States v. Carpenter*, 140 F.4th 733, 741 (5th Cir. 2025). An agency's selection also carries weight with a jury. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 673 (5th Cir. 1999) (civil case affirming exclusion of agency report as "unduly prejudicial due to its apparent official nature"); *United States v. Wardlaw*, 977 F. Supp. 1481, 1485 (N.D. Ga. 1997) (excluding under Rules 901 and 403 recordings that a former employee with questionable motives had edited).

The Fifth Circuit reads Rule 106 narrowly, permitting completion only where the omitted portion is "necessary to qualify, explain, or place into context the portion already introduced." *United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021)

(quoting *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996)). That test governs what an opponent may add, while Rule 403 asks whether the portion the government offers will mislead. *United States v. Cragg*, No. 1:17-cr-00012 JLT SKO, 2025 WL 2456291, at *3-6 (E.D. Cal. Aug. 26, 2025), refused to exclude computer exhibits that officers had altered while triaging seized devices, finding no bad faith and, although the defense had raised no Rule 403 objection, only minimal risk of jury confusion. No one had curated those devices' contents. *Garcia Abrego* treated incompleteness as a matter of weight where the defendant did not argue that it would confuse the jury. 141 F.3d at 178 n.27. Mr. Al-Muhtadi makes that argument. The government is entitled to prove its case "by evidence of its own choice," *Old Chief v. United States*, 519 U.S. 172, 186 (1997), but that principle concerns the prosecution's choice among available evidence. Here a foreign agency chose which parts of a morning's calls would exist as evidence at all.

The August 3 summaries do not cure this problem, and Mr. Al-Muhtadi does not offer them as completing material. His pending motion asks the Court to suppress the recordings, the summaries of his communications, and the other products of the Israeli surveillance. Doc. 109, at 1. The summaries matter here for a narrower reason: they show that the six recordings are a fraction of what ISA collected that day.

If the Court declines to exclude the recordings now, it should exclude them if the government cannot account at the hearing for the selection, the interruption of the 8:55 call, and the missing audio. In any event, Mr. Al-Muhtadi should be

permitted to put the selection and the gaps before the jury.

## IV. Reservation of objections

This opposition addresses authentication, the § 3505 certificate, CIPA, and Rule 403. Mr. Al-Muhtadi expressly reserves, and does not waive, the following objections to the six recordings and to any evidence derived from them. He reserves hearsay objections to statements by persons other than himself, including any reliance on Rule 801(d)(2)(E), whose predicate facts the government must prove by a preponderance, *Bourjaily v. United States*, 483 U.S. 171, 176 (1987), and on which the government's bill of particulars bears, Doc. 85, at 4. He reserves objections to voice identification and attribution of the 4855 number under Rule 901(b)(5), and to the accuracy of the English transcripts and translations, which requires evidence "that the words are accurately reproduced and the voices accurately identified." *United States v. Rochan*, 563 F.2d 1246, 1251 (5th Cir. 1977). He reserves objections to any use of the unrecorded summaries, including under Rule 1006, and objections under Rules 1002 through 1004. He reserves the objections raised in Doc. 109, the confrontation objections raised in Doc. 104 and the pseudonym objection reserved there, *see* Doc. 104, at 30, and the pseudonym and courtroom-closure objections raised in his opposition to Doc. 102. And he reserves objections to any limit on cross-examination under CIPA §§ 5, 6, and 8, the right to completion under Rule 106 at trial, *Brady* and due-process objections relating to the missing audio, and his challenge to the forensic integrity of the audio once native files and hash values are

produced. If the Court's ruling on this motion is not definitive, Mr. Al-Muhtadi will renew his objections at trial.

## V. CONCLUSION

Mr. Al-Muhtadi asks the Court to deny the government's motion, to grant his motion opposing admission under 18 U.S.C. § 3505(b), and to exclude the six recordings under Rule 403 or, at a minimum, to exclude them if the government cannot account at the hearing for the selection and the missing audio. He asks the Court to set a Rule 104 hearing outside the jury's presence at the motions hearing set for November 2-3, 2026, together with the hearing requested in Doc. 109. At that hearing, the government must present Maya and any other foundation witness on whom it relies, subject to cross-examination on the foundation facts that is not limited in advance by CIPA. Before that hearing, the government should produce the files as the FBI received them in August 2025, the FBI's intake and transfer records, and any hash values the FBI generated. The Court should not rely on ex parte CIPA material to find a foundation, and if it considers any such material, it should provide the defense an unclassified summary and an opportunity to respond. In the alternative, if the Court finds the certificate sufficient under § 3505, the ruling should be limited to the hearsay question, with the accuracy of the recordings left to a live foundation witness and the jury's role under Rule 104(e) preserved.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
First Assistant / Appellate Chief

*s/ Aaron A. Adams*
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 29, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*