UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**USA'S REPLY TO DEFENSE FIRST OPPOSITION TO PERMIT EVIDENCE [Doc. 128]**

The United States submits this Reply to the defense Opposition [Doc. 128] ("Opposition") to the Government's Motion to Permit Various Forms of Evidence ("Motion") [Doc. 100]:

**ARGUMENT**

Despite the Defendant's 60+ pages of responses to the Government's 24-page Motion, *see* [Docs. 128, 129, & 130],[1] he fails to undermine a single pillar of the Government's case-in-chief. Here, the Defendant's 22 pages raise five claims: (1) that DFLP/NRB membership and firearm evidence from a few years before and after the October 7 attack are only admissible under Federal Rule of Evidence ("FRE") 404(b) and do not meet that bar, Opp. at 5-16; (2) that the propaganda evidence is not relevant, Opp. at 10-12; (3) that even if the propaganda evidence is relevant in some respects, the Court should sanitize it, Opp. at 12; (4) that Al-Ghazzawi's statements are only admissible if they fall under FRE 801(d)(2)(E), Opp. at 16-18, and (5) that the contents of Al-Ghazzawi's phone and email do not contain relevant evidence. And while the Government's Motion disposes of these arguments on its own terms as referenced below, the following Reply takes on each claim and shows them to be grounded in fictions wholly untethered to the case law.

[1] While the Government objects to this procedurally improper tactic, it responds with three replies.

### A. *The Defendant's Conduct in the Five Years Before October 7 is Well Within What the Fifth Circuit Permits for Intrinsic Evidence and What Courts Permit for Terrorism Cases, and It Would Be Admissible as Direct Evidence and Under FRE 404(b) Anyway.*

The main throughline for the Defendant's opposition to the NRB evidence, the firearms evidence, and the Defendant's messages about the same is the notion that "evidence … in the years before and after October 7 does not prove what Mr. Al-Muhtadi did on October 7." Opp. at 5 (concerning NRB/DFLP membership); Opp. at 12 (same argument for firearms). These arguments are built on the same shaky foundation: the mistaken notion that "[e]vidence of what he belonged to years earlier, or what he said about the group years later, invites the propensity inference Rule 404(b) forbids," Opp. at 2. Much as the defense may insist it to be so, that is not the law.

Rather, and as the Motion explains and as courts including the Fifth Circuit have long recognized, *see generally* Mot. at 12-16 & 17-22, prosecutions can and often must include conduct from before and after a charged period to prove opportunity, intent, knowledge, motive, and the offense conduct itself. *See, e.g., United States v. Vasper*, 493 F.2d 433, 435-36 (5th Cir. 1974) (firearms); *United States v. Mohamed Ibrahim Ahmed*, No. 20-40713, 2022 U.S. App. LEXIS 31437, at *2 (5th Cir. Nov. 14, 2022) (terrorism and firearms); *United States v. Rahim*, No. 17-0169, 2019 U.S. Dist. LEXIS 70683, at *4-5 (N.D. Tex. Apr. 26, 2019), *aff'd*, 860 F. App'x 47 (5th Cir. 2021) (terrorism again); *see also* Mot. at 18 n.10. This is particularly so in the terrorism context, where "firsthand evidence of terrorist activities is difficult, if not impossible, to obtain," *Owens v. Republic of Sudan*, 864 F.3d 751, 787 (D.C. Cir. 2017), as well as in the context of a coordinated attack like October 7, which inherently involved the existence and coordination of groups that long predated the attack itself. In that way, the Government's proposed evidence from the years immediately preceding October 7 and shortly after are precisely the type of evidence that is "inextricably intertwined with or a necessary preliminary to the crime charged," *United States*

*v. Lugo-Lopez*, 833 F.3d 453, 460 (5th Cir. 2016), as the Fifth Circuit routinely approves. And that's just for Counts One and Two: for the visa fraud and lies to the United States government his argument is gutted entirely by the fact that his lies were historical: the visa application asks if he had specialized skills or training in firearms or explosives and if he had "ever served" in a paramilitary unit, [Doc. 60 at 6-7], both of which are met by past membership without time limit.

The Defendant's supporting authority for contending otherwise, *United States v. Hamilton*, 723 F.3d 542 (5th Cir. 2013); *see* Mot. at 5, is no help for him, missing the mark for at least two reasons. *First*, in *Hamilton* "there was no direct evidence that Hamilton was *currently* in the BD gang" at the time of the offense, *Hamilton*, 723 F.3d at 546, and the *Hamilton* court even held that evidence of Hamilton's prior gang membership "would have been intrinsic to the case because it was part of the on-scene investigation and thus not governed by *Beechum*," *id.* Only because an officer "considerably elaborated on Hamilton's probable current gang membership and the connection between gang membership and the motive for a defendant's possession of a gun" did such "inferences as to these connections based on [the officer's] experience" create "extrinsic testimony subject to *Beechum*." *Id.* In contrast here, the Government will be presenting evidence of the Defendant participating in the terrorist conspiracy on 10/7 itself along with messages by the Defendant indicating his allegiance to DFLP and NRB after the attack as well.

*Second*, the nature of charges dictate what evidence is "inextricably intertwined with or a necessary preliminary to the crime charged," *Lugo-Lopez*, 833 F.3d at 460, and *Hamilton* involved a felon-in-possession charge pursuant to 922(g)(1) that differs markedly from the material support charges the Defendant faces here. Indeed, the Fifth Circuit has 922(g)-specific rules about extrinsic

evidence that apply nowhere else,[2] and it's no coincidence that both *Hamilton* and *Beechum* involve single-count 922(g)(1) cases. While the defense plays the tired card of asking this Court to impose the same conceptual framework for simple felon-in-possession cases on this complex terrorism case, the case law says otherwise. For example, consider the only Fifth Circuit material support Section 2339B case to discuss *Beechum* in depth, *United States v. Ahmed*, No. 20-40713, 2022 U.S. App. LEXIS 31437 (5th Cir. Nov. 14, 2022).[3] There, the Fifth Circuit affirmed evidence including a 2012 terrorism conviction and the defendant participating in a "terrorist training camp" in 1997, roughly 20 years before the charged conduct range of 2014-2017. *See* [Doc. 2] in Case No. 17-cr-00151 (E.D. Tex.). Rejecting the defense argument that FRE 404(b) applied to this evidence, the Fifth Circuit explained that the evidence "was intrinsic because it was 'necessary preliminary' evidence" to a material support prosecution. *Ahmed*, 2022 U.S. App. LEXIS 31437, at *2. The *Ahmed* court further explained that "the evidence demonstrated that Ahmed was familiar with the ideological roots of ISIS, supported its objectives, sought to further those objectives by attempting to train and recruit other inmates, and had at least some knowledge of bomb-making," *id*. at *3, all of which was inherent to proving that he materially supported the foreign terrorist organization. Other courts have held similarly. *See, e.g., United States v. Hassan*, 742 F.3d 104, 135 (4th Cir. 2014) (video of Hassan shooting rifle admissible); Mot. at 18 & n.10.

---

[2] *See United States v. Williams*, 620 F.3d 483, 489 (5th Cir. 2010) ("In the context of a weapon-possession case, Rule 404(b) evidence of intent is relevant to a theory of constructive possession, but not to a theory of actual possession.").

[3] The defense's attempt to distinguish *Ahmed* amounts to burying its head in the sand: it acknowledges the *Ahmed* evidence was intrinsic because "the old evidence explained the knowledge and skills the charged conduct used," Opp. at 8, ignoring the evidence proving his ongoing allegiance to ISIS and its terroristic goals, *Ahmed*, 2022 U.S. App. LEXIS 31437, at *3, and then claims that the evidence here solely serves to "prove continuing membership in the group," Opp. at 8, instead of precisely the same motive, intent, and knowledge as in *Ahmed*, *see* Mot. at 15-16. The defense's truncated gloss on *Ahmed* and on the evidence here are untethered to the reality of either case, failing to reflect the full scope of the evidence's purposes.

And even if FRE 404(b) did apply, it would still be admissible anyway. As the Motion explains, the intrinsic evidence at issue here from years prior and after the October 7 attack proves precisely the knowledge, intent, motive, and opportunity that FRE 404(b) approves, while here inevitably providing direct evidence against his visa fraud lies. *See, e.g.,* Mot. at 16 & 19. On this point, the Fifth Circuit's *Ahmed* decision again drives this point home, holding that even the "problematic" 20-year time gap was outweighed by other *Beechum* factors. For *Beechum*'s first prong, the *Ahmed* court explained that the 20-year-old "training camp evidence tended to make Ahmed's knowledge of terrorist activities and bomb-making more probable." *Ahmed*, 2022 U.S. App. LEXIS 31437, at *3. For the second prong, the *Ahmed* court explained that several factors—that the evidence was "consequential for the Government to prove knowledge," that "there were major similarities between the skills learned at the training camp and the offenses charged," that the district court gave a limiting instruction, and that the prejudice did not outweigh the probative value, *id*. at *3-4—favored admissibility. So too here, where the Government's evidence is near in time, directly bears on the Defendant's membership in a HAMAS-associated group involved in the October 7 attack, and shows him using rifles and munitions that were part of the October 7 attack he stands accused of materially supporting. For these reasons, this Court should rule that the defense fails to counter the Government's Motion and that the evidence is admissible at trial.[4]

***B. Propaganda and Conduct of Other Conspirators is Relevant and Admissible.***

The defense's discussion of NRB and HAMAS propaganda and others' conduct fares no better, failing to distinguish the clear case law from one to the next, *see* Opp. at 10-12. The

---

[4] To the extent the Defendant insists that this Court should not decide these matters before trial, *see, e.g.,* [Doc. 129 at 4-6], the Government notes that irrespective of the Court's rulings about general categories of evidence, it will always be the Government's burden at trial to show that the evidence in question falls within the category. The purpose of these pre-trial rulings is to set the general ground rules to limit the amount of debate during trial while a jury is waiting.

throughline for all the Motion's cited cases is simple and consistent: that evidence proving the ideology, conduct, and motives of terrorist groups like HAMAS or terrorist affiliates like Holy Land Foundation or the NRB are probative of a defendant's motive, knowledge, and intent. The cases also show, uncontroversially, that where a defendant acts in a conspiracy, the propaganda, videos, and other statements made by co-conspirators are admissible. *See* Mot. at 14-16.

The defense fails to show otherwise with any of the Government's cases. The defense first appears to claim that the Government's use of [defendant] as to *El-Mezain* was somehow misleading, *see* Opp. at 10, but the Government's brackets don't alter what the evidence was proving: the propaganda went to the defendant's intent. Indeed, the defense itself acknowledges as much just a few lines later in its Opposition. *See* Opp. at 10 (evidence "'rebut[ted] defensive theories that the defendants intended to support only charitable endeavors,'" quoting *El-Mezain*, 664 F.3d at 508). In this, the defense acknowledges, as it must, that *El-Mezain* squarely presents the type of evidence at issue in this case: propaganda possessed or propounded by the organizations the defendant is supporting.

The defense then moves to *Elhuzayel*, *Hassan*, *Salameh*, *Rahim*, *Mohamed*, and *Viefhaus*, claiming that each "involved the defendant's own statements or materials tied to the charged conduct." Opp. at 11. This is, again, not so for all cases. Rather, in *Salameh*, the Second Circuit approved of admitting "terrorist materials seized from [one defendant] into evidence against all the defendants." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998). Likewise, *Hassan* involved social media postings made by the conspirators, not just one defendant, *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) (evidence "displaying Hassan's and Yaghi's user profiles and postings" admissible), and *Elhuzayel* involved the "defendants' social media accounts and digital devices" together, *United States v. Elhuzayel*, 807 F. App'x 621, 622 (10th Cir. 2020).

And because the defense fails to present a single case to support its theory that propaganda materials are inadmissible unless coming straight from a defendant's devices, *see* Opp. at 10-11 (discussing only the Motion's cases), the Court should rule the propaganda evidence admissible.

### *C. The National Resistance Brigades' Mission and Alignment with HAMAS is Necessary to Prove the Material Support Charges and the Defendant's Lies to the U.S. Government.*

The defense further argues that even if the Court admits propaganda evidence, it should limit the admissible evidence by, for example, excluding the groups' intent "to destroy Israel," Mot. at 12, but this is again wrong. The defense grounds its claim in the groups' terroristic goals being irrelevant to "show service in a unit or weapons training," Opp. at 12, and that the terroristic goals therefore "bear on neither visa question," Opp. at 12. But of course, service in a unit and weapons training aren't all that the Defendant is charged with having lied about. Rather, the Superseding Indictment squarely charges that the Defendant lied about being "a member of, or [] involved with a … rebel group, guerilla group, or insurgent organization … when in truth and in fact … he had long been a member of DFLP and its paramilitary wing, the NRB." [Doc. 60 at 5 & 7]. The DFLP and NRB's mission to destroy Israel as an extremist militia tends to prove precisely that character of the group necessary to prove that it was one of these organizations, and the defense cites no case where the Government was limited in putting its proof of that through the group's own statements. So here too the defense Opposition fails.

### *D. The Defendant's Wife's Statements Are In Furtherance of Their Joint Effort to Secure the Defendant a United States Visa Through Lies.*

The defense next "does not dispute that the wife's acts in the visa process may be relevant Counts Three and Four," Opp. at 16, but appears to focus its attention on emails Ms. Al-Ghazzawi sent to the Department of State and others as she aided and abetted the Defendant's fraud, *see* Opp. at 17 ("The concern is her other assertions, such as emails or messages…"). The defense claims,

categorically, that "[f]or those, the government must satisfy Rule 810(d)(2)(E), which requires that the statement 'was made by the party's co-conspirator during and in furtherance of the conspiracy.'" Opp. at 17. And it's true that Ms. Al-Ghazzawi's statements securing funding, identifying processes and procedures, and otherwise facilitating the Defendant fraudulently securing a visa are all made in furtherance of the conspiracy. *See* Mot. at 22-23. In that way, the statements are nonhearsay pursuant to FRE 801(d)(2)(E), to Defendant's point.

But that is not the only avenue for this evidence's admissibility. Rather, a threshold question is whether the statements are hearsay at all—in particular, not just whether they are statements but also whether they are offered for the truth of the matter asserted. In fact, many of Al-Ghazzawi's statements were not made for the truth of the matter asserted at all. Where she emails the Department of State about visa applications, or solicits money for the visa applications, or communicates with others about securing these visas and traveling to the United States, the sole question is relevance—not hearsay. *See, e.g., United States v. Warren*, 986 F.3d 557, 565 (5th Cir. 2021) ("the testimony to which they broadly object is not hearsay because it was not offered to prove the truth of the matter asserted. Indeed, the significance of the telemarketers' statements was that they were false…"). In this respect, the defense's framing of the issues here as centering around hearsay is simply incorrect; rather, Al-Ghazzawi's statements must be considered first for whether they are offered for the truth of the matter at all, with relevance then the low bar the Government must meet for admissibility when they are not.

So too is the Defendant wrong about the limits of conduct relating to timing. As he would have it, the "visa offenses … occur[ing] on or about June 26 and August 6, 2024" means that "[s]tatements the wife made after Mr. Al-Muhtadi entered the United States on September 12, 2024, could not have furthered the visa offenses." Opp. at 17-18. But of course, inculpatory

statements or conduct after defendants commit a crime are regularly admitted to prove the conspiracies. *See, e.g., United States v. Navarro*, 169 F.3d 228, 233 (5th Cir. 1999) (evidence of drug operation after the end of the alleged conspiracy was not extrinsic because it "demonstrated the continuing nature of the organization, the structure of the organization, and the continuing contact" between relevant actors); *United States v. Juri*, 683 F. App'x 286, 287 (5th Cir. 2017) ("Although the second superseding indictment charged a conspiracy from September 2009 through October 10, 2012, the testimony concerning Jurdi's drug dealing after that date and the physical evidence seized at the time of his arrest, in January 2013, is probative of that conspiracy…"). For these reasons, the Defendant's arguments about his wife Ms. Al-Ghazzawi's statements fail.

### *E. The Contents of Al-Ghazzawi's Phone Relating to the Defendant's Membership in DFLP and NRB are Squarely Admissible as to All Counts.*

The defense next turns its attention to Al-Ghazzawi's phone, arguing that the evidence "do[es] not prove Mr. Al-Muhtadi's knowledge, motive, or intent" and is therefore irrelevant. Opp. at 18.[5] The defense is wrong for two reasons.[6]

*First*, the defense confuses necessity and relevance when discussing Al-Ghazzawi's criminal liability. As the defense would have it, "[b]ecause the wife's knowledge is not an element, evidence offered to prove it is relevant only if her knowledge proves his." Opp. at 18. Not so.

[5] The Defendant also speculates about spousal privilege, Opp. at 20, but gives no concrete examples of communications it covers. While he asks this Court to order that the Government "identify any spousal communication it intends to offer," Opp. at 20, the Government submits that the current Amended Scheduling Order's deadlines should control as to Government exhibits.

[6] The defense claims that the Government's cross reference "supplies no analysis," Opp. at 19, but this is wrong. Rather, Section III.B of the Motion discusses the admissibility of "terrorist propaganda" and images depicting violence, Mot. at 9-10, which relate to Al-Ghazzawi's phone contents. The defense appears to be nodding at the fact that the Motion's cross-reference should have included Section III.C as well, which is both fair and something the defense clearly knew full well in responding. Yet because the defense chose no response, there is nothing to say here except that the governing law is precisely what the Government provided in the Motion and that the defense has failed to argue otherwise.

Rather, proof of Al-Ghazzawi's criminal intent shows the two working in concert—conspiring—to commit the visa fraud crime. Moreover, the photographs in Al-Ghazzawi's possession depicting areas of joint responsibility, such as the Defendant's home and children, offer proof relating to the Defendant himself. The defense cites no case holding otherwise, instead offering *United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980), Opp. at 19, a case having nothing to do with the admissibility of evidence whatsoever. The notion that admissibility or relevance turns entirely on whether the photos came from Al-Ghazzawi's phone or the Defendant's has no basis in law, and the defense cites no case for that proposition.

*Second*, the Defendant's authenticity argument as to records secured from Al-Ghazzawi's phone and Gmail account has no basis in law. Al-Ghazzawi's smartphone and Gmail records were secured via search warrant, with agents physically securing and searching the phone and receiving Gmail records from Google LLC that will be authenticated by records certificate. The defense cites no case where such records were precluded on authenticity grounds, instead offering a Second Circuit case having nothing to do with the issues here beyond outlining basic legal principles. *See* Opp. at 19. From there, the defense claims that the Fifth Circuit has "condemned" evidence like the Defendant and his wife dressing his son in NRB regalia, Opp. at 20, but the defense again fails to back the claim up. It cites *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir. 1978); Opp. at 20, but that case involved an adult son's arrest for possessing stolen guns, with the court focusing on the arrest itself as "highly prejudicial." The defense cites another case, *United States v. Singleterry*, 646 F.2d 1014, 1020 (5th Cir. 1981); Opp. at 20, but it too involves adult criminal convictions. The obvious difference here is that the Defendant's son is a minor within his custody and control, with this evidence doing nothing to prove the Defendant guilty through the son's wrongdoing but instead the other way around—that the son wearing NRB regalia speaks to the

Defendant's own allegiances. For these reasons, the defense objection fails on this front as well.[7]

## CONCLUSION

For all these reasons, the Court should grant the Government's requests in the Motion as to the matters addressed in this defense Opposition—namely, the Defendant's DFLP/NRB membership, his use and facility with firearms in the years before and after October 7, and the his co-conspirator wife's statements and acts and the contents of her smartphone and email.

Dated: October 8, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By: *\/s/ Zachary A. Keller*
ZACHARY A. KELLER
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D

[7] The defense concludes its Opposition with a paragraph about machine-translations, claiming them to be "hearsay," Opp. at 21. That cannot be true for the simple reason that translations are not hearsay. *See, e.g., United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) ("an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay" (quotations omitted)). That said, the Government does not intend to admit any of the machine-translated materials, with interpreters instead testifying to their own translations.

Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney