UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

**USA'S REPLY IN SUPPORT OF ITS MOTION TO ADMIT BATTLEFIELD EVIDENCE**

The Government filed a motion to admit battlefield evidence on May 1, 2026, [Doc. 45-1] ("Mem.") and the defense filed an opposition on September 15. [Doc. 104] ("Opp."). The Government now replies.

## INTRODUCTION

The HAMAS attack of October 7, 2023, ignited a war between Israel and HAMAS in the Gaza Strip, with HAMAS holding for over two years live hostages snatched from their homes in Israel on October 7. A rough ceasefire went into effect October 9, 2025. During combat operations, the Israeli army recovered documents and electronic devices from numerous locations in Gaza. A number of these documents mention the Defendant. In the Motion, the Government established that a witness from Israel – "Avi" – would establish at trial the authenticity of six such battlefield documents based on his extensive experience studying and reviewing HAMAS documents. Further, the Government established that the documents would be admissible as non-hearsay statements of joint venturers/co-conspirators under Federal Rule of Evidence ("FRE") 801(d)(2)(E). The documents naming the Defendant are also admissible under FRE 807.

Defendant objects, but his arguments are wrong. Admission of Battlefield Documents 1-4 documents does not violate the Confrontation Clause, because the statements are not testimonial.

The primary purpose in HAMAS creating the documents was not for prosecution or trial, but in order to keep its own internal order. The statements are also not testimonial because they constitute the statements of co-conspirators in furtherance of the conspiracy. Nor is there any prohibition on Avi authenticating the documents based on his experience and ability to recognize distinctive characteristics and content. Fed. R. Evid. 901(b)(4) provides for authentication in exactly that manner, a proposition Defendant never contests in his opposition. Once authenticated, Defendant's only way around admissibility based on the joint venture the Government has described is to ignore controlling case law and re-define the conspiracy to make it unnaturally narrow. Finally, the four documents naming the Defendant are also admissible under FRE 807 because their trustworthiness is corroborated by documents recovered from Defendant's own social media and Google accounts. The defense never addresses this corroborating evidence.

## ARGUMENT

### I. The Confrontation Clause Does Not Apply to the Battlefield Documents Because They Are Not Testimonial

Defendant argues that admitting Documents 1-4 would violate the Confrontation Clause because they are testimonial. Opp. at 3-7. Not so.

The parties agree that the Confrontation Clause applies to "testimonial statements" only. *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). In this Circuit, whether a statement is "testimonial" turns on the "primary purpose" for which the statement was sought and given. *See United States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012). If the "primary purpose" of the interrogation was to collect evidence for a trial or prosecution, then the statement is "testimonial." *See id.*; *see also Ohio v. Clark*, 576 U.S. 237, 244-46 (2015) (To be testimonial, a statement must have been made with the primary purpose of creating a record for trial and with a sufficient degree of formality). Conversely, where the "primary purpose" of the statement is not for prosecutorial

purposes, but instead, for example, to aid in policing, resolving an ongoing emergency or crime, or for administrative purposes, the statement at issue is "non-testimonial," and the Confrontation Clause does not apply. *See Polidore,* 690 F.3d at 711.

Documents 1-4 are not testimonial because their primary purpose was not for a prosecution or trial. This is so for two reasons: First, the documents on their face were created for the administrative, internal security interests of a foreign terrorist organization – not for formal prosecution. Second, co-conspirator statements are generally not testimonial and do not implicate the Confrontation clause, and documents 1-4 are HAMAS documents in furtherance of the joint enterprise it has with DFLP and others to work toward the destruction of Israel.

**A. The Content of the Documents is Non-Testimonial**

Defendant attempts to superimpose western-style democracy onto the documents of a foreign terrorist organization. But HAMAS is not a democracy with an independent judiciary, and the primary purpose of documents created by its internal security forces is not prosecution or trial. As the Defendant himself has submitted, and as the evidence at trial will show, HAMAS is a terrorist organization that carries out "summary executions and other violence" against individuals accused of collaboration, with hundreds of documented cases of "extrajudicial execution and severe physical violence." Statement of Bridget Prince, Once World Research, ¶27 [Doc. 116-4].

The evidence will establish that HAMAS maintains strict control over all activities within Gaza, including control over other terrorist and paramilitary organizations that operate there. HAMAS tracks those organizations and affiliated individuals through its internal security, and it does so not to bring formal prosecutions, but for its own administrative purposes of ensuring discipline and control. *See United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) (statements created for the administration of an entity's affairs and not for the purpose of establishing or

proving some fact at trial are not testimonial); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009) (same); Expert Witness Statement [Doc. 46]. To the extent HAMAS may use its internal security documents to mete out punishment, it is extrajudicial and not so that they can be "available for use at a later trial." *Crawford*, 541 U.S. at 51-52 (quotation omitted); Opp'n at 4-5; *see United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir.2013) ("Testimonial statements are ones 'that declarants would reasonably expect to be used prosecutorially[.]'" (quoting *Crawford*, 541 U.S. at 51)).

The closest analogy is the lawless way in which gangs operate. Gangs police their own territory and keep tabs on the loyalty of their members and others under their control. The gang may have its assigned individuals whose responsibility is internal discipline. If someone is caught skimming profits from the gang's enterprise, for example, those individuals may create a document about the incident. It may call that person to account, through violence or other reprimand. *See generally Martinez Perez v. Dretke*, 172 F. App'x 76, 82–83 (5th Cir. 2006) (affirming admission of general evidence of gang operations including internal rivalries and killings in trial of San Antonio Mexican Mafia member). Those statements documenting the actions of a snitch or a thief, however, are not testimonial. They serve the administrative and extra-judicial purposes of the gang and are not primarily created for the purpose of a trial or judicial proceeding. *United States v. Noria*, 945 F.3d 847, 855 (5th Cir. 2019) (holding that even if immigration form was eventually to be used in a prosecution, that "incidental or secondary use" is of "little moment" in constitutional analysis.) As the evidence at trial will show, the dynamics of a terrorist organization like HAMAS are similar. Documents 1-4 do not implicate the Confrontation Clause.

### B. Co-Conspirator Statements are not Testimonial

Another reason the proffered battlefield documents are not testimonial is that they constitute the records of the Defendant's co-conspirator, HAMAS, as they engaged in their long-standing joint enterprise of coordinating attacks against Israel. *See* Mem. at 23-32. The documents on their face further that enterprise: they evidence HAMAS tracking the use of weapons and asserting its control over who attacks Israel and when. *See id.,* Exhibits 3-4. DFLP and the Defendant specifically are referenced in those documents, demonstrating the connection between the Defendant, DFLP and HAMAS in furtherance of their joint militaristic activity; *see also*, discussion, *infra*. at III.

In Document 4, DFLP writes to its co-conspirator HAMAS to report on the loss of "five Kalashnikovs." Mem. at 13. It further identifies the Defendant as having given the weapons "to brother 'Abdallah Al-'Ashi, one of 'Izz Al-Din Al-Qassam Brigades members in the Al-Sabra and Tel Al-Islam Battalion[.]" *Id.* The Izz Al-Din Al-Qassam Brigades is HAMAS' military wing, and the document reports that the Defendant has personally interacted with his HAMAS "brother," and entrusted him with valuable military assault weapons. That the Defendant, DFLP and HAMAS are working together under HAMAS' command is self-evident from the face of the documents, and it is equally self-evident that they are working in furtherance of the common enterprise to coordinate attacks on Israel – an enterprise culminating in the attack of October 7, 2023.[1]

Accordingly, Battlefield Documents 1-4 are not testimonial because they are by or between co-conspirators in furnace of a conspiracy. Such documents are non-hearsay and fall outside the contours of the Confrontation Clause. *United States v. Gurrola*, 898 F.3d 524, 535 n.17 (5th Cir.

---

[1] As the Government's expert witness notice explained, Avi will testify that HAMAS and DFLP "share a fundamental goal of opposing, defeating, and eliminating Israel, and Hamas ensures that they are complying with Hamas's specific goals, strategies, and demands." [Doc. 46 at 4].

2018) (It is "well-settled within this Circuit that co-conspirator statements are non-testimonial"); *United States v. King*, 541 F.3d 1143, 1145–46 (5th Cir. 2008) ("Statements made between co-conspirators in furtherance of a conspiracy are not testimonial.").

## II. The Government's Witness Can Authenticate the Records

The defense concedes that authentication is not a high bar. Opp. at 11. *See United States v. Okulaja*, 21 F.4th 338, 344–45 (5th Cir. 2021) (authentication is not a burdensome standard). But it objects to Avi's ability to meet that low threshold, arguing that he cannot act both as an authentication witness and an expert. Opp. at 10. But they never explain why, and not once does the defense acknowledge FRE 901(b)(4), which plainly allows Avi to authenticate these records based on his experience. As FRE 901(a) provides, a witness need only provide evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). And he can do that, among other means, through: "(b) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). The reality is that the defense's insistent fixation on Avi's other testimony is a complete red herring having nothing to do with whether he can authenticate documents.

Avi has extensive experience in reviewing and analyzing HAMAS documents seized from the battlefield. He has been studying HAMAS' structure and operations his entire professional life. As explained at length in his expert witness notice, Avi for years has been reviewing and analyzing documents seized in Gaza post-October 7 and has reviewed tens of thousands of documents. He employs a detailed, multi-step process to ensure that the documents he views are authentic. Those steps include analyzing the appearance and substance of the document, examining details surrounding the document, cross-referencing them to other documents, noting

distinctive characteristics, searching for duplicates on the same and other devices, and checking for specific identifiers, such as email addresses, phone numbers, or social media accounts, that might link a device to a specific person or organization, among other steps. *See* [Doc. 46 at 8-11].

The defense barely engages with this process and never explains why Avi's experience and ability to identify the distinctive characteristics of these documents and thereby authenticate them does not fit precisely within Rule 901(b)(4) – a rule that itself provides no limit to the ways in which a witness may show that a document is what it is purports to be. *See* Fed. R. Evid. 901(b) ("The following are examples only – not a complete list – of evidence that satisfies the requirement[]"); *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989) (Rule 901 does not limit the type of evidence allowed to authenticate a document). Instead, the defense focuses on provenance and alleged gaps in the chain of custody. Opp. at 10-12. But conclusive proof of authenticity is not required. Any flaws that Defendant perceives "go to the weight of the evidence instead of its admissibility. The ultimate responsibility for determining whether evidence is what its proponent says it is rests with the jury." *Okulaja*, 21 F.4th at 344–45 (citation modified).

Nor does the defense identify any authority prohibiting an expert from authenticating documents. They point to *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), for the proposition that a separate witness from Avi authenticated the battlefield documents introduced in that case. Opp. at 9-10. But just because the government used two separate witnesses in *El-Mezain* does not preclude the government from using one where that one witness is familiar with the repository of materials and can testify that the documents are authentic based on his familiarity with the "appearance, content and substance" of those documents. *See* Fed. R. Evid. 104(b)(4). In *El-Mezain*, in fact, the defendants never challenged on appeal the authenticity of the documents seized from the battlefield in Operation Defensive Shield. Instead, they limited their appeal to the

authentication witness' use of a pseudonym, and whether two documents seized from the Palestinian Authority overcame the hearsay exception. *El-Mezain*, 664 F.3d at 490-94, 497-501. Nothing in *El-Mezain* purported to require a "separate" authentication witness. To the contrary, that decision stands for the proposition that foreign evidence seized in a military operation can be authenticated despite not knowing "every detail." *Id.* at 500. Testimony by a witness with knowledge that the matter is what it is claimed to be is enough. *Okulaja*, 21 F.4th at 345.

### III. The Battlefield Documents are Admissible as the Non-hearsay Statements of Co-Conspirators/Joint Venturers

The Government established in its opening memorandum that it has satisfied each element of Rule 801(d)(2)(E), and it does not repeat that lengthy discussion here. Mem. at 22-33. The defense does little to refute it, and all but ignores the scope of the conspiracy charged and the joint venture in which HAMAS and the defendant were engaged.

First, the defense complains that the documents predate October 7, 2023. Opp. at 16-17. But the joint venture in which the Defendant and HAMAS were engaged predated October 7, 2023, and predated even the Joint Operations Room, which was a mere formalization of the military coordination that was already occurring between HAMAS and subordinate paramilitary organizations like DFLP and the NRB. And the Fifth Circuit has made clear that co-conspirator documents can predate the charged conspiracy, even by decades; that it is not necessary that the declarant be identified; and that the joint venture need not be either criminal or the same as the conspiracy charged. *El-Mezain*, 664 F.3d at 501-07. *See also United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022). What is required is that "each alleged conspirator had knowledge of and agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Amawi*, 695 F.3d 457, 477 (6th Cir. 2012), quoting *United States v. Smith,* 320 F.3d 647, 653 (6th Cir.2003). Here, the Defendant, DFLP and HAMAS were engaged in a collective

venture and common goal of liberating "the Zionist Occupation" through violence. Mem. at 31. Evidence of that enterprise long predates October 7, 2023.

Second, the defense argues that the documents fail to "advance" the conspiracy. Opp. at 17. But that is because the defense refuses to engage with the joint venture and conspiracy as the Government has described it. Defendant claims, for example, that Battlefield Document 4 is merely "internal DFLP discipline." *Id.* at 18. If that is so, why is DFLP taking pains to explain to HAMAS the Defendant's action in transferring five Kalashnikovs to another operative? Instead, the document evidences DFLP reporting to its master and co-conspirator HAMAS that military assault weapons have been handled in an unauthorized manner by the Defendant in this case. Tracking and controlling assault weapons is plainly in furtherance of the joint enterprise.

So too for Battlefield Documents 2-3. Defendant claims that these documents are not in furtherance of "October 7, 2023" but instead is part of an imagined enterprise "to manage Gaza-based arms operations." *Id.* at 19. Again, the Defendant refuses to acknowledge the true nature of conspiracy. Those documents show discipline being imposed on the Defendant for launching rockets into Israel without requisite permission from HAMAS. They are squarely in furtherance of the same joint venture out of which the October 7 massacre emerged – the common plan to attack and to "liberate" Israel. *See Musaibli*, 42 F.4th at 618-19 (Statements made in furtherance of a large conspiracy are no more outside the bounds of Rule 801(d)(2)(E) than ones made in service of a small conspiracy.)[2]

[2] Battlefield Documents 5-6 are also squarely in furtherance of the conspiracy because they show the precise location of Malaka, a place the Defendant referenced in his phone call where his co-conspirators should meet him before advancing into Israel. The defense argues weakly that these are mere "evidence about Hamas." Opp. at 20. But it was the HAMAS-led attack on October 7 to which the Defendant provided his support. *See* Mem. at 33.

Finally, the defense argues that "declarant membership in the alleged joint venture" has not been established. Opp. at 20. The point is difficult to understand. Several of the documents are clear on their face that the declarant is part of HAMAS, (Documents 2-3), or is part of DFLP and directed at HAMAS (Document 4). Each document includes the Defendant's name, and two include the Defendant's photograph and personal identifiers. And, as Defendant readily acknowledges, *El-Mezain* permits anonymous statements when "the facts and circumstances surrounding the making of the statement indicate that the speaker is a member of the conspiracy or joint venture. *El-Mezain*, 664 F.3d at 505; Opp. at 20. Here, Defendant concedes that HAMAS authored Documents 2-3, DFLP authored Document 4, and Documents 5-6 are "evidence about HAMAS." Opp. at 18-20. No "inside" HAMAS witness is required to establish what readily appears on the face of the documents. *See id.* at 21-22 (attempting to distinguish *Musaibli*).

**IV. Battlefield Documents 1-4 Are Also Admissible Under Rule 807**

As explained in the Government's opening memorandum, the Battlefield documents that specifically name the Defendant are also admissible under Rule 807's residual exception to the rule against hearsay. Mem. at 33-35. These documents have independent corroboration that the Palestinian Authority documents in *El-Mezain* lacked, as they contain the correct identifying information of the Defendant, information that the Defendant himself submitted with his passport application. The defense claims these documents are inherently unreliable, citing as an example Document 3, which states that "[t]he aforementioned is an active operative in the military wing of the Democratic Front." Opp. at 24. But the evidence highlighted in the criminal complaint, taken from the Defendant's own social media and Google accounts depicting the Defendant in paramilitary gear, a DFLP headband, and holding automatic weapons will corroborate the statement that the Defendant "is an active operative in the military wing of the Democratic Front."

[Doc. 1, ¶¶28-44]. Thus, not only is there no motive for either HAMAS or DFLP to incriminate or misidentify the Defendant, but the substance of the documents is independently verified though evidence derived from the Defendant's own devices. Here, that corroboration gives Documents 1-4 the "indicia of trustworthiness" necessary to satisfy Rule 807. *El Mezain*, 664 F.3d at 500-01.

**CONCLUSION**

For all the reasons set forth above and in the Government's opening memorandum, the United States' Motion to Admit Battlefield Evidence should be granted.

Date: Oct. 9, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By: *__/s/ Elizabeth J. Shapiro__________*
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

_*/s/ Elizabeth J. Shapiro*
Elizabeth J. Shapiro