UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

v.

MAHMOUD AMIN YA'QUB AL-MUHTADI,

Defendant

CRIMINAL NO. 6:25-CR-00285
JUDGE JOSEPH
MAGISTRATE JUDGE WHITEHURST

# USA'S REPLY TO DEFENSE OPPOSITION TO MOTION TO AUTHENTICATE CALLS

The United States submits the following Reply to the Defendant's Opposition [Doc. 132] to the Government's Motion to Authenticate Six Intercepted Phone Calls [Doc. 99]:[1]

## ARGUMENT

In an apparent attempt to bury the Motion in paper, the defense devotes most of its 23-page response to rehashing issues irrelevant to the Maya Certificate's compliance with Section 3505. It spends six pages complaining about information it lacks, Opp. at 1-6, two more pages on familiar, improper discovery demands, Opp. at 18-19, and still three more on Federal Rule of Evidence ("FRE") 403 arguments, Opp. at 19-22, never once connecting them to Section 3505 compliance.

This Court should not take the bait. Rather, it should focus its attention on the Maya Certificate and Section 3505, as the Motion concerns, and should hold that the Maya Certificate meets "the low bar for authentication of evidence." *United States v. Lundy*, 676 F.3d 444, 454 (5th Cir. 2012). "Section 3505 was enacted by Congress in order to create a simple, inexpensive substitute for the cumbersome and expensive procedures presently required for the admission of

[1] The Motion is "to Authenticate," and asks at beginning and end that this Court to "hold[] the Subject Calls to be properly authenticated," Mot. at 1 & 6. That said, the defense is correct that the Motion once says "admit," Opp. at 6, so, we clarify that the Motion only seeks to *authenticate*.

foreign business records," *United States v. Strickland*, 935 F.2d 822, 830 (7th Cir. 1991) (quotations omitted), and the Maya Certificate presents the "minimal authentication proof required" for this Court, exercising its "wide discretion," *United States v. Bonds*, 526 F.2d 331, 336 (5th Cir. 1976), to hold the Subject Calls to be authenticated for four reasons. *First*, the Maya Certificate complies with Section 3505's strictures. *Second*, the defense fails to meet its burden contesting the Maya Certificate's trustworthiness. *Third*, case law shows both that Section 3505 is analogous to FRE 902(11) and that jail calls and records not created to further prosecutions are properly authenticated under FRE 902(11) and Section 3505. *Fourth*, even were *Biggins* to apply, the Maya Certificate and testimony this Court has already heard places the Court well within its wide discretion to find the Subject Calls to be authentic ISA records, with the defense free to cross-examine and argue their weight at trial.[2] For these reasons, the Court should grant the Motion.

***A. The Maya Certificate Complies with Section 3505.***

As a threshold matter, this Court should rule that the Maya Certificate complies with Section 3505's strictures. As the Motion explains, Section 3505 requires that (1) the record was made at or near the time of occurrence, (2) it been kept during a regular activity, (3) the activity included making the record, and (4) it is a duplicate of the original. *See* Mot. at 2. The Maya Certificate meets all these standards: it explains (1) that ISA regularly monitors, records, translates, and retains phone calls at the time they are made, *see* [Doc. 99-1 at ¶¶ 2-4], (2) that Maya is a records custodian who understands how these phone calls are collected and manages the repository that included the Subject Calls, *see* [Doc. 99-1 at ¶¶ 3-6], (3) that the calls are "true and accurate copies of the phone calls intercepted" and (4) that they were "maintained in the ordinary course of

---

[2] The defense "preserves" a timeliness objection, Opp. at 11 n.10, but the Court should deny it for three reasons: (1) the Motion comes well before the October 30 deadline agreed to by the parties; *see* [Doc. 66 at 3]; (2) Maya executed the certificate on September 10, *see* [Doc. 99-1 at 2], with the Motion filed days later; and (3) the defense's lengthy Opposition proves its ability to object.

business by the ISA," [Doc. 99-1 at ¶ 7].[3] Simple enough. And while the defense contests the certificate meeting 3505's strictures, its claims are unavailing.

The defense opens its Opposition with a slew of irrelevant complaints spanning more than five pages, *see* Opp. at 1-6, but the complaints are devoid of case law suggesting it to matter for Section 3505 authenticity. The defense complains, for example, about the Maya Certificate "not mention[ing] that listeners in Maya's branch chose these six calls from a day on which ISA held fifty records," Opp. at 1, not explaining details about each individual call such as "why one of them stops partway," Opp. at 2, or "why ISA summarized twelve communications from that day but produced audio of six," Opp. at 2, or "describe the system that holds the calls" to the defense's satisfaction, Opp. at 2, not once citing a case saying these things are required. The defense's glaring lack of law here results from the fact that there isn't any: for all the defense's desire to receive additional information, there is simply no requirement that the record custodian provide any for the narrow purpose of authenticating the Subject Calls.[4] The reality is that the ISA, like any other entity, has submitted its records to the Government with the certification attesting to the required aspects of the collection with a qualified records custodian signing, and that is all that's required.

The defense fairs no better in attacking the Maya Certificate when it moves to the certificate's substance, the Section 3505 statute, and the surrounding case law. The defense weakly argues that "[t]he certificate also departs from the statute's terms" because "[i]t never states that the files are 'a duplicate of the original,'" Opp. at 11 (quoting 18 U.S.C. § 3505(a)(1)(D)), when

---

[3] The defense notes the Motion stating the certificate is under penalty of perjury in the U.S. and Israel when the certificate says only Israel. Opp. at 3. That discrepancy resulted from the ISA—instead of signing Government drafts, as the defense often suggests—doing its own drafting. That said, this discrepancy doesn't matter because Section 3505(c)(2) requires only that the certificate "would subject the maker to criminal penalty under the laws *of that country*" (emphasis added).

[4] It bears noting that the Maya Certificate does describe the ISA's program, [Doc. 99-1 at ¶¶ 1-4] (describing "listeners" at an ISA "Gaza desk," that calls were translated either word-for-word or in summary, and that the calls were retained), though the defense will always demand more.

the attestation states the calls are "true and accurate copies of the phone calls … and maintained in the ordinary course of business by the ISA. The calls have not been altered in any way." [Doc. 99-1 at ¶ 7]. The defense notion that the Maya Certificate does not comply with Section 3505's strictures on this front by saying "copies" instead of "duplicate" calls for precisely the "magic form" the defense disclaims, Opp. at 11, and that the law rejects, *see* Opp. at 11 (citing *Strickland*, 935 F.2d 822); Opp. 7 (noting *Age* approving of affidavit tracking "nearly word for word").

The defense also attacks whether the Subject Calls are records that were "kept in the course of a regularly conducted business activity." Opp. at 8, by claiming—bizarrely yet familiarly, *see* [Doc. 109-1 at 15]—that the Subject Calls "did not exist as an ISA record until the FBI asked for it." Opp. at 9.[5] The defense's cloak-and-dagger claim here is belied both by the Maya Certificate and common sense. As the Maya Certificate attests, and as is always the case for all business record requests, the ISA maintained the Subject Calls in an archive of all its other data and simply pulled it and produced it. Indeed, the defense's legal theory that the Maya Certificate is insufficient because "the exhibit set is a 2025 selection, and § 3505 only reaches records a business keeps," Opp. at 8, would lead to the absurd result that any subpoena seeking records from the past—as is almost always the case—would not comply with Section 3505, or FRE 902(11) for that matter. That is not the law, and it is not the facts here either. Rather, the Maya Certificate specifically states that the calls were collected and recorded at the time they were made in October 2023, *see* [Doc. 99-1 at ¶¶ 3-7], and the idea that the ISA somehow conjured up the calls in 2025, two years after they were placed, makes no sense—though, of course, the defense is free to argue that at trial. Obviously, and as reflected in the Maya Certificate, the ISA pulled the calls from an archive just

[5] It's unclear whether the defense is also arguing the ISA is not a "business" under Section 3505, but suffice to say Section 3505(c)(3) defines "business" broadly to include any "business, institution, association, profession, and calling of any kind, whether or not conducted for profit."

like any other entity does in response to process.[6] The Court should disregard these tired conspiracy theories and evaluate the Maya Certificate on its face and in the context of the ISA routinely doing this work and simply producing its records to the Government, like any other entity. For those reasons, the Maya Certificate complies with Section 3505 and is a proper basis for authentication.

***B. The Maya Certificate is Sufficiently Trustworthy to Establish the Subject Calls to be What Maya States: Calls Intercepted by the ISA on October 7 from a Particular Call Number.***

The defense next argues that the Court cannot find the Maya Certificate sufficiently trustworthy to authenticate the Subject Calls. In so arguing, the defense acknowledges, as it must, that it bears the burden in opposition, *see* Mot. at 9 (citing FRE 803(6)(E)), which reflects the limited role of these rules of admission, *see, e.g., United States v. Allen*, 159 F.4th 625, 634 (9th Cir. 2025) ("the only function of Rule 902(11)—and by extension Rule 803(6) in the authentication context—is to certify that the Facebook records are what the government claims they are (i.e., records from Facebook)."). And that the defense bears the burden of overcoming the "the low bar for authentication of evidence," *Lundy*, 676 F.3d at 454, makes sense: the defense will be able to cross-examine witnesses testifying about the calls at trial, and the Government will need to persuade the jury that the calls are trustworthy for it to rely upon in finding the Defendant guilty—a fact the defense can and likely will contest.[7] But as it relates to trustworthiness for authentication,

---

[6] The defense also argues that if Maya "told the FBI that her role in approving the six calls was to ensure that the audio matched the Hebrew translations" that it transforms her into a testimonial witness, Opp. at 18, but of course the Maya Certificate only concerns the calls' authenticity, not their transcripts or translations. The defense concern is thus, again, a red herring.

[7] As for the defense claim that Maya must "testify at a Rule 104 hearing" because "[t]he government bears the burden on both preliminary questions," Opp. at 17-18, that is not the law either. Rather, because "the Supreme Court has clearly stated that the applicability of the Confrontation Clause does not turn on the reliability or trustworthiness of the testimony," *United States v. Al-Imam*, 382 F. Supp. 3d 51, 61 (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 661 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 318 (2009); *Crawford v. Washington*, 541 U.S. 36, 62 (2004)), it cannot be "that [the Defendant] has the right to confront [Maya] because of perceived untrustworthiness in the certification" because "[i]f that were the case, every defendant would have a Confrontation Clause right to cross-examine a certification's signatory, and any exceptions would swallow the rule," *id.*

the defense both fails to cite a case supporting its claims and also fails to raise any material issue.

To start, most of the defense claims about trustworthiness boil down to complaints about the classified aspects of the ISA's work that are irrelevant to authenticity. The defense complains that "[u]nnamed listeners chose [the Subject Calls from] fifty records," Opp. at 9, but that has nothing to do with whether the Subject Calls themselves are authentic ISA recordings. The defense also complains that a "recording is interrupted," Opp. at 9, but again this speaks only to the evidentiary weight of the record, not whether it's an authentic record stored by the ISA. The defense further notes that "[t]he summary of the day is described as verbatim, though it is not" and of the "ISA [having] summarized six communications for which it produced no audio," Opp. at 9, but the call summaries are not at issue here. The same is true for the defense's requests about "how the system decides whose calls to capture, how it stores and indexes them, who can alter them, and what record it keeps of access," Opp. at 10, which are all concerns that have nothing to do with whether Maya is properly authenticating the Subject Calls at issue and will be to cross-examine upon. The defense fails to cite a single case supporting its opposing the Motion's requested relief throughout this litany of irrelevant concerns, and this Court should dispose of them accordingly.

The defense also complains about "Maya" being "anonymous," Opp. at 10-11, but here too the defense fails to explain why the use of a pseudonym matters. Indeed, the defense here has more information about Maya than virtually any FRE 902(11) or Section 3505 certification affiant this Court would ever see: the defense itself attached an FBI interview of Maya, *see* Opp. at 1 (citing Maya 302), and this Court heard extensive testimony from an agent who helped obtain the Subject Calls from Maya, and the defense was able to cross-examine that agent, *see* [Doc. 114 at 55-57], which is far more than is ever seen for these certifications. *See* [Doc. 87] (nine certificates signed by people never interviewed). So while the defense insists that "[w]ith her identity withheld, the Court has nothing beyond her own description to show that she is a custodian or other qualified

person," Opp. at 11, that is both false and beside the point: it's false because the Court has extensive information concerning the records, and it's beside the point because the Court's sole inquiry is whether the records are authentic. And as far as her use of a pseudonym making her no longer subject to perjury, Opp. at 11, the defense again fails to cite any supporting law when Section 3505's strictures are clear: the affiant swearing under penalty of perjury is enough.

And while the defense also claims that this Court cannot consider anything from the CIPA process, *see* Opp. at 19, it again misses the mark. To start, the defense's supporting authority has nothing to do with authenticating records; rather, *Marzook* concerned the suppression of defendant statements, *see United States v. Marzook*, 435 F. Supp. 2d 708, 712 (N.D. Ill. 2006), and *Abu Ali* involved evidence submitted to the jury, *see United States v. Abu Ali*, 528 F.3d 210, 255 (4th Cir. 2008). For admissibility, as the defense acknowledges, "the court is not bound by evidence rules, except those on privilege." FRE 104(a); Opp. at 16. Courts are "not limited to considering strictly admissible evidence" on this front, *Helpting v. AT&T Corp.*, 439 F. Supp. 2d 974, 991 (N.D. Cal. 2006); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 918 n.6 (N.D. Ill. 2013) (FRE 104(a) "permits this Court to consider evidence of limited or no admissibility …"), and in cases where classified materials are in play at times rely upon them in holding records trustworthy, *see, e.g., United States v. Abu Khatallah*, 278 F. Supp. 3d 1, 8 (D.D.C. 2017) (explaining trustworthiness with heavily redacted text). Which is all to say, this Court is free to consider anything before it for decisions on admissibility, including classified matters. But regardless, the Maya Certificate either standing alone or in conjunction with testimony this Court heard from the FBI, *see* [Doc. 114], is enough to reject the defense's trustworthiness arguments to hold the Subject Calls authenticated.

### *C. Section 3505 is Analogous to FRE 902(11), and the Subject Calls Qualify for Section 3505 Because They, like Jail and 911 Calls, are Records Not Created to Prove Anything at Trial.*

The defense also claims that the law governing FRE 902(11) does not apply to Section 3505, arguing that *United States v. Age*, 136 F.4th 193 (5th Cir. 2025), is distinguishable because

"Rule 902(11) applies only to domestic records." Opp. at 2. What the defense misses, though, is that FRE 902(11)'s caselaw guides this Court's analysis of Section 3505 records because the two pathways to authenticity and admission are identical. Indeed, the defense concedes as much by quoting the FRE 902(12) Advisory Committee that Section "3505 currently provides a means for certifying foreign records of regularly conducted activity in criminal cases, and this amendment is intended to establish a similar procedure for domestic records, and for foreign records offered in civil cases." Opp. at 7. And the law says otherwise too. In *United States v. Anekwu*, for example, the Ninth Circuit applied the law governing FRE 902(11) to Section 3505, noting that the "requirements are substantially similar" and that "[w]ithout any controlling authority on point, it is arguable that certificates of authentication for foreign records presented under [Section 3505] are analogous to certificates of authentication for domestic records presented under" FRE 902(11). 695 F.3d 967, 976 (9th Cir. 2012); *see also, Al-Imam*, 382 F. Supp. 3d at 59 ("Every court that has addressed this issue has concluded that admission of certifications provided pursuant to Rule 803(6)—including § 3505 and its analogs in Rules 902(11) and (12)—does not pose Confrontation Clause problems."); *United States v. Foster*, No. 20-186, 2024 U.S. Dist. LEXIS 8123, at *5-6 (N.D. Ohio Jan. 17, 2024) (applying FRE 902(11) principles to Section 3505).

This matters because it more closely ties the Subject Calls to jail and 911 calls, all three recorded as a routine practice.[8] The defense cites *United States v. Johnson*, 943 F.3d 214, 220-21 (5th Cir. 2019), where a "live witness who administered the jail's automated system showed his knowledge ….," Opp. at 8, for the notion that live testimony is required to authenticate jail calls.

---

[8] The Ninth Circuit's opinion in *United States v. Allen* is also instructive because the defendant there objected to the use of an FRE 902(11) certification because, he claimed, "Facebook does not authenticate the substantive content of its messages (i.e., the discussion of Allen's drug dealing….)" *Id*. Rejecting that argument, the *Allen* court explained that "the only function of Rule 902(11)—and by extension Rule 803(6) in the authentication context—is to certify that the Facebook records are what the government claims they are (i.e., records from Facebook)." *Id*.

Not so. Rather, the Government does not dispute that even a records custodian *can* testify at trial about records, particularly where the evidence is important and reinforcing its authenticity will strengthen the prosecution's case. Indeed, in this case the Government makes no secret of its intent to call "Maya" as a witness at trial to testify about these calls to bolster the jury's trust in their provenance. *See* [Doc. 97 at 6 (discussing Maya as witness); Doc. 102 at 5-6 (same)]. But given the uncertainties involving foreign travel and international relations, the Motion concerns not whether the Government *may* present a witness like in *Johnson* but instead whether it *must*. And there the answer is decidedly No, as with jail and 911 calls.[9] Rather, it is enough to "establish[] the accuracy of the jailhouse recording" when the Government presents "a sworn affidavit from the jail's records custodian attesting that the recordings she supplied consisted of communication recordings for an account number…" when the calls are "received … from the jail's records custodian when he requested records associated with [the defendant]." *Eilen*, 787 F. App'x at 617.

And the records here are like jail and 911 calls because they were created for ISA to do its work, not to generate evidence for trial. The Supreme Court has recognized that such records are "generally admissible absent confrontation ... because—having been created for the administration of the entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324.[10] In this, "[t]he Supreme Court drew a line in *Melendez-Diaz* between new records created as a result of a targeted investigation and existing

---

[9] *See, e.g., United States v. Elien*, 787 F. App'x 614, 617 (11th Cir. 2019) (jail calls properly admitted via certification over defense objection); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (911 calls "can be admitted into evidence as either a public record or a business record" (citations omitted)); *see also, e.g., United States v. Moss*, No. 23-91, 2024 U.S. Dist. LEXIS 170410, at *22 (S.D. Ga. Sept. 20, 2024) ("Under Rule 902(11) …, the recorded jail calls are part of the Chatham County Sheriff's Office's regularly conducted business and are self-authenticating.").

[10] *See also, e.g., United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000) (USDA-OIG audit report admissible under FRE 902(11) because "the audit report was made in the regular course of USDA-OIG's regular activity and … was a regular practice of USDA-OIG to prepare….").

records simply pulled in response to such an investigation…"[11] The same is true of the Subject Calls, which were recorded and maintained in 2023, years before the investigation that led to this prosecution.[12] For that reason, this Court should hold the records admissible under Section 3505.

### *D.* **Biggins'** ***Strictures as to Wire Intercepts Do Not Apply to The Subject Calls, but the Subject Calls and Maya Certificate Meet the*** **Biggins** ***Factors in Any Event.***

Finally, even were the Court to treat the Subject Calls as wire intercepts, it should still hold that the evidence before it is sufficient to find the Subject Calls authenticated. As the defense concedes, "[t]he Fifth Circuit's cases allow flexibility," Opp. at 15, with "'not all of the *Biggins* factors [] thoroughly covered'" where the Fifth Circuit has affirmed authentication. Opp. at 15. Indeed, the Fifth Circuit has recognized that "there are no formalistic standards governing the admissibility of tapes," and that "[t]he trial judge … has broad discretion in determining the admissibility of such evidence." *United States v. Hughes*, 658 F.2d 317, 322 (5th Cir. 1981). In *Hughes*, for example, the absence of "any evidence of the competency of the operator or the fidelity of the recording equipment" was "overshadowed by evidence which demonstrated the reliability of the tapes." *Id*. at 322-23. The same is true in *Green*, where the court was able to find the records reliable without evidence about "the specific workings of the equipment and the operator's

---

[11] *United States v. Rivera-Luna*, No. 10-256, 2026 U.S. Dist. LEXIS 206329, at *11 (D.D.C. Sept. 11, 2026). For these same reasons, the Court should reject the defense's confused request that the Court issue a ruling that "reach[es] only the hearsay question, the accuracy of the recordings [being] shown through a live witness" so that it is free to argue that the ISA's records did not "accurately capture[] the call" or that the set of files is incomplete. Opp. at 12-13. The defense appears to misunderstand what the Court does by holding these records authenticated: the defense will always be free to argue that the phone calls are modified, or cannot be trusted, or the like—that ISA as a records custodian cannot be trusted, much like the defense might argue a "set-up" theory in any other trial. But that does not impact the first-order question of whether the Government can present the evidence in the first place, which is what this Motion concerns.

[12] The fact that the Subject Calls came through the ISA's surveillance program, of course, raises matters of privacy that jail calls do not, which is the subject of the defense's pending motion to suppress and will be litigated. *See* [Doc. 109] (defense suppression motion). But those concerns are irrelevant to the question of authentication, with the question instead turning on the records' purpose, which here was indisputably the ISA's own ends, not proving anything at this trial.

competency." *United States v. Green*, 324 F.3d 375, 380 (5th Cir. 2003); Opp. at 14. So too here, where the Court has a signed certification from an ISA supervisor in Maya, has heard testimony from an FBI agent who has dealt with Maya directly, *see* [Doc. 114], and the defense acknowledges that the FBI has documented its interactions with Maya, Opp. at 1, and also that she is providing genuine copies of the recordings the ISA has retained in an archive, [Doc. 109-1 at 1] (defense stating that records came from "a standing archive in which the State of Israel records [] telephone traffic"). For these reasons, this Court should hold that even were *Biggins* to apply, sufficient information has been placed before the Court to find the calls reliable for *Biggins* purposes.

## CONCLUSION

For all these reasons, the Court should grant the Motion and hold the six intercepted phone calls at issue to be properly authenticated pursuant to 18 U.S.C. § 3505.

Dated: October 10, 2026

Respectfully submitted,

ZACHARY A. KELLER
UNITED STATES ATTORNEY

By: *\/s/ Zachary A. Keller*

ZACHARY A. KELLER
JOHN W. NICKEL
U.S. Attorney's Office – WDLA
Special Bar No. 803262 (Keller)
LA Bar No. 37819 (Nickel)
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Tel: (337) 262-6618
Email: Zachary.keller@usdoj.gov

ELIZABETH J. SHAPIRO
D.C. Bar No. 418925
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5302
Email: Elizabeth.Shapiro@usdoj.gov

D. ANDREW SIGLER
Ala. Bar No. 5175-I72D
Trial Attorney, Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Phone: 202-514-0849
Email: Andrew.sigler@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 10, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
Zachary A. Keller
United States Attorney