UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION UNDER RULE 12(b)(3)(B)(v) TO DISMISS COUNTS 3 AND 4 OF THE SUPERSEDING INDICTMENT AS IMPERMISSIBLE EXTRATERRITORIAL APPLICATIONS OF 18 U.S.C. § 1546(a) AND 18 U.S.C. § 1001**

---

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who respectfully submits this reply in support of his motion to dismiss Counts 3 and 4 of the superseding indictment as impermissible extraterritorial applications of 18 U.S.C. § 1546(a) and 18 U.S.C. § 1001 (Doc. 105).

## I. INTRODUCTION

The government's opposition (Doc. 124) rests on four theories. First, it now says the United States Embassy in Cairo falls within 18 U.S.C. § 7(3), so § 7(9)'s nationality condition never applies. But Congress wrote § 7(9) precisely for mission premises abroad, and the Second Circuit has rejected the government's lead case. Second, it says the nationality condition is met by two people the superseding indictment never mentions. Third, it says the online submission of the visa

application placed Count 3 at the Embassy, but a false statement is located where the speaker makes it, and the government's own records place its preparation in Giza. Fourth, it invokes *Bowman* without applying the framework the Fifth Circuit uses, and *Bowman* itself left open the question this case presents.

## II. ARGUMENT IN REPLY

### A. Section 7(3) does not reach an embassy abroad, and the government's authorities do not hold that it does

The government's lead argument is that the mission in Cairo "qualifies under Section 7(3) as well." (Doc. 124 at 1). That argument cannot be squared with the statute. In 2001 Congress added paragraph (9) to § 7, reaching the premises of United States missions in foreign states, but only "[w]ith respect to offenses committed by or against a national of the United States." 18 U.S.C. § 7(9); USA PATRIOT Act, Pub. L. No. 107-56, § 804, 115 Stat. 272, 377 (2001). Congress enacted § 7(9) "at least in part to 'explicitly extend' § 7's extraterritorial reach to 'U.S. diplomatic and consular premises' overseas." *United States v. Passaro*, 577 F.3d 207, 214 (4th Cir. 2009). Section 7(9) is the provision Congress wrote for mission premises, and Congress conditioned it on nationality. Reading the general language of § 7(3) to reach the same premises without that condition would erase the limit Congress chose.

The government's lead case is *Erdos*, which involved an American defendant and held that § 7(3) embraced an American embassy abroad. *United States v. Erdos*, 474 F.2d 157, 159-60 (4th Cir. 1973). The Second Circuit has rejected that reading. *United States v. Gatlin*, 216 F.3d 207, 214-15, 223 (2d Cir. 2000) (rejecting *Erdos* and

holding "that 18 U.S.C. § 7(3) does not apply extraterritorially"). In an opinion the government quotes on another point (Doc. 124 at 12), the Southern District of New York held that "United States embassy premises in foreign countries are not" within § 7(3). *United States v. Bin Laden*, 92 F. Supp. 2d 189, 214-15 (S.D.N.Y. 2000).

The government's remaining cases do not say otherwise. The passage the government cites as *Agee v. Muskie* "holding" the Tehran embassy within § 7(3) (Doc. 124 at 6) appears in an appendix to a dissent, which itself acknowledged that embassy ground "is not officially United States territory," and the judgment was reversed. 629 F.2d 80, 111-12 (D.C. Cir. 1980) (MacKinnon, J., dissenting), *rev'd sub nom. Haig v. Agee*, 453 U.S. 280 (1981). *Corey* framed its holding as one that "applies to Americans," and it recognized that "questions might arise if the same interpretation of subsection 7(3) authorized the government to prosecute a foreign citizen." *United States v. Corey*, 232 F.3d 1166, 1172, 1179 (9th Cir. 2000). And *Pizzarusso*, quoted for the history of consular perjury prosecutions, described as "somewhat novel" the "theory that the United States Consulate was part of United States territory," in the footnote to the very sentence the government quotes. *United States v. Pizzarusso*, 388 F.2d 8, 11 n.7 (2d Cir. 1968).

Section 7(3) also requires lands "under the exclusive or concurrent jurisdiction" of the United States, a separate requirement under *Corey* itself. 232 F.3d at 1177 n.6. The government raised § 7(3) for the first time in its opposition, yet neither the superseding indictment nor the opposition says anything about how the Embassy

premises were acquired or what jurisdiction the United States holds there.

### B. The superseding indictment alleges no national of the United States, and neither the bill of particulars nor section 2 can supply one

The government agrees that § 7(9) reaches only "offenses committed by or against a national of the United States." (Doc. 124 at 7). That condition is "a factual element that the jury had to find." *United States v. Khatallah*, 41 F.4th 608, 628 (D.C. Cir. 2022). An indictment that omits an element "fails to charge that offense." *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999). Neither Count 3 nor Count 4 names any national of the United States. (Doc. 60, Counts 3 and 4 ¶ 2).

The government fills that gap with two people the indictment never mentions: Mr. Al-Muhtadi's wife for Count 3, whose citizenship appears only in the bill of particulars, and the consular employee for Count 4, whose citizenship appears nowhere in the record. (Doc. 124 at 7, 9-10; Doc. 85 at 5). It asks the Court to take judicial notice of both, in the same paragraph in which it asks the Court to "limit itself to the charging documents." (Doc. 124 at 3). That request concedes that the facts are not in the indictment, and "it is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962); *accord United States v. Hoover*, 467 F.3d 496, 498 n.2 (5th Cir. 2006).

Section 2 does not change the answer. Ms. Al-Ghazzawi's role and citizenship appear nowhere in the superseding indictment, and the bill of particulars names her only as the person Mr. Al-Muhtadi "could be proved to have aided and abetted." (Doc. 85 at 5). The same bill preserves the argument "that the Defendant directly

committed this crime as well." (*Id.* at 5 n.5). On that theory no national is involved at all. The government's § 2 cases hold that an aider and abettor is punished as a principal and that § 2 creates no separate offense. *United States v. Thorn*, 917 F.2d 170, 175 (5th Cir. 1990); *United States v. Rabhan*, 540 F.3d 344, 348 n.15 (5th Cir. 2008). None holds that § 2 can carry a statute past a jurisdictional limit, and the aiding-and-abetting statute "is not so broad as to expand the extraterritorial reach of the underlying statute." *United States v. Yakou*, 428 F.3d 241, 252 (D.C. Cir. 2005). In *Yakou* the son was undisputedly a United States citizen, yet the father could not be prosecuted as his aider. *Id.* at 245, 254.

*Khatallah* does not help the government. The opposition says the D.C. Circuit "rejected the notion" that the nationality question turns on the facts of the charged offense. (Doc. 124 at 9-10). But *Khatallah* held the opposite. 41 F.4th at 626. The facts there included Americans whose lives were placed in jeopardy, and "[w]hen placing a person in jeopardy is an element of the offense, that offense is committed against the person threatened." *Id.* at 625. The defendant's vicarious liability for his co-conspirators' attack decided whose conduct he answered for. *Id.* at 625-26. The nationals who satisfied § 7(9) were the Americans endangered by that attack, not his co-conspirators.

Count 4 fails for a related reason: § 1001(a)(2) has no element that makes the listener a victim. The government notes that Pattern Instruction 2.45 is titled "False Statements to Federal Agencies and Agents." (Doc. 124 at 10). The elements are what

matter, and the fifth requires that "the defendant made the false statement willfully for the purpose of misleading" the named agency. Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.45 (2024). Section 1001 protects "the authorized functions of governmental departments and agencies," not the employee who hears the statement. *United States v. Gilliland*, 312 U.S. 86, 93 (1941). And "that an act affects the citizen of a state is not a sufficient basis for that state to assert jurisdiction over the act." *United States v. Columba-Colella*, 604 F.2d 356, 360 (5th Cir. 1979).

### C. Presenting the application online placed nothing on the Embassy premises

The government notes that Count 3 charges presentment as well as making and subscribing, and argues that "[b]y submitting the form electronically, he was submitting it to the Cairo Consulate." (Doc. 124 at 9 n.4; Doc. 60, Count 3 ¶ 2). Count 3 does charge presentment, but that does not move the offense. The government's records place the preparer at a residence in Giza and show the form signed and submitted electronically. (Defense Exhibit 1 at 8-10). The government does not dispute its own certified records, and its presentment argument rests on the same electronic submission. (Doc. 124 at 3, 9 n.4; *see* Doc. 105-1 at 5-7). Venue and the special maritime and territorial jurisdiction both fix an offense in space. (Doc. 105-1 at 14-15). A falsification "occurs wherever the falsification does," not where its intended effects land, *Abouammo v. United States*, 608 U.S. 597, 604 (2026), and "the false statement offense is complete when the statement is made," *United States v. Fortenberry*, 89 F.4th 702, 707 (9th Cir. 2023).

*Ashley* is a bank-theft case in which the "tak[ing] and carr[ying] away" of funds was accomplished by a wire transfer completed in the district. *United States v. Ashley*, 128 F.4th 641, 654 (5th Cir. 2025). Section 3237(a) is a venue statute, and venue is not challenged. (Doc. 105-1 at 3 n.1). Presentment, wherever it occurred, still requires a national of the United States. Nor does the August 6 interview move Count 3 to the Embassy. The government assigns that interview to Count 4, which "concerns a false statement the Defendant gave at the Cairo Consulate to a consular official, swearing to the veracity of the visa application." (Doc. 124 at 6). Count 3 charges conduct on or about June 26, 2024. (Doc. 60, Count 3 ¶ 2).[1]

### D. *Bowman* and the protective principle do not supply the clear indication the government never looks for in the text

The government does not apply the framework the Fifth Circuit uses. It does not cite *United States v. Vasquez*, 899 F.3d 363 (5th Cir. 2018), which rejected the government's "puzzling position that *RJR Nabisco* does not apply to criminal cases." *Id.* at 373 n.6. It says nothing about the text of § 1546(a) or § 1001, or about where the conduct relevant to each statute's focus occurred. (*See* Doc. 105-1 at 17-19, 21-23). It relies on *Bowman* instead.

*Bowman* reserved the question this case presents. Of the defendant who was "a subject of Great Britain," the Court said that "it will be time enough to consider

[1] The government says Counts 3 and 4 both allege conduct "and elsewhere." (Doc. 124 at 11 n.5). Count 4 does not. (Doc. 60, Count 4 ¶ 2). In the cases the government cites, the phrase followed a named district where conduct occurred. *United States v. Rafoi*, 60 F.4th 982, 998-99 (5th Cir. 2023); *United States v. Giles*, 756 F.2d 1085, 1086-87 (5th Cir. 1985). In Count 3 it follows only the special maritime and territorial jurisdiction and the found-and-arrested allegation. (Doc. 60, Count 3 ¶ 2).

what, if any, jurisdiction the District Court below has to punish him when he is brought to trial." *United States v. Bowman*, 260 U.S. 94, 102-03 (1922). The government answers with a sentence from *Bin Laden*: "no court, to date, has refused to apply the *Bowman* rule on the ground that the defendant was a foreign national." (Doc. 124 at 12). On the same page, *Bin Laden* acknowledged that "it would be inaccurate to say that *Pizzarusso* held that *Bowman* applies to conduct performed by foreign nationals on foreign soil." 92 F. Supp. 2d at 195 n.5. And the D.C. Circuit has rejected the government's broad reading of *Bowman* because it "requires treating almost all the discussion in *Bowman* and *Delgado-Garcia* as surplusage." *United States v. Garcia Sota*, 948 F.3d 356, 360 (D.C. Cir. 2020).

The protective principle does not fill the gap, because it addresses whether international law permits Congress to reach conduct abroad, not whether Congress did. *See United States v. Rojas*, 812 F.3d 382, 391 (5th Cir. 2016). The government's Fifth Circuit case involved a defendant who "recruited drug couriers within the United States," and the court did not "address the question of application of § 959(b) to a crime where absolutely no actions related to the crime were committed in the United States." *United States v. Lawrence*, 727 F.3d 386, 395 (5th Cir. 2013). *Villanueva* rested on § 1324's "bring to" language, because a failed attempt to bring aliens to the United States by land "will ordinarily be stopped outside of U.S. territory." *United States v. Villanueva*, 408 F.3d 193, 198-99 (5th Cir. 2005). Neither § 1546(a) nor § 1001 contains anything comparable. And neither *United States v. De*

*Bruhl-Daniels*, 118 F.4th 735, 739-41 (5th Cir. 2024), nor *United States v. Williams*, 616 F.2d 759, 761 (5th Cir. 1980), considered extraterritoriality. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

Finally, the government says the opening memorandum argued that *Bowman* was overruled. (Doc. 124 at 12 n.6). It did not. It argued that "[w]hatever force *Bowman* retains, it cannot supply the clear, affirmative indication the modern framework requires." (Doc. 105-1 at 22-23). The government has not identified one. Its remaining arguments are answered in the opening memorandum. (Doc. 105-1 at 5-7, 16-23).

## III. Conclusion

For these reasons and those in the opening memorandum, Mr. Al-Muhtadi respectfully requests that the Court dismiss Counts 3 and 4 of the superseding indictment.

.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
First Assistant / Appellate Chief

*s/ Aaron A. Adams*

AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 13, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***