UNITED STATES DISTRICT COURT

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 25-00285-1** |
| **VERSUS** | **JUDGE JOSEPH** |
| **MAHMOUD AMIN YA'QUB AL-MUHTADI** | **MAGISTRATE JUDGE WHITEHURST** |

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS 1 AND 2 OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND FOR UNCONSTITUTIONAL VAGUENESS**

---

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who respectfully submits this reply in support of his motion to dismiss Counts 1 and 2 of the Superseding Indictment (Doc. 108).

## I. INTRODUCTION

The government's opposition, read together with its earlier representations to the Court, narrows this motion to a single question of law. The government now says there are "no issues of conduits or control" here, because Mr. Al-Muhtadi is "charged with providing and attempting to provide material support directly to HAMAS, on the battlefield." (Doc. 126 at 11). It agrees that it "must offer sufficient proof at trial" that the personnel or services alleged "satisfy the requirements in Section 2339B(h)." (*Id.* at 8 n.2). And it again tells the Court that the complaint affidavit "provides a

detailed factual account of what the Government expects to prove at trial." (*Id.* at 1).

That question is whether Hamas directed or controlled Mr. Al-Muhtadi. On the government's own account, the only link between them is that he "heard the call to arms" that Hamas broadcast to the public. (*Id.* at 9). A public call to arms is not direction or control. The government's misreading of a recent Second Circuit decision and its new evidence from outside the affidavit do not change that, and the question is one of law the Court can decide now. The government does not defend its weapons theory at all.

## II. ARGUMENT IN REPLY

### A. The government now concedes that the case turns on whether Hamas directed or controlled Mr. Al-Muhtadi, and its own affidavit says only that he heard a public broadcast

The government has disclaimed the intermediary theory the opening memorandum anticipated under *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011). (Doc. 108-1 at 9-11). It says there are "no issues of conduits or control" and that the charge is support "directly to HAMAS." (Doc. 126 at 11). It says Mr. Al-Muhtadi's membership in the DFLP and NRB is "highly relevant to his state of mind." (*Id.* at 10). And it says "[t]he charge does not depend on the group to which the Defendant belongs, but on his own actions in support of HAMAS." (*Id.* at 13).

Those concessions take organizational coordination out of the offense. What remains is the statute's direct requirement. A person who provides himself as personnel must work "under that terrorist organization's direction or control," and

"[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h). "Service" carries the same limit. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23-24 (2010). The statute "reaches only material support coordinated with or under the direction of a designated foreign terrorist organization." *Id.* at 31. The government agrees that § 2339B(h) supplies the standard for both theories. (Doc. 126 at 8 n.2).

On the facts the government says it will prove, Hamas's military commander addressed "the masses" and "everyone who has a rifle," and Mr. Al-Muhtadi "heard Hamas's call to arms." (Doc. 1-1 ¶¶ 9, 84). The government's brief says the same thing: when he "heard the call to arms from HAMAS Commander Mohammed al-Dief," he "organized the collection of arms with others and headed 'east.'" (Doc. 126 at 9). But none of the alleged recorded phones calls of the defendant on October 7 are with Hamas members. (Doc. 1-1 ¶¶ 50-67). The government identifies no instruction, assignment, or communication from Hamas to him.

That is the conduct that was excluded by Congress: individuals who "act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h). The Supreme Court used that exclusion to construe "service," holding that Congress "would not have prohibited under 'service' what it specifically exempted from prohibition under 'personnel,'" and

that the statute "reaches only material support coordinated with or under the direction of a designated foreign terrorist organization." *Humanitarian Law Project*, 561 U.S. at 24, 31. Applying these principles, the Second Circuit held that a defendant who acted on a terrorist group's public messages was "not constrained by ISIS's hortatory, open-ended message," and that this "total absence of constraint is inconsistent with the plain meaning . . . of acting 'under' someone else's 'direction or control.'" *United States v. Ullah*, 173 F.4th 399, 416 (2d Cir. 2026).

### B. *Ullah* describes a foreign fighter as one who joins the terrorist group's ranks, and the government's new evidence shows the DFLP directing its own members

The government says *Ullah* treated the "foreign fighter" as "a fact pattern the court recognized as obviously giving rise to a charge of material support through the rendering of services, including oneself," and that Mr. Al-Muhtadi "is akin to the foreign fighter." (Doc. 126 at 8-9). *Ullah* said something different. It distinguished three earlier cases on the ground that "[e]ach of those individuals plainly attempted to submit to the 'direction or control' of a terrorist group by joining its ranks," and it added: "We do not hold that the 'personnel' prong only applies to 'foreign fighters' who travel abroad or submit to operational command structures." 173 F.4th at 420. The term came from the government's expert, who described foreign fighters as people who "submit formally and completely to the direction and control of ISIS." *Id.* at 420 n.11. On *Ullah*'s terms, a foreign fighter joins the designated organization. The indictment alleges that Mr. Al-Muhtadi was a member of the DFLP and NRB. (Doc.

60 at 2). It does not allege that he joined Hamas.

The government's attempt and conspiracy theories fare no better. The government compares Mr. Al-Muhtadi to a fighter who "attempts to pick up arms and join the fight" and says he "joined HAMAS in its rampage." (Doc. 126 at 1, 9). But the defendants whom *Ullah* described attempted to submit to the terrorist group itself. Section 2339B(h) applies the direction-or-control requirement to a person who has "attempted to provide, or conspired to provide" personnel, not only to one who has provided it. 18 U.S.C. § 2339B(h). Nothing the government relies on shows that Mr. Al-Muhtadi sought to report to Hamas, join it, or take orders from it. The conspiracy count turns on the same point. An agreement among NRB members to act independently of Hamas is not an agreement to commit the offense § 2339B defines.

For the first time, the government also relies on its battlefield exhibits to assert that Hamas "disciplined" Mr. Al-Muhtadi "for firing missiles into Israel without authorization years before the October 7 attacks." (*Id.* at 9). That fact is not in the affidavit the government called its factual account. And taken at face value, without conceding their admissibility, the exhibits do not show Hamas directing him. They describe a 2020 mortar firing as "contrary to the national consensus" (Doc. 45-3), and they record one participant's statement that "the Democratic Front leadership had assigned them the task of firing three mortar shells" (Doc. 45-4). On the government's own exhibits, the order to fire came from the DFLP. Hamas's role was to investigate the firing afterward, not to assign this man work.

### C. The Court can decide this motion now because the government has committed to its theory

Citing *United States v. Korn*, 557 F.2d 1089, 1091 n.3 (5th Cir. 1977), the government argues that a pretrial motion is "only appropriate" when trial would be of no assistance. (Doc. 126 at 6). *Korn* says a defense "is capable of determination" in that circumstance. 557 F.2d at 1091 n.3. It also says, in the sentence the opening memorandum relied on and the government omits, that "[i]f a question of law is involved, then consideration of the motion is generally proper." *Id.* at 1090. The Fifth Circuit has held that "dismissing an indictment based on the resolution of a legal question in the presence of undisputed facts is authorized." *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *accord United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). The government does not cite *Flores* or *Fontenot*.

The legal question here is fixed by the government's own choices. It has said that its personnel, weapons, and services theories are the ones in the affidavit (Doc. 85 at 2), that "[t]here is no alternative set of facts that the Government has relied upon in acquiring the Superseding Indictment" (Doc. 72 at 13),[1] and that the affidavit is what it expects to prove (Doc. 126 at 1). Its theory is direct support to Hamas by a man who answered a public call to arms. Whether that theory states an offense under § 2339B is a question of law. More evidence of the same theory would

[1] This reply cites each docket entry by the page number printed at the bottom of the page. The opening memorandum cited this passage by its ECF page number, as Doc. 72 at 18. (Doc. 108-1 at 5). It is the same passage.

not change the answer, and the government has not suggested a different one.

The government's other authorities do not reach this question. *United States v. Rubin*, 743 F.3d 31 (2d Cir. 2014), which the government cites for the test of facial validity (Doc. 126 at 2), addressed what an indictment must allege "to invoke a district court's jurisdiction," and it held that whether the charged conduct is a crime "concerns the merits of the case." 743 F.3d at 38-39. And the cases holding that § 2339B(h) need not be pleaded (Doc. 126 at 8 n.2) answer an argument the defense has not made. The motion argues that the facts the government says it will prove fall within § 2339B(h)'s exclusion, and the government agrees that § 2339B(h) governs. (*Id.*).

**D. The government does not defend the weapons theory or answer the knowledge argument**

The opening memorandum showed that the weapons theory fails (Doc. 108-1 at 17-18), because weapons are "not forms of support that could be provided independently of a foreign terrorist organization," *Humanitarian Law Project*, 561 U.S. at 24, and the weapons the affidavit describes were either NRB property (Doc. 1-1 ¶ 31) or gathered on October 7 by and for Mr. Al-Muhtadi's own group (*id.* ¶¶ 56-61). The government does not respond, and it now describes the charge as providing "himself and his services." (Doc. 126 at 1-2). Because the government identifies no weapon provided to Hamas, the weapons theory fails as a matter of law, and at minimum it should be struck.

The government also does not answer the knowledge argument. It says the

defense portrays Mr. Al-Muhtadi "as someone who had no idea of 'any relationship between his organization and Hamas on October 7, 2023.'" (*Id.* at 9). The opening memorandum said something different: that nowhere in its briefing or its bill of particulars "did the government assert that Al-Muhtadi knew of any relationship between his organization and Hamas on October 7, 2023." (Doc. 108-1 at 17).[2] The government still points to no such allegation. (*See* Doc. 126 at 9).

### E. The *Holy Land* order rested on allegations of control and knowledge that this indictment does not contain

The government says the *Holy Land* court rejected "a weaker version" of this argument, and that "[i]f the evidence showed – as it did – that the so-called humanitarian organizations were controlled by HAMAS, there was nothing vague or deficient about the indictment." (Doc. 126 at 11). The *Holy Land* order was a pretrial ruling on the indictment's allegations. The indictment alleged that the defendants sent money to organizations "which operated on behalf of, or under the control of, HAMAS." *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-cr-240, ECF No. 650 at 4 (N.D. Tex. May 23, 2007). The court held that the defendants violated the statute if they "intended that the organizations to whom they gave money should pass the money to Hamas," as the indictment there alleged. *Id.* at 5. And it held that the statute "would be unconstitutional in its application to the defendants only if it

[2] Counts 1 and 2 allege that Mr. Al-Muhtadi acted "knowing that HAMAS was a designated foreign terrorist organization," that Hamas "has engaged and engages in terrorist activity," and that Hamas "has engaged in terrorism." (Doc. 60 at 3, 4). That is knowledge of Hamas's status. The indictment nowhere alleges that he knew the DFLP or the NRB coordinated with Hamas, or that his own conduct constituted support to Hamas.

sought to punish them for innocently giving money to organizations which they later learned were affiliated with Hamas." *Id.* at 5-6. This indictment contains no control allegation and no allegation that Mr. Al-Muhtadi knew of any relationship between the DFLP and Hamas, and the government has now disclaimed any theory of conduits or control.

### F. The government's narrowed theory supports the alternative relief

The government's narrowed theory also supports the alternative relief. The government says Mr. Al-Muhtadi is charged for "his conduct on the morning of October 7, 2023," and that the date is "the date of the material support for HAMAS at the center of the offense." (Doc. 126 at 12-13). On the government's own description of the charge, evidence from 2017 or 2025 can be offered only to show knowledge or intent, not as the material support itself. The government describes *United States v. Warsame*, 537 F. Supp. 2d 1005 (D. Minn. 2008), as having "deferred ruling" (Doc. 126 at 14), but the court held that the challenged allegations "would be inadmissible as evidence of guilt unless the prosecution ties such evidence to additional conduct that would constitute provision of 'personnel' under the statute." 537 F. Supp. 2d at 1018. The same order is warranted here.

The government's remaining arguments are answered in the opening memorandum. (Doc. 108-1 at 7-11, 14-16, 19-24).

## III. CONCLUSION

For these reasons and those in the opening memorandum, Mr. Al-Muhtadi

respectfully asks the Court to dismiss Counts 1 and 2 of the Superseding Indictment. In the alternative, he asks the Court to strike the weapons theory from Counts 1 and 2 and to order that evidence not tied to conduct constituting support to Hamas is inadmissible as evidence of guilt on those counts.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 13, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***