# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM STAFFORD KING,<br><br>Defendant. | Case No. 24 CR 153<br><br>Hon. LaShonda A. Hunt |

## ORDER

Currently before the Court are Defendant's motions in limine (Dkt. 82) and the Government's motions in limine (Dkt. 85), notice of intent to introduce other acts evidence under Rule 404(b) (Dkt. 102), and supplemental motions in limine (Dkt. 167).[1] For the reasons discussed below, the parties' respective motions are granted in part, denied in part, and denied as moot. An updated final joint pretrial statement is due by May 19, 2026.

## STATEMENT

### I. Background

Defendant Adam King is charged with distributing and receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) (Counts 1-3) and altering, destroying, concealing, and covering up data and records related to the "@pervchidude" Telegram account with intent to impede, obstruct, and influence an investigation in violation of 18 U.S.C. § 1519. (Second Superseding Indictment ("SSI"), Dkt. 100). His case is set for a jury trial starting on May 29, 2026.

[1] Defendant's supplement to its motions in limine (Dkt. 96) is merely a list of its motions indicating whether they are opposed and therefore terminated as a pending motion on the docket.

(Dkt. 177). The following allegations are relevant to the parties' motions in limine and are gleaned from various filings on the docket.

**A. <u>2017 Uncharged Conduct</u>**

In 2017, police received a tip that two images suspected to be child pornography were uploaded to an online account that listed a secondary email connected to Defendant. Police interviewed Defendant and his husband regarding the tip. The ages of the individuals in the images could not be determined, and Defendant was never charged in connection with them.

**B. <u>2023 Charged Conduct</u>**

On October 5, 2023, the Federal Bureau of Investigation ("FBI") executed a search warrant at the Manhattan, New York, residence of Bryan Austermann. During the search, agents seized a cell phone and discovered communications over Scruff and Telegram between Austermann and @pervchidude on Telegram. A review of the chat revealed that they had exchanged ten child pornography videos (five each) on September 11, 2023.

The FBI then obtained Austermann's consent to use his Telegram account to continue its investigation. A special agent assigned to the case served as the online covert employee ("OCE") who chatted with @pervchidude using Austermann's account. Between November 9, 2023, and February 14, 2024, the OCE used Austermann's Telegram account to chat with @pervchidude and obtained biographical information and personal details that led law enforcement to believe that @pervchidude was used by Defendant. During those chats, child pornography was sent from @pervchidude to Austermann's account again on December 11, 2023.

**C. <u>2024 Search</u>**

On March 5, 2024, the FBI executed a search warrant at Defendant's home. Agents encountered Defendant in his bathroom. Body camera footage shows Defendant holding his cell

phone as an agent entered the room and seized the phone. A forensic search of the phone revealed that the Telegram app and access to its cloud-based contents had been deleted seconds before it was seized.

### D. Identity Theft

Following Defendant's arrest on March 22, 2024, there appears to have been multiple attempts to use his identity for financial gain by unknown third parties. Specifically, in May 2024, Defendant claims that unknown persons, pretending to be him, called a credit agency, attempted to obtain an auto loan, used his mobile phone account, and attempted to access bank accounts.

### E. OPR Investigation

The OCE was the subject of an investigation by the FBI Office of Professional Responsibility ("OPR") regarding the mishandling of evidence accessed during a cyber intrusion by a hacker around February 2023. The investigation concluded in December 2025, when the OCE received a five-day unpaid suspension. None of the materials submitted regarding the investigation suggest that the mishandling of evidence by the OCE that was the subject of the investigation involved any issues with evidence contamination, chain of custody, or otherwise compromised the authenticity or integrity of evidence for purposes of reliability in prosecution of the case.

### F. Telegram Records

During the course of its investigation, the Government requested information regarding the @pervchidude account from Telegram. Requests for information were sent to a non-public email account represented by the Government to be a reliable source of such information from Telegram. The data provided in response to the request identifies the @pervchidude account's user number, phone number, IP address, and last login time, among other things. Because Telegram is based in a foreign jurisdiction and has not certified that the records were produced as records of a regularly

conducted business activity, the Government submitted affidavits of three special agents and communications with an attorney for Telegram to support the reliability of the source and contents of information obtained from Telegram.

## II. <u>Legal Standard</u>

A motion in limine should be granted only if the evidence in question would be inadmissible for any purpose. *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy[,] and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Denial of a motion in limine "simply means the court cannot determine whether the evidence in question should be excluded outside of the trial context" and therefore does not preclude an objection regarding the same evidence later at trial. *United States v. Lillie*, 669 F. Supp. 2d 903, 905-906 (N.D. Ill. 2009). Indeed, as the trial unfolds, a court may reconsider and alter a previous ruling on a motion in limine, even absent an objection. *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)).

## III. <u>Discussion</u>

The parties' respective motions in limine were argued on March 12, 2026, and fully briefed as of April 12, 2026. The Court will address each in turn.

### A. <u>Defendant's Motions in Limine</u>

#### 1. <u>Scruff and Telegram Chats</u>

Defendant moves to bar, exclude, or otherwise preclude the Government from introducing evidence regarding five categories of chats that took place on Scruff and Telegram, which he argues are inadmissible under Federal Rules of Evidence 401, 403, and 404(b): (a) chats

referencing Defendant's then-expected son; (b) chats describing contact with or interest in children; (c) chats describing a child pornography collection; (d) chats mentioning "pervs" or "pedos"; and (e) chats outside of September 11, 2023, and December 11, 2023. (Def. Mot. in Limine, Dkt. 82 at 479-489).[2] The Government contends that each category is relevant, does not pose a danger of unfair prejudice, and is admissible for recognized non-propensity purposes. (Gov't Resp. to Def. Mot. in Limine, Dkt. 99 at 594-602; Gov't Rule 404(b) Notice, Dkt. 102). Defendant responds that the non-propensity purposes advanced by the Government are inapplicable here. (Def. Resp. to Gov't Rule 404(b) Notice, Dkt. 139).

"All evidentiary questions begin with Rule 402, which contains the general principle that '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not.'" *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011) (quoting *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009)).

---

[2] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header, not other page numbers in the header or footer of the document. In addition, subsequent citations will refer to the docket number only and not the title of the filing for clarity and brevity.

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" except it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[,]" subject to certain notice requirements in criminal cases. Fed. R. Evid. 404(b). The "process of using other-act evidence . . . has four components: [first,] whether the evidence is relevant (Rules 401 and 402); [second,] whether it is categorically inadmissible under Rule 404(b); [third,] whether if not foreclosed by Rule 404(b) it should be excluded under Rule 403; and finally, if the evidence is admissible, how the judge informs the jury about permissible and forbidden inferences." *United States v. Lawson*, 776 F.3d 519, 522 (7th Cir. 2015) (citing *Gomez*, 763 F.3d 845). When evaluating the admissibility of evidence under Rule 404(b), "the district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Gomez*, 763 F.3d at 856. If evidence is admissible under Rule 404(b), a proper limiting instruction should be given to the jury about permissible and forbidden inferences. *Lawson*, 776 F.3d at 522. With these principles in mind, the Court will address each category of chats in turn.

**a. <u>Chats Referencing Defendant's Son</u>**

Defendant moves to bar chats referencing his then-unborn son, including those regarding the child's due date, ultrasound photo, surrogacy, presents received, the child's nursery, and future sexual contact with the child under Federal Rules of Evidence 401, 403, and 404(b). (Dkt. 82 at 479-483). As part of the Government's case-in-chief, it must prove that Defendant is the person who was using the @pervchidude Telegram account during the relevant communications with

Austermann and the OCE through Austermann's account. Chats including details, information, and images regarding the baby's due date, ultrasound, nursery, surrogacy, and presents all tend to make it more probable that Defendant was the person using the account to send messages on the relevant dates. Fed. R. Evid. 401. Although admitting evidence of chats regarding Defendant's expected child poses a danger of prejudice because the charges in this case involve child pornography, such prejudice is not unfair and does not substantially outweigh the probative value of the evidence. Fed. R. Evid. 403; *Chambers*, 642 F.3d at 596 ("Sexual abuse of a child or the attempt thereof is a disgusting crime and any evidence of it is no doubt unfavorable to the defendant, but here it was not unfairly prejudicial.").

In a case where the Government must affirmatively prove Defendant is the person who used the account on the relevant dates and also potentially respond to a defense based on stolen identity, the personal details and information shared in these chats are particularly probative. Furthermore, to the extent that the chats regarding Defendant's son fall under Rule 404(b), they are admissible for the purpose of proving identity. So long as the evidence is cast in that light, the Court has no reason to believe that the jury will consider it for any improper purpose. *Chambers*, 642 F.3d at 595 (juries presumably limit their consideration of evidence and testimony in accordance with courts' instructions). In addition, based on the current record, it appears that these chats (and others discussed below) all occurred within a relatively short period of time surrounding the dates of the charged conduct and are also supported by evidence sufficient for a jury to conclude that Defendant was the person using the @pervchidude Telegram account. With respect to the chats regarding future sexual contact with Defendant's son, the Government indicated that it "can redact these portions from the Telegram chat and does not intend to introduce the statements into evidence." (Dkt. 99 at 595, n.1). Thus, the most prejudicial and least probative portion of the

Case: 24-2850 Document: 155-5 Filed: 10/15/2026 Page 8 of 32 Page 8 of 32 PageID #: 2097

chats will not be shown to the jury and are not at issue. Accordingly, Defendant's motion in limine regarding chats about his son is denied, except as to future sexual contact, which is moot because the Government agreed to redact such content.

**b. Chats Referencing Contact with or Interest in Minors**

Defendant moves to bar chats referencing contact with or interest in minors under Rules 401, 403, and 404(b). (Dkt. 82 at 483-486). While the Government does not intend to offer into evidence "statements of defendant's claimed past or future planned acts of hands-on abuse of minor children[,]" it does plan to offer into evidence statements regarding an interest in children (e.g., "single digits are my fav", "0-9 my fav", and "B and g"), (Dkt. 99 at 597). The Court agrees with the Government that statements regarding an interest in children are relevant to proving Defendant's knowledge and intent in distributing and receiving child pornography and also finds that they are relevant to motive, state of mind, and lack of mistake. *United States v. Knope*, 655 F.3d 647, 655-660 (7th Cir. 2011)*,* 655 F.3d at 655-660 (affirming trial court's admission of online chats regarding non-charged attempts to entice a minor to show defendant's motive, intent, and plan to commit the crimes charged); *Chambers*, 642 F.3d at 595 (affirming trial court's admission of online chats with undercover agents during which defendant sent child pornography and boasted about having sex with a child to show intent, absence of mistake, and motive); *Zahursky*, 580 F.3d at 524-525 (affirming admission of chats in which defendant admitted to having sex with minor and expressed sexual interest in minors to show intent and motive because prior instances of sexual misconduct may established a defendant's sexual interest in children and thereby serve as evidence of motion to commit the charged offense). Furthermore, the Court agrees that these statements are relatively anodyne in a case where the subject matter is inherently sensitive. Because the Government will not be offering some of the more inflammatory content regarding Defendant's

son and hand-on abuse of minors into evidence, the potential prejudice of these other statements is lessened as well. Accordingly, Defendant's motion in limine regarding chats referencing contact with or interest in minors is denied as to statements regarding an interest in children and moot as to statement regarding contact with minors.

**c. <u>Chats Describing Child Pornography Collection</u>**

Defendant moves to bar chats describing a collection of child pornography under Rules 401, 403, and 404(b). (Dkt. 82 at 486-488). The chats referencing a collection of child pornography are relevant to proving all of the charges against Defendant. With respect to the receipt and distribution charges, the possession of a collection of child pornography tends to make it more probable that Defendant had the willingness, ability, and opportunity to send and receive such materials. As to the obstruction offense, the chats go directly to the core issue—i.e., whether by deleting his Telegram account, Defendant was altering, destroying, concealing, and covering up data and records related with intent to impede, obstruct, and influence an investigation. For reasons similar to those discussed in connection with the other chat subject matter, admission of these chats does not pose a danger of unfair prejudice. Accordingly, Defendant's motion in limine regarding chats describing a collection of child pornography is denied.

**d. <u>Chats Mentioning the Terms "Perv" or "Pedo"</u>**

Defendant moves to exclude any chats which mention the phrases "perv" or "pedo" under Rules 401, 403, and 404(b). (Dkt. 82 at 487-488). The name of the account that Defendant was allegedly operating is "@pervchidude," which, as the Government notes, includes the term "perv." Thus, not only are chats using the terms "perv" and "pedo" relevant to proving his identity, but such evidence is also relevant to proving motive, knowledge, intent, and modus operandi. Considering that the username includes "perv," it is hard to imagine how admitting chats that

separately use the terms "perv" or "pedo" would pose any danger of unfair prejudice. In light of the varying uses of the terms, such evidence is corroborating rather than cumulative. Accordingly, Defendant's motion in limine regarding chats with the terms "perv" or "pedo" is denied.

**e. Chats Outside September 11, 2023, and December 11, 2023**

Defendant moves to bar any chats on Scruff and Telegram that took place outside of September 11, 2023, and December 11, 2023, the dates on which he allegedly sent and received child pornography. (Dkt. 82 at 488-489). In these chats, Defendant allegedly shared details about his name, family, occupation, and travel, among other things. Although the charged conduct took place on only September 11, 2023, December 11, 2023, and March 5, 2024, when Defendant allegedly sent and received child pornography and deleted Telegram, messages outside of the September and December 2023 dates are relevant to provide important context, show Defendant's knowledge, motive, and modus operandi (moving chats from Scruff to Telegram to exchange pornographic material), and establish that Defendant was the person using the @chipervdude Telegram account during the relevant time period, especially in light of this identity theft defense. Accordingly, Defendant's motion in limine to bar any chats outside of September 11, 2023, and December 11, 2023 is denied.

**2. Other Adult Sexual Conduct**

Defendant next moves to bar any evidence of sexual conduct with adults other than his husband under Rules 401, 403, and 404(b). (Dkt. 82 at 489-490). The Government seeks to introduce such evidence, but only to the extent necessary to prove that Defendant was using his phone on the dates in question. The Court agrees that the evidence would be relevant for such a purpose, however, there does not appear to be any reason why the portions of the chats referencing sexual conduct would need to be included. Indeed, such details are largely irrelevant and pose a

danger of unfair prejudice. Accordingly, Defendant's motion in limine to bar evidence of sexual conduct with adults other than his husband is granted in part as to referencing the sexual conduct itself, however, it is denied to the extent that the Government seeks to use the evidence to prove Defendant's use of his phone on relevant dates.

**3. <u>Wisconsin Individual</u>**

Defendant moves to preclude the introduction of any evidence regarding an individual from Wisconsin who Defendant met and took a picture with during an event and who was later charged with possession of child pornography and bestiality. (Dkt. 82 at 490-491). The Government does not intend to elicit any testimony or present any evidence regarding this individual at trial. (Dkt. 99 at 603). Accordingly, Defendant's motion in limine regarding the Wisconsin individual is denied as moot.

**4. <u>Inappropriate Workplace Conduct</u>**

Defendant moves to exclude any evidence of alleged inappropriate conduct at work. (Dkt. 82 at 491-493). The Government does not intend to elicit any testimony or present any evidence regarding any alleged inappropriate conduct by Defendant at work. (Dkt. 99 at 603). Accordingly, Defendant's motion in limine regarding alleged inappropriate workplace conduct is denied as moot.

**5. <u>Other Sexual Content on Devices</u>**

Defendant also moves, under Rules 401, 403, and 404(b), to exclude all images and chats of a sexual nature found on Defendant's devices, including (a) photos of genitalia; (b) adult pornography; and (c) unidentified sexually explicit photos or videos.

**a. Photos of Genitalia**

First, Defendant contends that photos of genitalia found on his devices should be excluded as irrelevant and unfairly prejudicial because the Government cannot prove who took, accessed, sent, or received the photos and they will lead jurors to believe that Defendant is a deviant or bad person deserving of punishment. The Government responds that such photos are relevant because they were exchanged between @chipervdude, Austermann, and the OCE during the relevant time period and were later found on Defendant's phone, which tends to make it more likely that Defendant was the person using the @chipervdude on the dates in question. In addition, the Government agrees to redact the photos as appropriate to make them less obscene. The Court agrees that photos exchanged on relevant dates later found on Defendant's phone are relevant to prove his identity and that redaction to reduce obscenity are sufficient to mitigate any danger of any unfair prejudice. Again, in a case involving child pornography charges, evidence that is sexual in nature and obscene is inevitable and no doubt unfavorable to Defendant, but not necessarily unfairly prejudicial.

That said, any photos of genitalia not used for the purpose of identifying Defendant are irrelevant and thus inadmissible under Rule 401. Furthermore, because it appears that the Government intends to offer other, less obscene evidence to prove Defendant's identity, such other evidence should be offered first. If the Government still believes that photos of Defendant's genitalia are necessary after such other evidence has been offered and admitted, then it may request to offer such evidence outside the presence of the jury. At that time, the Court will consider any objections, including whether it would be cumulative. To the extent that Defendant believes a limiting instruction would be proper after the Government seeks to admit such evidence during trial, it may make such a request at that time. Accordingly, Defendant's motion in limine to exclude

photos of genitalia found on his devices is denied in part to the extent it is necessary to prove Defendant's identity but granted in part to the extent that the Government appropriately redacts such photos to reduce obscenity and first seek to establish Defendant's identity through less obscene means.

**b. <u>Adult Pornography</u>**

Defendant moves to exclude all evidence of adult pornography found on devices under Rules 401 and 403. (Dkt. 494-495). The Government does not intend to introduce evidence of adult pornography, except for photos of genitalia necessary to identify Defendant. (Dkt. 99 at 604). Accordingly, subject to the Court's ruling above, Defendant's motion in limine to exclude all evidence of adult pornography is denied as moot.

**c. <u>Unidentified Sexually Explicit Photos or Videos</u>**

Defendant moves to bar evidence of any unidentified sexually explicit photos or videos under Rules 401, 403, and 404(b). (Dkt. 82 at 495-496). The Government responds that it does not intend to offer adult pornography into evidence, other than the photos and videos of genitalia discussed above, and that it is unsure what Defendant is referring to in this motion. Defendant's motion refers to "images and videos that are not SAM but are obscene" and "individual in [] photos [who] cannot be identified, [but] the implication [is] that these individuals are minors[.]" (Dkt. 82 at 495). The Court agrees that sexually explicit materials showing individuals whose identities and ages cannot be determined are irrelevant and should not be offered into evidence. Photos and videos of adult genitalia that the Government intends to prove are Defendant's do not fall into this category. Accordingly, Defendant's motion in limine to bar evidence of any unidentified sexually explicit photos or videos is granted.

Case: 1:24-cr-00153 Document #: 155 Filed: 12/15/25 Page 14 of 32 PageID #: 2149

### 6. <u>CSAM Photos and Videos</u>

Defendant next moves to limit the number and length of photos and videos containing child sexual abuse material ("CSAM") shown to the jury. (Dkt. 82 at 496-497). Although Defendant's motion refers to CSAM that is not related to charged conduct, the Government's response seems to state that it intends only to show portions of at most eleven redacted CSAM videos that were exchanged as part of the charged conduct. The Government also plans to show such redacted videos to Defendant and the Court before trial.

The Court "recognize[s] that this evidence can be disturbing—even traumatizing—for jurors and that there can be a risk of unfair prejudice to the defendant[, and that it] must use common sense to strike a balance between allowing the government to make its case and protecting jurors and the defendant's right to a fair trial." *United States v. West*, 53 F.4th 1104, 1109 (7th Cir. 2022). Here, it appears undisputed that allowing the redacted videos exchanged as part of the charged conduct will strike that balance and is within the normal range for such evidence in a case like this. *See*, e.g., *West*, 53 F.4th at 1109 (concluding that showing 16 of roughly 1000 images was not needlessly cumulative); *United States v. Hatfield*, 358 F. App'x 692, 696 (7th Cir. 2009) ("Although prejudicial, the clips of the 12 videos were not unfairly so, and because they were central to the charged conduct the government had the right to present them to the jury."). Accordingly, because the Government agrees to redact and limit CSAM as requested and to preview such videos before trial, Defendant's motion in limine regarding CSAM is denied as moot. The Government must be prepared to show them to Defendant and the Court at the final pretrial conference to ensure that such materials are properly limited and redacted.

7. **Criminal Investigation Related to Telegram**

Defendant moves to bar any testimony or argument related to any criminal investigation of Telegram and any allegations that the application and its CEO facilitate child sexual abuse. (Dkt. 82 at 497-498). The Government does not anticipate discussing any criminal investigation related to Telegram. (Dkt. 99 at 13). Accordingly, Defendant's motion in limine regarding any criminal investigation elated to Telegram is denied as moot.

8. **Body Camera Footage**

Defendant moves to bar body camera footage showing him nude under Rules 401 and 403, or, alternatively, requests that it be redacted so that his genitals are not shown. (Dkt. 82 at 498-499). The Government opposes this motion on the basis that it is directly relevant to the obstruction charge, because it allegedly shows Defendant refusing agent's commands and holding his phone seconds after Telegram had been deleted but offers to "attempt to redact any nudity and [] play the video for the court and defense counsel before trial." (Dkt. 99 at 606). The Court agrees with the Government that the body camera footage is directly relevant to the obstruction charge but also agrees with Defendant that showing his genitals is irrelevant and potentially distracting. Accordingly, Defendant's motion in limine regarding the body camera footage is denied in part as to barring the video entirely but granted in part as to redaction so that his genitals are not shown. The Government must be prepared to show the video to Defendant and the Court at the final pretrial conference to ensure that such materials are properly redacted.

9. **Ownership or Operation of Scruff and Telegram Accounts**

Defendant moves, pursuant to Rule 602, to bar witnesses from testifying that Defendant owned or used the relevant Scruff and Telegram accounts, sent the relevant messages through those accounts, or owned the recovered devices. (Dkt. 82 at 499-501). According to Defendant,

while the Government is entitled to present circumstantial evidence, any affirmative, direct assertion about Defendant in this regard should be excluded because it is not based on personal knowledge and would therefore be speculation. (*Id.*) The Government summarily objects to this motion, essentially arguing that the body camera footage and Scruff chats remaining on the phone serve as evidence connecting Defendant to the related accounts.

"A witness may testify to a matter only if evidence[, including the witness's own testimony,] is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Court agrees that the body camera footage, forensic analysis results showing the deletion of Telegram seconds before seizure, remaining Scruff chats, and other related evidence is sufficient to support the personal knowledge of witnesses to testify regarding Defendant's connections to the device and accounts accessed through it. In addition, each witness's own testimony regarding the investigation appears likely to support personal knowledge. Accordingly, Defendant's motion in limine to bar testimony regarding Defendant's connections to the Scruff and Telegram accounts and recovered devices is denied. However, this inquiry depends largely on how evidence and testimony are presented at trial. So, as with all rulings on motions in limine, the Court may revisit this ruling and Defendant may renew its objection at trial, if appropriate.

**10. <u>2017 Uncharged Conduct</u>**

Defendant moves to bar evidence of his 2017 interaction with police under Rules 401, 403, and 404(b). (Dkt. 82 at 501-502). The Government objects on the basis that such evidence is admissible under Rule 414, (Dkt. 99 at 607), and moves separately to allow testimony and evidence regarding the event, (Gov't Mot. in Limine, Dkt. 85 at 525-528).

"In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414. While the subject matter of the 2017 police interaction potentially constitutes "child molestation" under Rule 414, the event is not "evidence that the defendant committed any other child molestation." The Government's argument in this regard rests entirely on its contention that Defendant admitted to downloading child pornography in 2017. But the Government's characterization of Defendant's statement is simply incorrect. Defendant admitted to downloading images but did not admit to knowing the age of the individuals in the images or that such images constituted child pornography. The police were never able to determine the ages of the individuals in the images, so charges were never filed. As a result, evidence regarding the 2017 interaction with police is not admissible under Rule 414 and may not be used to show propensity under that rule.

Looking at Rules 401, 403, and 404(b), the evidence is not directly relevant to any of the charged conduct; is unfairly prejudicial in that it involves unproven, speculative, uncharged inflammatory allegations; and is not admissible for a non-propensity purpose because it involved potential child pornography but does not show motive or a unique pattern of conduct. At best, the evidence may be relevant to show knowledge regarding child pornography in general, but that relevance is limited and overshadowed by other considerations. Given that almost a decade has elapsed and there was insufficient evidence to support charges in 2017, the Government cannot satisfy the threshold relevance requirements under Rules 401 and 402 and sufficiency requirement under Rule 104(b). Accordingly, Defendant's motion in limine to bar evidence of the 2017 uncharged conduct is granted, and the Government's motion in limine to admit such evidence will be denied.

**11. Case Agents' Assignments**

Defendant moves, under Rules 401 and 403, to preclude any special agent who investigated this case from testifying that they work in the violent crime, crimes against children, and human trafficking division of the FBI or discussing the number of cases they have worked on. (Dkt. 82 at 502-503). Defendant cites no authority in support of his position and fails to explain how such testimony would be unfairly prejudicial. Witnesses, including special agents on the case, are generally permitted to explain their job titles, duties, and experience, including the field or division within the FBI in which they work, to establish foundation, credibility, and context. Accordingly, Defendant's motion in limine regarding the case agent's assignments is denied.

**12. Victim Impact**

Defendant moves to limit the testimony of any individuals depicted in the CSAM regarding the impact that this offense has had on them under Rules 401 and 403. (Dkt. 82 at 503-504). The Government does not anticipate eliciting any testimony from witnesses regarding the impact of the offense on their lives. The Government reports that it plans only to ask the witnesses to identify the victims and their ages at the time the videos or images were created, which the Court agrees is directly relevant to the charges. Accordingly, Defendant's motion in limine regarding victim impact testimony is denied as moot.

**13. September 11, 2023 Telegram Chats**

Last, Defendant moves to exclude all Telegram chats from September 11, 2023, arguing that the Government will not be able to properly authenticate them at trial under Rule 901. (Dkt. 82 at 504-505). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. At trial, the Government anticipates calling the user of the account

on the other side of the September 11, 2023 chats, Bryan Austermann, as a witness. In addition, the Government plans to call the OCE to testify regarding, among other things, the video that he took of the September 11, 2023 Telegram chats with @chipervdude on Austermann's phone. Therefore, it appears that there will be sufficient testimony to support the authenticity of the video and other evidence of the September 11, 2023 Telegram chat. Accordingly, Defendant's motion in limine to exclude all evidence of the September 11, 2023 Telegram chat is denied.

**B. Government's Motions in Limine**

**1. 2017 Uncharged Conduct**

For the reasons discussed above, *supra* § III, A, 10, the Government's motion to admit evidence and argue propensity based on the 2017 uncharged conduct (Dkt. 85 at 525-528) is denied.

**2. Protection for Victims and Related Witnesses**

The Government moves to protect the names of the victims identified in the child pornography videos by instead referencing them as Victim A, Victim B, and so on, and referencing their adult relatives by their first names and their last initial. (Dkt. 85 at 528-530). Defendant objects both to the extent that any victim is now over the age of 18 and to anonymizing non-victim relatives' names and also requests that full names of all witnesses be presented to the jury during voir dire to prevent any conflict. (Def. Resp. to Gov't Mot. in Limine, Dkt. 94 at 567-569).

Government's motion in limine for a protective order is granted in part as follows: (1) victims who are at least 18 years old at the time of testimony will be referred to by their first name only; (2) victims who are under 18 years old at the time of testimony will be referred to as "Individual A," "Individual B," etc.; (3) adult relatives of victims will be referred to by their full

names. Full names of all witnesses will be presented to the jury during voir dire to prevent any conflicts.

### 3. **Public Display of CSAM**

The Government moves to prevent the public display of evidence containing CSAM during the trial. (Dkt. 85 at 530-532). Defendant does not object to this motion. (Dkt. 94 at 569). Accordingly, Government's motion in limine to prevent the public display of evidence containing CSAM is granted. Logistics regarding the implementation of this ruling will be discussed at the final pretrial conference.

### 4. **Identity Theft**

The Government moves to preclude Defendant from introducing evidence regarding any "identity theft" defense under Rules 402 and 403, arguing that the alleged identity theft took place months after the charged conduct and his arrest, is completely unrelated to use of the relevant Scruff or Telegram accounts, and would potentially confuse and mislead the jury. (Dkt. 85 at 532-533). Defendant objects based on his fundamental constitutional right to present a complete defense. (Dkt. 94 at 570-571).

Indeed, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also Chambers v. Mississippi*, 410 U.S. 284 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."); *United States v. Cronic,* 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing"). Defendant has a right to present a defense, and if identity theft is his theory, then he has a right to present that theory. The evidence of identity theft after arrest may be of little probative value but the Court

cannot say that it is completely irrelevant. It will be up to the jury to decide how much weight to give such evidence. Accordingly, the Government's motion in limine to preclude Defendant from introducing evidence of identity theft is denied.

**5. <u>Lack of "Sexual Dangerousness" or Proclivity of Child Sex Abuse</u>**

The Government moves to exclude evidence or argument regarding any lack of "sexual dangerousness" or proclivity of child sex abuse (e.g., evidence that Defendant does not meet the "profile" of a sex offender or pedophile). (Dkt. 85 at 533-535). Defendant did not respond to this motion substantively but instead reserved the right to oppose it if the Court's motion in limine rulings permit any evidence that brings Defendant's character of sexual dangerousness into question. (Dkt. 94 at 571). Accordingly, the Government's motion in limine to exclude evidence or argument regarding any lack of "sexual dangerousness" or proclivity of child sex abuse is granted at this time. Defendant may raise this issue at the final pretrial conference or trial if and when it becomes relevant.

**6. <u>Jury Nullification</u>**

The Government moves to exclude several categories of evidence and testimony "designed to elicit jury nullification." (Dkt. 85 at 536-541). The Court will address each in turn.

**a. <u>Potential Penalties</u>**

The Government moves to exclude evidence or testimony regarding potential penalties faced by Defendant if he is convicted. (Dkt. 85 at 536-537). Defendant does not object to this motion. (Dkt. 94 at 572). Accordingly, the Government's motion in limine regarding potential penalties is granted.

**b. Motivations for Prosecution**

The Government moves to exclude evidence or testimony regarding its motivations for investigating or prosecuting the case. (Dkt. 85 at 537-538). Defendant does not object to this motion. (Dkt. 94 at 572). Accordingly, the Government's motion in limine regarding motivations for prosecution is granted.

**c. Outrageous Government Conduct**

The Government moves to exclude evidence or testimony regarding so-called "outrageous government conduct." (Dkt. 85 at 538-540). Defendant objects to the extent that the Government seeks to limit him from maintaining his innocence and characterizing the Government's conduct as outrageous for arresting and charging the wrong person. (Dkt. 94 at 572-574). Defendant may of course maintain his innocence and claim that the wrong person has been arrested and charged, but, because there has not been any assertion that the Government has otherwise engaged in misconduct, any argument of "outrageous" government conduct must not exceed those bounds. Accordingly, the Government's motion in limine regarding "outrageous government conduct" is denied in part as to Defendant's ability to maintain his innocence but otherwise granted.

**d. Defining Reasonable Doubt**

The Government moves to preclude Defendant from attempting to define reasonable doubt. (Dkt. 85 at 540-541). Defendant does not object to this motion. (Dkt. 94 at 574-575). Accordingly, the Government's motion in limine regarding defining reasonable doubt is granted and Defendant is so admonished.

**7. Missing Witnesses**

The Government moves to preclude Defendant from presenting argument regarding missing witnesses whose appearance is outside the control of either side, or, alternatively, to allow

the Government to respond to any such argument. (Dkt. 85 at 541-542). Defendant is permitted to argue the sufficiency of the evidence, and the Government is not permitted to respond to such an argument by pointing out a witness the Defendant could have, but did not, call, because the Defendant has no burden to present any case whatsoever. Accordingly, the Government's motion in limine regarding missing witnesses is denied.

**8. <u>General Veracity of Online Communications</u>**

The Government moves to bar Defendant from introducing evidence regarding the general veracity of individuals' online communications, including during cross-examination of any Government witness. (Dkt. 85 at 542). Defendant does not object to this motion, save for his argument that this does not limit his ability to cross-examine witnesses regarding specific online interactions, which falls outside the scope of this request. (Dkt. 94 at 576). Accordingly, the Government's motion to bar evidence regarding the general veracity of online communications is granted.

**9. <u>Discovery</u>**

The Government moves to bar comments regarding discovery in the presence of the jury. (Dkt. 85 at 543). Defendant objects on the basis that such a limitation would restrict his ability to meaningfully cross-examine witnesses. But there is a distinction between cross-examining a witness about discovery itself (including the process, turnover requirements, and any rulings) and about material or information that was subject to discovery. Defendants should not comment on discovery itself but may cross-examine witnesses regarding items that were subject to discovery. Accordingly, the Government's motion in limine to bar comments regarding discovery is granted in part as to referencing discovery and denied in part as to discovery materials. To the extent that

counsel is unsure whether questioning or argument will violate this ruling, a sidebar must be requested in advance.

**10. <u>Search Warrants</u>**

The Government moves to bar comments or arguments regarding the legality of search warrants used in this investigation. (Dkt. 85 at 543-544). Defendant does not object but states that "if this becomes an issue, the defense will address it at a sidebar before commencing cross-questions." (Dkt. 94 at 578). Accordingly, the Government's motion in limine regarding search warrants is granted.

**11. <u>Lawfulness or "Good Character"</u>**

The Government moves to preclude Defendant from presenting evidence or referencing his lawfulness, non-corrupt conduct, or prior good acts, except for reputation or opinion evidence (excluding specific good acts) offered by character witnesses strictly in accord with Rule 405(a). (Dkt. 85 at 544-545). Defendant did not respond to this motion substantively but instead reserved the right to oppose it if the Court's motion in limine rulings permit any evidence that brings Defendant's character into question. (Dkt. 94 at 578). Accordingly, the Government's motion regarding evidence of good character is granted at this time. Defendant may raise this issue at the final pretrial conference or trial if and when it becomes relevant.

**C. <u>Government's Supplemental Motions in Limine</u>**

The Government moves to bar cross-examination of Austermann regarding certain lawful sexual conduct and the OCE regarding the OPR investigation and to admit records received from Telegram. (Gov't Supp. Mot. in Limine, Dkt. 167).

1. **<u>Austermann</u>**

The Government produced approximately 1,500 pages of discovery related to Austermann. Some include messages regarding child pornography but many include discussions of lawful sexual interests and experiences and his sexual health. The Government generally acknowledges that Defendant may cross-examine Austermann regarding his child pornography offenses but, under Rules 401, 402, 403, 608(b), and 611, seeks to preclude questioning regarding: (1) lawful sexual interests and experiences and sexual health; (2) precise details of illegal sexual activities with minors that are not probative of his character for truthfulness; and (3) specific mandatory minimum sentences associated with his charges. (Dkt. 167 at 1058-1064). Defendant has no intention of cross-examining Austermann regarding his lawful sexual interests and experiences and his sexual health, so that issue is moot. However, Defendant argues that otherwise precluding him from questioning Austermann about the details of his illegal activities is premature and limits his ability to explore issues of bias and motive for his testimony. Defendant also contends that the potential sentences faced by Austermann is an area ripe for impeachment and directly relevant to his credibility.

The Court agrees that the Government's request to curtail the details of Austerman's illegal activities is premature and that Defendant should not be precluded from exploring issues of bias, motive, and credibility at trial. Furthermore, the Government has provided no reason to believe that the jury would draw any improper conclusions regarding Defendant's potential penalties from discussion of Austermann's or that any prejudice could not be cured by a limiting instruction, if appropriate. Of course, these inquiries must fit within the guardrails of the applicable rules, including Rules 401, 402, 403. But at this juncture, the Court cannot say that such questioning would be inadmissible for any purpose. *See Jonasson*, 115 F.3d at 440. In particular, these issues

are better suited for consideration at trial, in the proper context. *See Hawthorne*, 831 F. at 1400. Accordingly, the Government's motion in limine regarding Austermann's cross-examination is denied as moot as to his sexual health and lawful sexual interests and experiences and denied on the merits in all other respects at this time.

**2. OPR Investigation**

The Government moves to preclude cross-examination of the OCE regarding the OPR investigation because: (1) it is unrelated to the charged conduct and not probative of his truthfulness, bias, or motive; (2) the danger of unfair prejudice and juror confusion outweighs any probative value; and (3) his credibility is not genuinely in dispute. (Dkt. 167 at 1064-1068).

Defendant's first objection that this motion is merely a motion to reconsider an earlier ruling is a nonstarter. The Court may have previously stated that it was inclined to allow cross-examination on this issue, but that was based on a limited record available before the OPR concluded its investigation and issued findings. Even if the Court's prior statements could be considered a ruling, which they were not, previous rulings on motions in limine may be reconsidered, even absent an objection. *Lillie*, 669 F. Supp. 2d at 905-906 (citing *Luce*, 469 U.S. at 41-42; *Connelly*, 874 F.2d at 416).

Substantively, Defendant argues that the Government is seeking to prevent Defendant from presenting a full defense because the OPR's findings that the OCE improperly stored evidence go directly to his credibility, investigatory techniques, abilities, and procedures. Having closely reviewed and considered the materials regarding the OPR's investigation of the OCE, the Court concludes that Defendant's argument here goes too far and that the investigation simply is not relevant. First, the improper storage of evidence by the OCE took place many months before the relevant portion of the investigation and collection of evidence in this case. So, temporally, the

two are completely unrelated. Second, even though the OPR found that the OCE improperly stored evidence, there was no finding that the manner in which the OCE improperly stored evidence compromised its integrity, reliability, or authenticity. Rather, it seems a copy of the evidence was stored on a device that was vulnerable to outside access, and that vulnerability was taken advantage of by a hacker. There is no suggestion or implication that the OCE conduct on that occasion represents a specific instance or general pattern of compromising the reliability of evidence. Last, and most important, Defendant has not pointed to any evidence tending to show that the conduct for which the OCE was penalized was repeated in connection with the evidence in this case. Thus, nothing about the OPR's investigation of the OCE has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence.

For these reasons, the Government's motion to preclude Defendant from cross-examining the OCE regarding the OPR investigation is granted. This ruling should not be construed to mean that Defendant is precluded from cross-examining the OCE regarding the collection, handling, and storage of evidence in this case and raising an objection to this ruling outside the presence of the jury if, based on that inquiry, Defendant believes that revisiting the issue is warranted.

**3. <u>Telegram Records</u>**

Last, the Government moves to admit records received from Telegram identifying the @pervchidude account's user number, phone number, IP address, and last login time, among other things. (Dkt. 167 at 1069-1073). Because Telegram is outside the Government's subpoena power and has not certified that the records were produced as records of a regularly conducted business activity, the Government seeks admission of these records under Rule 807's "residual exception" to the rule against hearsay.

"Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804: (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). The proponent of such a statement must meet certain notice requirements, but those are not at issue here. Fed. R. Evid. 807(b).

"A proponent of hearsay evidence must establish five elements in order to satisfy Rule 807: '(1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice.'" *United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016) (quoting *United States v. Ochoa*, 229 F.3d 631, 638 (7th Cir. 2000)). In considering the trustworthiness of a hearsay statement, courts consider the following non-exhaustive list of factors: "the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify before the grand jury; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and, the reasons for the witness' unavailability." *Moore*, 824 F.3d at 622-623 (quoting *United States v. Snyder*, 872 F.2d 1351, 1355-1356 (7th Cir. 1989)). "The purpose of Rule 807 is to make sure that reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence." *Moore*, 824 F.3d at 624. At the same time, the Seventh Circuit has repeatedly reminded lower courts of its

"emphasis on narrowly construing the residual provision to prevent it from becoming the exception that swallows the hearsay rule." *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998). "[T]he proponent of hearsay bears the burden of establishing that the statement is admissible." *Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 640 (N.D. Ill. 2012).

After initial argument regarding this motion, the Government provided supplemental materials and briefing (Dkt. 178) and Defendant responded (Dkt. 193). Having considered the relevant authority, materials, and arguments, the pertinent issues boil down to whether: (a) the Government has sufficiently proven circumstantial guarantees of trustworthiness; (b) there is more probative alternative evidence; and (c) admission would violate the Confrontation Clause.

**a. <u>Guarantees of Trustworthiness</u>**

Consideration of several relevant factors leads the Court to conclude that, based on the totality of circumstances and corroborating evidence, the Government has met its burden of showing that the Telegram records are supported by sufficient guarantees of trustworthiness. First, although the specific identity of the person or persons behind the email that provided the data is unknown, three special agents have confirmed that the process is consistent with the way that Telegram voluntarily responds to these specific requests for records from law enforcement. Furthermore, an attorney for Telegram confirmed the authenticity of the email and email address as issue here. With respect to the disclaimer that Telegram does not represent that any records provided are a full and complete response to the requests made, the Court does not read that statement to mean that the records sent are not reliable or trustworthy, but rather that Telegram simply does not guarantee that it has or will provide responsive records to all of the Government's requests. Indeed, the Government sought far more information in the subpoena than it actually received in response. Contrary to Defendant's contentions, any failure by Telegram to respond to

the entire Government request does not necessarily call into question the trustworthiness of the records that were provided.

Furthermore, there is strong corroborating evidence that supports the trustworthiness of the Telegram records. Specifically, the Scruff messages referencing the Telegram account, the date and time of the last log in closely matching with the seizure of Defendant's phone, the IP address provided matching the IP address assigned to Defendant's house, and the phone number provided matching that of one of Defendant's former co-workers all make it more likely that the records provided by Telegram are reliable. Last, the Court finds that the policies of Telegram stating that the data provided in the records is routinely collected, the lack of any incentive to fabricate, and the evidence suggesting that Defendant deleted Telegram moments before his phone was seized also all weigh in favor of a finding that the records are reliable and trustworthy.

Because the totality of circumstances and corroborating evidence regarding the Telegram records reflect indicia of reliability, the Court concludes that the Government has met its burden to show that they are trustworthy.

**b. <u>More Probative Alternatives</u>**

Next, the Court disagrees with Defendant's argument that there are more probative alternatives to the Telegram records to show Defendant's control of the Telegram account. Although there are certainly Scruff chats referencing that account along with forensic evidence that Telegram had previously been installed on Defendant's phone, the Court cannot say that evidence is more probative. Such evidence may establish a general connection between Defendant and a Telegram account, but these additional records add data including the IP address and timing of last access that provide a level of technical detail the other evidence cannot. In addition, the timing and IP address records are uniquely relevant to the obstruction charge because they serve

to limit alternative explanations. Thus, the Government has shown that the Telegram records are more probative than any reasonably obtainable alternative for those purposes.

c. **Confrontation Clause**

The Sixth Amendment to the United States Constitution, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Specifically, '"it guarantees a defendant's right to confront those "who 'bear testimony'" against him.'" *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (quoting *Crawford v. Washington,* 541 U.S. 36, 51 (2004)). Generally, "[statements] are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Although the Supreme Court has declined "to spell out a comprehensive definition of 'testimonial[,]' . . . it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant,* 562 U.S. 344, 358 (2011)).

Here, the Court concludes that the Telegram records do not constitute "testimonial statements" and are therefore not subject to the Confrontation Clause. In this regard, Defendant focuses heavily on the fact that the records could not be automatically obtained "due to Telegram's technical structure" and required "additional logging" to generate the information. But the email response containing the records was created to reflect the administration of Telegram's affairs, not as a testimonial document or for use at a trial. In this context, "additional logging" reasonably

indicates that Telegram could not input a phone number and access the information but instead had to access the account in other ways. It does not appear, however, that new information was generated in response to the subpoena; rather, Telegram compiled and produced existing data. Thus, Defendant seems to be questioning the method Telegram used to retrieve the data from their records, not whether it existed. And that data came into existence long before it was requested by the Government and produced by Telegram. In the end, the Telegram records simply convey data, not testimony. For that reason, the Confrontation Clause does not bar their admission. Accordingly, the Government's motion in limine to allow the introduction of the Telegram records on the Rule 807 is granted.

## IV. Conclusion

For all the reasons discussed above, the parties' respective motions in limine are granted in part, denied in part, and denied as moot.

**DATED**: May 8, 2026

**ENTERED**:

LaShonda A. Hunt

LASHONDA A. HUNT
United States District Judge