UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

---

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE GOVERNMENT'S PROPOSED EXPERT "AVI," OR, IN THE ALTERNATIVE, FOR A HEARING UNDER *DAUBERT***

---

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who, for the reasons set forth below, moves this Court under Federal Rules of Evidence 702, 703, and 403 to exclude or limit the testimony of the government's proposed expert "Avi," or, in the alternative, to hold a hearing under *Daubert* before Avi testifies.

## I. INTRODUCTION

The government intends to call a witness it identifies only as "Avi," an Israeli security official, to tell the jury that six documents seized in Gaza are authentic, that Hamas internal-security reports are "generally reliable," where a man identified as J.M. died, what places Mr. Al-Muhtadi meant in recorded calls, and that Mr. Al-Muhtadi "is a member of DFLP's military wing." Doc. 46, at 6, 8, 12, 14. By the FBI's

own understanding, Avi chose the documents it received, and no one on the prosecution team has seen the devices they came from. Doc. 114, at 46:4-14, 84:4-5.

Rule 702 requires the government to show that each opinion more likely than not rests on sufficient facts and a reliable method, reliably applied. On this record, it cannot. The defense's digital forensics expert, Lars Daniel, reviewed the same discovery. He cannot verify the documents' source or integrity, and the discovery does not resolve whether they were fabricated or altered before production. Expert Witness Disclosure: Lars Daniel, at 2-3 ("Daniel Disclosure"). The Court should exclude the authentication opinion and every other opinion that rests on undisclosed material; exclude the opinions on membership, J.M.'s death, the place references, and the reliability of the Hamas reports; and hold Avi to the role the government has described. In the alternative, the Court should do what the *Holy Land Foundation* court did for this same witness and hold a *Daubert* hearing before he testifies. *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240-G, 2007 WL 2059722, at *8 (N.D. Tex. July 16, 2007).

## II. THIS MOTION IS TIMELY; ALTERNATIVELY GOOD CAUSE EXISTS TO CONSIDER IT

The scheduling order set no separate deadline for expert challenges. Doc. 66, at 3. To the extent this motion falls under the September 15 deadline for "All Other Motions," *id.*, Mr. Al-Muhtadi asks for leave to file it. The Court may extend or reset that deadline "[a]t any time before trial." FED. R. CRIM. P. 12(c)(2); *cf.* FED. R. CRIM. P. 12(c)(3) (permitting a court to consider an untimely Rule 12(b)(3) motion "if the

party shows good cause").

Good cause exists. The defense has always told the government that it would challenge Avi's expertise. In July, Mr. Al-Muhtadi invoked *Daubert* and *Kumho Tire* to seek the methodology and validation materials needed to test Avi's authentication opinion. Doc. 74-1, at 10-11. In September, he reserved his Rule 702 and *Daubert* challenges to the battlefield documents, Doc. 104, at 30, asked that any hearing on the government's protective-measures motion address Avi's qualifications, Doc. 131, at 29, and told the Court that he would file his expert challenges "with the defense expert disclosures," Doc. 130, at 28. At the October 13 status conference, after the government suggested the *Daubert* deadline had run, defense counsel said the same thing. The government, for its part, expects a *Daubert* hearing for Avi. Doc. 140, at 10 n.2. This challenge also relies on the defense expert disclosures, including Mr. Daniel's, which were timely filed on October 30, 2026, the same day as this motion and the deadline the scheduling order set for them. Doc. 66, at 3. Much of the material bearing on Avi's bases remains in the CIPA process, which has not concluded. Doc. 82, at 15 n.3, 19-22. And trial is set for January 25, 2027. Doc. 66, at 4.

## III. BACKGROUND

### A. Avi and his six opinions

The government noticed Avi on May 1, 2026, and he will testify under a pseudonym. Doc. 46, at 1. He leads the research and assessment division of Israel's National Bureau of Counter Terror Financing, a role carried out "with the goal of

identifying opportunities to enforce sanctions and build criminal cases." *Id.* at 2. He reads Arabic well enough "to understand the general meaning and importance of documents," but "he does not perform official translations." *Id.* He has "no professional public publications." *Id.* at 3.

The notice offers six opinions: (1) background on Hamas, the Democratic Front for the Liberation of Palestine (DFLP), and October 7, 2023, including that Hamas "operates as the de facto government in Gaza" and controls the DFLP, *id.* at 4-6; (2) that J.M. "was shot and killed inside Israel on October 7," *id.* at 6; (3) that "Malaka" names a region on both sides of the Gaza border, *id.* at 6-7; (4) that two references in Mr. Al-Muhtadi's calls mean a school and "an area in the southwestern part of Gaza City," *id.* at 8; (5) that six battlefield documents are authentic and that the Hamas reports among them "are therefore generally reliable," *id.* at 8-13; and (6) that Mr. Al-Muhtadi "is a member of DFLP's military wing," *id.* at 14. The government has since described Avi's role more narrowly: "Avi's testimony is limited in scope to the six battlefield documents that are the subject of the Battlefield Motion." Doc. 82, at 15 n.2.

### B. Avi selected the documents, and the bases for his opinions have not been produced

At the August 4 hearing, the FBI's witness agreed it was his "understanding" that the FBI received "just the documents that Avi selected." Doc. 114, at 46:12-14. He was "not aware of any access to the underlying laptop," *id.* at 46:4-5, and the prosecution told the Court that "the prosecution team and the task force has never

had access to those computers," *id.* at 84:4-5. Avi then authorized the FBI to use the documents "for the purposes of judicial proceedings to support criminal charges and satisfy your discovery obligations." Doc. 131, at 12 (quoting the Israeli authorization letter).

The defense asked for the forensic images and native files, the chain-of-custody and processing records, the databases Avi used, and his methodology and validation materials. Doc. 74-1, at 8-11. The government answered that Avi "is relying on his experience in working with the database as part of his job," a database that "is not within the Government's control," and that other categories, including Avi's identity, are "going to be litigated in CIPA." Doc. 82, at 15 n.3, 16, 19-22. The Court then ruled that the government's discovery obligations do not include "anything in the possession of Israeli agencies." Doc. 114, at 87:19-20.

### C. Several pending motions concern Avi

The government's battlefield motion would authenticate all six documents "through the testimony of 'Avi.'" Doc. 45-1, at 19. Mr. Al-Muhtadi opposed it on Confrontation Clause, hearsay, and authentication grounds, Doc. 104, and the government replied that Rule 901(b)(4) lets Avi authenticate the documents based on his experience, Doc. 138, at 6. The government's pseudonym motion would let Avi testify under a pseudonym, partially close the courtroom, and limit cross-examination. Doc. 102, at 10. Mr. Al-Muhtadi opposed it, Doc. 131, and the government replied that it expects a *Daubert* hearing for Avi on November 3, Doc.

140, at 10 n.2. Its CIPA § 5 motion lists Avi first among the witnesses it says "have classified knowledge," Doc. 97, at 6, and its classified CIPA § 4 motion remains pending, Doc. 103. Avi would also interpret the recorded calls that are the subject of the government's call-authentication motion, Doc. 99; Doc. 132; Doc. 46, at 8, and would tell the jury where J.M. died while Mr. Al-Muhtadi's motion to strike the death-resulting allegations is pending, Doc. 107; Doc. 46, at 6.

## IV. ARGUMENT

### A. The government must show that each opinion is reliable before the jury hears it

An expert may testify only "if the proponent demonstrates to the court that it is more likely than not that" the testimony will help the jury, "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. The government bears that burden. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The 2023 amendment corrected courts that had treated "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," as "questions of weight and not admissibility." FED. R. EVID. 702 advisory committee's note to 2023 amendment. So the general rule that questions about an expert's bases go to weight, *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019), applies only after the proponent shows a sufficient basis and a reliable application. That answers the government's position that its "only burden at trial is to show that the document purports to be what it is and anything behind that goes to

weight, not admissibility." Doc. 114, at 84:6-8.

Experience does not lower the bar. The Court must ensure that an expert relying on "personal experience" brings to the courtroom "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The expert's own assurance that his method is sound "is insufficient." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). In *Harris v. FedEx Corp. Services, Inc.*, the district court admitted an expert based on her experience and her past testimony in federal court, without a proper foundation for her opinion, and the Fifth Circuit held that the court had "abdicated its role as gatekeeper." 92 F.4th 286, 303 (5th Cir. 2024). The Court must decide these questions itself and "create a record of its *Daubert* inquiry." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016).

### B. The authentication opinion cannot be admitted on this record

The government argues that Rule 901(b)(4) "plainly allows Avi to authenticate these records based on his experience." Doc. 138, at 6. But the government has chosen to authenticate through an expert method, and "it is the content of testimony, not a witness's formal designation as an expert witness, which determines whether Rule 702 applies." *Carlson*, 822 F.3d at 198. The opinion fails on its method, on its facts and data, and on Avi's role in the case.

#### 1. Avi's method is flexible, unvalidated, and skips the forensic step

The notice describes "a multi-step process for evaluating and authenticating

materials from the battlefield," but "the exact order of the steps may vary depending on the information available and the needs of the situation." Doc. 46, at 9. Its keyword step treats ten percent "search hits" as confirming and five percent as disconfirming, and it offers both numbers only as examples. *Id.* at 10. The notice does not say what happens in between, how search terms are chosen, or how often the method has been wrong, and it concedes that one step "may not be sufficient." *Id.* Its only proof that the method works is that Avi could not "effectively do his job" otherwise. *Id.* at 11. That is the kind of personal assurance the Fifth Circuit has rejected. *Moore*, 151 F.3d at 276; *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (affirming exclusion of an officer who offered "little more than personal assurances based on his police experience that his conclusions are so").

More basically, the method leaves out the step that digital forensics requires. Mr. Daniel, who has more than seventeen years of experience in digital forensics, will testify that under generally accepted forensic principles, verifying a file recovered from a device requires a documented connection between the file and the device, preserved through forensic images or verified acquisitions, along with records of how the material was acquired, processed, and kept. Daniel Disclosure, at 1, 3-5. Avi's seven steps examine what the files say and how they are organized. Doc. 46, at 9-11. None tests whether the files are unaltered copies of what was on the devices when they were seized. None shows when the files were created or whether they changed before the devices were seized. The notice says only that the devices' contents "are

immediately imported to cloud storage and linked to the relevant metadata" and that "[t]he content of the devices is not altered." *Id.* at 9. Nothing produced lets anyone test those statements.

That gap matters because Avi authenticates by content, and content is the easiest thing to fake. Mr. Daniel will explain that generative artificial intelligence "can generate convincing speech and documents without the involvement of the purported speaker or author," and that ordinary phones and computers provide the tools to create or alter this kind of material. Daniel Disclosure, at 3-4. The familiar heading, form, and content on which Avi relies, Doc. 46, at 12, do not separate a genuine file from a convincing fabrication. And the committee note advises that a court evaluating forensic testimony "should (where possible) receive an estimate of the known or potential rate of error of the methodology employed." FED. R. EVID. 702 advisory committee's note to 2023 amendment. The government has offered none.

**2. The facts and data behind the opinion have not been produced**

Rule 702(b) requires the expert's own "relied-upon facts or data" to be a sufficient basis for his opinion. *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1345 (Fed. Cir. 2025) (en banc) (applying Fifth Circuit law). Avi relied on the devices, their file structures, his search results, the databases he cross-referenced, his "other investigations into DFLP," and the records of the units that seized and processed the devices. Doc. 46, at 9-12. Apart from the six documents, one native spreadsheet, and the chain-of-custody documents the government says it has, none of that has been

produced. Doc. 86, at 8; Doc. 86-1, at 1-2. Mr. Daniel reviewed what was produced. Because it does not connect the files to the devices they allegedly came from, he cannot verify their source or integrity, and the discovery "does not resolve" whether they were fabricated or altered before production. Daniel Disclosure, at 2-3.

The Court's discovery ruling settles what the government must produce. Doc. 114, at 87:13-20. It does not relieve the government of its burden under Rule 702(b). The Court cannot find that an opinion rests on sufficient facts when no one but the witness has seen them, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In *Gill v. Arab Bank, PLC*, the court admitted several former Israeli security officials as experts but excluded others whose opinions rested on confidential government work. 893 F. Supp. 2d 523, 531-34, 541-42 (E.D.N.Y. 2012). It excluded a retired IDF general because "[t]he information underlying his report and testimony was likely obtained secretly in his official position and would not be subject to effective cross-examination." *Id.* at 541. The line the court drew was whether the opposing party could test the basis of the opinion.

The *Holy Land Foundation* court faced this same witness and insisted on access to his bases. Chief Judge Fish reasoned that Rule 705 "presupposes that the opposing party has advance knowledge of the underlying facts and data sufficient to mount an effective cross-examination." 2007 WL 2059722, at *7. He ordered the

government to produce "all tangible underlying facts and data, not previously produced, upon which the ISA agent relies in reaching his opinion," and he required a *Daubert* hearing before Avi testified. *Id.* at *7-8, *10. He did so in part because "the government repeatedly stated that the ISA agent's opinion does not rely on classified information." *Id.* at *7. The Fifth Circuit later approved Avi's pseudonymous testimony in part because "[t]he Government disclosed to the defense over twenty volumes of material that Avi used to formulate his expert opinion about Hamas financing." *United States v. El-Mezain*, 664 F.3d 467, 492 (5th Cir. 2011). Here, the government's account of Avi's bases points in two directions. It says that "there are no classified documents that are discoverable in this case," Doc. 97, at 6, and that the protected witnesses' testimony "should not implicate classified information," Doc. 102, at 10 n.4. Yet it lists Avi among the witnesses who "have classified knowledge," Doc. 97, at 6, and it has deferred the forensic images, the metadata and database cross-references behind Avi's attributions, and the AMSHAT and chain-of-custody records to its classified CIPA § 4 motion. Doc. 82, at 19-22. It also says it cannot reach the database Avi works from. *Id.* at 16. Whether those bases are classified and withheld through CIPA, or unclassified but held by Israel beyond the government's reach, the result for Rule 702 is the same. Neither the defense nor the Court has the facts and data on which Avi relies, which is what the *Holy Land Foundation* court required. The opinions that depend on those bases should be excluded.

### 3. Avi's role in the case calls for added scrutiny

Authentication is not a burdensome standard, *United States v. Okulaja*, 21 F.4th 338, 344-45 (5th Cir. 2021), but it ordinarily rests on witnesses who know how the records were made or kept. In *Okulaja*, the witness "described the process by which the photos were captured, stored, and produced." *Id.* at 345. In *El-Mezain*, the seized documents were authenticated by "Major Lior," who "testified as a fact witness to authenticate documents that IDF had seized," not by Avi. 664 F.3d at 490. Avi did not seize, scan, or catalogue these devices, and the government has not disclosed anyone who did. Doc. 46, at 8-9; *see* Doc. 114, at 67:23-25. It has said only that it "may decide to call a witness from the IDF to authenticate the battlefield documents." Doc. 102, at 19; *see* Doc. 140, at 4.

Avi is also not a detached expert. By the FBI's understanding, he selected the documents; he then authorized their use "to support criminal charges"; and he will now tell the jury they are genuine. Doc. 114, at 46:12-14; Doc. 131, at 12. When a participant in the investigation testifies as an expert, the Court must keep his roles apart and hold him to what his expertise reliably supports. *See United States v. Haines*, 803 F.3d 713, 729-34 (5th Cir. 2015).

## C. Avi may not tell the jury that Mr. Al-Muhtadi is a member of the DFLP's military wing

The membership opinion is a conclusion about the defendant. Based on the battlefield documents and on cross-referencing the defense has never seen, Avi will testify that Mr. Al-Muhtadi "is a member of DFLP's military wing." Doc. 46, at 14.

The Fifth Circuit has held it obvious error for an expert to move from describing how an organization works to placing the defendant in it, because "the ultimate responsibility of linking a defendant's conduct with the typical characteristics of drug trafficking must be left to the jurors." *United States v. Sosa*, 897 F.3d 615, 619-20 (5th Cir. 2018); *see also United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 366-68 (5th Cir. 2010). Both convictions were affirmed only because, on plain-error review, the defendants could not show prejudice. *Sosa*, 897 F.3d at 619-20; *Gonzalez-Rodriguez*, 621 F.3d at 366-68. Mr. Al-Muhtadi objects now.

The opinion is also a conduit for hearsay. "The Government cannot satisfy its burden of proof by taking the easy route of calling an 'expert' whose expertise happens to be the defendant." *United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008); *see United States v. Lombardozzi*, 491 F.3d 61, 74 (2d Cir. 2007) (rank opinion based "on the inadmissible hearsay statements of others"). And the step matters. "Section 2339B does not criminalize mere membership in a designated foreign terrorist organization." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). On Counts 1 and 2, the DFLP is not the organization Mr. Al-Muhtadi is charged with supporting, and an expert's pronouncement on membership would carry the government across a disputed step in its case with the authority of a foreign intelligence official. On Counts 3 and 4, membership is itself the charged fact. Those counts allege that Mr. Al-Muhtadi falsely denied belonging to a paramilitary group when "he had long been a member of DFLP and its paramilitary wing, the NRB." Doc. 60, at 5, 7. Avi's opinion

would answer that question for the jury. On every count, the question belongs to the jury. The government has also told the Court that it does not need two of the documents, Exhibits 2 and 3, to prove membership: "we don't need those documents to establish his membership in DFLP." Doc. 114, at 84:22-85:3.

**D. The J.M. and place-name opinions are case facts presented as expertise**

The notice states that Avi "has conducted significant research into the death of [J.M.], and he assesses that [J.M.] was shot and killed inside Israel on October 7." Doc. 46, at 6. It discloses no sources and no method, and it does not explain how expertise about Hamas or the DFLP tells anyone where a particular man died. In *Mejia*, the Second Circuit held that an officer-expert's testimony about how many murders a gang had committed was not a proper subject for expert testimony, because "[n]o expertise is required to understand any of these facts." 545 F.3d at 195. The court vacated the convictions because that expert's testimony, taken as a whole, violated the Rules of Evidence and the Confrontation Clause. *Id.* at 208. This opinion is connected to its conclusion "only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

Avi will also tell the jury what places Mr. Al-Muhtadi supposedly meant in recorded calls and where "Malaka" is, based on news reports, "a reference in an Instagram group that used that term," maps, seized documents, and his reading of Arabic for "general meaning." Doc. 46, at 2, 6-8. The notice describes only generally how he gets from those sources to the meaning of particular words in particular calls.

That is not enough. *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002) (error to rely on an expert's "general qualifications without requiring the government to explain the method" he used to interpret words). Place names are not drug jargon, which is "a specialized body of knowledge, familiar only to those wise in the ways of the drug trade." *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997). An agent's gloss on ordinary words that "ventured into speculation" usurps "the jury's function, which is to draw its own inferences from the evidence presented." *Haines*, 803 F.3d at 734. Avi's readings also assume that the recordings accurately preserve the calls, which is disputed, Doc. 132, and which Mr. Daniel cannot verify from the discovery, Daniel Disclosure, at 2-3.

**E. Avi may not vouch that the Hamas reports are "generally reliable"**

The notice says the Hamas investigative reports "are therefore generally reliable" because they collect facts for Hamas's internal use, and "Hamas therefore has an interest in being accurate in documents, like these, used for internal purposes." Doc. 46, at 12. In support of authenticity, it adds that Avi "has found other documents located on this device to be accurate and reliable." *Id.* That is an argument for believing the documents, and the jury can weigh it as well as any witness. A court excluded a former IDF intelligence officer for the same thing, explaining that he "merely weighs the evidence in precisely the same way as would a trier of fact." *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 214 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016). The leap from Hamas's general interest in

accurate records to the accuracy of these particular reports leaves "simply too great an analytical gap between the data and the opinion proffered." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 461 (5th Cir. 2012) (per curiam) (quoting *Joiner*, 522 U.S. at 146). Whether these reports are reliable is a question for the Court under the hearsay rules and the Confrontation Clause, Doc. 104, and then for the jury.

### F. Avi should be held to the role the government has described

Avi's notice also covers the history of Hamas, the DFLP, and October 7, Doc. 46, at 4-6, the same ground as the government's other expert, Professor Hoffman, Doc. 95, at 3. Mr. Al-Muhtadi does not *generally* oppose background testimony on these organizations, "subject to a complete disclosure and the Court's gatekeeping." Doc. 130, at 20. But a second expert on the same subjects adds only weight, and Rule 403 permits exclusion to avoid "needlessly presenting cumulative evidence." FED. R. EVID. 403. The risk of unfair prejudice grows when that expert is a serving foreign intelligence official whose sources cannot be examined. *See Gill*, 893 F. Supp. 2d at 541. The government has said that "Avi's role is to authenticate six battlefield documents and to opine on the meaning of those documents." Doc. 82, at 15. The Court should hold the government to that description and bar the general testimony described at Doc. 46, at 4-6.

### G. In the alternative, the Court should hold a *Daubert* hearing before Avi testifies

If the Court does not exclude these opinions on the papers, it should hold a hearing under Rule 104(a), with Avi on the stand, before he testifies to the jury, as

the *Holy Land Foundation* court did. 2007 WL 2059722, at *8. At any hearing, the government must carry its burden with the material it has disclosed, and any opinion that rests on undisclosed material should be excluded. FED. R. EVID. 702(b).

## V. RESERVATION OF OBJECTIONS

Mr. Al-Muhtadi reserves his Confrontation Clause, hearsay, and authentication objections to the battlefield documents, Doc. 104, his objections to the protective measures and pseudonym proposed for Avi, Doc. 131, and all objections to Avi's testimony at trial. This motion is limited to Rules 702, 703, and 403.

## VI. CONCLUSION

For these reasons, Mr. Al-Muhtadi asks the Court to (1) grant leave to file this motion to the extent leave is required; (2) exclude every opinion of Avi's that rests on facts or data the government has not disclosed, including his opinion that the battlefield documents are authentic; (3) exclude his opinions that Mr. Al-Muhtadi is a member of the DFLP's military wing, that J.M. was killed inside Israel, on the meaning of the place references in the calls and of "Malaka," and that the Hamas reports are reliable; and (4) limit any remaining testimony to the role the government has described, Doc. 82, at 15, and bar the general testimony described at Doc. 46, at 4-6. In the alternative, Mr. Al-Muhtadi asks the Court to hold a *Daubert* hearing before Avi testifies and to exclude any opinion that rests on material the government has not disclosed.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
First Assistant / Appellate Chief

*s/ Aaron A. Adams*
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 30, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*