**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:25-CR-00285** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **MAHMOUD AMIN YA'QUB AL-MUHTADI, a/k/a "Abu Ala"** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## RULING AND ORDER

Before the Court is the Government's MOTION TO SHIELD THE IDENTITY OF CERTAIN WITNESSES AND FOR OTHER PROTECTIVE MEASURES TO ENSURE WITNESS SAFETY (the "Motion"). [Doc. 102]. The Defendant opposes the Motion [Doc. 131] and the Government filed a Reply [Doc. 140]. For the following reasons the Motion is GRANTED to the extent described herein, subject to the protocols to be set by the Court and the parties by separate order.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 7, 2023, Hamas and other armed groups of Palestinians launched a surprise attack from Gaza into southern Israel, firing thousands of rockets, breaching the Gaza-Israel barrier, killing more than 1,200 people, and taking approximately 250 hostages. Numerous United States citizens were included among those killed and captured. Immediately thereafter, Israel declared war on Hamas and initiated extensive military operations in Gaza against Hamas and other groups involved in the attack.

In connection with the October 7th attack on Israel, on October 6, 2025, a criminal Complaint was filed against the Defendant supported by an affidavit

alleging that the Defendant was an operative with the military wing of the Democratic Front for the Liberation of Palestine ("DFLP"), a Gaza-based paramilitary organization alleged to have participated in the October 7th attack. He was subsequently arrested and arraigned in this district. Currently pending against the Defendant is a four-count Superseding Indictment (the "Indictment") in which the Defendant is charged with: (i) conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 1); (ii) providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 2); (iii) visa fraud, in violation of 18 U.S.C. § 1546(a) (Count 3); and (iv) making a false statement within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001(a)(2) (Count 4). [Doc. 60]. Counts 1 and 2 each further allege that death resulted from the commission of the offense. *Id.* Trial is currently set to commence on January 25, 2027. [Doc. 66].

## I. Law and Analysis

Prior to trial, the Government seeks an order allowing it to employ protective measures for three categories of anticipated trial witnesses, including: two Israel Security Agency ("ISA") personnel ("Avi" and "Maya"), a potential Israel Defense Forces ("IDF") witness, and an FBI undercover employee known to the Defendant by a cover name. It also seeks limited name protections for FBI linguists. The Government posits that security measures are warranted to protect the physical and operational security of these witnesses, including the use of pseudonyms, partial

courtroom closure with live audio to an overflow courtroom, a non-public entry and exit from the courtroom for these witnesses, transcript safeguards to prevent classified "spillage," consultation with a legal advisor if a question would elicit classified information, and scope limitations on cross-examination consistent with the Federal Rules of Evidence and any orders issued pursuant to the Classified Information Protection Act, 18 U.S.C APP. III § 4 ("CIPA").

The Defendant opposes the use of pseudonyms and partial closure absent witness-specific showings and asks that counsel receive witnesses' true identities under a protective order or, alternatively, that the Government sponsor defense security clearances. Defense counsel also seeks to ensure that the full defense team, including staff and experts, remains in the courtroom, that the proceeding is recorded in a single official transcript, that it be able to conduct a full cross-examination into "Avi's" selection and transmission of documents, and that the use of CIPA procedures include defense counsel to the extent permissible.

## II. Applicable Legal Standards

A defendant's rights under the Confrontation Clause of the Sixth Amendment may yield to substantial witness-safety and national-security concerns when measures are employed to preserve a defendant's right to effective cross-examination. Accordingly, where safety and security concerns are present, courts retain discretion "to impose reasonable limits on … cross-examination …" *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). However, even in such cases, courts must take care to ensure the purposes of cross-examination

are maintained, including preserving defense counsel's ability "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *United States v. El-Mezain*, 664 F.3d 467, 491 (5th Cir. 2011) (citation omitted). In doing so, courts should balance the Government's demonstrated, non-speculative safety interests against any impairment to the defense's ability to confront and test credibility, including whether defense counsel has adequate information "to place the witness in his proper setting and put the weight of his testimony and his credibility to a test." *Id.* at 493–94. Partial courtroom closure is likewise permissible if good cause exists, where the court considers alternatives, and where measures are no broader than necessary, with accommodations such as an audio feed to preserve public access.

**III. Pseudonym Testimony**

Based on the record, the Court finds that the Government has articulated and provided evidence of substantial and legitimate safety and classification interests for the ISA, IDF and FBI undercover witnesses to testify under pseudonyms. The Government represents that the true identities of ISA and IDF personnel are classified under Israeli law and protected under U.S. classification rules, that terrorist organizations actively seek to identify ISA and IDF personnel and their families, and that revealing identities risks harm and compromises sources and methods. The Government also represents that the FBI undercover employee's identity is classified under U.S. law, that disclosure would jeopardize ongoing or prior investigations, and that the employee and family could face danger. The Court finds

these proffers sufficiently establish substantial reasons for tailored protective measures for the ISA and IDF witnesses, as well as the FBI undercover employee.

This having been established, the Court must ensure the Defendant's rights are preserved. The Government represents the witnesses will appear live for cross-examination and that it will comply with its *Brady*, *Giglio*, and Jencks Act obligations. It further notes its prior disclosures about "Avi," including a transcript of his prior testimony in the *El-Mezain* case, and lists several permissible topics of inquiry. The defense, however, also seeks access to true identities – citing its need to investigate credibility and bias for the undercover employee and "Maya," and to examine "Avi" on selection and transmission of Israeli "battlefield" evidence. The defense also requests that any mid-testimony classification issues be managed under CIPA procedures with defense counsel participation rather than ex parte.

On balance, the Court concludes that testimony by these witnesses using pseudonyms is necessary given the classified nature of their true identities. The Court further finds that it can implement measures to ensure that the Defendant's right to robust cross-examination is preserved. Specifically, the Government is directed to provide defense counsel with sufficient information about each witness to afford counsel the full opportunity to explore on cross-examination each witness's bias, credibility, and background. Defense counsel shall also be afforded the opportunity during cross-examination to explore the methods of authentication and the chain of custody of any documentary evidence offered through these witnesses. And, specifically for "Avi," defense counsel must be afforded the

opportunity to explore his role in the selection and processing of "battlefield documents" about which he is anticipated to testify. Lastly, and perhaps most importantly, the Government is specifically directed by the Court to take all reasonable measures to investigate the background of any witnesses testifying under pseudonyms and disclose to defense counsel any derogatory information bearing on the witnesses' bias, honesty, integrity, and/or credibility – both generally and specifically with respect to the subject matters upon which they are testifying. With these measures in place, the Court finds that defense counsel's ability "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness" is preserved. *United States v. El-Mezain*, 664 F.3d 467, 491 (5th Cir. 2011) (citation omitted).

## IV. Partial Courtroom Closure

The Government also seeks partial closure with audio to an overflow courtroom, and non-public ingress/egress in connection with the testimony of its ISA, IDF, and undercover FBI witnesses. The defense does not oppose partial closure if the full defense team remains present and if a single official transcript is maintained. The Court finds partial closure with live audio feed is narrowly tailored to protect identities while preserving meaningful public access. The Defendant, all defense counsel, and identified defense team members shall remain present in court. The official court reporter will maintain a single certified transcript. If classified information is inadvertently disclosed on the record, the Court will order any required sealing of the relevant portions of the transcript.

## V. CIPA Procedures

Next, the Government requests that the Court permit witness consultation with a legal advisor to avoid inadvertent classified disclosures and potential ex parte, in-camera proceedings. The Defendant objects to mid-testimony ex parte consultations and requests procedures under CIPA that preserve defense participation. After consideration, the Court will not issue a blanket authorization for mid-testimony, ex parte consultations, nor will it endeavor at this stage to place limits on cross-examination. Instead, if during testimony a party believes a question is likely to elicit classified information, that party shall object or otherwise advise the Court. The Court will then proceed under CIPA-consistent procedures to determine whether and how the witness may answer, including tailored sidebars or limited in-camera proceedings as necessary to safeguard classified information. The procedures employed by the Court will preserve defense counsel's participation to the extent feasible and consistent with classification constraints.

## VI. Disclosure of Witness Identities

The defense asks the Court to require declassification of true identities or to direct that defense counsel receive the true names under protective order, or alternatively, that the Government sponsor security clearances for the defense team. The Government argues classified identities cannot be disclosed to counsel in this case and contends there is no classified discovery necessitating defense clearances. The Defendant's concerns are noted by the Court and are certainly valid. Without knowing the true identities of the witnesses, the defense team is

unable to conduct research into the background of these individuals. However, these concerns can be mitigated by protocols established herein – including affirmative duties placed on the Government. Accordingly, the Court declines to order disclosure of the subject witnesses' true identities.

Instead, as discussed above, to facilitate full and meaningful cross-examination, the Government shall, to the extent it has not already done so, provide unclassified summaries sufficient to describe each such pseudonym witness's role, training, and responsibilities relevant to anticipated testimony, as well as the results of the Government's proactive investigation into the background of these witnesses. Such disclosure shall be made no later than 14 days prior to the commencement of trial and include any derogatory information bearing on the witnesses' bias, honesty, integrity, and/or credibility – both generally and specifically with respect to the subject matters upon which they are testifying. The Court finds that such information is necessary to ensure "the jury ha[s] sufficient information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir.1993). If the defense believes further detail is necessary for a specific line of cross-examination, it may move for additional relief, and the Court will consider further tailored measures upon a witness-specific showing.

## VII. FBI Linguists

Lastly, considering the showing made and seeing no prejudice to the Defendant, the FBI linguists may testify using first names only in public. However,

the Government shall provide their full names and CVs to defense counsel under the protective order, if not already provided.

## VIII. Conclusion

For the reasons and to the extent described herein, the MOTION TO SHIELD THE IDENTITY OF CERTAIN WITNESSES AND FOR OTHER PROTECTIVE MEASURES TO ENSURE WITNESS SAFETY [Doc. 102] is GRANTED. Counsel shall confer and jointly submit a proposed order consistent with this ruling, including the logistical plan for partial closure and overflow audio and any jointly agreed proposals to implement the directives set forth herein by **December 4, 2026**.

THUS, DONE AND SIGNED in Chambers on this 5th day of November 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE