**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:25-CR-00285** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **MAHMOUD AMIN YA'QUB AL-MUHTADI, a/k/a "Abu Ala"** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# MEMORANDUM RULING

Pending before the Court are five motions (collectively, the "Motions") filed by Defendant Mahmoud Amin Ya'Qub Al-Muhtadi (the "Defendant") seeking various forms of pre-trial relief, including: (i) MOTION UNDER RULE 12(b)(3)(B)(v) TO DISMISS COUNTS 3 AND 4 OF THE SUPERSEDING INDICTMENT AS IMPERMISSIBLE EXTRATERRITORIAL APPLICATIONS OF 18 U.S.C. § 1546(a) AND 18 U.S.C. § 1001 [Doc. 105]; (ii) MOTION TO STRIKE THE DEATH-RESULTING ALLEGATIONS IN COUNTS 1 AND 2 [Doc. 107]; (iii) MOTION TO DISMISS COUNTS 1 AND 2 OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND FOR UNCONSTITUTIONAL VAGUENESS [Doc. 108]; (iv) MOTION TO SUPPRESS THE PRODUCTS OF ISRAELI WARRANTLESS SURVEILLANCE [Doc. 109]; and (v) MOTION TO SUPPRESS THE FRUITS OF THE GOOGLE GEOFENCE WARRANTS AND TO COMPEL DISCLOSURE OF THE ORIGIN OF THE IDENTIFICATION [Doc. 111]. The Government filed responses in opposition to each of the Motions. [Docs. 124, 125, 126, 123, and 120, respectively], to which the Defendant has filed briefs in reply. [Docs. 144, 145, 146, 147, and 148, respectively]. The Court heard oral argument from counsel on the Motions on November 3, 2026. Having

considered the briefs and arguments of the parties, the Motions are DENIED to the extent set forth herein, as follows.

## Background

This prosecution centers on allegations that the Defendant conspired to provide, and did provide, material support to a designated foreign terrorist organization, Hamas, in connection with the Hamas-led October 7, 2023, terrorist attack in Israel and that he thereafter committed visa fraud and false-statement offenses against the United States. On October 6, 2025, the Government filed a criminal Complaint charging the Defendant with one count of visa fraud, in violation of 18 U.S.C. § 1546, and one count of conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B. [Doc. 1]. In support of the Complaint, the Government submitted a forty-four-page affidavit (the "Affidavit") [Doc. 1-1].[1] The Affidavit alleges that the Defendant was an operative with the military wing of the Democratic Front for the Liberation of Palestine ("DFLP"), a Gaza-based paramilitary organization alleged to have participated in the October 7th attack. [Doc. 1-1, ¶ 6]. The Affidavit further sets forth the Government's allegations regarding the Defendant's purported role in the October 7th attack and the investigation that led to the charges. Two weeks later, a federal grand jury returned an Indictment charging the Defendant with the same two offenses alleged in the criminal Complaint. [Doc. 16].

---

[1] The entirety of the Affidavit was read to the Defendant through an interpreter during his initial appearance on October 17, 2025. [Doc. 10].

On June 17, 2026, the grand jury returned a four-count Superseding Indictment (the "Indictment"), which charges the Defendant with the following: (i) conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 1); (ii) providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count 2); (iii) visa fraud, in violation of 18 U.S.C. § 1546(a) (Count 3); and (iv) making a false statement within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001(a)(2) (Count 4). [Doc. 60]. Counts 1 and 2 each further allege that death resulted from the commission of the offense.[2] *Id.* Trial is currently set for January 25, 2027. [Doc. 66].

On July 7, 2026, Defendant filed an Omnibus Motion to Compel Specific Discovery [Doc. 74], seeking production of unclassified discovery allegedly material to his defense. The motion pressed for the Government to obtain and disclose, among other things: (i) foundational materials for six exhibits the Government characterizes as "battlefield evidence," which it will seek to admit into evidence at trial through the testimony of "Avi," an Israeli expert witness designated by the Government to testify regarding Hamas and other terrorist and paramilitary organizations operating in the Palestinian territories; and (ii) foundational materials for six audio recordings attributed to Defendant on October 7, 2023, and Israeli cell-site/location evidence allegedly placing Defendant's cell phone on the Israeli side of the Gaza border.

---

[2] Defendant filed his first Motion for Bill of Particulars on May 26, 2026. [Doc. 54]. The Motion was ultimately stricken as moot due to the filing of the Superseding Indictment.

Also on July 7, 2026, the Government filed a Motion to Compel Rule 12 Defenses, wherein it sought a shortened deadline for the Defendant's response to its demand for disclosure of defenses under Rules 12.1, 12.2, and 12.3 of the Federal Rules of Criminal Procedure. [Doc. 73]. The Court conducted a hearing on both motions on August 4, 2026. [Doc. 89]. At the conclusion of the hearing, the Court denied the Government's motion, confirming the October 30, 2026, deadline for the Defendant's Rule 12 defenses. [Docs. 89; 114, p. 89]. As to Defendant's motion, the Court found that: (i) Israeli intelligence agencies were not part of the Government's prosecution team so as to trigger discovery obligations for materials held by Israeli authorities; and (ii) the Government obtained the documents it intends to use at trial through established protocols. Accordingly, the Court denied Defendant's request to compel discovery held by Israeli agencies. [Docs. 89; 114, p. 87].

On July 15, 2026, the Court ruled on Defendant's renewed Motion for a Bill of Particulars [Doc. 68], only one portion of which is relevant to the instant Motions. In his Motion for Bill of Particulars, the Defendant requested, *inter alia*, that the Government identify the factual basis for the allegation that "death resulted" from the offenses identified in Counts 1 and 2, arguing that the death-resulting enhancement under § 2339B(a)(1) had not been sufficiently particularized in the Indictment. [Doc. 68]. Noting that *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Alleyne v. United States*, 570 U.S. 99, 103, 111 (2013) require that charged factual allegations that operate to increase statutory maximum or mandatory minimum penalties are elements of an offense and therefore must be submitted to the jury and

proved beyond a reasonable doubt, the Court ruled that a limited bill of particulars was appropriate. [Doc. 80, pp. 7-8]. Specifically, the Government was ordered to identify the names of the decedents relevant to Counts 1 and 2 of whom it may offer evidence at trial. This disclosure was limited to identifying the factual basis or bases for the "death resulting" enhancements and did not require the Government to provide a detailed accounting of its anticipated evidence, witnesses, or trial strategy. *Id.*

The instant Motions were timely filed and raise a variety of issues seeking different forms of relief. All issues have been fully briefed by the parties, and the Court has held oral argument on the Motions. Accordingly, the Motions are ripe for determination.

## LAW AND ANALYSIS

### I. Motions to Dismiss

Unless otherwise noted, the Motions to Dismiss are considered under Federal Rule of Criminal Procedure 12(b)(1), which states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" *United States v. Wilson,* 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024), *citing* Fed. R. Crim. P. 12(b)(3)(B)(v). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. *United States*

*v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). However, courts lack authority under Fed. R. Crim. P. 12 to dismiss an indictment on the basis of a "sufficiency-of-the-evidence defense, which raises factual questions embraced in the general issue." *United States v. Mann,* 517 F.2d 259, 268 (5th Cir.1975).

To be constitutionally sufficient, an indictment must enumerate each element of the charged offense, fairly inform the defendant of the charges filed against him, and provide the defendant with a double jeopardy defense against future prosecution. *United States v. Gaytan,* 74 F.3d 545, 551 (5th Cir. 1996); *United States v. Cavalier,* 17 F.3d 90, 92 (5th Cir. 1994); and *United States v. Arlen,* 947 F.2d 139, 144 (5th Cir. 1991). The requirements in Federal Rule of Criminal Procedure 7(c) are essentially the same. It requires an indictment to contain a plain, concise, and definite written statement of the essential facts constituting the offense charged, and to cite the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. These requirements ensure that the defendant has notice of the charges against him and that the grand jury found probable cause that he committed each element of the charged offenses. *United States v. Guzman–Ocampo,* 236 F.3d 233, 235 (5th Cir. 2000). An indictment setting forth the offense in the words of the statute itself is generally sufficient to satisfy these requirements. *United States v. Hagmann,* 950 F.2d 175, 183 (5th Cir. 1991); *United States v. Gordon,* 780 F.2d 1165, 1169 (5th Cir. 1986). Finally, an indictment that meets the minimum constitutional and statutory requirements is sufficient to warrant a trial on the merits.

### A. Defendant's Motion Under Rule 12(b)(3)(B)(v) to Dismiss Counts 3 and 4 of the Superseding Indictment as Impermissible Extraterritorial Applications of 18 U.S.C. § 1546(a) and 18 U.S.C. § 1001 [Doc. 105]

Count 3 of the Indictment charges the Defendant with visa fraud in violation of 18 U.S.C. § 1546(a),[3] asserting that the Defendant knowingly made, under oath, false statements with respect to certain material facts in his Form DS-260 Immigration Visa and Alien Registration Application ("Form DS-260"). It alleges that the visa fraud conduct occurred "[o]n or about June 26, 2024, in the special maritime and territorial jurisdiction ["SMTJ"] of the United States . . . ." [Doc. 60]. Count 4 charges the Defendant with making false statements within the jurisdiction of the United States Department of State in violation of 18 U.S.C. § 1001(a)(2)[4] by knowingly and willfully making false statements and representations to a State Department employee. Count 4 similarly alleges that the false statements were made

---

[3] 18 U.S.C. § 1546(a) makes it a crime to, among other things, knowingly make under oath or subscribe as true:

> any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact.

18 U.S.C. § 1546(a).

[4] 18 U.S.C. § 1001(a)(2) provides:

> (a) . . . in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation;

18 U.S.C. § 1001(a)(2).

"[o]n or about August 6, 2024, in the special maritime and territorial jurisdiction of the United States . . . ." Collectively, these counts allege that the Defendant made false statements with respect to, among other things, his membership in the DFLP and history of terrorist activities, in both his visa application submitted to the United States and during an in-person visa interview with U.S. consular officials at the United States Embassy in Cairo, Egypt, on August 6, 2024. [Doc. 105-1, p. 21]. For purposes of determining the extraterritorial application of these statutes, the Court accepts the Indictment's factual allegations as true. *United States v. Crow,* 164 F.3d 229, 234 (5th Cir. 1999).

Defendant moves to dismiss Counts 3 and 4 on the basis that both §§ 1546 and 1001 fail to state offenses because the charged conduct occurred abroad and neither statute explicitly encompasses extraterritorial conduct. Defendant correctly begins his argument by invoking the presumption that federal statutes apply only domestically unless Congress clearly indicates otherwise. *See United States v. Rolle*, 65 F.4th 1273, 1276 (11th Cir. 2023) (courts presume that federal statutes apply only within the territorial jurisdiction of the United States unless Congress indicates otherwise, making extraterritorial application a question of statutory interpretation). That presumption is a tool of construction rather than a jurisdictional bar. *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010); *Rolle*, 65 F.4th at 1276. It yields where the statute's context and purpose demonstrate application to conduct abroad or where the statute's focus is a domestic object that is harmed by the alleged conduct. *See generally, Morrison*, 561 U.S. at 266.

In *United States v. Bowman*, the Supreme Court recognized that certain criminal statutes, by their nature, contemplate application to conduct outside the United States, particularly those protecting the government from fraud or obstruction, even absent express extraterritorial language. 260 U.S. 94, 98, 43 S. Ct. 39, 67 L. Ed. 149 (1922). Finding that the presumption against extraterritoriality does not apply to criminal statutes that are "not logically dependent on their locality for the government's jurisdiction," the *Bowman* Court recognized that strictly limiting such statutes to domestic conduct would unduly restrict their scope and effectiveness and leave substantial opportunity for fraud against the United States to go unpunished. 260 U.S. at 98. In other words, the *Bowman* court found that offenses involving obstruction or fraud against the government are by their very nature intended by Congress to apply extraterritorially, "because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated . . . ." 260 U.S. at 98, 43 S. Ct. 39.

Although the precedential value of *Bowman* has been called into question by some lower courts throughout the country, it remains binding precedent and has long shaped jurisprudence governing the extraterritorial application of federal criminal statutes.[5] It is not appropriate for this Court to question or attempt to weaken

[5] *See, e.g., United States v. Baker*, 609 F.2d 134, 136–37 (5th Cir. 1980) (affirming the extraterritoriality of the Comprehensive Drug Abuse Prevention and Control Act of 1970, finding that "[t]he power to control efforts to introduce illicit drugs into the United States from the high seas and foreign nations is a necessary incident to Congress' efforts to eradicate all illegal drug trafficking."); *United States v. Perez-Herrera*, 610 F.2d 289, 290–92 (5th Cir. 1980) (finding an extraterritorial basis for crime of attempting to import marijuana into the United States).

binding Supreme Court precedent. And certainly the *Bowman* court's rationale for targeted extraterritorial application of federal criminal statutes designed to protect American governmental interests has only been strengthened in the 100 years since that case was decided. At bottom, there is no doubt that fraud-on-the-government prosecutions would be severely restricted if confined to domestic conduct. The United States government necessarily operates and is vulnerable abroad, including through its embassies and consular posts.

Consistent with *Bowman*, in *United States v. Pizzarusso*, the Second Circuit held that 18 U.S.C. § 1546 applies extraterritorially to false statements made to a U.S. consular officer in a foreign country. 388 F.2d 8, 9–11 (2d Cir. 1968) (sustaining a § 1546 conviction based on a false statement made at the American Consulate in Montreal, reasoning that § 1546 is an integral part of the immigration laws governing visas and that false statements in visa applications would ordinarily be made outside the United States), *cert. denied*, 392 U.S. 936, 88 S. Ct. 2306, 20 L. Ed. 2d 1395 (1968). The court reasoned that Congress, by enacting § 1546 as a significant and integral part of the pattern of immigration laws, contemplated that it would be applied extraterritorially, because in the ordinary course of events false statements in visa applications would naturally be expected to be made outside the territorial limits of the United States. 388 F.2d at 9. *See also United States v. Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) (reaffirming *Pizzarusso*); *United States v. Walczak*, 783 F.2d 852, 854 (9th Cir. 1986) (holding that § 1001 applied to a violation committed in Canada); *Rocha v. United States*, 288 F.2d 545, 547 (9th Cir. 1961) (affirming application of

§ 1546 to conduct occurring abroad under the protective principle of international law); *United States v. Rolle* 65 F.4th 1273, 1277 (11th Cir. 2023) (holding that *Bowman* remains binding law and finding that § 1324(a)'s scope and usefulness would be greatly limited if the statute were restricted to the territorial United States).

Defendant contends that the Supreme Court's more recent decisions in *Morrison* and *RJR Nabisco* displace *Bowman* and require dismissal. *RJR Nabisco v. Eur. Cmty*, 579 U.S. 325, 337, 136 S. Ct. 2090, 2101 (2016). Together, these cases reaffirm the presumption against extraterritoriality and establish a two-step framework for analyzing the extraterritorial application of federal statutes.[6] But the

---

[6] Under *Morrison* and its progeny, courts apply a two-step framework to determine whether a federal statute applies extraterritorially. *See, RJR Nabisco,* 579 U.S. at 337 (2016). First, the court asks whether Congress has clearly and affirmatively indicated that the statute applies to foreign conduct. If so, the analysis ends. If not, the court presumes that the statute applies only domestically and proceeds to the second step, identifying the statute's focus and determining whether the conduct relevant to that focus occurred in the United States. If the relevant conduct occurred domestically, application of the statute is permissible even if other conduct occurred abroad.

In determining the "focus" of a federal statute, courts look to "the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418, 143 S. Ct. 2522, 2528 (2023) (internal quotation marks omitted). Here, the interest that § 1546 seeks to protect is the integrity of U.S. governmental functions and decision-making, including the administration of immigration and visa laws and the accuracy of information provided to U.S. officials. Similarly, § 1001 is a statute designed to prohibit the obstruction of investigations conducted by the United States government. In this sense, the two-step framework to Counts 3 and 4 is consistent with *Bowman*'s extraterritorial application of statutes through which the United States "defend[s] itself against obstruction, or fraud wherever perpetrated." 260 U.S. at 98, 43 S. Ct. 39. However, *RJR Nabisco* goes on to hold that "if the <u>conduct</u> relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco* 579 U.S. at 337 (2016) (emphasis added). Here, the Defendant is charged in Counts 3 and 4 with conduct that occurred in Egypt. Thus, without *Bowman,* the Court's application of *Morrison's* two-step framework to these facts would be insufficient to overcome the presumption against extraterritoriality.

Supreme Court did not indicate in *Morrison* or *RJR Nabisco* that *Bowman* had been overturned. The Indictment's allegations are that the Defendant submitted false statements in a visa application to the United States and repeated falsehoods to U.S. consular officials during a visa interview at the U.S. Embassy in Cairo. Those alleged statements were directed to U.S. officials performing U.S. governmental functions, and the alleged harm fell upon the United States' decision-making processes. Consistent with *Bowman* and its progeny, the Court finds that the scope and usefulness of both statutes to deter immigration fraud and obstruction of investigations conducted by the United States government would be impaired if the applicability of these statutes was restricted to the territorial United States. And finally, relevant to congressional extraterritorial intent, both §§ 1001(a) and 1546(a) include penalty enhancements "if the offense involves international … terrorism," or "was committed to facilitate an act of international terrorism," respectively.[7]

Accordingly, the Court concludes that the presumption against extraterritoriality does not preclude application of § 1546(a) to the conduct alleged in Count 3. The same conclusion applies to Count 4, which charges materially false statements in a matter within the jurisdiction of the United States under § 1001(a)(2). *See Walczak*, 783 F.2d at 854. Accordingly, the Motion to Dismiss Counts 3 and 4 on that basis is denied.

---

[7] The term "international terrorism" clearly contemplates extraterritorial application and is defined as "activities" that "involve violent acts … that would be a criminal violation if committed within the jurisdiction of the United States or any State." 18 U.S.C. § 2331.

### B. Motion to Strike the Death-Resulting Allegations in Counts 1 and 2 [Doc. 107]

Counts 1 and 2 of the Indictment include "death resulting" allegations that, pursuant to § 2339B's statutory scheme, increase the statutory maximum sentence from twenty years to life for both counts. 18 U.S.C. § 2339B(a)(1). In his second Motion, the Defendant urges the Court to "strike the allegation appended to Count 1 and to Count 2 of the [Indictment] that death resulted from the commission of the offense" because the allegations constitute statutory elements that a jury must find beyond a reasonable doubt and the Government cannot meet its burden as a matter of law. [Doc. 107-1]. Relying on *Alleyne v. United States*, 570 U.S. 99, 108 (2013), and *Burrage v. United States*, 571 U.S. 204, 210–11, 216, 218–19 (2014), Defendant maintains that the Government must prove that a particular death would not have occurred "but for" Defendant's conduct. Defendant then argues that the Government is unable to meet this burden because its Bill of Particulars identifies no specific decedents and instead relies on the aggregate deaths resulting from the October 7th attack, which Defendant characterizes as an impermissible theory of causation. The Defendant thus urges the Court to strike the "death resulting" enhancement in advance of trial.

The Government responds that the issue is fact-intensive and cannot be resolved based solely on the Indictment and Bill of Particulars, and that Defendant's interpretation of the "death resulted" requirement is overly restrictive. The Government's response requests that this issue be deferred to trial as it involves factual determinations to be made by the jury.

The Court's prior ruling on Defendant's Motion for Bill of Particulars controls the scope of the Government's allegations concerning the death-resulting element of Counts 1 and 2. The Court previously determined that the Government must identify in a Bill of Particulars the specific decedents whose deaths it alleges resulted from the offenses charged in Counts 1 and 2 and must prove the requisite causal connection between those deaths and the activities of Hamas. However, the specific jury instructions establishing the proof required for the Government to meet its burden will be determined during the trial of this matter. If, as the Defendant urges, the Government does not have sufficient evidence to establish the required connection between the actions of the Defendant and the death of one or more individuals previously disclosed to the Defendant, the appropriate remedy is a timely Rule 29 motion at the close of the Government's case. The Court therefore declines at this time to strike the death-resulting allegations from Counts 1 and 2 of the Indictment. As instructed during the hearing of this matter, counsel is directed to submit briefs to address the appropriate standard of causation seven (7) days prior to the pre-trial conference.

**C. Motion to Dismiss Counts 1 and 2 of the Superseding Indictment for Failure to State an Offense and for Unconstitutional Vagueness [Doc. 108]**

**1. Failure to State an Offense**

Defendant next contends that Counts 1 and 2 fail to allege material support to Hamas because the Indictment does not allege that Defendant communicated with, directly provided anything to, or acted under the direction or control of Hamas.

Defendant relies on the Affidavit attached to the October 6, 2025, Complaint, which the Government identified as the factual basis for the Indictment, [Doc. 72, p. 18], and on the Government's representation in its Bill of Particulars that it does not intend to offer theories concerning the personnel, weapons, or services beyond those identified in the Affidavit. [Doc. 85, p. 2]. Thus, Defendant characterizes the issue as one of statutory interpretation under § 2339B, *i.e,* whether the statute reaches conduct by a Defendant: (i) who is a member of an organization that is not a designated FTO, (ii) where that organization allegedly coordinated and cooperated with an FTO, but where (iii) no communication, association, or relationship of control between the Defendant and the FTO is alleged. Defendant relies on *United States v. Ullah*, 173 F.4th 399, 414 (2d Cir. 2026), which characterized a similar argument as an "embedded question[] of statutory interpretation," *quoting United States v. Calk*, 87 F.4th 164, 177 (2d Cir. 2023).

Rule 7(c) requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c); *United States v. Holy Land Found. for Relief & Dev.*, 2007 WL 1498813, at *1 (N.D. Tex. May 23, 2007). An indictment is sufficient if it alleges the elements of the offense, informs the defendant of the charge he must meet, and permits him to plead acquittal or conviction as a bar to future prosecution. *Id., citing United States v. Shelton*, 937 F.2d 140, 142 (5th Cir. 1991); *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986). Sufficiency is determined from the indictment's specific language, considered as a whole and in light of the statutory background, and the

question is whether it meets minimum constitutional standards, not whether it could have been drafted more precisely. *Holy Land*, 2007 WL 1498813, at *1, *citing United States v. Gonzales*, 436 F.3d 560, 569 (5th Cir.), *cert. denied*, 126 S. Ct. 2045 (2006). Those standards are satisfied when the indictment alleges every element in a manner sufficient to permit preparation of a defense and invocation of double jeopardy. *Id.*

Here, the Indictment satisfies that standard. Section 2339B(a)(1) prohibits knowingly providing, attempting to provide, or conspiring to provide material support or resources to a designated foreign terrorist organization, with knowledge of the organization's designation or its engagement in terrorist activity or terrorism. 18 U.S.C. § 2339B(a)(1); Fifth Circuit Pattern Jury Instruction 2.92B (2024). Counts 1 and 2 allege that Defendant provided, attempted to provide, or conspired to provide Hamas with "personnel, including himself, weapons and services," while knowing that Hamas was a designated foreign terrorist organization and had engaged and engages in terrorist activity and terrorism, and that Defendant knowingly conspired with others to provide such support. [Doc. 60, pp. 3-4].

In *Ullah*, following a jury trial, the Second Circuit held that the evidence was insufficient to establish that the defendant provided or attempted to provide himself as "personnel" to ISIS, because he acted alone, ISIS did not know of his existence, and there was no evidence that he worked under ISIS's direction or control. *Ullah*, 173 F.4th at 413–15. Here, by contrast, Defendant's challenge ultimately depends on whether the Government's evidence will establish that he knowingly provided or attempted to provide himself as personnel to Hamas within the confines of

§ 2339B(h). This raises a sufficiency-of-the-evidence question and is not properly brought as a defect in the Indictment. Before trial, the Court cannot determine whether the Government can prove its allegations beyond a reasonable doubt, and a defendant ordinarily may not obtain dismissal by challenging the sufficiency or weight of the Government's evidence. *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Alfonso*, 143 F.3d 772, 776–77 (5th Cir. 1998).

Nor do the Government's representations concerning the factual basis for the Indictment alter the analysis. Although the Government has represented in its Bill of Particulars that the facts underlying the Indictment are set forth in the Affidavit and that it will not offer theories concerning the personnel, weapons, or services beyond those identified therein, those representations do not permit the Court to conduct a sufficiency-of-the-evidence inquiry at this stage. [Doc. 85]. For example, the Court cannot determine before trial how the evidence will establish the alleged relationship among Defendant, the DFLP, and Hamas, or what reasonable inferences the factfinder may draw from that evidence. Whether the Government ultimately can establish the requisite direction or control, and thereby prove the alleged provision or attempted provision of personnel under § 2339B(h), must be determined on the trial record. *Ullah* therefore may provide relevant guidance concerning the statutory meaning of "under the direction or control," but does not warrant dismissal of Counts 1 and 2 before trial.

**2. Unconstitutional Vagueness**

Alternatively, Defendant contends that § 2339B is unconstitutionally vague as applied and seeks the evidentiary limitation recognized in *United States v. Warsame*,

537 F. Supp. 2d 1005, 1019–20 (D. Minn. 2008), asserting that § 2339B fails to provide fair notice and permits arbitrary enforcement.

"A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19, 130 S. Ct. 2705, 2718–19, 177 L. Ed. 2d 355 (2010), *citing United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). In an as-applied challenge, the question is whether the statute provided fair notice that the defendant's particular conduct was prohibited; "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982).

The Government argues that § 2339B is not vague "as applied" in this case because Defendant is charged with providing and attempting to provide material support to Hamas through "personnel, including himself," weapons, and services, in connection with his alleged participation in the October 7th attack on Israel. Section 2339B expressly defines the provision of "personnel" to include knowingly providing an individual to work under a foreign terrorist organization's "direction or control," while excluding individuals who act "entirely independently" of the organization. 18 U.S.C. § 2339B(h).

The Court finds no constitutional infirmity in the statute as applied here. Section 2339B provides fair notice of the conduct it prohibits, and the alleged knowing provision of oneself as personnel to Hamas in connection with the organization's terrorist activities falls within the statute's core prohibitions. *See Holder*, 561 U.S. at 18–21. The statute likewise does not leave enforcement discretion unbounded, as § 2339B(h) identifies the circumstances under which an individual constitutes "personnel" and expressly excludes wholly independent conduct.[8] The circumstances here, therefore, present no basis for concluding that § 2339B is unconstitutionally vague as applied, and the Court finds insufficient basis for an evidentiary limitation similar to the one employed by the district court in *Warsame*.[9]

## II. Motions to Suppress

### A. Motion to Suppress the Products of Israeli Warrantless Surveillance [Doc. 109]

Next, Defendant argues that the Government wrongfully obtained six recorded telephone calls and summaries of additional communications from an Israeli mass-

---

[8] In *Holder*, the Court explained that "Congress … [added] narrowing definitions to the material-support statute over time. These definitions increased the clarity of the statute's terms." 561 U.S. at 21, citing § 2339A(b)(2) ("'training' means instruction or teaching designed to impart a specific skill, as opposed to general knowledge"); § 2339A(b)(3) ("'expert advice or assistance' means advice or assistance derived from scientific, technical or other specialized knowledge"); § 2339B(h) (clarifying the scope of "personnel"). Holder also explained that "the knowledge requirement of the statute further reduces any potential for vagueness, as we have held with respect to other statutes containing a similar requirement." *Id., citing Hill v. Colorado,* 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000); *Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 523, 526, 114 S. Ct. 1747, 128 L. Ed. 2d 539 (1994).

[9] In *Warsame*, the court held that evidence lacking a "direct connection with underlying military or terrorist activities" would be inadmissible as evidence of guilt unless tied to conduct the statute actually reaches. 537 F. Supp. 2d 1005, at 1019–20.

surveillance archive at the FBI's request in June 2025. He contends that the retrieval constituted a warrantless foreign search in which U.S. officials participated and therefore violated the Fourth Amendment under *United States v. Hawkins*, 661 F.2d 436, 455–56 (5th Cir. 1981). He further maintains that the recordings originated from Israel's bulk surveillance of Palestinian telephone traffic, conducted without warrants or individualized suspicion, and that FBI agents had been embedded with the Israeli counterterrorism apparatus before requesting the recordings. Accordingly, he seeks suppression of the recordings and all derivative evidence, an evidentiary hearing, and testimony concerning the surveillance program and the June 2025 retrieval.

"[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433–34, 140 S. Ct. 2082, 2086, 207 L. Ed. 2d 654 (2020), *citing Boumediene v. Bush*, 553 U.S. 723, 770–771, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008); *Hamdi v. Rumsfeld*, 542 U.S. 507, 558–559, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (Scalia, J., dissenting); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265–275, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990); U. S. Const., Preamble. Specific to the Fourth Amendment, the Supreme Court has explained that, "[w]hat we know of the history of the drafting of the Fourth Amendment … suggests that its purpose was to restrict searches and seizures which might be conducted by the United States in domestic matters." *Verdugo-Urquidez*, 494 U.S. at 266. And the available historical data further demonstrate that "the

purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory." *Id.*

Nor does "[t]he Fourth Amendment generally … apply to the actions of foreign officials enforcing foreign law in a foreign country . . . ." *United States v. Odoni*, 782 F.3d 1226, 1238 (11th Cir. 2015). *See also United States v. Heller*, 625 F.2d 594, 599 (5th Cir. 1980) ("Ordinarily, the fourth amendment does not apply to arrests and searches made by foreign authorities in their own country and in enforcement of foreign law."), *citing United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976), *cert. denied*, 430 U.S. 956, 97 S. Ct. 1602, 51 L. Ed. 2d 806 (1977).

Applying these settled precepts to the facts here confirms that suppression is unwarranted. The relevant search occurred on October 7, 2023, when the Israeli Security Agency ("ISA") intercepted the calls in question. Under well-established law, "a violation of the [Fourth] Amendment is 'fully accomplished' at the time of an unreasonable governmental intrusion." *United States v. Rojas*, 812 F.3d 382, 397–8 (5th Cir. 2016) ("at the time of the intercepts, the defendants were citizens and residents of Colombia."), *citing Verdugo–Urquidez,* 494 U.S. at 264. It is undisputed that, at that time, Defendant was on foreign soil with no substantial connection to the United States; the ISA seized the calls at issue; and American authorities were neither investigating Defendant nor in contact with Israeli authorities concerning him, which did not occur until 2025. And this Court has already determined that

"the manner of obtaining documents that the Government intends to use at trial was in accordance with established protocols for obtaining those documents." [Doc. 114, p. 87]. That the Government later secured the six recorded telephone calls and summaries of additional communications from the Israeli archive does not change this analysis. The search of the Defendant occurred at the time of the intercept by ISA, and not when the United States authorities secured that evidence. The Court also notes that this result is consistent with the exclusionary rule's deterrent purpose — promoting compliance with the Fourth Amendment by American law enforcement. *See, e.g., Davis v. United States*, 564 U.S. 229, 246, 131 S. Ct. 2419, 2432, 180 L. Ed. 2d 285 (2011) ("we have said time and again that the sole purpose of the exclusionary rule is to deter misconduct by law enforcement").

Considering the foregoing, suppression in this Court of the six recorded telephone calls and the summaries of additional communications from an Israeli surveillance archive is not warranted.

**B. Motion to Suppress the Fruits of the Google Geofence Warrants and to Compel Disclosure of the Origin of the Identification [Doc. 111].**

Finally, Defendant moves to suppress evidence obtained through five geofence[10] warrants issued during the Government's investigation, arguing that such

---

[10] A geofence warrant allows law enforcement to obtain information that technology companies collect about their users' cell-phone locations. *Chatrie v. United States*, 609 U.S. 605, 610, 146 S. Ct. 2193, 2199 (2026) (vacating Fourth Circuit's *en banc* decision affirming the denial of defense motion to suppress geofence warrant evidence). *See also United States v. Smith,* 110 F.4th 817, 840 (5th Cir. 2024) (holding, as a matter of first impression, that geofence warrants are "modern-day general warrants and are unconstitutional under the Fourth Amendment").

warrants are unconstitutional under *United States v. Smith*, 110 F.4th 817, 840 (5th Cir. 2024), and that the Supreme Court's recent decision in *Chatrie v. United States*, 609 U.S. 605, 610, 146 S. Ct. 2193, 2199 (2026), does not disturb *Smith*. Defendant further argues that the fifth geofence warrant, issued on February 20, 2025, was particularly deficient because it identified no individual or account as a target and instead sought data concerning "unknown person(s)." Defendant contends that Google produced the requested data on March 4, 2025, after Defendant had entered the United States, and that the Government has not disclosed whether the geofence process led to his identification. He therefore seeks suppression of the March 4, 2025, production and any derivative evidence, or, alternatively, an order requiring the Government to establish whether the geofence investigation identified him and, if so, to conduct a taint hearing. Defendant also argues that he has Fourth Amendment standing, that the warrants lacked the requisite particularity and probable cause, and that the good-faith exception does not apply. Finally, Defendant maintains that the Court cannot resolve these issues until the Government discloses whether the geofence investigation led to his identification.

In its response to the Motion, the Government states that neither Al-Muhtadi's email address nor associated account recovery cellphone number appeared in any of the geofence returns, and accordingly, no fruits from any geofence warrants played a role in identifying Al-Muhtadi as a participant in the October 7th attack. The Government will therefore not offer any evidence derived from these warrants at trial. Considering the foregoing, this Motion will be denied as moot.

## Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

Defendant's Motion Under Rule 12(b)(3)(B)(v) to Dismiss Counts 3 and 4 of the Superseding Indictment as Impermissible Extraterritorial Applications of 18 U.S.C. § 1546(a) and 18 U.S.C. § 1001 [Doc. 105] is DENIED.

Defendant's Motion to Strike the Death-Resulting Allegations in Counts 1 and 2 [Doc. 107] is DENIED.

Defendant's Motion to Dismiss Counts 1 and 2 of the Superseding Indictment for Failure to State an Offense and for Unconstitutional Vagueness [Doc. 108] is DENIED.

Defendant's Motion to Suppress the Products of Israeli Warrantless Surveillance [Doc. 109] is DENIED.

Defendant's Motion to Suppress the Fruits of the Google Geofence Warrants and to Compel Disclosure of the Origin of the Identification [Doc. 111] is DENIED AS MOOT.

THUS, DONE AND SIGNED in Chambers on this 10th day of November 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE